KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
R. JAMES SLAUGHTER - #192813
R. ADAM LAURIDSEN - #243780
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188
rvannest@kvn.com
rslaughter@kvn.com
alauridsen@kvn.com

Attorneys for Defendant
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL MICHAEL KELLER, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>ELECTRONIC ARTS INC.; NATIONAL COLLEGIATE ATHLETICS ASSOCIATION; COLLEGIATE LICENSING COMPANY,<br><br>       Defendants. | Case No. CV-09-1967-CW<br><br>**ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  September 24, 2009<br>Time:  2:00 p.m.<br>Dept:  Courtroom 2, 4th Floor<br>Judge:  Hon. Claudia Wilken<br><br>Date Comp. Filed: May 5, 2009 |

1    **NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

2        **PLEASE TAKE NOTICE** that on September 24, 2009 at 2:00 p.m. before the

3    Honorable Claudia Wilken, United States District Court, 1301 Clay Street, Suite 400 S, Oakland,

4    California 94612-5212, Courtroom 2, 4th Floor, defendant Electronic Arts Inc. ("EA") will, and

5    hereby does, move the Court for an order dismissing the second, third, fourth, fifth, and seventh

6    causes of action in the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

7        EA moves to dismiss all of Plaintiffs' causes of actions asserted against EA on the

8    following grounds: (1) assuming EA uses Plaintiff's protectable attributes, the use would be

9    protected by the First Amendment and California Constitution because EA's games are

10   expressive and transformative works; (2) assuming EA uses Plaintiff's protectable attributes, the

11   use would be protected by the First Amendment and California Constitution because of the

12   public's strong interest in information about sports and athletes; and (3) Plaintiff has not alleged

13   a recoverable injury.

14       Additionally, EA moves to dismiss: (1) the second cause of action on the grounds that if

15   EA uses Plaintiff's protectable attributes, the use would be exempt from liability under

16   section 3344(d)'s "public affairs" exemption; (2) the fourth cause of action on the grounds that

17   Plaintiff lacks an underlying tort upon which to base the conspiracy claim; (3) the fifth cause of

18   action on the grounds that Plaintiff lacks an underlying tort claim upon which to base the unfair

19   competition claim; (4) the seventh cause of action on the grounds that no claim for unjust

20   enrichment exists under California law absent independent grounds—not alleged by Plaintiff—

21   for imposing an implied contract or constructive trust and, even if the court recognizes a claim

22   for unjust enrichment under California law, there exists a valid express contract covering the

23   subject matter at issue.

24       For each of these reasons, EA respectfully requests that the Court grant this Motion and

25   dismiss Plaintiff's causes of action against EA with prejudice.

26       This Motion is based on this Notice; on the attached Memorandum of Points and

27   Authorities; on the concurrently-filed Request for Judicial Notice and Declarations of Jeremy

28   Strauser and Sean O'Brien with Exhibits A through H; on the concurrently lodged editions of

444705.05

1  *NCAA Football 06* through *NCAA Football 09*, *NCAA March Madness 06* through *NCAA March*

2  *Madness 08*, *NCAA Basketball 09*, PlayStation 2 console, and two controllers; all pleadings,

3  files, and records in this action; and on such other argument as may be received by this Court at

4  the hearing on this Motion.

5

6  Dated: July 29, 2008                                    KEKER & VAN NEST LLP

7

8

9                                              By: */s/ Robert A. Van Nest*
                                                    ROBERT A. VAN NEST
10                                                  Attorneys for Defendant
                                                    ELECTRONIC ARTS INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

444705.05

1

**TABLE OF CONTENTS**

2

**Page(s)**

3  MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

4  I.       INTRODUCTION ...................................................................................................1

5  II.      BACKGROUND ......................................................................................................3

6  III.     ARGUMENT ............................................................................................................5

7           A.       The Issues Presented in this Motion Should be Decided at the Pleading
8                    Stage. ...............................................................................................................5

9                    1.       In Deciding A Rule 12(b)(6) Motion Involving an Expressive
                              Work, the Court May Rely Upon Its Own Examination of the
10                            Work. ....................................................................................................5

11                   2.       Only Games Released Within the Past 4 Years Are At Issue. .............6

12          B.       The First Amendment and the California Constitution Bar All
                     Plaintiff's Claims. ..........................................................................................7

13                   1.       The First Amendment and California Constitution Defeat
14                            Plaintiff's Misappropriation Claims Because Any Use is
                              Transformative. ...................................................................................9

15                   2.       The First Amendment and the California Constitution Bar
16                            Plaintiff's Claims Because of the Public's Strong Interest in
                              Information About Sports and Athletes. ............................................12

17                   3.       Meritorious Misappropriation Claims Target Advertisements. .........15

18          C.       All of Plaintiff's Claims Fail Because He Has Not Alleged A
19                   Recoverable Injury. .......................................................................................16

20          D.       Plaintiff's California Statutory Misappropriation Claim is Barred by
                     the Statute's "Public Affairs" Exemption. ....................................................17

21          E.       Plaintiff's Civil Conspiracy Claim Fails Because There is No
22                   Underlying Tort. ............................................................................................19

23          F.       Plaintiff's Section 17200 Fails Because It Lacks a Predicate Violation
                     and Seeks an Unavailable Remedy. ..............................................................20

24          G.       Plaintiff's Unjust Enrichment Claim Fails Because There is No Such
                     Claim Under California Law and There Exists an Express Contract
25                   Covering the Same Subject. ..........................................................................20

26  IV.     CONCLUSION ......................................................................................................22

27

28

i

444705.05

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*4 Hour Wireless v. Smith*
01 Civ 9133, 2002 U.S. Dist. LEXIS 22680 (S.D.N.Y. Nov. 22, 2002) ...................................21

*Abdul-Jabbar v. Gen. Motors Corp.*
85 F.3d 407 (9th Cir. 1996) ............................................................................................15

*Abrego Abrego v. The Dow Chem. Co.*
443 F.3d 676 (9th Cir. 2006) .............................................................................................5

*Ashcroft v. Iqbal*
556 U.S. ---, 129 S.Ct. 1937 (2009) ...........................................................2, 5, 16, 20

*Barnett v. Evans*
No. C 06-0193 CW (PR), 2009 WL 799402 (N.D. Cal. Mar. 24, 2009)..........................5, 16

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007).................................................................................5, 17, 19

*Burnett v. Twentieth Century Fox Film Corp.*
491 F. Supp. 2d 962 (C.D. Cal. 2007) ...............................................................................6

*Butler v. Target Corp.*
323 F. Supp. 2d 1052 (C.D. Cal. 2004) ............................................................................16

*C.B.C. Distribution & Marketing, Inc. v. Major League Baseball*
*Advanced Media, L.P.*, 505 F.3d 818, 823 (8th Cir. 2007)..............................2, 13, 14

*Capcom Co., Ltd. v. MKR Group, Inc.*
No. C 08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008)......................................6

*Carafano v. Metrosplash.com, Inc.*
339 F.3d 1119 (9th Cir. 2003) ..........................................................................................14

*CBS Interactive, Inc. v. National Football League Players Ass'n, Inc.*
2009 WL 1151982 (D. Minn. April 28, 2009).................................................................13, 14

*Cher v. Forum Int'l*
692 F.2d 634 (9th Cir. 1982) ..............................................................................................9

*City of Oakland v. Comcast Corp.*
No. C 06-5380, 2007 WL 518868 (N.D. Cal. Feb. 14, 2007) ..........................................21

*Cusano v. Klein*
264 F.3d 936 (9th Cir. 2001) ..............................................................................................7

*Daly v. Viacom, Inc.*
238 F. Supp. 2d 1118 (N.D.Cal. 2003) ..............................................................................8

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*
444 F. Supp. 2d 1012 (C.D. Cal. 2006), *aff'd* 547 F.3d 1095 (9th Cir. 2008)................................................................................................................8, 11

*Goldman v. Standard Ins. Co.*
341 F.3d 1023 (9th Cir. 2003) ..........................................................................................20

*Hanni v. Am. Airlines, Inc.*
2008 WL 5000237 (N.D. Cal. Nov. 21, 2008) ..................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

444705.05

*In re Silicon Graphics, Inc. Sec. Litig.*
    970 F. Supp. 746 (N.D. Cal. 1997) ...............................................................................3

