KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
R. JAMES SLAUGHTER - #192813
R. ADAM LAURIDSEN - #243780
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendant
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL MICHAEL KELLER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRONIC ARTS INC.; NATIONAL COLLEGIATE ATHLETICS ASSOCIATION; COLLEGIATE LICENSING COMPANY,<br><br>Defendants. | Case No. CV-09-1967-CW<br><br>**ELECTRONIC ARTS INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date: October 1, 2009<br>Time: 2:00 p.m.<br>Dept: 2, 4th Floor<br>Judge: Hon. Claudia Wilken<br><br>Date Comp. Filed: May 5, 2009 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT.........................................................................................................................3

    A. The First Amendment and the California Constitution Bar All of Plaintiff's Claims. ...................................................................................................3

        1. Any Use of Plaintiff's Likeness is Protected Because it is Transformative..................................................................................3

        2. EA's Alleged Use of Information About Plaintiff is Constitutionally Protected Because of the Public's Interest in College Sports and Athletes..............................................................7

        3. EA Has Not Waived its Constitutional Rights..........................................10

    B. The Section 3344 "Public Affairs" Exception Applies to EA's Works.................11

    C. Plaintiff Does Not Allege A Recoverable Injury...................................................12

    D. Plaintiff's Conspiracy Claim Fails........................................................................12

    E. Plaintiff Concedes That His Section 17200 Claim Seeks Only Unavailable Remedies. ...........................................................................................13

    F. Plaintiff's Unjust Enrichment Claim Fails.............................................................13

    G. California's Four-Year Statute of Limitations Is the Longest Period Applicable to Plaintiff's Claims Against EA.........................................................14

III. CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*
  129 S.Ct. 1937 (U.S. 2009) ..........................................................................................12, 13, 14

*Barnett v. Evans*
  2009 WL 799402 (N.D. Cal. 2009) ...............................................................................................12

*Bill Graham Archives v. Dorling Kindersley Ltd.*
  448 F.3d 605 (2d Cir. 2006) ............................................................................................................3

*C.B.C. Distribution and Marketing vs. Major League Baseball Advanced Media*, 505 F.3d 818 (8th Cir. 2007) ................................................................................7, 8

*Campbell v. Acuff-Rose Music, Inc.*
  510 U.S. 569 (U.S. 1994) ..............................................................................................................10

*Downing v. Abercrombie & Fitch*
  265 F.3d 994 (9th Cir. 2001) ..........................................................................................................9

*Estate of Presley v. Russen*
  513 F. Supp. 1339 (D.N.J. 1981) ...................................................................................................6

*ETW Corp. v. Jireh Publ'g, Inc.*
  332 F.3d 915 (6th Cir. 2003) ..........................................................................................................6

*Frantz v. Northeast Commuter Servs. Corp.*
  1998 WL 967561 (E.D. Pa. 1998) ................................................................................................10

*Fuentes v. Shevin*
  407 U.S. 67 (1972) ........................................................................................................................10

*Groucho Marx Productions, Inc v. Day & Night Company*
  523 F. Supp. 485 (S.D.N.Y. 1981) .................................................................................................6

*Hanni v. Am. Airlines, Inc.*
  2008 U.S. Dist. LEXIS 97369 (N.D. Cal. Nov. 21, 2008) ...........................................................13

*Hilton v. Hallmark Cards, Inc.*
  -- F.3d --; 2009 WL 2710225 (9th Cir. 2009) ............................................................................4, 5

*Inc. v. NFL Players Ass'n*
  2009 WL 1151982 (D. Minn. April 28, 2009) ......................................................................7, 8, 9

*Legal Aid Society v. City of New York*
  114 F. Supp. 2d 204 (S.D.N.Y. 2000) ..........................................................................................10

*Mattel Inc. v. Walking Mountain Prods.*
  353 F.3d 792 (9th Cir. 2003) ..........................................................................................................3

*McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*
  339 F.3d 1087 (9th Cir. 2003) ......................................................................................................14

*New Kids on the Block vs. News America Pub., Inc.*,
  971 F.2d 302 (9th Cir. 1992) ........................................................................................................11

*Perfect 10, Inc. v. Amazon.com, Inc.*
  508 F.3d 1146 (9th Cir 2007) .........................................................................................................3

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*Romantics v. Activision Publ'g*
  574 F. Supp. 2d 758 (E.D. Mich. 2008) ............................................................................... 6

*Sony Computer Entm't, Inc. v. Connectix Corp.*
  203 F.3d 596 (9th Cir. 2000) ................................................................................................ 3

**State Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*
  7 Cal. 4th 503 (1994) .......................................................................................................... 13

*Cal. Med. Ass'n v. Aetna U. S. Healthcare of Cal., Inc.*
  94 Cal. App. 4th 151 (2001) ............................................................................................... 14

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*
  25 Cal. 4th 387 (2001) .................................................................................................. passim