*Interactive Digital Software Ass'n v. St. Louis County*
    329 F.3d 954 (8th Cir. 2003) ........................................................................................8

*Kent v. Universal Studios*
    Case No. CV 08-2704 GAF (C.D. Cal. Aug. 15. 2008) .................................................6

*MAI Systems Corp. v. UIPS*
    856 F. Supp. 538 (N.D. Cal. 1994) ..............................................................................16

*MGIC Indem. Corp. v. Weisman*
    803 F.2d 500 (9th Cir. 1986) .........................................................................................5

*Midler v. Ford Motor Co.*
    849 F.2d 460 (9th Cir. 1988) .......................................................................................15

*Motschenbacher v. R.J. Reynolds Tobacco Co.*
    498 F.2d 821 (9th Cir. 1974) .......................................................................................15

*New Kids on the Block v. News America Pub., Inc.*
    971 F.2d 302 (9th Cir. 1992) .......................................................................................17

*Newcombe v. Adolf Coors Co.*
    157 F.3d 686 (9th Cir. 1998) .......................................................................................15

*Parrino v. FHP Inc.,*
    146 F.3d 699 (9th Cir. 1998) .....................................................................................5, 6

*Perfect 10, Inc. v. CCBill, LLC*
    488 F.3d 1102 (9th Cir. 2007) .....................................................................................14

*Rogers v. Grimaldi*
    875 F.2d 994 (2d Cir. 1989) ........................................................................................15

*Romantics v. Activision Publ'g, Inc.*
    574 F. Supp. 2d 758 (E.D. Mich. 2008) ...............................................................8, 11, 15

*Roots Ready Made Garments v. Gap Inc.*
    No. C 07-03363 CRB, 2008 WL 239254 (N.D. Cal. Jan. 28, 2008) ..........................21

*Thomas v. Walt Disney Co.*
    No. C-07-4392 CW, 2008 WL 425647 (N.D. Cal. Feb. 14, 2008) ...............................6

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Counsel, Inc.*
    425 U.S. 748 (1976) .....................................................................................................15

*Video Software Dealers Ass'n v. Schwarzenegger*
    556 F. 3d 950 (9th Cir. 2009) ........................................................................................8

*Wendt v. Host Int'l, Inc.*
    125 F.3d 806 (9th Cir. 1997) .......................................................................................15

*White v. Samsung Elecs. Am., Inc.*
    971 F.2d 1395 (9th Cir. 1992) .....................................................................................15

*Woodrum v. Woodward County, Okl.*
    866 F.2d 1121 (9th Cir. 1989) .....................................................................................19

*Yeager v. Bowlin*
    Case No. 2:08-cv-00102 WBS JFM, 2008 WL 3289481 (E.D. Cal. Aug.
    6, 2008) ..........................................................................................................................7

iii

## State Cases

*Alch v. Superior Court*
122 Cal.App.4th 339 (2004) ............................................................20

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*
7 Cal. 4th 503 (1994) ..............................................................16, 19

*Boyle v. Anderson Fire Fighters Ass'n Local 1262, AFL-CIO*
497 N.E. 2d 1073 (Ind. Ct. App. 1986) ....................................19

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*
25 Cal. 4th 387 (2001) ................................................................9

*Day v. AT&T Corp.*
63 Cal. App. 4th 325 (1998) .....................................................16

*Dora v. Frontline Video Inc.*
15 Cal. App. 4th 536 (1993) .....................................................18

*Gionfriddo v. Major League Baseball*
94 Cal. App. 4th 400 (2001) .................................2, 12, 13, 14, 18

*Guglielmi v. Spelling-Goldberg Prods.*
25 Cal. 3d 860 (1979) .............................................................6, 9

*Hebrew Academy of San Francisco v. Goldman*
42 Cal. 4th 883 (2007) ...............................................................7

*Indianapolis Horse Patrol, Inc. v. Ward*
247 Ind. 519 (1966) .................................................................19

*Kirby v. Sega of America*
144 Cal. App. 4th 47 (2006) ...........................1, 8, 10, 12, 20

*Korea Supply Co. v. Lockheed Martin Corp.*
29 Cal. 4th 1134 .......................................................................20

*Lance Camper Mfg. Corp. v. Republic Indem. Co.*
44 Cal. App. 4th 194 (1996) .....................................................21

*Long v. Walt Disney Co.*
116 Cal. App. 4th 868 (2004) .....................................................7

*McKell v. Washington Mut., Inc.*
142 Cal. App. 4th 1457 (2006) .................................................21

*Montana v. San Jose Mercury News*
34 Cal. App. 4th 790 (1995) .......................................14, 15, 18

*Page v. Bakersfield Uniform & Towel Supply Co.*
239 Cal. App. 2d 762 (1966) ....................................................17

*Peterson v. Cellco P'ship*
164 Cal. App. 4th 1583 (2008) .................................................16

*Picton v. Anderson Union High Sch. Dist.*
50 Cal. App. 4th 726 (1996) ....................................................17

*Shively v. Bozanich*
31 Cal. 4th 1230 (2003) ..............................................................7

*Winter v. DC Comics*
30 Cal. 4th 881 (2003) ...............................1, 6, 9, 10, 12

444705.05

**Federal Statutes**

47 U.S.C. § 230(c)(1) ..................................................................14

Communications Decency Act of 1996 ("CDA") ............................14

**State Statutes**

Cal. Bus. & Prof. Code § 17200 .............................................1, 5, 16, 20

Cal. Bus. & Prof. Code § 17204 ...............................................16

Cal. Bus. & Prof. Code § 17208 ...............................................7

Cal. Bus. & Prof. Code § 18895.2 ............................................17

Cal. Bus. & Prof. Code § 18897.6 ............................................17

Cal. Bus. & Prof. Code § 18897.93 ..........................................17

Cal. Civ. Code § 3344.........................................................5, 17

Cal. Civ. Code § 3344(a) ......................................................14

Cal. Civ. Code § 3344(d) ........................................1, 12, 17, 18

Cal. Civ. Code § 3425.3........................................................7

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(6) .............................1, 5, 6, 8

**Treatises**

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 47, comment..............................15

**Constitutional Provisions**

Cal. Const., art. 1, § 2 ...........................................................8

United States Constitution, First Amendment ................................. *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3   "Video games are expressive works entitled to as much First Amendment protection as

4   the most profound literature." *Kirby v. Sega of America*, 144 Cal. App. 4th 47, 58 (2006).

5   Recognizing that publicity rights claims have the potential to stifle free expression, courts

6   regularly dismiss misappropriation claims that infringe upon this constitutional protection.  That

7   is the case here.  Because Plaintiff Sam Keller's claims would impermissibly intrude upon

8   Electronic Arts Inc.'s ("EA") First Amendment right to create, develop, and publish video

9   games, they must be dismissed.

10   Plaintiff, a former college football player, alleges—on behalf of himself and a purported

11   class of college football and basketball players—that EA improperly used college athletes'

12   likenesses in EA's *NCAA Football* and *NCAA Basketball / NCAA March Madness* video games.[1]

13   But even assuming these games include some protectable attribute of Plaintiff, under two distinct

14   lines of authority, the alleged use of such information is protected by the First Amendment and

15   the California Constitution.

16   First, an expressive work that incorporates an individual's likeness is constitutionally

17   protected against a right of publicity claim if the use is "transformative." *Winter v. DC Comics*,

18   30 Cal. 4th 881, 888 (2003).  The relevant inquiry is "whether the celebrity likeness is one of the

19   'raw materials' from which an original work is synthesized," in which case it is protected, "or

20   whether the depiction … of the celebrity is the very sum and substance of the work in question."

21   *Id.*  A review of Plaintiff's complaint and the accompanying editions of *NCAA Football* and

22   *NCAA Basketball / NCAA March Madness* demonstrate that the games are much more than a

23   "mere celebrity likeness[]."  As such, the games are transformative and protected by the First

24   Amendment.

25

---

26   [1]   Plaintiff alleges seven causes of action:  (1) Indiana statutory right of publicity against NCAA; (2) California statutory right of publicity claim against EA; (3) California common law

27   right of publicity against EA; (4) civil conspiracy against all defendants; (5) California Business & Profession Code section 17200 against EA; (6) breach of contract against NCAA; and

28   (7) unjust enrichment against EA and CLC.  EA moves to dismiss all the claims asserted against it and understands that NCAA and CLC are moving to dismiss the claims asserted against them.