*Dora v. Frontline Video, Inc.*
  15 Cal. App. 4th 536 (1993) ...................................................................................... 9, 11, 12

*Gionfriddo v. Major League Baseball*
  94 Cal. App. 4th 400 (2001) ....................................................................................... 7, 8, 12

*Guglielmi v. Spelling-Goldberg Prod.*
  25 Cal. 3d 860 (1979) ........................................................................................................... 6

*Kirby v. Sega of America*
  144 Cal. App. 4th 47 (2006) ..................................................................................... 1, 2, 3, 5

*Montana v. San Jose Mercury News, Inc.*
  34 Cal. App. 4th 790 (1995) .......................................................................................... 7, 12

*Polydoros v. Twentieth Century Fox Film Corp.*
  67 Cal. App. 4th 318 (1997) .......................................................................................... 6, 10

*Shulman v. Group W Prods., Inc.*
  18 Cal. 4th 200 (1998) .......................................................................................................... 7

*Winter v. DC Comics*
  30 Cal. 4th 881 (2003) ................................................................................................ 1, 3, 4, 5

**State Statutes**

Bus. & Prof. Code §17200 ......................................................................................................... 2, 13

Cal. Code Civ. Proc. § 3344 ........................................................................................................... 11

## I. INTRODUCTION

Plaintiff concedes—by not disputing—the critical legal principles that form the basis of Electronic Arts Inc.'s ("EA's") motion to dismiss:

- Plaintiff concedes that video games are "expressive works entitled to as much First Amendment protection as the most profound literature." *Kirby v. Sega of America*, 144 Cal. App. 4th 47, 58 (2006). *See* Mot. at 7:25-8:27.

- Plaintiff concedes that the games submitted by EA in connection with its motion are subject to judicial notice, that the Court may review them in connection with this motion, and that the Court may dismiss Plaintiff's claims based upon its review. Nor does Plaintiff dispute that it is important to address, at the pleading stage, claims that challenge a defendant's right to create expressive works protected by the First Amendment. *See* Mot. at 5:9-6:26.

- Finally, and critically, Plaintiff concedes that if a review of the games demonstrates that EA's use of Plaintiff's alleged likeness is "transformative," then EA is constitutionally protected from the right-of-publicity claims he asserts here. *Comedy III Prods., Inc. v. Gary Saderup, Inc*. 25 Cal. 4th 387, 405 (2001). *See* Mot. at 9:4-10:2.

Plaintiff errs, however, in his analysis of the "transformative" test. Plaintiff wrongly focuses solely on whether an individual player's likeness within the game is transformative. But as the cases which he cites make clear, the dispositive question is not whether an individual player has been transformed, but whether the games, as a whole, are transformative. *See Winter v. DC Comics*, 30 Cal. 4th 881, 888 (2003) (stating the transformative test as "whether *a product containing* a celebrity's likeness is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness.") (emphasis added). In other words, the focus is not on whether the plaintiff's likeness is transformed, but on "whether the celebrity likeness *is one of the raw materials* from which an original work is synthesized, or whether the depiction … of the celebrity is the *very sum and substance of the work in question*." *Id*. (emphasis added). A review of *NCAA Football* and *NCAA Basketball / March Madness*

1  demonstrates that Plaintiff's alleged likeness is only "one of the raw materials" that went into the
2  creation of a significantly larger, complex expressive work. Therefore, EA's use is protected and
3  its motion should be granted.
4       This rule makes sense. Successful misappropriation claims generally arise from the use
5  of a plaintiff's name or likeness in advertising or merchandising of non-transformative works,
6  such that a person might reasonably confuse the use of the celebrity's name or likeness as an
7  endorsement of the product. That's why the literal depiction of the Three Stooges on a t-shirt,
8  with nothing more, was found to be a misappropriation (*Comedy III*), but the depiction of a
9  singer as part of a larger video game was protected by the First Amendment (*Kirby*).
10      Plaintiff's remaining arguments in opposition to EA's motion to dismiss fare no better.
11 Plaintiff's argument that EA waived its First Amendment rights, Opp. at 5:11-22, is a non-
12 starter. Plaintiff did not plead in his Complaint—because he cannot—that EA waived its right to
13 First Amendment protection. Waivers of constitutional rights must be knowing and express.
14 Nothing in the Complaint (or in EA's agreements) approaches this standard. Plaintiff's statutory
15 right of publicity claim is barred by Section 3344's public affairs exception, which protects a
16 broad array of works and information—and does not include a "newsworthiness" requirement, as
17 Plaintiff implies. Opp. at 15:17-16:15. Contrary to Plaintiff's assertions, *see* Opp. at 20:5-10, all
18 of Plaintiff's claims should be dismissed for the independent reason that all of his allegations
19 regarding injury are conclusory. Plaintiff's conspiracy claim fails with his underlying claims,
20 and, regardless, there is no cognizable claim for conspiracy to breach a contract. *See* Opp. at
21 17:3-17. Plaintiff's unjust-enrichment claim is both groundless and barred by the admitted
22 existence of contracts defining the parties' rights. *See* Opp. at 18:3-19:2. Finally, Plaintiff
23 concedes that he cannot recover monetary relief under his derivative Section 17200 claim and
24 has not alleged facts sufficient to demonstrate a basis for equitable relief. *See* Opp. at 17:21-25.
25      For these reasons and others explained below, this Court should dismiss all of Plaintiff's
26 claims against EA with prejudice.
27
28