444705.05

1    Second, and separately, courts repeatedly have held that the public's particular interest in

2  information about sports and athletes "far outweighs" the athletes' rights of publicity.

3  *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 415 (2001).  Information such as

4  athletes' names, likenesses, performance statistics, and biographical information—just the type

5  of information Plaintiff claims EA isn't allowed to incorporate in its works—"command[s] a

6  substantial public interest" and therefore "is a form of expression due substantial constitutional

7  protection." *Id.*  This is true even where such information is used in works such as sports

8  websites and fan-driven "fantasy" baseball games, which are far less expressive and

9  transformative than the video games at issue here.  *See id.*; *C.B.C. Distribution & Marketing, Inc.*

10  *v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818, 823 (8th Cir. 2007).

11    Aside from the paramount First Amendment issues at stake, Plaintiff's complaint must be

12  dismissed for the further separate and independent reason that it fails to allege any facts

13  demonstrating that he was injured, a necessary element of each claim.  The Supreme Court has

14  recently affirmed that a plaintiff may not rely on conclusory allegations or bare recitations of the

15  elements of his claims.  *See Ashcroft v. Iqbal*, 556 U.S. ---, 129 S.Ct. 1937, 1949-50 (2009).

16  Because Plaintiff alleges nothing more than empty conclusions regarding injury, all of his claims

17  fail and should be dismissed.

18    Plaintiff's individual causes of action fail for numerous additional reasons.  Plaintiff's

19  second cause of action alleging violation of the California statutory right of publicity is barred by

20  the statute's "public affairs" exception.  Courts have held that sports and information about

21  athletes fall within the "public affairs" category, thereby barring statutory right-of-publicity

22  claims involving such matters.  Plaintiff's allegations regarding the popularity of college sports

23  and EA's games demonstrate that his claims are barred by this defense.  *See* Compl. ¶¶ 4-6.

24  Plaintiff's fourth cause of action for civil conspiracy claim fails because there is no underlying

25  tort on which to base it, and because it is not supported by any factual allegations at all, but mere

26  legal conclusions "on information and belief."  Plaintiff's fifth cause of action for unfair

27  competition is entirely derivative and thus fails for the same reasons as his other claims.

28  Plaintiff's seventh cause of action for unjust enrichment is not recognized under California law

444705.05

1   and is barred by the existence of a contract covering the same subject matter.

2          For all these reasons, and others explained in more detail below, the Court should dismiss

3   all of the claims asserted against EA in the complaint, with prejudice.

4                    **II.      BACKGROUND**[2]

5          EA is a leading developer and publisher of computer and video games, including the

6   *NCAA Football* franchise and the *NCAA Basketball / NCAA March Madness* franchise.  Each

7   annual edition of *NCAA Football* is released no later than July of the previous year; for example,

8   *NCAA Football 06* was released in July 2005, and *NCAA Football 09* was released in July 2008.

9   Electronic Art Inc.'s Request for Judicial Notice ("RJN") ¶ 4.  Likewise, each annual edition of

10  *NCAA Basketball* (formerly titled *NCAA March Madness* until a switch in the game's name in

11  2008) is released no later than December of the previous year (with the exception of *NCAA*

12  *March Madness 07*, released in January 2007); again, for example, *NCAA March Madness 06*

13  was released in October 2005, and *NCAA Basketball 09* was released in November 2008.  *Id.*

14         These two game franchises simulate the excitement and challenge of college football and

15  college basketball by combining advanced computer and software engineering with artistic

16  expression.  As a review of the games demonstrates, the virtual world of the games is comprised

17  of originally designed locations, players, coaches, fans and other game elements.  *Id.* ¶¶ 1-3.

18  Players manipulate these elements through game controls, allowing a fully interactive, real-time

19  college sports experience, complete with television-quality images and realistic sounds.  *Id.*

20  Players can match more than a hundred teams against each other, control team strategy decisions

21  and individual athletes' movements, and tinker with such subtle details as the weather and crowd

22  noise.  *Id.*  The interactive environment also allows players to control teams for entire seasons or

23  manage the college program over a series of years, including "recruiting" in-game players from

24  high school and monitoring their academic performance off the field or court.  *Id.*

25  _____

26  [2]       For the purposes of this motion only, EA accepts as true the Complaint's factual
    allegations, except that EA does not accept the truth of legal conclusions or allegations that are
27  belied by information of which this Court may take judicial notice.  *See In re Silicon Graphics,*
    *Inc. Sec. Litig.*, 970 F. Supp. 746, 751-52 (N.D. Cal. 1997); EA's Request for Judicial Notice
28  ("RJN") filed herewith.

444705.05

1    As a review of the games demonstrates, these games are constructed from an array of

2    graphics, sounds and information.  A collection of characteristics such as height, weight, agility

3    and strength is assigned to a virtual player, represented in the game by an original graphic

4    created by EA.  *Id.*  These characteristics are displayed visually on certain games screens, but

5    also used by the game as parameters for that virtual player's performance.  *Id.*  The virtual player

6    is assigned to a team, clothed in a jersey and given a number—game elements all properly

7    licensed from the NCAA and its licensing arm, the Collegiate Licensing Company ("CLC").

8    Compl. ¶ 11 ("pursuant to a license with the CLC, the NCAA's licensing company, Electronic

9    Arts replicates team logos, uniforms, mascots, and even member school stadiums with almost

10   photographic realism").  Game players can customize virtual players and teams based on their

11   own preferences or accept the game's default settings.  RJN ¶¶ 1-3.  EA's games allow

12   competition against opponents controlled by the game itself, a person connected to the same

13   system, or a person connected over the Internet.  *Id.*

14       On May 5, 2009, Plaintiff Samuel Keller commenced this action in which he alleges that

15   EA, the NCAA and the CLC improperly use the "likenesses" of college athletes in the *NCAA*

16   *Football* and *NCAA Basketball / NCAA March Madness* games.  Compl. ¶ 1.  Plaintiff is a

17   former college football player.  *Id.* ¶ 3.  From 2003 to 2005, he played quarterback for Arizona

18   State University.  *Id.* ¶¶ 43-45.  In 2006, he transferred to the University of Nebraska, but sat out

19   the season under NCAA rules regulating player transfers.  *Id.* ¶ 46.  Plaintiff then played

20   quarterback for Nebraska in 2007, which marked the end of his collegiate football career.  *See id.*

21   ¶ 47.  As a condition of his eligibility for collegiate athletics, he agreed to be bound by the

22   NCAA's amateurism rules.  *Id.* ¶¶ 13-14.

23       Plaintiff concedes that the games themselves, as sold by EA, do not include players'

24   names or actual pictures.  *Id.* ¶ 34 (EA "omits … the real-life player's name on the jersey of his

25   electronic equivalent."); *id.* ¶ 2 (purported class is NCAA athletes whose "likenesses and distinct

26   appearances," not pictures, allegedly were used).  Nevertheless, Plaintiff has sued, on behalf of

27   himself and a purported class of college athletes, alleging the misuse of their "names and

28   likenesses."  *Id.* ¶ 72.  Keller asserts five causes of action against EA: (1) violation of his

4

444705.05

1    statutory rights of publicity under California Civil Code section 3344; (2) violation of his

2    California common law rights of publicity; (3) civil conspiracy; (4) violation of California

3    Business and Professions Code section 17200; and (5) unjust enrichment.  EA now moves to

4    dismiss all of the causes of action asserted against it.

### III.   ARGUMENT

**A.     The Issues Presented in this Motion Should be Decided at the Pleading Stage.**

     **1.     In Deciding A Rule 12(b)(6) Motion Involving an Expressive Work, the Court May Rely Upon Its Own Examination of the Work.**

9    A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's

10   claims.  Dismissal is warranted if no relief could be granted under any set of facts that could be

11   proved consistent with the allegations.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563

12   (2007).  A plaintiff must do more than merely raise the possibility that some set of facts might

13   support recovery; he must set forth factual allegations that "raise a right to relief above the

14   speculative level."  *Id.* at 555.  The Supreme Court recently affirmed these requirements,

15   explaining the two principles underlying *Twombly*.  "First, the tenet that a court must accept as

16   true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . .

17   Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."

18   *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

19   When ruling on a motion to dismiss, a court may consider not only the plaintiff's

20   allegations, but also material subject to judicial notice.  *MGIC Indem. Corp. v. Weisman*, 803

21   F.2d 500, 504 (9th Cir. 1986).  A court may consider "document[s] the authenticity of which

22   [are] not contested, and upon which plaintiff's complaint necessarily relies[,]" even if those

23   materials are not attached to the complaint.  *Parrino v. FHP Inc.*, 146 F.3d 699, 706 (9th Cir.

24   1998), *superseded by statute on other grounds*, *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d

25   676, 681 (9th Cir. 2006); *see also Barnett v. Evans*, No. C 06-0193 CW (PR), 2009 WL 799402,

26   at *4 (N.D. Cal. Mar. 24, 2009).

27   Consistent with these principles, courts deciding Rule 12(b)(6) motions regularly have

28   examined expressive works, even if not attached to the complaint, to determine whether they are

1   actionable.  For instance, in *Capcom Co., Ltd. v. MKR Group, Inc.*, No. C 08-0904 RS, 2008 WL

2   4661479 (N.D. Cal. Oct. 20, 2008), the court reviewed the allegedly infringing video game in

3   determining that the First Amendment barred plaintiff's Copyright and Lanham Act claims, and

4   granted the video game developer's motion to dismiss.  *Id.* at *13-14; *see also Thomas v. Walt*

5   *Disney Co.*, No. C-07-4392 CW, 2008 WL 425647, at *6 (N.D. Cal. Feb. 14, 2008) (dismissing

6   plaintiff's copyright claim with prejudice based upon an examination of the disputed movie);

7   *Kent v. Universal Studios*, Case No. CV 08-2704 GAF (SHx) (C.D. Cal. Aug. 15. 2008)

8   (granting Rule 12(b)(6) motion on First Amendment grounds after reviewing defendant's film)

9   (attached at Lauridsen Decl., Exh. A); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F.

10  Supp. 2d 962, 973 (C.D. Cal. 2007) (granting Rule 12(b)(6) motion after reviewing defendant's

11  television program to dismiss plaintiff's misappropriation claim); *cf. Guglielmi v. Spelling-*

12  *Goldberg Prods.*, 25 Cal. 3d 860, 872 (1979) (demurrer properly sustained based on the First

13  Amendment).

14          Here, Plaintiff's claims all arise from the alleged use of his and other college players'

15  "likeness" in EA's *NCAA Football* and *NCAA Basketball / NCAA March Madness* games.  *See,*

16  *e.g.*, Compl. ¶¶ 1, 11-12.  Thus, under *Parrino* and other authority, the Court can and should

17  consider the contents of the games in deciding this motion.  *See* RJN ¶¶ 1-3.

18          By doing so, the Court may resolve this lawsuit at the pleading stage, which is especially

19  appropriate because Plaintiff's claims target an expressive work.  The California Supreme Court

20  explained this point simply:  "because unnecessarily protracted litigation would have a chilling

21  effect upon the exercise of First Amendment rights, speedy resolution of cases involving free

22  speech is desirable." *Winter*, 30 Cal. 4th at 891.  To that end, the California Supreme Court

23  noted that misappropriation and related claims "can often [be] resolve[d] … as a matter of law

24  simply by reviewing the [defendant's] work in question…."  *Id.*  Critically, the Court instructed

25  that such claims should be decided at the pleading stage where the works are properly before the

26  court.  *Id.*  This is precisely the case here.

27          **2.      Only Games Released Within the Past 4 Years Are At Issue.**

28          The Complaint does not identify which annual editions *NCAA Football* and *NCAA*

---

6

444705.05

1    *Basketball / NCAA March Madness* allegedly misappropriated Plaintiff's likeness.  Nonetheless,

2    under the single publication rule, Plaintiff cannot state a claim arising from any edition of the

3    games released before May 5, 2005, four years before he filed this action.

4         Under the single-publication rule codified in Civil Code Section 3425.3, any tort cause of

5    action arising from a mass publication accrues on the date that the work is published, regardless

6    of when the plaintiff first discovered the allegedly wrongful conduct.  *See Shively v. Bozanich*,

7    31 Cal. 4th 1230, 1242-43 (2003); *Hebrew Academy of San Francisco v. Goldman*, 42 Cal. 4th

8    883, 887 (2007).  The rule applies to statutory and common law misappropriation claims and

9    ancillary state law claims.  *See, e.g., Cusano v. Klein*, 264 F.3d 936, 950 (9th Cir. 2001); *Yeager*

10   *v. Bowlin*, Case No. 2:08-cv-00102 WBS JFM, 2008 WL 3289481, at *4-5 (E.D. Cal. Aug. 6,

11   2008); *Long v. Walt Disney Co.*, 116 Cal. App. 4th 868, 873, 874 (2004)

12        Here, Plaintiff acknowledges that his claims arise from the mass media publication of

13   each game.  Specifically, Plaintiff alleges that EA publishes the *NCAA Football* and *NCAA*

14   *Basketball / NCAA March Madness* franchises at issue.  Compl. ¶ 11.  Accordingly, Plaintiff's

15   claims arising from each game edition accrued on that edition's release date.  Because the

16   longest statute of limitations applicable to Plaintiff's California claims is four years, *see* Cal.

17   Bus. & Prof. Code § 17208, the only versions of the games at issue are those released after

18   May 5, 2005, four years before he filed this action.  Those games are *NCAA Football 06*, *NCAA*

19   *Football 07*, *NCAA Football 08*, *NCAA Football 09*; and *NCAA March Madness 06*, *NCAA*

20   *March Madness 07*, *NCAA March Madness 08* and *NCAA Basketball 09*.  *See* RJN ¶ 4.  In

21   connection with EA's accompanying Request for Judicial Notice, EA has provided the Court

22   with a copy of each version of the games at issue for play on the PlayStation 2 console, a

23   PlayStation 2 game console, and controllers.

24   **B.    The First Amendment and the California Constitution Bar All Plaintiff's Claims.**

25        Even assuming for purposes of this motion that a virtual player in *NCAA Football* or

26   *NCAA Basketball / NCAA March Madness* embodies some protectable attribute of Plaintiff, his

27   claims are barred, in their entirety, by the First Amendment and the California Constitution.

28        It is settled that video games are constitutionally protected works under the First

7

444705.05

1   Amendment and California Constitution, article 1, section 2. *See, e.g., Video Software Dealers*

2   *Ass'n v. Schwarzenegger*, 556 F. 3d 950, 958 (9th Cir. 2009) ("video games are a form of

3   expression protected by the First Amendment"); *Kirby v. Sega of America, Inc.*, 144 Cal. App.

4   4th 47, 58 (2006) ("[v]ideo games are expressive works entitled to as much First Amendment

5   protection as the most profound literature"); *Interactive Digital Software Ass'n v. St. Louis*

6   *County*, 329 F.3d 954, 957 (8th Cir. 2003) ("[i]f the first amendment is versatile enough to

7   'shield [the] painting of Jackson Pollock, music of Arnold Schoenberg, or Jabberwocky verse of

8   Lewis Carroll,'" there is "no reason why the pictures, graphic design, concept art, sounds, music,

9   stories and narrative present in video games are not entitled to a similar protection") (citations

10  omitted).

11       The First Amendment's protection is not limited to select games with complex story

12  lines, scripts, and dialogue. *Romantics v. Activision Publ'g, Inc.*, 574 F. Supp. 2d 758, 765 (E.D.

13  Mich. 2008). Instead, the critical issue is whether the games have independent creative elements.

14  *Id.* In *Romantics*, for instance, the court considered whether *Guitar Hero*—which allows players

15  to pretend they are in a rock band—was entitled to First Amendment protection. *Id* at 766. The

16  Court easily concluded that the game was an expressive work because it "allow[ed] players to

17  customize their game play experience, contain[ed] large amounts of original artwork, and

18  require[d] complex synchronization so that the audio and visual elements of the [g]ame line up

19  with a player's manipulation of the controller." *Id.*; *see also E.S.S. Entm't 2000, Inc. v. Rock*

20  *Star Videos, Inc.*, 444 F. Supp. 2d 1012, 1039 (C.D. Cal. 2006), *aff'd* 547 F.3d 1095 (9th Cir.