## II.     ARGUMENT

### A.     The First Amendment and the California Constitution Bar All of Plaintiff's Claims.

#### 1.     Any Use of Plaintiff's Likeness is Protected Because it is Transformative.

If a defendant's work is transformative, a court must dismiss the plaintiff's misappropriation and related claims.  *Winter*, 30 Cal. 4th at 892.  In his discussion of the transformative test, Plaintiff focuses only on whether the image of an individual player has been transformed.  *See* Opp. at 6-10.  Plaintiff's focus is wrong and misdirected.  The dispositive question is not whether the image of an individual football or basketball player has been transformed, but whether *NCAA Football* and *NCAA Basketball / March Madness* contain additional content or other features so that the video game, *as a whole*, is something more than just a depiction of the individual player.  As the California Supreme Court announced in *Winter*, the test "is whether the celebrity likeness is one of the raw materials from which an original work is synthesized, or whether the depiction … of the celebrity is the very sum and substance of the work in question."  30 Cal. 4th at 888.[1]  *See also Comedy III*, 25 Cal. 4th at 406 (same); *Kirby v. Sega of America, Inc.*, 144 Cal. App. 4th 47, 61 (2006) ("The test simply requires the court to examine and compare the allegedly expressive *work* with the images of the plaintiff to discern if the defendant's *work* contributes significantly distinctive and expressive content; i.e., is 'transformative.'" (emphasis added)).[2]

The cases that Plaintiff relies on underscore this distinction.  In *Comedy III*, the t-shirts and other items depicting The Three Stooges were held not to be transformative because the

---

[1]     In the copyright context—from which the transformative test derives (*see Comedy III*, 25 Cal. 4th at 404)—courts similarly consider "the transformative nature of the [allegedly infringing] *work*."  *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608-12 (2d Cir. 2006) (finding reproduction of Grateful Dead concert posters in biographical book to be transformative use) (emphasis added).  Applying this test to copyright claims, Ninth Circuit courts have found to be transformative a search engine's use of exact copies of images, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1164 (9th Cir 2007), a photographer's use of actual Barbie dolls in photos, *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 (9th Cir. 2003), and a product's literal translation of video games for play in a new environment, *Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 606 (9th Cir. 2000).

[2]     *See also Winter*, 30 Cal. 4th at 885 (the court's focus is *not* on whether the plaintiff's likeness has been transformed physically in the defendant's work, but on whether that work "contain[s] significant creative elements that transform [it] into something more than mere celebrity likenesses.").

1  Court did not discern any significant creative contributions beyond the literal images of Curly,
2  Moe, and Larry—the images were the very sum and substance of the t-shirts.  *Comedy III*, 25
3  Cal. 4th at 409.  In *Winter*, in contrast, the defendants' comic books, which featured supporting
4  characters who were "less than subtle evocations" of the plaintiffs, were found to be
5  transformative because the plaintiffs' likenesses were "merely part of the raw materials from
6  which the comic books were synthesized," and were used in a larger "expressive" work.  30 Cal.
7  4th at 890.
8      EA's works at issue—*NCAA Football* and *NCAA Basketball / March Madness*—are not
9  in any way comparable to the t-shirts in *Comedy III*.   In *Comedy III*, the celebrity likeness was
10  the "sum and substance" of the defendant's work.  Nothing else.  The t-shirts featured nothing
11  but The Three Stooges literal images.  *Comedy III*, 25 Cal. 4th at 409.  In contrast, given the
12  massive amounts of artistry and skill that goes into the creation of EA's games, which are like
13  movies where the player controls the characters, they are at least as transformative as the *Winter*
14  comic books.  In fact, they are more so.  The virtual players in *NCAA Football* and *NCAA*
15  *Basketball / March Madness* are only one of thousands of features in the expressive works that
16  offer a vast array of content and numerous other creative features—such as music, graphics,
17  weather, crowds, and sound effects.  EA's works allow use of the virtual players in fictional
18  match-ups between teams, including those that have never played each other or even teams from
19  different eras.  Moreover, unlike *Comedy III*'s t-shirts—or even the comic books in *Winter*—a
20  consumer could enjoy *NCAA Football* or *NCAA Basketball / March Madness* without ever
21  seeing Plaintiff's alleged likeness, because there is so much more to the works than just an
22  individual player.  In other words, EA use of Plaintiff's likeness is only one of the "raw
23  materials" among the games' countless creative elements and additional content.[3]