21  2008) (holding that video game that "features three virtual cities, each of which contains

22  hundreds of interactive locations created by animated graphics[,] incorporates a narrative, and

23  offers an array of musical soundtracks . . . clearly qualifies as an 'artistic work' entitled to First

24  Amendment protection"). *See also Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D.Cal.

25  2003) (granting Rule 12(b)(6) motion on misappropriation claims because television program

26  that allegedly used plaintiff's photograph and likeness was expressive work protected by First

27  Amendment).

28       Under two separate and independent lines of authority, Plaintiff's claims are barred by

8

444705.05

1  the First Amendment and the California Constitution.

2  **1.    The First Amendment and California Constitution Defeat Plaintiff's Misappropriation Claims Because Any Use is Transformative.**

3

4      The California Supreme Court has cautioned that "[t]he right of publicity has a potential

5  for frustrating" constitutionally protected expression. *Comedy III Prods., Inc. v. Gary Saderup,*

6  *Inc.*, 25 Cal. 4th 387, 397 (2001) (internal quotations omitted). To protect expressive works, the

7  Court "has subjected the 'right of publicity' under California law to a narrowing interpretation

8  which accords with First Amendment values." *Cher v. Forum Int'l*, 692 F.2d 634, 638 (9th Cir.

9  1982). In *Guglielmi*, Justice Bird emphasized that these protections apply to *all* expressive

10 works, including "entertainment," "works of fiction," "distracting tales for amusement," and

11 "motion picture[s]." 25 Cal. 3d at 867-868 (Bird, J. concurring) (affirming dismissal of right of

12 publicity claim that challenged inclusion of a person's name and likeness in a motion picture).

13     Of particular note here, the California Supreme Court has made clear that the "creative

14 appropriation" of the images of athletes and other celebrities is an important avenue of creative

15 expression:

16     Entertainment and sports celebrities are the leading players in our Public Drama.
       We tell tales, both tall and cautionary, about them. We monitor their comings and
17     goings, their missteps and heartbreaks. We copy their mannerisms, their styles,
       their modes of conversation and of consumption. . . . Their images are thus
18     important expressive and communicative resources: the peculiar, yet familiar
       idiom in which we conduct a fair portion of our cultural business and everyday
19     conversation.

20 *Comedy III*, 25 Cal. 4th at 397 (citations omitted).

21     With this in mind, the California Supreme Court repeatedly has held that as long as an

22 expressive work is "transformative," the protection of free speech under the U.S. and California

23 Constitutions "outweighs whatever interest the state may have in enforcing the right of

24 publicity." *Comedy III*, 25 Cal. 4th 405. In determining whether a work is "transformative," the

25 inquiry "is whether the celebrity likeness is one of the 'raw materials' from which an original

26 work is synthesized, or whether the depiction or imitation of the celebrity is the very sum and

27 substance of the work in question." *Id.* at 406; *accord Winter*, 30 Cal. 4th at 888. "[I]n other

28 words," a court must evaluate whether the *work* "containing the celebrity's image is so

9

444705.05

1    transformed that it has become primarily the defendant's own expression rather than the

2    celebrity's likeness." *Id*.

3         Critically, the focus is *not* whether the plaintiff's likeness within the work has been

4    transformed physically, but whether the work *as a whole* is transformative—*i.e.*, whether it

5    "contain[s] significant creative elements that transform [it] into something more than mere

6    celebrity likenesses." *Winter*, 30 Cal. 4th at 881. To underscore the breadth of this protection,

7    the California Supreme Court in *Winter* pointed out that transformative works "can take many

8    forms, from factual reporting to fictionalized portrayal, from heavyhanded lampooning to subtle

9    social criticism." *Id.* Turning to the defendants' comic books, which featured supporting

10   characters who were "less than subtle evocations" of the plaintiffs, the *Winter* Court declared

11   that "[a]pplication of the test to this case is not difficult." *Id.* at 890. Because the characters

12   based on the plaintiffs were "merely part of the raw materials from which the comic books were

13   synthesized" and were part of "*a larger story*, which is itself quite expressive," the Court held

14   that First Amendment defeated the plaintiffs' misappropriation claims. *Id.* (emphasis added).

15        Three years later, a California Court of Appeal applied the "transformative" test to hold

16   that a video game was protected expression, barring the plaintiff's misappropriation claim.

17   *Kirby*, 144 Cal. App. 4th at 50. There, a singer claimed that the defendant misappropriated her

18   likeness to create a character in a video game, and asserted claims for deprivation of statutory

19   and common law rights of publicity, violation of the Lanham Act, unfair competition,

20   interference with prospective business advantage, and unjust enrichment. *Id* at 53. While the

21   court accepted that the character's facial features, clothing, and hair style were reminiscent of the

22   plaintiff, the court emphasized that she was only one element of a complex video game. *Id.* at

23   56. Because these elements of the plaintiff's persona were only a part of the raw material from

24   which the game was synthesized, and were not the game's "very sum and substance," the court

25   had no difficulty concluding that the defendant's use of the plaintiff's persona was

26   transformative, and thus protected by the First Amendment "and the even greater speech

27   protections afforded by the California Constitution." *Id.* at 57. All of the plaintiff's claims,

28   therefore, failed as a matter of law. *Id.* at 61.

1    The same is true here.  EA's *NCAA Football* and *NCAA Basketball* / *NCAA March*

2  *Madness* games have all the elements—and more—that the courts in *Winter, Kirby, E.S.S.,* and

3  *Romantics* found to be expressive and transformative.  As a review of the games demonstrates,

4  these works are extraordinarily complex feats of computer engineering combined with artistic

5  expression, comprised of originally designed virtual locations, players, coaches, fans and other

6  game elements.  *See* RJN ¶¶ 1-3.  The games feature original graphics, videos, sound, music and

7  game scenarios, all keyed to the players' manipulation of the game controls and other input.  *Id.*

8  These elements are synchronized to deliver television-quality images and realistic sounds, such

9  as the crunch of football pads, the swish of basketball nets, licensed fight songs for many of the

10  college teams, and play-by-play commentary describing the action.  *Id.*  Players can match more

11  than a hundred teams against each other, control team strategy decisions and individual athlete's

12  movements in real time, and tinker with such subtle details as the weather and crowd noise.  *Id.*

13  Game players can take control of a team as it exists in EA's games or customize it based on their

14  own preferences, altering the characteristics of individual players.  *Id.*  The interactive

15  environment extends beyond single games, allowing players to control teams for entire seasons

16  or manage the college program over a series of years, including recruiting virtual players from

17  high school and monitoring their academic performance off the field or court.  *Id.*  EA's games

18  allow competition against opponents controlled by the game itself, a person connected to the

19  same system, or a person connected over the Internet.  *Id.*  As the above game content and

20  features clearly demonstrate, the creativity and complexity of *NCAA Football* and *NCAA*

21  *Basketball* / *NCAA March Madness* far exceeds that of other works found to be transformative.

22    Moreover, the information about which Plaintiff complains represents only a small part

23  of the many raw materials that make up the games.  Characteristics such as height, weight,

24  agility and strength are assigned to a virtual player, represented in the game by an original

25  graphic created by EA.  *Id.*  As a review of the games demonstrates, the player's characteristics

26  are displayed visually on certain games screens, but also used by the game as parameters for that

27  virtual player's performance.  *Id.*  The player is assigned to a team, clothed in a jersey and given

28  a number—game elements Plaintiff admits are all properly licensed from the NCAA and CLC.

1    Compl. ¶ 11.  The virtual player can be used in a single game simulation or in the more robust

2    "Dynasty" and "Campus Legend" game modes.  RJN ¶¶ 1-3.  In the latter two game modes, the

3    virtual player's characteristics evolve over multiple games and seasons simulated by EA's

4    advanced programming.  *Id.*  Virtual players grow stronger, pass more accurately, rebound

5    better, or improve their GPAs based upon choices made by the game player.  *Id.*

6              Consequently, like the comic books in *Winter* and the video game in *Kirby*, *NCAA*

7    *Football* and *NCAA Basketball / NCAA March Madness* are expressive, transformative works

8    protected by the First Amendment and California Constitution.  Therefore, Plaintiff's

9    misappropriation claims fail as a matter of law.