---

[3]  The Ninth Circuit recently affirmed that the First Amendment bars a misappropriation claim, as a matter of law, which challenges an expressive work that is as transformative as the comic books in *Winter*.  *See Hilton v. Hallmark Cards, Inc.*, -- F.3d --; 2009 WL 2710225, at *12 (9th Cir. 2009).  There, Paris Hilton brought a right of publicity claim against a greeting-card company that used her caricatured image on a birthday card.  *See id.* at *1.  The cover of the card contained a caption reading "Paris's First Day as a Waitress," and an oversized image of Hilton's head superimposed onto a cartoon waitress's body.  *Id.*  The card depicted Hilton delivering food to a customer and using her trademarked catch-phrase "that's hot."  *Id.*  The defendant argued

*Kirby*, upon which Plaintiff relies heavily, reinforces this conclusion. In that case, the court held that the image of the Ulala character was only one element in a complex video game, and that the First Amendment therefore barred the plaintiff's misappropriation claims. 144 Cal. App. 4th at 60 ("respondents have added new expression, and the differences are not trivial"). Plaintiff attempts to downplay the significance of *Kirby* by contending that the video game passed the transformative test only because the court found more dissimilarities than similarities between the Ulala character and the plaintiff. Opp. at 8:7-24. Not so. In fact, the plaintiff in *Kirby* conceded that the video game added "new expression" to the work in which the character appeared, but argued that such new expression was not sufficient for First Amendment protection because the game was not "intended to poke fun" and did not contain "any element of caricature, lampoon, or parody." *See* 144 Cal. App. 4th at 59-60 (citations omitted). The court flatly rejected the plaintiff's interpretation of the strong First Amendment protections, concluding that "[a] work is transformative if it adds 'new expression.' That expression alone is sufficient; it need not convey any 'meaning or message.'" *Id*. at 60 (quoting *Comedy III*, 25 Cal. 4th at 404).

To avoid *Kirby*'s First Amendment holding—that the concession of "new expression," by itself, satisfies the transformative test—Plaintiff cites to different and irrelevant sections of *Kirby* that discuss whether the plaintiff's likeness was actually misappropriated, 144 Cal. App. 4th at 54-57, and whether her Lanham Act claim is barred, *id*. at 61-62. The only language quoted by Plaintiff from the court's First Amendment analysis, Opp. at 8:16-22,[4] is a factual summary rendered irrelevant by the *Kirby* court a few paragraphs later when it concludes that "[t]he transformative test specifically does not require the elements Kirby seeks to impose." Despite Plaintiff's efforts to rework *Kirby*'s holding, its implications for this case are clear: the new

---

that the card was transformative because it supposedly commented on Hilton's turn as a waitress on her reality show and used her catch-phrase as "a literal warning about the temperature of the food." *Id.* The court determined that it could not accept that position as a matter of law, finding that the card was more transformative than the t-shirts in *Comedy III* but not as transformative as the comic book in *Winter*. *See id.* at *12.

[4] Plaintiff incorrectly cites this quotation as appearing on page 61 of the *Kirby* opinion. In fact, it appears on page 60—before the court reaches its conclusion that such analysis of similarities and differences is unnecessary to apply the transformative test. *Kirby*, 144 Cal. App. 4th at 60.

expression contained in EA's works—conceded by Plaintiff—satisfies the transformative test and renders any additional First Amendment analysis superfluous.

Ultimately, if accepted, Plaintiff's flawed construction of the transformative test would pose a serious threat to free expression. If Plaintiff's argument were adopted, a person's literal image could never be used in an expressive work without consent. Indeed, Plaintiff argues that literal representations of a likeness are categorically non-transformative and therefore unprotected. Opp., 7:1-2.[5] Luckily, that is not the law. Courts regularly protect literal and near-literal depictions in expressive works. In *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 938 (6th Cir. 2003), for instance, the Sixth Circuit held that the First Amendment protected a *literal depiction* of Tiger Woods in the defendant's painting. The Court reasoned that "[u]nlike the unadorned, nearly photographic reproduction of the faces of The Three Stooges in *Comedy III*," the defendant's painting "consists of a collage of images in addition to Woods's image which are combined to describe, in artistic form, a historical event in sports history and to convey a message about the significance of Woods's achievement in that event." *Id.* And in *Guglielmi v. Spelling-Goldberg Prod.*, 25 Cal. 3d 860, 869 (1979), the California Supreme Court extended constitutional protection to the use of actor Rudolph Valentino's actual name and likeness in a fictionalized movie account of his life. Finding that "[c]ontemporary events, symbols, and people are regularly used in fictional works," the Court held that "the range of free expression would be meaningfully reduced if prominent persons in the present and recent past were forbidden topics for the imaginations of authors of fiction." *Id.*; *see also Romantics v. Activision Publ'g*, 574 F. Supp. 2d 758, 766 (E.D. Mich. 2008) (First Amendment protected expressive work which contained a song originally performed by plaintiffs); *Polydoros v. Twentieth Century*