10          **2.    The First Amendment and the California Constitution Bar Plaintiff's Claims
                    Because of the Public's Strong Interest in Information About Sports and
11                  Athletes.**

12             Separate from the "transformative" test, courts repeatedly have held that the public's

13   interest in information about sports and athletes affords full First Amendment protection to a

14   work that includes information about athletes—including their names, statistics and biographical

15   information (exactly the information Plaintiff complains about here)—and bars misappropriation

16   claims based on such use.  Under this second line of authority that has developed independently

17   of the "transformative" test, Plaintiff's claims are barred by the First Amendment and the

18   California Constitution.[3]

19             In *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400 (2001), the defendant

20   Major League Baseball used a wide array of material in printed programs, videos and its website

21   without permission from the plaintiff baseball players, including "names of players included on

22   All-Star and World Series rosters; descriptions of memorable performances from former games

23   … [and] photographs and video clips taken of plaintiffs when they were playing the game

24   themselves."  *Id.* at 410.  In addressing the plaintiffs' common law misappropriation claim, the

---

25   [3]    This line of authority complements, but is independent of, the "public affairs" exemption
26   from statutory right-of-publicity claim discussed below in Section III.D.  Cal. Civ. Code
     § 3344(d).  The "public affairs" exemption applies only to statutory claims, whereas the First
27   Amendment defense applies to both statutory and common law publicity rights claims.  *See, e.g.*,
     *Gionfriddo*, 94 Cal. App. 4th at 409.

28

444705.05

1    court held that "[t]he recitation and discussion of factual data concerning the athletic

2    performance of these plaintiffs command a substantial public interest, and, therefore, is a form of

3    expression due substantial constitutional protection," *id.* at 411, and concluded that "the public

4    interest favoring the free dissemination of information regarding baseball's history far outweighs

5    any proprietary interests at stake," *id.* at 415.  The court held that the plaintiffs' claims for

6    violation of their common-law and statutory rights of publicity failed as a matter of law.  *Id.*

7          In *C.B.C. Distribution & Marketing, Inc. v. Major League Baseball Advanced Media,*

8    *L.P.*, 505 F.3d 818 (8th Cir. 2007), plaintiff C.B.C. offered "fantasy" online baseball games

9    incorporating the actual names, nicknames, likenesses, signatures, pictures, playing records, and

10   biographical data of major league baseball players.  *Id.* at 823.  C.B.C. initially had licensed this

11   information from the Major League Baseball Players' Association.  But when the Players'

12   Association declined to renew the license, C.B.C. sought a judicial declaration of its right to use

13   the players' information without a license, arguing that it had a First Amendment right to use the

14   players' information without a license.  *Id.* at 821.  The Eighth Circuit agreed with plaintiff,

15   affirming that the First Amendment protected the plaintiff's right to use athletes' names,

16   statistics and biographical information in an online game.  As the court observed, "the

17   information used in C.B.C.'s fantasy baseball games is all readily available in the public domain,

18   and it would be strange law that a person would not have a first amendment right to use

19   information that is available to everyone."  *Id.* at 823.  Noting that "fantasy baseball games

20   depend on the inclusion of all players and thus cannot create a false impression that some

21   particular player with 'star power' is endorsing [the plaintiff's] products," the court held that the

22   First Amendment "trump[ed]" the players' right of publicity.  *Id.* at 822-824.  *See also CBS*

23   *Interactive, Inc. v. National Football League Players Ass'n, Inc.*, 2009 WL 1151982, at *19

24   (D. Minn. April 28, 2009) ("[L]ike in *C.B.C. Distribution*, the package of information used here

25   [names, player profiles, up-to-date statistics, injury reports, participant blogs, pictures, images,

26   ////

27   ////

28   ////

444705.05

1    and biographical information] comes within the ambit of the First Amendment").[4]

2    And in *Montana v. San Jose Mercury News*, 34 Cal. App. 4th 790 (1995), the court held

3    that the First Amendment protected the defendant's use of football player Joe Montana's likeness

4    on posters. "When Joe Montana led his team to four Super Bowl championships in a single

5    decade, it was clearly a newsworthy event. Posters portraying the 49ers' victories are ... 'a form

6    of public interest presentation to which protection must be extended.'" *Id.* at 795 (citations

7    omitted). The public has an abiding interest in professional football, so Montana's statutory and

8    common law claims for misappropriation of his name and likeness were barred by the First

9    Amendment. *See id.* at 796.

10   Taking Plaintiff's allegations as true, it follows that EA's alleged inclusion in its games

11   of players' likenesses, statistics and biographical data enjoys the same free-speech protections of

12   the First Amendment and California Constitution and bars Plaintiff's claims.[5]  Plaintiff

13   acknowledges the vast popularity of NCAA athletics by highlighting their successes and interest,

14   *see, e.g.*, Compl. ¶¶ 5, 11, and confirms that college football and basketball are "closely followed

15   by a large segment of the public." *C.B.S. Interactive*, 2009 WL 1151982, at *21. This factual,

16   public-domain information about college athletes commands a substantial public interest, just as

17   such information about profession athletes does. *See C.B.C.*, 505 F.3d at 823-24; *Gionfriddo*, 94

18

19   [4]    Significantly, CBS currently offers for college football the same online fantasy sports
20   game that was found to be protected by the First Amendment in the professional context,
     including all the same types of statistics, biographical information, and individual college
     players' names. *See* RJN ¶ 6.

21   [5]    While the Complaint acknowledges that the games do not include the names of players, it
22   alleges that consumers have the ability to add to the games (post-purchase) the names from
     college team rosters which consumers may download from unaffiliated third-party websites. *See*
23   Compl. ¶¶ 1, 35 – 39. To the extent that these allegations seek to impose liability on EA based
     on consumer's uses of roster names obtained from third parties, they fail for at least three
24   reasons. First, EA did not engage in the alleged misappropriation, as the Complaint concedes.
     *See* Cal. Civil Code § 3344(a) (requiring the *defendant's use*). Second, the theory would be
25   barred by the First Amendment, *see* Section III.B.1 above. Third, to the extent they seek to
     impose liability for internet-based conduct, such as consumers' use of EA Locker, they are
26   barred by the Communications Decency Act of 1996 ("CDA"), which provides that "[n]o
     provider or user of an interactive computer service shall be treated as the publisher or speaker of
27   any information provided by another information content provider." 47 U.S.C. § 230(c)(1). This
     immunity extends to publicity rights claims. *See e.g. Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d
28   1102, 1119 n.5 (9th Cir. 2007); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1121-23 (9th
     Cir. 2003).

444705.05

1   Cal. App. 4th at 411; *Montana*, 34 Cal. App. 4th at 794-96.

2          If a poster of Joe Montana, a program from a baseball game, and a "fantasy sports" game

3   that includes nothing more than players' names, photos, biographical information and statistics

4   are all protected by the First Amendment against publicity rights claims, then so too must *NCAA*

5   *Football* and *NCAA Basketball / NCAA March Madness*, which include a diverse array of

6   additional creative and expressive features that don't exist in these other works.

7          **3.      Meritorious Misappropriation Claims Target Advertisements.**

8          In contrast to the allegations here, successful misappropriation claims generally arise

9   from the use of the plaintiff's name or likeness in advertising or merchandising of non-

10  transformative works.[6]  The line of authority restricting the use of a celebrity's likeness in

11  commercial advertising "concerns only the market which exists in our society for the

12  exploitation of celebrity to sell products, and ... attempt[s] to take a free ride on a celebrity's

13  celebrity value." *White*, 971 F.2d at 1401 n.3.  This is not the case here.  *NCAA Football* and

14  *NCAA Basketball / NCAA March Madness* are not advertisements or commercial speech—*i.e.*

15  "speech that merely proposes a commercial transaction." *Va. State Bd. of Pharmacy v. Va.*

16  *Citizens Consumer Counsel, Inc.*, 425 U.S. 748, 762 (1976).  This reasoning is consistent with a

17  test used in some other jurisdictions, known as the "relatedness" test, which affords First

18  Amendment protection to the use of a person's name or likeness as long as the use is "related" to

19  the content of the work and is not "simply a disguised commercial advertisement for the sale of

20  goods or services." *Romantics*, 574 F. Supp. 2d at 766; *see also Rogers v. Grimaldi*, 875 F.2d

21  994, 1004 (2d Cir. 1989); RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 47,

22

23  _____

24  [6]      *See, e.g., Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998) (use of
    pitcher's image in beer advertisement); *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 809 (9th Cir.
25  1997) (use of animatronic figures of television characters in airport bars); *Abdul-Jabbar v. Gen.
    Motors Corp.*, 85 F.3d 407, 409 (9th Cir. 1996) (use of basketball star's former name in
26  television car commercial); *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1396 (9th Cir.
    1992) (use of game-show hostess's identity in advertisements for electronic products); *Midler v.
27  Ford Motor Co.*, 849 F.2d 460, 461-62 (9th Cir. 1988) (use of sound-alike of famous singer in
    car commercial featuring singer's hit song); *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498
28  F.2d 821, 822 (9th Cir. 1974) (use of famous race car driver's distinctive car in cigarette
    commercial).