---

[5] The two out-of-state district court opinions Plaintiff relies on, Opp. at 7:1-7:16, *Estate of Presley v, Russen*, 513 F. Supp. 1339 (D.N.J. 1981), and *Groucho Marx Productions, Inc v. Day & Night Company*, 523 F. Supp. 485 (S.D.N.Y. 1981), do not help him, as more recent and germane decisions have held. "The amount of original creative elements designed by Defendants to create the Game makes [a video game rock band simulation] easily distinguishable from *Estate of Presley v. Russen*." *Romantics*, 574 F. Supp. 2d at 766 n.3. And in *Groucho Marx*, the court "did not appear to give due consideration to forms of creative expression protected by the First Amendment that cannot be categorized as ideas or information" and placed improper emphasis on whether the work was a parody. *Comedy III*, 25 Cal. 4th at 403.

*Fox Film Corp.*, 67 Cal. App. 4th 318, 325 (1997) (First Amendment protected expressive work which contained a character based on plaintiff as a child).  If Plaintiff's theory were correct, each of these decisions would have come out differently.

Because EA's alleged use of Plaintiff's likeness is transformative by adding significant new expression and content, the use is protected by the First Amendment and all of Plaintiff's claims against EA must be dismissed.

### 2. EA's Alleged Use of Information About Plaintiff is Constitutionally Protected Because of the Public's Interest in College Sports and Athletes.

Plaintiff's claims are barred for the separate and independent reason that the First Amendment protects works that include information regarding sports figures—including their names, statistics, and biographical information—from claims that allege that such information was wrongfully misappropriated.  *See C.B.C. Distrib. and Mktg. vs. Major League Baseball Advanced Media*, 505 F.3d 818 (8th Cir. 2007); *CBS Interactive, Inc. v. NFL Players Ass'n*, 2009 WL 1151982 (D. Minn. April 28, 2009); *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400 (2001); *Montana v. San Jose Mercury News*, *Inc.* 34 Cal. App. 4th 790 (1995).

Plaintiff does not dispute that the public has a significant and recognizable interest in information about big time college athletics, nor does Plaintiff dispute that use of athlete-specific information in such works is protected by the First Amendment.  Opp. at 11:21-13-8.  Rather, Plaintiff only attempts to distinguish these cases from his Complaint by arguing that the vast array of articles that courts have protected—fantasy sports games, historic rosters, highlight films, game programs, and commemorative posters—only received First Amendment protection because of their "reporting of an athlete's statistics and image to the public."[6]  Plaintiff is wrong.

The First Amendment's reach is not limited to "reporting."  *See e.g. Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 225 (1998) (applying First Amendment protection to "the use of names, likenesses, or facts in giving information to the public for purposes of education, amusement or enlightenment.").  "Entertainment features receive the same constitutional protection as factual news reports." *Gionfriddo*, 94 Cal. App. 4th at 410.  The *Gionfriddo* court

---

[6]  *See* Opp. at 12:9-10; 13:1-2; 13:9-10; 13:21-22; 14:17-21; 15:3-5; 15:9-11; 15:13-15.

7

1  did not distinguish "reporting" from any other use of factual information in an expressive work.

2  "In the uses challenged, Baseball is simply making historical facts available to the public through

3  game programs, Web sites and video clips." *Id*. at 411.  The constitutionally protected programs,

4  web sites, and video clips at issue in *Gionfriddo* contained players' names, likenesses, and

5  biographical information—the same information Plaintiff alleges EA uses in its expressive

6  works.  *Id*. at 405.

7        The First Amendment protection granted to fantasy sports games in their use of athletes'

8  information is similarly based on broad public interest—not a narrow right to "report" statistics

9  and images.  In *C.B.C. Distribution*, the defendant offered "names, nicknames, likenesses,

10 signatures, pictures, playing records and/or biographical data of each player in an interactive

11 form." 505 F.3d at 823.  The First Amendment protected the use of that information, the Eighth

12 Circuit held, even though the defendant's "use of the information is meant to provide

13 entertainment, [as] '[s]peech that entertains, like speech that informs, is protected by the First

14 Amendment because [t]he line between the informing and the entertaining is too elusive for the

15 protection of that basic right.'"  505 F.3d at 823 (quoting *Cardtoons, L.C. v. Major League

16 Baseball Players Ass'n*, 95 F.3d 959, 969 (10th Cir. 1996)); *see also CBS Interactive*, 2009 WL

17 1151982 at *19 (constitutionally protected game concerned "player profiles, up-to-date statistics,

18 injury reports, participant blogs, pictures, images, and biographical information")

19       As in the fantasy sports cases, EA's expressive works allegedly use factual player

20 information for entertainment purposes as part of a larger game.  Plaintiff attempts to distinguish

21 EA's works by arguing the user's ability to manipulate the factual information as part of an

22 interactive game denies it First Amendment protection.  Opp. at 13:17-28.  Plaintiff's argument

23 proves too much: if the manipulated information is no longer factual in nature, Plaintiff cannot

24 claim it as an aspect of his likeness and the factual grounds for his misappropriation claims

25 disappear.  On the other hand, if the information is manipulated so much that it is no longer an

26 aspect of his likeness, the manipulation at a minimum proves EA's point that any use of

27 Plaintiff's likeness is transformative and would be protected as such.  Either way, EA's alleged

28 use of factual information in its games cannot give rise to a misappropriation claim.