444705.05

1   comment c.[7]  Here, Plaintiff rightly does not claim that EA's alleged use of his likeness is

2   "wholly unrelated" to the content of the games or a disguised commercial advertisement or

3   endorsement.

4   **C.    All of Plaintiff's Claims Fail Because He Has Not Alleged A Recoverable Injury.**

5           All of Plaintiff's claims also fail because he does not allege the necessary element of

6   injury.  The standing requirements of Article III and the elements of each of Plaintiff's claims

7   require him to allege facts showing that he was injured.[8]  Conclusory allegations of injury are

8   insufficient to avoid a motion to dismiss.  *See, e.g., Barnett*, 2009 WL 799402, at *10-11

9   (dismissing complaint for failure to adequately allege injury).  "Threadbare recitals of the

10  elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*,

11  129 S.Ct. at 1949.  The same principle applies to claims under Section 17200 and for unjust

12  enrichment, although they are not damages claims.  Even before Proposition 64 added the

13  requirement of alleging injury in fact and loss of money or property to state a claim under

14  Section 17200, a plaintiff was required to allege that he had "given up something which he or she

15  was entitled to keep" in order to claim monetary recovery.  *Day v. AT&T Corp.*, 63 Cal. App. 4th

16  325, 340 (1998).  Likewise, even if an independent cause of action for unjust enrichment existed

17  under California law—as shown below, it does not—a plaintiff cannot avoid the basic

18  requirements of pleading and proving actual injury by styling his claim as one for unjust

19  enrichment.  *See Peterson*, 164 Cal. App. 4th at 1593-95.

20          Here, Plaintiff's only allegations of injury are entirely conclusory.   The sum total of

21  Plaintiff's injury allegations are: "Plaintiff and class members have been injured," Compl. ¶¶ 74,

22  77, "Plaintiff and class members have been damaged as described above," *id.* ¶ 81, "Electronic

23  Arts' conduct has further caused and is causing damage and irreparable injury to Plaintiff and

24

---

25  [7]      For the purposes of this motion, EA will assume that California law applies.

26  [8]      *See, e.g., MAI Systems Corp. v. UIPS*, 856 F. Supp. 538, 540-42 (N.D. Cal. 1994)
    (plaintiff must allege injury to have standing); *Butler v. Target Corp.*, 323 F. Supp. 2d 1052,
    1056 (C.D. Cal. 2004) (injury is an element of common-law and statutory right-of-publicity
27  claims); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994) (same for
    civil conspiracy); Cal. Bus. & Prof. Code § 17204 (same for § 17200 claim); *Peterson v. Cellco
28  P'ship*, 164 Cal. App. 4th 1583, 1593-95 (2008) (same for unjust enrichment).

EA'S MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. CV-09-1967-CW

444705.05

1  class members," *id.* ¶ 84, and "[t]o the detriment of Plaintiff and class members, Defendants

2  Electronic Arts and CLC have been and continue to be unjustly enriched as a result of the

3  unlawful and/or wrongful conduct alleged within," *id.* ¶ 90.  Such a "formulaic recitation" of the

4  necessary element of injury is insufficient to state a claim.  *Twombly*, 550 U.S. at 555.

5        Even if the Court were to extrapolate from Plaintiff's other allegations, Plaintiff has not

6  "nudged [his] claims [of injury] across the line from conceivable to plausible," *id.* at 570,

7  because EA was—and is—legally barred from providing college athletes the compensation

8  Plaintiff demands.  California's Miller-Ayala Act makes it a misdemeanor for anyone, other than

9  attorneys and other exempted persons not relevant here, to provide "remuneration for any value

10  or utility that" a student athlete "may have because of publicity, reputation, fame, or following

11  obtained because of athletic ability or performance."  Cal. Bus & Prof Code §§ 18895.2, 18897.6

12  & 18897.93.  Courts will not recognize damage claims premised on allegations that parties

13  would or should have entered into an unlawful contract.  *See, e.g., Page v. Bakersfield Uniform*

14  *& Towel Supply Co.*, 239 Cal. App. 2d 762, 773 (1966) ("It is a wrongful and improper practice

15  to seek damages dependent upon a violation of the law."); *Picton v. Anderson Union High Sch.*

16  *Dist.*, 50 Cal. App. 4th 726, 730 (1996) (illegal contracts cannot be enforced).  In other words, an

17  opportunity to replead would not cure the defect, because California law bars the conduct

18  Plaintiff now claims EA should have undertaken.

19        Because Plaintiff offers nothing beyond bare legal conclusions to show that he was

20  injured, the Court should dismiss all of Plaintiff's claims against EA with prejudice.

21  **D.**    **Plaintiff's California Statutory Misappropriation Claim is Barred by the Statute's "Public Affairs" Exemption.**

22

23        Plaintiff's second cause of action for alleged violation of his publicity rights under

24  California Civil Code Section 3344 also fails because the statute expressly exempts from liability

25  the "use of a name . . . or likeness in connection with any . . . public affairs, or sports broadcast

26  or account."  Cal. Civ. Code § 3344(d).  This exemption affords works *even broader protection*

27  against statutory misappropriation than the First Amendment does.  *New Kids on the Block v.*

28  *News America Pub., Inc.*, 971 F.2d 302, 310 n.10 (9th Cir. 1992) ("the section 3344(d) defense is

1    not coextensive with the First Amendment. Rather, it is designed to avoid First Amendment

2    questions in the area of misappropriation by providing extra breathing space for the use of a

3    person's name in connection with matters of public interest.").

4         EA's alleged inclusion of Plaintiff's likeness meets the statutory definition of "in

5    connection with . . . public affairs." Cal. Civil Code § 3344(d). Courts repeatedly have held that

6    expressive works related to a variety of sports are "in connection with … public affairs," and in

7    circumstances less compelling than here. In *Dora v. Frontline Video Inc.*, 15 Cal. App. 4th 536

8    (1993), for example, the court held that the "public affairs" exception applied to surfing, which

9    "has created a life style that influences speech, behavior, dress, and entertainment, among other

10   things. A phenomenon of such scope has an economic impact, because it affects purchases,

11   travel, and the housing market. Surfing has also had a significant influence on the popular

12   culture, and in that way touches many people." *Id.* at 546. In *Montana*, the court held that the

13   use of Joe Montana's likeness also fell within the Section 3344(d) "public affairs" exception,

14   finding that "the same public interest considerations applicable to surfing apply with equal force

15   to professional football." *Montana*, 34 Cal. App. 4th at 796. And the court in *Gionfiddo* reached

16   the same conclusion with respect to baseball, noting that "[b]aseball, not surfing, is, after all, 'the

17   national pastime.'" *Gionfriddo*, 94 Cal. App. 4th at 416.

18        College football and basketball are of equal interest to the public as professional football

19   and baseball—let alone surfing. Plaintiff concedes as much, alleging that the NCAA "generates

20   hundreds of millions in royalties, broadcast rights and other licensing fees each year." Compl.

21   ¶ 5. Likewise, Plaintiff alleges that "[c]onsumers demand that these [video game] matches

22   simulate actual college matches in the most realistic manner possible," *id.* ¶ 11, which simply

23   underscores the intensity of public interest in college sports.