1  Contrary to Plaintiff's claims, *see* Opp. at 11:17-12:8, the public interest protection does
2 not capture "anything about sports," but is bounded by long-standing authority barring use of
3 names or likenesses in advertising or for false endorsements.  Although Plaintiff only addresses
4 EA's arguments regarding advertisements and false endorsement in a passing footnote, Opp. at
5 11 n.11, EA's description of them is correct—they demonstrate that successful misappropriation
6 claims generally arise in situations where a person might reasonably confuse the use of the
7 celebrity's name or likeness as an endorsement of the product.[7]  Indeed, *CBS Interactive* notes
8 the distinction between the permissible use of the constitutionally protected information, as in a
9 fantasy sports game, and an impermissible use, as in the case of a false endorsement.  2009 WL
10 1151982, at *21-22.  The distinction based upon commercial exploitation is similarly recognized
11 in the differing outcomes of *Dora v. Frontline Video, Inc.* 15 Cal. App. 4th 536 (1993), and
12 *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001).  In *Dora*, the court held that a
13 surfing documentary was entitled to First Amendment protection from right of publicity claims
14 based upon the public's interest in the program's subject matter.  15 Cal. App. 4th at 542-43.  In
15 *Downing*, the court rejected First Amendment protection against similar right of publicity claims
16 because the likenesses of the surfers at issue were depicted in a clothing catalog "essentially as
17 window-dressing to advance the catalog's surf theme."  265 F.3d at 1002.
18  Plaintiff attempts to make much of the fact that EA has entered into agreements involving
19 professional athletes for other games in other contexts.  Setting aside the fact that EA's games
20 that simulate professional sports contain substantially more information and verisimilitude than
21 its college games, the content of license agreements with third parties does not bear upon EA's
22 First Amendment protection here.  The cases universally recognize that a party's licensing
23 practices have no bearing on whether First Amendment protections exist.  In *C.B.C. Distribution*,
24 for example, C.B.C. initially had a license to use football players' likenesses and other
25 information about the players in its fantasy games, but the players' association refused to renew
26 the license.  C.B.C. then sued for, and obtained, a judicial declaration that it never needed the
27 license in the first place because its use of the players' likenesses was protected by the First
28

---

[7]  *See* Motion at 15, n. 6 (collecting cases).

Amendment. 505 F.3d at 821-24. *See also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 n.18 (U.S. 1994) (recognizing, in the fair use context, that prior licensing efforts have no bearing on whether a defendant is entitled to constitutional protections); *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 326 (1997) (holding that a custom of obtaining "clearance" for use of a likeness "establishes nothing, other than the unfortunate reality that many filmmakers may deem it wise to pay a small sum up front for written consent to avoid later having to spend a small fortune to defend unmeritorious lawsuits such as this one."). This makes sense. The commercial reality is that parties often decide to enter into licensing agreements for myriad business reasons, even when they are not legally obligated to do so. A rule that gave weight to the content of other license agreements or licensing practices would do nothing but significantly challenge, and change, how parties conduct business. As a result, Plaintiff's arguments regarding the alleged substance of EA's license agreements with professional athletes is nothing more than a red herring and does not bar EA's First Amendment protections here.

### 3. EA Has Not Waived its Constitutional Rights.

Plaintiff is incorrect that EA waived its constitutional rights. Opp. at 5:11-22. A waiver of a constitutional right must be express, knowing, and clear: "[A] waiver of constitutional rights in any context must, at the very least, be clear. We need not concern ourselves with the involuntariness or unintelligence of a waiver when the contractual language relied upon does not, *on its face*, even amount to a waiver." *Fuentes v. Shevin*, 407 U.S. 67, 95 (1972) (holding that a conditional sales contract providing that upon default a seller may "take back," "retake," or "repossess" merchandise did not include waiver of due process right to a prior hearing) (emphasis added); *see also Legal Aid Society v. City of New York*, 114 F. Supp. 2d 204, 226-27 (S.D.N.Y. 2000) ("Because the Modification Agreement does not explicitly waive Legal Aid's free speech rights, there is no waiver to those rights here.").[8] Plaintiff does not allege in his

---

[8] *See also Frantz v. Northeast Commuter Servs. Corp.*, 1998 WL 967561 (E.D. Pa. 1998) ("While parties may contractually waive their constitutional rights in certain circumstances, it is well settled that such waivers must be voluntary, knowing, and intelligent . . . and must be established by clear and convincing evidence."). In *Frantz*, the Court held that "[a]ssuming plaintiffs could waive their right to challenge future infringements of their First Amendment rights, nothing in the Stipulation even hints, much less shows clearly, that they intended to do so.