24        As *Dora*, *Montana* and *Gionfriddo* recognize, "public affairs" includes much more than

25   just traditional news broadcasts, and extends to works—whether informative, entertaining, or

26   both—that relate to "popular culture" and to "real-life occurrences." *Dora*, 15 Cal. App. 4th at

27   545-46. If a film about surfing, a poster of Joe Montana, and a program from a baseball game

28   are exempt under Section 3344(d), then so, too, are *NCAA Football* and *NCAA Basketball* /

---

18

1  *March Madness*—games about college football and college basketball.  Plaintiff's California

2  statutory misappropriation claim fails for this independent reason.

3  **E.     Plaintiff's Civil Conspiracy Claim Fails Because There is No Underlying Tort.**

4       Plaintiff lacks an underlying tort upon which to base his fourth cause of action for civil

5  conspiracy.  "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on

6  persons who, although not actually committing a tort themselves, share with the immediate

7  tortfeasors a common plan or design in its perpetration."  *Applied Equip. Corp. v. Litton Saudi*

8  *Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994).[9]  Because each of Keller's first three causes of action

9  for misappropriation are barred by the First Amendment and fail for numerous additional

10  reasons,[10] his fourth cause of action for civil conspiracy has no underlying tort and, therefore,

11  fails.[11]

12       Furthermore, "allegations of conspiracy must be supported by material facts, not merely

13  conclusory statements."  *Woodrum v. Woodward County, Okl.*, 866 F.2d 1121, 1126 (9th Cir.

14  1989) (citation omitted).  Keller alleges no facts, at all, to support his conspiracy claim and

15  nudge it pass the theoretical to the plausible.  *Twombly*, 550 U.S. at 570.  Instead, the Complaint

16  does that which the Supreme Court has admonished against—merely reciting the legal elements

17  of the claim and offering no facts to support it.  *See* Compl. ¶ 79 (on "information and belief,"

18  "Defendants, and each of them, have conspired to use class members' likenesses without

19  permission….").  For this independent reason, his conspiracy claim fail to satisfy basic pleading

20  _____

21  [9]     To the extent that Indiana law applies to the conspiracy claim, Indiana law is in accord
    with California law.  Under Indiana law "there is no cause of action for conspiracy as such.  The
22  cause of action is for damage resulting from a conspiracy."  *Indianapolis Horse Patrol, Inc. v.*
    *Ward*, 247 Ind. 519, 522 (1966).  Plaintiff must show that there was a conspiracy to achieve
23  some unlawful purpose or a lawful purpose through unlawful means.  *Id.*  "In other words,
    allegations of a civil conspiracy are just another way of asserting concerted action in the
24  commission of a tort."  *Boyle v. Anderson Fire Fighters Ass'n Local 1262, AFL-CIO*, 497 N.E.
    2d 1073, 1079 (Ind. Ct. App. 1986).

25  [10]    The first cause of action against the NCAA for deprivation of rights of publicity under
    Indiana law fails for the reasons stated in the NCAA's Motion to Dismiss.

26  [11]    The remaining fifth through seventh causes of action cannot form the basis of Plaintiff's
    fourth cause of action for civil conspiracy.  There is no civil conspiracy for a breach of contract.
27  *Hanni v. Am. Airlines, Inc.*, 2008 WL 5000237, at *5 (N.D. Cal. Nov. 21, 2008).  And the
    California unfair competition and purported unjust enrichment claims are not stand-alone torts,
28  but, like the civil conspiracy claim, require a separate underlying tort.

444705.05

1   requirements and should be dismissed. *See Iqbal*, 129 S.Ct. at 1949.

2   **F.**   **Plaintiff's Section 17200 Fails Because It Lacks a Predicate Violation and Seeks an Unavailable Remedy.**

3

4       As with his civil conspiracy claim, Plaintiff lacks an underlying wrong on which his

5   unfair competition claim may stand. Section 17200 "borrows violations of other laws and treats

6   them as unlawful practices that the unfair competition law makes independently actionable."

  *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003) (internal quotations and

7   citations omitted). In this manner, an unfair competition claim "ride[s] the coattails" of the

8   plaintiff's primary claims. *Kirby*, 144 Cal. App. 4th at 57 n.3. Here, there are no coattails to

9   ride. Because Plaintiff's unfair competition is derivative of his misappropriation and civil

10   conspiracy claims against EA, it fails for the same reasons they do.

11       Separately, Plaintiff's Section 17200 claim fails, because he improperly seeks to obtain

12   monetary relief. As part of his Section 17200 claim, Plaintiff seeks disgorgement of EA's

13   "profits obtained from the utilization of Plaintiff and class members names and likeness."

14   Compl. ¶ 84. However, "nonrestitutionary disgorgement of profits is not an available remedy in

15   an individual action under the UCL." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th

16   1134, 1152; *see also Alch v. Superior Court*, 122 Cal.App.4th 339, 408 (2004) (denying a UCL

17   class action claim for non-restitutionary back-pay). Plaintiff alleges no facts—because he

18   cannot—showing that disgorgement of EA's profits would be restitutionary, "restor[ing] the

19   status quo by returning to plaintiffs funds in which he or she has an ownership interest." *Korea*

20   *Supply Co.*, 29 Cal. 4th at 1149. To the contrary, plaintiff has no ownership interest in any of

21   EA's funds and cannot point to a now-disrupted status quo in which he legally possessed the

22   funds. Plaintiff does not allege that he has a vested interest in EA's profits, nor even an

23   attenuated expectancy. *See id.* at 1149-50. Accordingly, if the Court finds that Plaintiff has

24   stated a Section 17200 claim at all—which he has not—the only available relief is an injunction.

25   **G.**   **Plaintiff's Unjust Enrichment Claim Fails Because There is No Such Claim Under California Law and There Exists an Express Contract Covering the Same Subject.**

26

27       Finally, Plaintiff's unjust enrichment claim fails as a matter of law for two additional

28   reasons.

444705.05

1   First, no claim for unjust enrichment exists under California law absent independent

2   grounds for imposing an implied contract or constructive trust on the defendant.  As one Court of

3   Appeal recently held, under California law, "[t]here is no cause of action for unjust enrichment.

4   Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or

5   imposition of a constructive trust." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457,

6   1490 (2006); *accord Roots Ready Made Garments v. Gap Inc.*, No. C 07-03363 CRB, 2008 WL

7   239254, at *8 (N.D. Cal. Jan. 28, 2008) (dismissing unjust enrichment claim with prejudice).

8   Plaintiff has neither alleged that an implied contract exists between the parties nor that a

9   constructive trust would be appropriate.  Thus, Plaintiff fails to state a claim for unjust

10   enrichment because California law does not recognize a claim based on bare allegations that

11   Defendants have "unjustly benefited." *See id.*

12   Second, to the extent that a limited claim for unjust enrichment is recognized under

13   California law, it is well established that such a claim does fail where there exists "a valid

14   express contract covering the same subject matter." *Lance Camper Mfg. Corp. v. Republic*

15   *Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996); *accord City of Oakland v. Comcast Corp.*,

16   No. C 06-5380, 2007 WL 518868, *4-5 (N.D. Cal. Feb. 14, 2007).  This rule operates to bar

17   unjust enrichment claims regardless of whether or not the contract at issue is between the

18   plaintiff and a defendant. *See, e.g., 4 Hour Wireless v. Smith*, 01 Civ 9133, 2002 U.S. Dist.

19   LEXIS 22680, at *1-2 (S.D.N.Y. Nov. 22, 2002).  Here, Plaintiff alleges that he and other

20   players entered into contracts with defendant NCAA, which "impose specified duties on

21   Defendant NCAA," including a purported duty not to permit EA "to utilize players' names and

22   likenesses." Compl. ¶¶ 86-87.  Because Plaintiff's contract with the NCAA, by Plaintiff's own

23   allegations, covers the same subject matter as his unjust enrichment claim, that claim must fail as

24   a matter of law. *See Lance Camper*, 44 Cal. App. 4th at 203.  It should be dismissed with

25   prejudice.

26   ////

27   ////

28   ////

1

## IV.   CONCLUSION

2        For all of the foregoing reasons, the Court should dismiss Plaintiff's complaint against

3    EA in its entirety, with prejudice.

4

5    Dated:  July 29, 2008                                    KEKER & VAN NEST LLP

6

7                                                    By: */s/ Robert A. Van Nest*

8                                                         ROBERT A. VAN NEST
                                                         Attorneys for Defendant
9                                                         ELECTRONIC ARTS INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

444705.05