1  Complaint—nor could, even if given the opportunity to amend—that EA knowingly and
2  expressly waived its constitutional rights, whether in an agreement or otherwise.  Rather, all that
3  Plaintiff alleges in his opposition brief is that the license agreement between CLC and EA
4  prohibits the use of athlete likenesses in the games.  Opp. at 3:10-12.  Besides being false, that
5  allegation falls well short of an express, knowing, and clear waiver of a constitutional right.

6  For these reasons, all of Plaintiff's claims are barred by the First Amendment and should
7  be dismissed with prejudice.

### B. The Section 3344 "Public Affairs" Exception Applies to EA's Works.

Civil Code Section 3344 exempts from liability the "use of a name … or likeness … in connection with any … public affairs, or sports broadcast or account."  This protection is broader than the protection afforded by the First Amendment.  *New Kids on the Block vs. News America Publ'g, Inc.*, 971 F.2d 302, 310 n.10 (9th Cir. 1992) ("the section 3344(d) defense is not coextensive with the First Amendment.  Rather, it is designed to avoid First Amendment questions in the area of misappropriation by providing extra breathing space for the use of a person's name in connection with matters of public interest.").

Plaintiff concedes—by not disputing—that the subject of the games at issue (big time college football and basketball) are public affairs within the meaning of the statute.  Opp. at 15:17-16:15.  Rather, Plaintiff attempts to read into the statue a limitation—that "reporting" can only involve "newsworthy" information—that simply is not in the statute or recognized by the California courts.  Opp. at 16:7-15.  *Dora* proves the point:  "Reporting" cannot be held to require a certain degree of "newsworthiness" for works to be excepted from Section 3344, since the "public affairs" exception's scope is not limited to "news."  *Dora*, 15 Cal. App. 4th at 545.  "Otherwise, the appearance of one of those terms in the subsection would be superfluous, a reading we are not entitled to give the statute."  *Id.*  "The term public affairs was intended to mean something less important than news."  *Id.*  As applicable authority demonstrates, courts apply the "public affairs" exception whenever a party includes factual information of interest to

---

28  The Stipulation contains no clause expressly waiving plaintiffs' future constitutional claims.  Indeed, it contains no release clause whatsoever."  *Id*. at *4-5

1 the public in expressive works—whether in works of entertainment, news, or commentary. *See*,

2 *e.g.*, *Dora*, 15 Cal. App. 4th at 546 (protecting facts regarding surfing used in a documentary);

3 *Montana*, 34 Cal. App. 4th at 796 (protecting an image of a football player used on a

4 commemorative poster); *Gionfriddo*, 94 Cal. App. 4th at 416 (protecting statistics, biographical

5 information, photos, and videos of baseball players used on programs and a web site).

6 Consistent with these cases, EA's expressive works include allegedly factual information

7 regarding a matter of public affairs.

8     Accordingly, Plaintiff's second cause of action for violation of the California statutory

9 right of publicity must be dismissed because it falls squarely within Section 3344's public affairs

10 exception.

11 **C.**     **Plaintiff Does Not Allege A Recoverable Injury.**

12     Plaintiff fails to demonstrate that his allegations of injury—a necessary element to all of

13 his claims—rise above "[t]hreadbare recitals of the elements of a cause of action, supported by

14 mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (U.S. 2009); *see also*

15 *Barnett v. Evans*, 2009 WL 799402, at *10-11 (N.D. Cal. 2009) (dismissing complaint for failure

16 to adequately allege injury). Plaintiff only argues that EA ignores "the Complaint's pertinent

17 allegations," but provides no citation to identify those allegations. Opp. at 20:5-6. Plaintiff then

18 merely re-asserts two legal conclusions: (1) that EA has violated the law, and (2) that Plaintiff is

19 entitled to monetary and injunctive relief. Opp. at 20:6-10. These "mere conclusory statements"

20 are insufficient to plead the element of injury required by all of Plaintiff's claims, Mot. at 6 n.8,

21 and are precisely the types of allegations rejected by *Iqbal*, 129 S.Ct. at 1949.

22     Because Plaintiff has not demonstrated that its injury allegations extend beyond the

23 insufficient ones initially noted by EA, Mot. at 16-17, the Court should dismiss all of Plaintiff's

24 claims for this additional and independent reason.

25 **D.**     **Plaintiff's Conspiracy Claim Fails.**

26     Plaintiff acknowledges that if his other claims fail, his fourth cause of action for civil

27 conspiracy claim must fail as well. Opp. at 16:17-19. Because, for the reasons set forth above

28 and in EA's opening brief, Plaintiff has not alleged an underlying tort, he has not alleged a

conspiracy claim.

Further, Plaintiff's purported conspiracy claim fails under the pleading standards set forth in *Twombly* and *Iqbal* which require the Court to disregard conclusory allegations and only credit allegations that are plausible on their face. *Iqbal*, 129 S. Ct. at 1950-51. Here, the allegations in paragraphs 78-81 of the complaint, which purport to set forth the conspiracy claim, are entirely conclusory and thus "not entitled to be assumed true." *Id.* at 1951; *see* Compl. ¶¶ 78-81. Effectively conceding this point in his opposition, Plaintiff refers to allegations from the body of the complaint and argues that they "suggest" that defendants conspired to breach EA's contract with CLC. *See* Opp. at 17:3-17. But even if Plaintiff's "conspiracy to breach the contract" allegations were credited, they cannot support Plaintiff's claim. The law is clear that "there can be no civil conspiracy for breach of contract." *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2008 U.S. Dist. LEXIS 97369, at *14 (N.D. Cal. Nov. 21, 2008). "Because a party to a contract owes no tort duty to refrain from interference with its performance, he or she cannot be bootstrapped into tort liability by the pejorative plea of conspiracy." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994).

Therefore, Plaintiff's fourth cause of action for civil conspiracy should be dismissed.

**E.     Plaintiff Concedes That His Section 17200 Claim Seeks Only Unavailable Remedies.**

Once again, Plaintiff acknowledges that if his misappropriation claims against EA fail, so too must his fifth cause of action for violation of Business & Profession code Section 17200. Opp. at 17:21-25. Plaintiff also concedes that he cannot obtain monetary relief as a remedy for his 17200 claim. Plaintiff's only refuge is to claim that he has sought injunctive relief and therefore his 17200 claim should not be dismissed. But the injunctive relief he seeks— "enjoining *future* uses of the names or likenesses of Plaintiff"—is a nonstarter  By his own allegation, Plaintiff was last included in the 2008 edition of *NCAA Football*, Compl. ¶¶ 49-50, which is no longer marketed or sold by EA. Lacking a factual basis for injunctive relief, his Section 17200 claim should be dismissed in its entirety.

**F.     Plaintiff's Unjust Enrichment Claim Fails.**

Plaintiff's argument that unjust enrichment can be a valid claim under California law

1   misses the point.  Opp. at 18:3-16.  EA did not argue that a plaintiff can never claim unjust

2   enrichment.  What EA explained is that to do so, a plaintiff must allege "a basis for obtaining

3   restitution based on quasi-contract or imposition of a constructive trust."  Mot. at 21:4-5 (quoting

4   *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006)).  Plaintiff has not alleged any

5   such basis.  While Plaintiff asserts in his opposition that he "alleges all the elements of an unjust-

6   enrichment claim," Opp. at 18:17, his allegations are literally nothing more than "formulaic

7   recitation of the elements" of the claim, and therefore "not entitled to be assumed true."  *Iqbal*,

8   129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 555).

9       Plaintiff also asserts that he can pursue an unjust-enrichment claim, despite the admitted

10  existence of an express contract governing the same subject matter, because "the contract is not

11  between Keller and EA."  Opp. at 19:10.  Plaintiff's argument is contrary to California law,

12  which precludes unjust enrichment claims where an express contract governs the same subject

13  matter, even if one or the other of the litigants is not a party to the contract.  *See*, *e.g.*, *Cal. Med.*

14  *Ass'n v. Aetna U. S. Healthcare of Cal.*, *Inc.* 94 Cal. App. 4th 151, 172-73 (2001).[9]

15      Therefore, Plaintiff's seventh cause of action for unjust-enrichment claim fails as a matter

16  of law and should be dismissed.

17  **G.    California's Four-Year Statute of Limitations Is the Longest Period Applicable to Plaintiff's Claims Against EA.**

18

19      Plaintiff concludes his opposition by arguing, without analysis, that Indiana's ten-year

20  statute of limitations period applies to his claims against EA.  Opp. at 20:20-26.  Plaintiff,

21  however, has not sued EA under Indiana law or otherwise applied it to his claims.  In fact, on the

22  same page of Plaintiff's brief as the Indiana statute of limitations, Plaintiff argues that California

23  law governs EA's motion for purposes of unjust enrichment.  Opp. at 20:1-2.  Plaintiff's effort to

24  obtain a longer statute of limitations period lacks a legal basis.  California's four-year statute of

25  limitation is the longest applicable period.

---

[9]  Plaintiff asserts that *McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*, 339 F.3d 1087 (9th Cir. 2003), is to the contrary, but that case applied Delaware law and therefore has no application here.  *See id.* at 1091-92; Opp. at 20:1 (arguing that California law governs his unjust enrichment claim).

### III. CONCLUSION

For the foregoing reasons, EA respectfully request that the Court dismiss Plaintiff's claims against EA with prejudice.

Dated:  September 18, 2009                         KEKER & VAN NEST LLP

                                                   By:  /s/ Robert A. Van Nest
                                                       ROBERT A. VAN NEST
                                                       Attorneys for Defendant
                                                       ELECTRONIC ARTS INC.