1  Robert B. Carey
   Leonard W. Aragon
2  HAGENS BERMAN SOBOL SHAPIRO LLP
   2425 East Camelback Road, Suite 650
3  Phoenix, Arizona 85016
   Telephone: (602) 840-5900
4  Facsimile: (602) 840-3012
   rcarey@hbsslaw.com
5  leonard@hbsslaw.com

6  Stuart M. Paynter (226147)
   THE PAYNTER LAW FIRM PLLC
7  1200 G Street N.W., Suite 800
   Washington, DC 20005
8  Telephone:  (202) 626-4486
   Facsimile:  (866) 734-0622
9  stuart@smplegal.com

10 Attorneys for Plaintiffs

11 [Additional counsel listed on signature page]

12

13                 UNITED STATES DISTRICT COURT

14               NORTHERN DISTRICT OF CALIFORNIA

15 SAMUEL MICHAEL KELLER, on behalf of        No. CV-09-1967-CW
   himself and all others similarly situated,,
16                                             PLAINTIFFS' NOTICE OF
                                  Plaintiff,   SUPPLEMENTAL AUTHORITY  IN
17                                             OPPOSITION TO DEFENDANT
         v.                                    ELECTRONIC ARTS INC.'S SPECIAL
18                                             MOTION TO STRIKE PURSUANT TO
   ELECTRONIC ARTS, INC.; NATIONAL            CAL. CIV. CODE PROC. § 425.16
19 COLLEGIATE ATHLETICS ASSOCIATION;          (ANTI-SLAPP)
   COLLEGIATE LICENSING COMPANY,
20                                             Date:        November 17, 2009
                                 Defendants.   Time:           2:00 p.m.
21                                             Dept:        Courtroom 2, 4th Floor
                                               Judge:       Hon. Claudia Wilken
22

23        As permitted by Local Rule 7-3(d), Plaintiffs submit this Notice of Supplemental Authority

24 in opposition to defendant Electronic Art's Special Motion to Strike (Dkt. No. 35).  Electronic

25 Arts' reply brief (Dkt. No. 88) makes narrow references to the recent Ninth Circuit decision, *Hilton*

26 *v. Hallmark Cards*, No. 08-55443, __ F.3d __, 2009 U.S. App. LEXIS 19571 (9th Cir. Aug. 31,

27

28

1    2009) (copy attached hereto), so Plaintiffs hereby call attention to the decision's wider relevance to

2    Electronic Art's motion.

3         The *Hilton* decision has much to say about the second half of the test for evaluating an anti-

4    SLAPP motion, namely, whether a plaintiff has sufficiently stated a claim.  *See* 2009 U.S. App.

5    LEXIS 19571, at *29-41.  The decision first confirms the standard that plaintiffs must meet.  *Id*. at

6    *29 ("not high").  Plaintiffs discuss this standard in their opposition brief (Dkt. No. 74) at page 10.

7    The decision then examines and rejects two potential First Amendment defenses to a right-of-

8    publicity claim.  *Id*. at *30-40 (transformative defense), *40-41 (public-interest defense).

9    Electronic Acts asserts the same defenses here, which Plaintiffs address in their brief at pages 11-

10   16 (transformative), 16-21 (public interest).

11   Dated:  September 28, 2009

12                                       HAGENS BERMAN SOBOL SHAPIRO LLP

13

14                                  By _____s/Shana E. Scarlett_____
                                        SHANA E. SCARLETT
15                                      715 Hearst Avenue, Suite 202
                                        Berkeley, California 94710
16                                      Telephone: (510) 725-3000
                                        Facsimile: (510) 725-3001
17                                      shanas@hbsslaw.com

18                                      Robert B. Carey
19                                      Leonard W. Aragon
                                        HAGENS BERMAN SOBOL SHAPIRO LLP
20                                      2425 East Camelback Road, Suite 650
                                        Phoenix, Arizona 85016
21                                      Telephone: (602) 840-5900
                                        Facsimile: (602) 840-3012
22                                      rcarey@hbsslaw.com
                                        leonard@hbsslaw.com
23

24                                      Stuart M. Paynter (226147)
                                        THE PAYNTER LAW FIRM PLLC
25                                      1200 G Street N.W., Suite 800
                                        Washington, D.C. 20005
26                                      Telephone: (202) 626-4486
                                        Facsimile: (866) 734-0622
27                                      stuart@smplegal.com

28

1

2   Steve W. Berman
    HAGENS BERMAN SOBOL SHAPIRO LLP
3   1301 Fifth Avenue, Suite 2900
    Seattle, Washington 98101
4   Telephone: (206) 623-7292
    Facsimile: (206) 623-0594
5   steve@hbsslaw.com

6   *Attorneys for Plaintiff*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**CERTIFICATE OF SERVICE**

3
      I hereby certify that on September 28, 2009, I electronically filed the foregoing with the

4
Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-

5
mail addresses registered, as denoted on the attached Electronic Mail Notice List.

6

7

_s/ Shana E. Scarlett_
SHANA E. SCARLETT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Mailing Information for a Case 4:09-cv-01967-CW

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Leonard W Aragon**
  leonard@hbsslaw.com,amyn@hbsslaw.com

- **Steve W. Berman**
  steve@hbsslaw.com,robert@hbsslaw.com,heatherw@hbsslaw.com

- **David P. Borovsky**
  dborovsky@longlevit.com,phaymond@longlevit.com

- **William Howard Brewster**
  bbrewster@kilpatrickstockton.com

- **Robert B. Carey**
  rob.carey@att.net,cindyj@hbsslaw.com

- **Gregory L. Curtner**
  curtner@millercanfield.com,misisian@millercanfield.com,chapmand@millercanfield.com

- **Gennaro August Filice**
  hhauck@filicebrown.com,dverduga@filicebrown.com

- **Jason Alex Geller**
  jgeller@longlevit.com,yhernandez@longlevit.com

- **Cindy Dawn Hanson**
  chanson@kilpatrickstockton.com

- **R. Charles Henn , Jr**
  chenn@kilpatrickstockton.com,svanderhoff@kilpatrickstockton.com,aljones@kilpatrickstockton.com,efesshazion@kilpatrickstockton.com

- **Daniel E. Jackson**
  djackson@kvn.com,mcanales@kvn.com,efiling@kvn.com

- **Atleen Kaur**
  kaur@millercanfield.com,misisian@millercanfield.com,chapmanD@millercanfield.com

- **Kimberly K. Kefalas**
  kefalas@millercanfield.com,kaiser@millercanfield.com,chapmand@millercanfield.com

- **Jon T. King**
  jking@hausfeldllp.com,dbone@hausfeldllp.com

- **Robert Adam Lauridsen**
  alauridsen@kvn.com,efiling@kvn.com,rcirelli@kvn.com

- **Mark Steven Lee**
  mlee@manatt.com

- **Glen Robert Olson**
  golson@longlevit.com

- **Stuart McKinley Paynter**
  stuart@smplegal.com

- **Shana E. Scarlett**
  shanas@hbsslaw.com,sf_filings@hbsslaw.com,jeneld@hbsslaw.com

- **Robert James Slaughter**
  rslaughter@kvn.com,efiling@kvn.com,toneill@kvn.com,mls@kvn.com

- **Robert Addy VanNest**
  rvannest@kvn.com,efiling@kvn.com,sjacob@kvn.com,scole@kvn.com

- **Matthew S. Weiler**

mweiler@morganlewis.com,kolson@morganlewis.com

- **Robert James Wierenga**
  wierenga@millercanfield.com,misisian@millercanfield.com,chapmanD@millercanfield.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)



**PARIS HILTON, Plaintiff-Appellee, v. HALLMARK CARDS, a Missouri corporation, Defendant-Appellant.**

**No. 08-55443**

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

*2009 U.S. App. LEXIS 19571*

**May 6, 2009, Argued and Submitted, Pasadena, California**
**August 31, 2009, Filed**

**PRIOR HISTORY: [*1]**

Appeal from the United States District Court for the Central District of California. D.C. No. 2:07-cv-05818-PA-AJW. Percy Anderson, District Judge, Presiding.

**CORE TERMS:** card, public interest, transformative, public issue, publicity, internal quotation marks omitted, celebrity's, inextricably intertwined', misappropriation, furtherance, birthday, causes of action, waitress's, cartoon, hot, matter of law, lawsuit, photograph, appealable, episode, free speech, commercial speech, probability, trademark, threshold, customer, likeness, famous, Lanham Act, speech rights

**COUNSEL:** Lincoln D. Bandlow, Spillane Shaeffer Aronoff Bandlow LLP, Los Angeles, California, argued the cause for the appellant and filed briefs.

Brent H. Blakely, Blakely Law Group, Hollywood, California, argued the cause for the appellee and filed the brief.

Lynn Rowe Larsen and Timothy F. Sweeney, Law Office of Timothy Farrell Sweeney, Cleveland, Ohio, filed the brief for amicus curiae IMG Worldwide, Inc.

**JUDGES:** Before: John T. Noonan, Diarmuid F. O'Scannlain, and Susan P. Graber, Circuit Judges. Opinion by Judge O'Scannlain.

**OPINION BY:** Diarmuid F. O'Scannlain

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether California law allows a celebrity to sue a greeting card company for using her image and catchphrase in a birthday card without her permission.

I

Paris Hilton is a controversial celebrity known for her lifestyle as a flamboyant heiress. As the saying goes, she is "famous for being famous."

She is also famous for starring in "The Simple Life," a so-called reality television program. The show places her and fellow heiress Nicole Ritchie in situations for [*2] which, the audience is to assume, their privileged upbringings have not prepared them. For example, work. In an episode called "Sonic Burger Shenanigans," Hilton is employed as a waitress in a "fast food joint." As in most episodes, Hilton says, "that's hot," whenever she finds something interesting or amusing. She has registered the phrase as a trademark with the United States Patent & Trademark Office.

Hallmark Cards is a major national purveyor of greeting cards for various occasions. This case is about one of its birthday cards. The front cover of the card contains a picture above a caption that reads, "Paris's First Day as a Waitress." The picture depicts a cartoon waitress, complete with apron, serving a plate of food to a restaurant patron. An oversized photograph of Hilton's head is super-imposed on the cartoon waitress's body. Hilton says to the customer, "Don't touch that, it's hot." The customer asks, "what's hot?" Hilton replies, "That's hot." The inside of the card reads, "Have a smokin' hot birthday."

Hilton sued Hallmark, asserting three causes of action. The First Amended Complaint alleges misappropriation of publicity under California common law; false designation under [*3] the Lanham Act, *15 U.S.C. § 1125(a)*; and infringement of a federally registered trademark. Hallmark filed a motion to dismiss each claim under *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim on which relief could be granted. The district court granted one portion of the motion to dis-

miss: the trademark infringement claim, a judgment from which Hilton does not appeal. By separate motion, Hallmark moved specially to strike Hilton's right of publicity claim under California's anti-SLAPP statute. [1] In both motions, Hallmark raised defenses peculiar to each cause of action, some based on the *First Amendment to the United States Constitution* and some not.

> 1   "SLAPP" stands for "strategic lawsuit against public participation." As we discuss further *infra*, so-called "anti-SLAPP" laws are designed to bar meritless lawsuits filed merely to chill someone from exercising his *First Amendment* rights on a matter of public interest. California's version is codified at *California Civil Procedure Code § 425.16*. The relevant text is set out on p. 12122 *infra*.

The district court denied the remaining portions of the motions to dismiss and denied the special motion to strike the anti-SLAPP **[*4]** claim. It concluded that the defenses required a more fact-intensive inquiry than is permissible at such stage of the case. Hallmark timely appeals.

### II

Before discussing the merits of this appeal, we must assure ourselves that we have jurisdiction over the appeal of denials of both motions.

### A

As to the special motion to strike, appellate courts generally have jurisdiction only over final judgments and orders. *28 U.S.C. § 1291*; *Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867-68, 114 S. Ct. 1992, 128 L. Ed. 2d 842 (1994)*. The collateral order doctrine, however, "entitles a party to appeal not only from [ordinary final judgments] . . . but also from a narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, . . . nonetheless be treated as final." *Digital Equip. Corp., 511 U.S. at 867* (internal citations and quotation marks omitted). We have held that denials of special motions to strike under California's anti-SLAPP statute fall into this narrow class. *Batzel v. Smith, 333 F.3d 1018, 1024-26 (9th Cir. 2003)* (noting that anti-SLAPP motions to strike assert a form of immunity from suit); *but cf. Englert v. MacDonell, 551 F.3d 1099, 1106-07 (9th Cir. 2009)* **[*5]** (holding that the denial of an anti-SLAPP motion under Oregon law is not an appealable collateral order, while recognizing that the denial of a California anti-SLAPP motion is). Thus, we are satisfied that we have jurisdiction to review the denial of Hallmark's anti-SLAPP motion under the collateral order doctrine. [2]

> 2   Applying the familiar framework of *Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)*, and its progeny, we have long held that the anti-SLAPP statute applies to state law claims that federal courts hear pursuant to their diversity jurisdiction. *See United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 970-73 (9th Cir. 1999)*.

### B

Denials of motions to dismiss under *Rule 12(b)(6)* are ordinarily not appealable, even as collateral orders. *See Catlin v. United States, 324 U.S. 229, 236, 65 S. Ct. 631, 89 L. Ed. 911 (1945)*. However, we "permit [] the exercise of appellate jurisdiction over otherwise non-appealable orders that are 'inextricably intertwined' with another order that is properly appealable." *Batzel, 333 F.3d at 1023*. This doctrine requires either that "we must decide the pendent issue in order to review the claims properly raised on interlocutory appeal . . . or [that] resolution **[*6]** of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Id.* (internal quotation marks omitted).

#### 1

We first address whether we have jurisdiction over the denial of the motion to dismiss the Lanham Act claim as an order inextricably intertwined with the anti-SLAPP motion.

Hallmark argues that the defenses it raises to Hilton's Lanham Act claim are based on some of the same *First Amendment* concerns that animate its potential defenses to the misappropriation of publicity claim. That may be, but Hallmark only moved to strike the misappropriation of publicity claim. Indeed, it could not have moved to strike the Lanham Act claim because, as the parties agree, the anti-SLAPP statute does not apply to federal law causes of action. *See Bulletin Displays, LLC v. Regency Outdoor Adver., Inc., 448 F. Supp. 2d 1172, 1180-82 (C.D. Cal. 2006)*. A motion to dismiss one cause of action is not, ordinarily, inextricably intertwined with a motion to strike a different cause of action under California's anti-SLAPP law, even if the two claims are doctrinally similar.

Because a federal court can only entertain anti-SLAPP special motions to strike in connection with state law **[*7]** claims, there is no properly appealable order with which the Lanham Act claim could be inextricably intertwined. We therefore lack jurisdiction to review it.

#### 2

What about the denial of the portions of Hallmark's motion to dismiss pertaining to the misappropriation of

publicity claim, the same claim that was the target of the anti-SLAPP motion?

It is clear that not every motion to dismiss the same claim that underlies an anti-SLAPP motion is "inextricably intertwined" with such motion. We have held, for example, that a motion to dismiss for lack of personal jurisdiction [3] is not inextricably intertwined with an anti-SLAPP motion. *Batzel, 333 F.3d at 1023*. In *Zamani v. Carnes*, however, we did review a motion to dismiss for failure to state a claim under *Federal Rule of Civil Procedure 12(b)(6)*, which was made as an alternative to an anti-SLAPP special motion to strike the same claim. *491 F.3d 990, 994 (9th Cir. 2007)*. We did it, however, without considering whether we had jurisdiction to do it. [4] *Zamani* does not, therefore, compel us to conclude that a motion to dismiss a substantive claim under *Rule 12(b)(6)* is inextricably intertwined with a special motion to strike. *See, e.g., United States v. Booker, 375 F.3d 508, 514 (7th Cir. 2004)* [*8] ("An assumption is not a holding."). We must consider the question for ourselves.

> 3   Such motions are typically made pursuant to *Federal Rule of Civil Procedure 12(b)(2)*.
> 4   The closest thing to an application of the "inextricably intertwined" doctrine we decided involved a motion for reconsideration of the denial of the motion to strike or to dismiss. *Zamani, 491 F.3d at 994*.

The first type of inextricably intertwined order is one that "we must [review] . . . in order to review the claims properly raised on interlocutory appeal." *Batzel, 333 F.3d at 1023* (internal quotation marks omitted). Resolution of a motion to dismiss for failure to state a claim is not a predicate to resolving an anti-SLAPP motion. As we illustrate in this very opinion, we can proceed directly to the anti-SLAPP motion without any interference from a motion to dismiss.

An order may also be inextricably intertwined with an immediately appealable one if "resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Id.* (internal quotation marks omitted). To determine whether a motion to dismiss (the pendent issue) is inextricably intertwined with an anti-SLAPP motion to strike [*9] (the issue properly raised) in this sense, we must briefly consider the inquiry associated with an anti-SLAPP motion.

As we discuss *infra*, an anti-SLAPP motion requires the court to ask, first, whether the suit arises from the defendant's protected conduct and, second, whether the plaintiff has shown a probability of success on the merits. If the first question is answered in the negative, then the motion must fail, even if the plaintiff stated no cognizable claim. Of course, if a plaintiff stated no cognizable

claim, then the defendant would be entitled to dismissal under *Rule 12(b)(6)*. Thus, a *Rule 12(b)(6)* motion to dismiss may succeed where an anti-SLAPP motion to strike would not.

The converse is also true. The second stage of the anti-SLAPP inquiry determines whether "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Integrated Healthcare Holdings, Inc. v. Fitzgibbons, 140 Cal. App. 4th 515, 44 Cal. Rptr. 3d 517, 527 (Ct. App. 2006)* (internal quotation marks omitted). Such test is similar to the one courts make on summary judgment, though not identical. Thus, a defendant [*10] who has stated a legal claim but has no facts to support it could prevail on an anti-SLAPP motion, though he would not have been able to win a motion to dismiss.

The foregoing illustrates that neither the denial nor the grant of an anti-SLAPP motion "necessarily resolves," *Batzel, 333 F.3d at 1023*, a motion to dismiss regarding the same claim. That is, it is possible for an appellate court to hold that an anti-SLAPP special motion to strike should be granted or denied without thereby dictating the result of a motion to dismiss the same claim under *Rule 12(b)(6)*. Our cases make clear that if the properly appealable order can be resolved without necessarily resolving the pendent order, then the latter is not "inextricably intertwined" with the former. *See id.* We therefore must conclude that we lack jurisdiction to review that portion of Hallmark's *Rule 12(b)(6)* motion to dismiss the right of publicity claim because it is not inextricably intertwined with any properly appealable order.

### III

Having weeded out of this appeal matters over which we lack jurisdiction, we now address the merits of denial of Hallmark's special motion to strike the anti-SLAPP claim.

### A

California, like some other states, [*11] has a statute designed to discourage "strategic lawsuits against public participation." SLAPPs "masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Batzel, 333 F.3d at 1024* (internal quotation marks omitted). As California's anti-SLAPP statute explains, the state legislature has found there to be "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." *Cal. Civ. Proc. Code. § 425.16(a)*. Because "it is in the public interest to encourage continued participation in matters of public significance, and [because] this participation

2009 U.S. App. LEXIS 19571, *

should not be chilled through abuse of the judicial process," the anti-SLAPP statute is to be construed broadly. *Id.*

Under the statute,

[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff  [*12] has established that there is a probability that the plaintiff will prevail on the claim.

*Id*. *§ 425.16(b)(1)*. The phrase "act . . . in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue" is defined by four specific categories of communications. *Id*. *§ 425.16(e)(1)-(4)*. [5] The relevant one here is the fourth, catch-all category: "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *Id*. *§ 425.16(e)(4)*.

5   Although subsection (e) uses the word "includes," its four categories exhaust the meaning of an act in furtherance of free speech or petitioning rights. *Navellier v. Sletten, 29 Cal. 4th 82, 124 Cal. Rptr. 2d 530, 52 P.3d 703, 708 (Cal. 2002)*.

California courts evaluate a defendant's anti-SLAPP motion in two steps. First, the defendant moving to strike must make "a threshold showing . . . that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a  [*13] public issue,' as defined in [subsection (e) of] the statute." *Equilon Enters., LLC v. Consumer Cause, 29 Cal. 4th 53, 124 Cal. Rptr. 2d 507, 52 P.3d 685, 694 (Cal. 2002)* (quoting *Cal. Civ. Proc. Code § 425.16(b)(1)*). Second, "[i]f the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." *Navellier v. Sletten, 29 Cal. 4th 82, 124 Cal. Rptr. 2d 530, 52 P.3d 703, 708 (Cal. 2002)*. "Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson v. Parker, Covert & Chidester, 28*

*Cal. 4th 811, 123 Cal. Rptr. 2d 19, 50 P.3d 733, 739 (Cal. 2002)* (internal quotation marks omitted). "[T]hough the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Id*.; *Cal. Civ. Proc. Code § 425.16(b)(2)*.

1

For Hallmark's anti-SLAPP motion to succeed, it must make its "threshold showing" at step one: "that the act or acts of  [*14] which the plaintiff complains were taken in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue [or an issue of public interest]." *Equilon Enters., LLC, 52 P.3d at 694* (internal quotation marks omitted); *Cal. Civ. Proc. Code § 425.16(e)(4)*. The exact inquiry at the first step is somewhat amorphous, but it seems to contain two distinct components.

a

First, the activity the plaintiff is challenging must have been conducted "in furtherance" of the exercise of free speech rights. By its terms, this language includes not merely actual exercises of free speech rights but also conduct that furthers such rights. *Cal. Civ. Proc. Code § 425.16(e)(4)*; *see also Navellier, 52 P.3d at 713* ("The [California] [l]egislature did not intend that in order to invoke the special motion to strike the defendant must first establish her actions are constitutionally protected under the *First Amendment* as a matter of law.").

The California Supreme Court has not drawn the outer limits of activity that furthers the exercise of free speech rights. It seems to suffice, however, that the defendant's activity is communicative,  [*15] *cf. Commonwealth Energy Corp. v. Investor Data Exch., Inc., 110 Cal. App. 4th 26, 1 Cal. Rptr. 3d 390, 393 n.5 (Ct. App. 2003)*, and some courts do not discuss this part of the inquiry at all, *see, e.g., Integrated Healthcare Holdings, Inc., 44 Cal. Rptr. 3d at 522-26* (not discussing whether an email message was "in furtherance" of free speech rights). Thus, the courts of California have interpreted this piece of the defendant's threshold showing rather loosely. *See also Paul for Council v. Hanyecz, 85 Cal. App. 4th 1356, 102 Cal. Rptr. 2d 864, 870-71 (Ct. App. 2001)* (holding that campaign money laundering was in furtherance of political speech but an invalid exercise of free speech rights because it was illegal), *overruled on other grounds by Equilon Enters. LLC, 52 P.3d at 694 n.5*.

One sensible place to start is to determine whether the activity in question is "speech" under *First Amend-*

2009 U.S. App. LEXIS 19571, *

*ment* law. Here, Hallmark's card certainly evinces "[a]n intent to convey a particularized message . . ., and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." [6] *Spence v. Washington, 418 U.S. 405, 410-11, 94 S. Ct. 2727, 41 L. Ed. 2d 842 (1974)* (per curiam) (stating requirement for conduct to qualify as "speech" **[*16]** for purposes of the *First Amendment*). *But compare Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 158-61 (3d Cir. 2002)* (concluding that *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 115 S. Ct. 2338, 132 L. Ed. 2d 487 (1995)* modified the *Spence* standard), *with Colacurcio v. City of Kent, 163 F.3d 545, 549 n.1 (9th Cir. 1998)* (reiterating the *Spence* standard without any gloss from *Hurley*). Whether or not Hallmark *must* show that its card is speech under the *Spence* test or a modification thereof, it certainly suffices that Hallmark can make such a showing.

6   We do recognize a wrinkle in this situation. Namely, Hallmark itself does not intend to convey a message; rather, it sells a stylized, ready-made message to someone else, who conveys it to the recipient of the card. In other words, when you open a birthday card, Hallmark has not wished you a happy birthday. It has simply provided the medium for its customer to do so. Hilton might have argued that this means Hallmark cannot assert a statutory defense derived from the *First Amendment* because *its First Amendment* rights are not at issue. But she did not make any such argument. The closest she came was her contention that the speech **[*17]** at issue is commercial speech. We reject such contention *infra*, at 12126 n.7.

We do not, therefore, reach this issue. Although it sounds like a question of standing, which is often jurisdictional, it bears closest resemblance to the rule governing third party standing: a party normally cannot raise claims that belong to a third party. *See Massey v. Helman, 196 F.3d 727, 739 (7th Cir. 1999)* (listing among the "prudential restrictions" of standing "the general rule that a litigant must assert his own legal rights and cannot assert the legal rights of a third party"). But that rule involves prudential standing, which is not a requirement of jurisdiction. *See Allen v. Wright, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)* (describing prudential standing as consisting of "several judicially self-imposed limits on the exercise of federal jurisdiction"). The jurisdictional elements of standing (an injury-in-fact, causation, and redressability) are unarguably present here.

Thus, Hallmark's card qualifies as speech and falls comfortably within the universe of types of communication that California courts have considered "conduct in furtherance of" the exercise of free speech rights upon which to base anti-SLAPP motions **[*18]** to strike.

b

Next, Hallmark must show that the sale of its card was "in connection with a public issue or an issue of public interest." *Cal. Civ. Proc. Code § 425.16(e)(4)*. Hilton contends that the card merely appropriates the waitress role she played on "The Simple Life." She therefore views this lawsuit as a garden variety private dispute over who profits from her image. According to Hilton, the card implicates no *issue* of public interest because it involves no issue at all, only a celebrity who interests many people. [7]

7   Hilton also argues that the birthday card is commercial speech and that such speech cannot, as a matter of law, raise a public issue under the anti-SLAPP statute. *See Scott v. Metabolife Int'l, Inc., 115 Cal. App. 4th 404, 9 Cal. Rptr. 3d 242, 253-54 (Ct. App. 2004)* ("[A] manufacturer's advertising of a specific consumer product, on its labels, and to the public, for the purpose of selling that product [] is not an issue of public interest (or a public issue) . . . ."); *Cal. Civ. Proc. Code § 425.17(c)*.

Regardless of whether the major premise is true, the minor one is false: Hallmark's card is not commercial speech. "[T]he 'core notion of commercial speech' is that it 'does no more than propose **[*19]** a commercial transaction.'" *Hoffman v. Capital Cities/ABC, Inc., 255 F.3d 1180, 1184 (9th Cir. 2001)* (quoting *Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 66, 103 S. Ct. 2875, 77 L. Ed. 2d 469 (1983)*). As one of our sister circuits has recognized, under this definition, "commercial speech is best understood as speech that merely advertises a product or service for business purposes." *Cardtoons, L.C. v. Major League Baseball Players Ass'n, 95 F.3d 959, 970 (10th Cir. 1996); see also Hoffman, 255 F.3d at 1185* (citing commercial speech cases, all of which involved advertising); *Rezec v. Sony Pictures Entm't, Inc., 116 Cal. App. 4th 135, 10 Cal. Rptr. 3d 333, 337-38 (Ct. App. 2004)*. Hallmark's card is not advertising the product; it *is* the product. It is sold for a profit, but that does not make it commercial speech for *First Amendment* purposes. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 761, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976)*.

2009 U.S. App. LEXIS 19571, *

i

Sitting in diversity, we must begin with the pronouncements of the state's highest court, which bind us. *See Ariz. Elec. Power Coop., Inc v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995)*. The California Supreme Court has not clearly established what constitutes an issue of public interest, but it has provided **[*20]** some guidance. First, "[n]othing in the statute itself categorically excludes any particular type of action from its operation." *Navellier, 52 P.3d at 711*. Indeed, "[t]he anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's activity that gives rise to his or her asserted liability." *Id.* (emphasis omitted). Thus, the particular cause of action Hilton has brought is irrelevant to our decision. Ordinary commercial causes of action like breaches of contract, *see generally Navellier, 29 Cal. 4th 82, 124 Cal. Rptr. 2d 530, 52 P.3d 703*, or indeed misappropriation of publicity, can be "strategic lawsuit[s] against public participation" as much as defamation can be, *id. at 706*.

Second, the California Supreme Court has "declined to hold that [the anti-SLAPP statute] does not apply to events that transpire between private individuals." *Id. at 710* (internal quotation marks omitted). That neither Hilton nor Hallmark are public officials, therefore, cannot be dispositive. Furthermore, the court has "explicitly rejected the assertion that the only activities qualifying for statutory protection are those which meet the lofty standard of pertaining to the heart of self-government." **[*21]** *Id.* (internal quotation marks omitted). Thus, the activity of the defendant need not involve questions of civic concern; social or even low-brow topics may suffice.

The question before us is whether the topic, the issue, can be a celebrity like Paris Hilton, or whether, as Hilton agues, it must be the subject of some defined debate.

In interpreting the anti-SLAPP statute, the California Supreme Court has insisted on its language, including its preamble. *See Equilon Enters., 52 P.3d at 688* ("When on previous occasions we have construed the anti-SLAPP statute, we have done so strictly by its terms . . . ."); *id. at 689 n.3* (discussing the addition of the "broadly construed" language to the statutory preamble as a correction of prior judicial decisions adopting narrowing constructions); *Navellier, 52 P.3d at 711* (rejecting a narrowing construction of the statute because it "would contravene the Legislature's express command that *section 425.16* 'shall be construed broadly'" (quoting *Cal. Civ. Proc. Code § 425.16(a)*)); *see also Briggs v. Eden Council for Hope & Opportunity, 19 Cal. 4th 1106, 81 Cal. Rptr. 2d 471, 969 P.2d 564, 568-73 (Cal. 1999)*

(construing plain language of the statute in light of the preamble).

That preamble declares **[*22]** it to be "in the public interest" of the state of California "to encourage continued participation in matters of public significance . . . . To this end, this section shall be construed broadly." *Cal. Civ. Proc. Code § 425.16(a)*. The California Supreme Court has defined "significance" to mean "importance" or "consequence." *Briggs, 969 P.2d at 571-72*. Thus, we must construe "public issue or issue of public interest" in *section 425.16(e)(4)* broadly in light of the statute's stated purpose to encourage participation in matters of public importance or consequence.

Understood this way, the statute does not appear to favor a construction limiting the meaning of "issue" to a subject of a specific debate. However, we need not rest on the implications of the California Supreme Court and the statute, which do not definitively answer the question, "because we have guidance from the [California] Court of Appeals." *Batlan v. Bledsoe (In re Bledsoe), 569 F.3d 1106, 1110 (9th Cir. 2009)*.

ii

The California intermediate appellate courts have developed multiple tests to determine whether a defendant's activity is in connection with a public issue. One commonly cited test comes from *Rivero v. American Federation of State, County, & Municipal Employees, 105 Cal. App. 4th 913, 130 Cal. Rptr. 2d 81, 89-90 (Ct. App. 2003)* **[*23]** (concluding that the plaintiff's supervision of eight individuals was not a matter of public interest, where people involved had "received no public attention or media coverage"). There, the Court of Appeal for the First District surveyed the appellate cases and divined from them three categories of public issues: (1) statements "concern[ing] a person or entity in the public eye"; (2) "conduct that could directly affect a large number of people beyond the direct participants"; (3) "or a topic of widespread, public interest." *Id. at 89*. The Fourth District has followed this approach. *See, e.g., Commonwealth Energy Corp., 1 Cal. Rptr. 3d at 394-95* (describing *Rivero* as the first systematic treatment of the "public issue--public interest aspect of the anti-SLAPP statute").

By contrast, *Weinberg v. Feisel*, a case from the Third District, articulated a somewhat more restrictive test, designed to distinguish between issues of "public, rather than merely private, interest." *110 Cal. App. 4th 1122, 2 Cal. Rptr. 3d 385, 392 (Ct. App. 2003)*.

> First, "public interest" does not equate with mere curiosity. Second, a matter of public interest should be something of concern to a substantial number of people.

Thus, a matter **[\*24]** of concern to the speaker and a relatively small, specific audience is not a matter of public interest. Third, there should be some degree of closeness between the challenged statements and the asserted public interest; the assertion of a broad and amorphous public interest is not sufficient. Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy. Finally, . . . [a] person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Id. at 392-93* (internal quotation marks, citations, and alteration omitted).

iii

Although these approaches do not precisely overlap, we need not decide between them, because Hallmark's birthday card satisfies both tests.

Hallmark's card falls into either the first or third categories that *Rivero* outlined: statements "concern[ing] a person or entity in the public eye"; "or a topic of widespread, public interest," *130 Cal. Rptr. 2d at 89*, respectively. There is no dispute that Hilton is a person "in the public eye" and "a topic of widespread, public interest," and that she was such well **[\*25]** before this controversy. [8] Thus, Hallmark's card is "in connection with a public issue or an issue of public interest," *Cal. Civ. Proc. Code § 425.16(e)(4)*, under *Rivero*.

   [8]   In her papers before the district court, Hilton recognized that she is a "public figure and a subject of public interest," with "widespread public recognition."

Although the application of the *Weinberg* test presents a closer call, we conclude it comes to the same result. [9] Again, there is no dispute that Paris Hilton's career is "something of concern to a substantial number of people," *Weinberg, 2 Cal. Rptr. 2d at 392*. The connection "between the challenged statements"--the birthday card--"and the asserted public interest"--Hilton's life, image, and catchphrase--is direct. *Id.* After all, the card spoofs Hilton's persona. There was no pre-existing controversy between Hallmark and Hilton, so the fourth and fifth considerations that the *Weinberg* court considered are inapposite. *See id. at 392-93*.

   [9]   One might read *Weinberg*, a defamation case, as having articulated a test particular to the defamation cause of action. Because our application of *Weinberg* is not decisive here, we do not reach this question, which neither of **[\*26]** the parties raised.

*Weinberg* does caution, however, that "'public interest' does not equate with mere curiosity." *Id. at 392* (citing *Time, Inc. v. Firestone, 424 U.S. 448, 454-55, 96 S. Ct. 958, 47 L. Ed. 2d 154 (1976))*. However, this warning comes in the context of *Weinberg's* insistence that courts apply the anti-SLAPP statute only to public, not to private matters. Thus, *Weinberg* elaborated that "a 'public controversy' does not equate with any controversy of interest to the public. [10] For example, a divorce action between the scion of one of America's wealthier industrial families and his Palm Beach society wife may have piqued the public's interest but was not a public controversy." *Id. at 392* (internal citations omitted). We read this to mean that a private controversy, even between famous people, that interests the public is not enough. Under *Weinberg*, for the activities of celebrities to be a public issue, the activities, as well as the personages involved must be public.

   [10]   On this point *Weinberg* appears to conflict with *Nygard, Inc. v. Uusi-Kerttula*, which concluded that "'an issue of public interest' . . . is *any issue in which the public is interested.*" *159 Cal. App. 4th 1027, 72 Cal. Rptr. 3d 210, 220 (Ct. App. 2008)*. We need not **[\*27]** resolve this conflict, because we conclude that Hallmark's card involves a public issue under the more restrictive *Weinberg* test.

This limitation does not apply here, however. Hallmark's card does not spoof some personal detail of Hilton's life (such as a divorce), it spoofs her trademark phrase and her public persona--the very things that interest people about her. Thus, *Weinberg*, too, supports Hallmark's position that its card deals with a public issue.

*Du Charme v. International Brotherhood of Electrical Workers, 110 Cal. App. 4th 107, 1 Cal. Rptr. 3d 501 (Ct. App. 2003)*, is not to the contrary. Hilton contends that *Du Charme* requires "some sort of ongoing controversy, dispute or discussion which effects [sic] the public." This overstates the rule of *Du Charme*. Such case held that

   in order to satisfy the public issue/issue of public interest requirement of . . . subdivision (e)(3) and (4) of the anti-SLAPP statute, *in cases where the issue is not of interest to the public at large*, but rather to

a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or [*28] discussion . . . .

*Id. at 510* (emphasis added).

Subsequent California appellate courts have honored this clear limitation of *Du Charme. See, e.g., Fitzgibbons, 44 Cal. Rptr. 3d at 524* ("*Du Charme* contrasted its situation . . . with matters of *widespread* public interest . . . ." (internal quotation marks omitted)). Therefore, Hallmark need not show that its card commented on any ongoing public controversy to make the threshold showing under *Du Charme* because, as she has acknowledged, Hilton's privileged lifestyle and her catchphrase ("that's hot") are matters of widespread public interest.

In short, all of the various approaches that California's appellate courts have used to define "public issue or an issue of interest to the public" appear to support the conclusion that Hallmark's birthday card is indeed in connection with such an issue. That the card is a commercial product and Hilton's lawsuit a dispute over who can profit from her image does not defeat Hallmark's ability to make its threshold showing. We therefore conclude that Hallmark has shown that Hilton's suit for misappropriation of publicity arises from "conduct in furtherance of the exercise of the constitutional right of [*29] . . . free speech in connection with a public issue or an issue of public interest." *Cal. Civ. Proc. Code § 425.16(a), (e)(4).*

**B**

Hallmark, however, has only passed the threshold. "[T]he statute does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning; it subjects to potential dismissal only those actions in which the plaintiff cannot state and substantiate a legally sufficient claim." *Navellier, 52 P.3d at 711* (internal citations, quotation marks, and alternations omitted). At this second step of the anti-SLAPP inquiry, the required probability that Hilton will prevail need not be high. The California Supreme Court has sometimes suggested that suits subject to being stricken at step two are those that "lack [] even minimal merit." *Id. at 708.*

Hilton's claim is for misappropriation of the common law right of publicity. *See generally Eastwood v. Superior Court, 149 Cal. App. 3d 409, 198 Cal. Rptr. 342 (Ct. App. 1983), superseded by statute, Cal. Civ. Code § 3344, as recognized in KNB Enters. v. Matthews, 78 Cal. App. 4th 362, 92 Cal. Rptr. 2d 713, 717 n.5 (Ct. App. 2000).* The elements of the claim under California

law are "(1) the defendant's use of the plaintiff's identity; [*30] (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Downing v. Abercrombie & Fitch, 265 F.3d 994, 1001 (9th Cir. 2001)* (internal quotation marks omitted). Hallmark has not disputed that Hilton can meet these elements. Instead, Hallmark claims two affirmative defenses under California law, both based on the *First Amendment*: the "transformative use" defense and the "public interest" defense. [11] We discuss each in turn.

> 11   We take no position on whether there is a *First Amendment* defense to misappropriation of the right of publicity that is distinct from the defense the California Supreme Court has articulated. We address only defenses that Hallmark raised, and leave for another day the question of whether the *First Amendment* furnishes a defense to misappropriation of publicity that is broader than the transformative use or public interest defenses.

**1**

Under California law, "when an artist is faced with a right of publicity challenge to his or her work, he or she may raise as [an] affirmative defense that the work is protected by the *First Amendment* inasmuch as it contains significant transformative [*31] elements or that the value of the work does not derive primarily from the celebrity's fame." *Comedy III Prods., Inc. v. Gary Saderup, Inc., 25 Cal. 4th 387, 106 Cal. Rptr. 2d 126, 21 P.3d 797, 810 (Cal. 2001).* This "transformative use" defense poses "what is essentially a balancing test between the *First Amendment* and the right of publicity." *Winter v. DC Comics, 30 Cal. 4th 881, 134 Cal. Rptr. 2d 634, 69 P.3d 473, 475 (Cal. 2003)* (internal quotation marks omitted).

The application of the defense, which the California Supreme Court based loosely on the intersection of the *First Amendment* and copyright liability, [12] depends upon "whether the celebrity likeness is one of the 'raw materials' from which an original work is synthesized, or whether the depiction or imitation of the celebrity is the very sum and substance of the work in question." *Comedy III, 21 P.3d at 809.* In other words, "[w]e ask . . . whether a product containing a celebrity's likeness is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness. And when we use the word 'expression,' we mean expression of something other than the likeness of the celebrity." *Id.* "[U]nder [this] test," yet another formulation cautions, "when an artist's skill and [*32] talent is manifestly subordinated to the overall goal of creating a conventional portrait of a celebrity so as to commercially exploit his or

her fame, then the artist's right of free expression is out-weighed by the right of publicity." *Id. at 810*.

> 12    The cousinage between copyright liability and the right to publicity has long been recognized. *See, e.g., Zacchini v. Scripps-Howard Broad. Co., 433 U.S. 562, 573, 97 S. Ct. 2849, 53 L. Ed. 2d 965 (1977).*

a

The potential reach of the transformative use defense is broad. The form of the expression to which it applies "[is] not confined to parody and can take many forms," including "fictionalized portrayal . . . heavy-handed lampooning . . . [and] subtle social criticism." *Id. at 809* (citations omitted). Nor should courts "be concerned with the quality of the artistic contribution--vulgar forms of expression fully qualify for *First Amendment* protection." *Id*. It is thus irrelevant whether Hallmark's card qualifies as parody or high-brow art. Nor does it matter that Hallmark sought to profit from the card; the only question is whether the card is transformative. *Cf. Winter, 69 P.3d at 479* ("The question is whether the work is transformative, not how it is marketed.").

We think **[*33]** it clear that Hallmark may raise the transformative use defense. The applicability of the defense, however, does not preclude Hilton from showing the "minimal merit" needed to defeat Hallmark's motion to strike. [13] Only if Hallmark is entitled to the defense *as a matter of law* can it prevail on its motion to strike. In this context, we note that *Comedy III* envisioned the application of the defense as a question of fact. *See 21 P.3d at 811* ("Although the distinction between protected and unprotected expression will sometimes be subtle, it is no more so than other distinctions *triers of fact* are called on to make in *First Amendment* jurisprudence." (emphasis added)). Thus, Hallmark is only entitled to the defense as a matter of law if no trier of fact could reasonably conclude that the card was not transformative.

> 13    Thus, we conceptualize the inquiry into two parts: whether the transformative use defense is available at all and whether, if it is, no trier of fact could reasonably conclude that the card was not transformative.

b

Case law provides two useful data points for such inquiry. In *Comedy III*, the California Supreme Court held that "literal, conventional depictions of the Three Stooges," **[*34]** drawn in charcoal and sold on t-shirts, make "no significant transformative or creative contribution." *21 P.3d at 811*. Thus it is clear that merely merchandising a celebrity's image without that person's con-

sent, the prevention of which is the core of the right of publicity, does not amount to a transformative use.

*Winter* furnishes a counter example. There, the California Supreme Court held that the publisher of a comic book was entitled to summary judgment on the grounds of the transformative use defense. The cover of the comic book showed cartoon figures based on two musicians (Johnny and Edgar Winter) that were "distorted for purposes of lampoon, parody, or caricature" and drawn as "half-human and half worm [characters] in a larger story." *69 P.3d at 479*. The court held the cartoon characters were sufficiently transformative to defeat a right of publicity action brought by the entirely human persons on which they were based. *Id*.

*Comedy III* and *Winter*, then, bookend the spectrum on which Hallmark's birthday card is located. *Winter* provides an example of a use that is transformative as a matter of law; *Comedy III* illustrates one that is not. As long as Hallmark's card is not in the **[*35]** same category as the comic book in *Winter*, then the anti-SLAPP motion to strike must be denied. For if the card is neither legally transformative nor legally not transformative, then Hilton has shown some probability of success because a trier of fact *might* reasonably consider the card to be not transformative. *See Cal. Civ. Pro. Code § 425.16(b)(1)*.

c

Hilton's basic contention is that Hallmark lifted the entire scene on the card from the "Simple Life" episode, "Sonic Burger Shenanigans." The conceit behind the program was to place Hilton and her friend Nicole Ritchie into the life of an average person, including working for a living. In the episode, the women work at a drive-through fast-food restaurant. They cruise up to customers' cars on roller skates and serve them their orders. True to form, Hilton occasionally remarks that a person, thing, or event is "hot."

Hallmark's card, Hilton claims, is a rip-off of this episode. Hallmark maintains that its card is transformative because the setting is different and the phrase, "that's hot," has become a literal warning about the temperature of a plate of food.

To be sure, there are some differences between the waitressing Hilton does in the **[*36]** "Simple Life" episode and the portrayal in Hallmark's card. Hilton's uniform is different, the style of the restaurant is different (drive-through service rather than sit-down service), and the food is different (burgers-and-fries rather than diner-style bacon and eggs). In the card, the body underneath Hilton's over-sized head is a cartoon drawing of a generic female body rather than a picture of Hilton's real body. Finally, Hilton's catchphrase appears consistently

in its familiar, idiomatic meaning. Despite these differences, however, the basic setting is the same: we see Paris Hilton, born to privilege, working as a waitress.

We need not decide whether these differences render Hallmark's card transformative. They are far afield from the total, phantasmagoric conversion of the musicians into the comic book characters at issue in *Winter*. Although the evocation of the real-life musicians in that case was "less than subtle," they were "merely part of the raw materials from which . . . a larger story, which is itself quite expressive," "w[as] synthesized." *Winter, 69 P.3d at 479*. There is no larger story here, just a spoof on a scene from Hilton's television program. That Hilton's body [*37] is a cartoon representation of a human being in a waitress's outfit, instead of a photograph of Hilton's actual body, does not suffice to analogize this case to *Winter*. The cartoon representations in *Winter* were of "half-human, half-worm" characters. *Id*. Hilton's cartoon body is that of a generic woman. Finally, the worm-like versions of the musicians in *Winter* did things that the actual musicians did not do, such as "engage in wanton acts of violence, murder, and bestiality for pleasure." *Id. at 476*. The version of Hilton in Hallmark's card, however, does almost exactly what Hilton did in "The Simple Life": she serves food to restaurant customers. Even if one adds the literal use of Hilton's catchphrase, this case strikes us as quite close factually, unlike *Winter. See Winter, 69 P.3d at 479* (noting that application of the transformative use test in that case was "not difficult").

We do not hold that Hilton is entitled to judgment as a matter of law, something she has not asked for. We merely hold, construing the facts--here, the greeting card and the video--in her favor, that she has at least some probability of prevailing on the merits before a trier of fact.

d

*Hoffman v. Capital Cities/ABC, Inc., 255 F.3d 1180 (9th Cir. 2001)*, [*38] does not compel a contrary conclusion. Such case involved a magazine feature containing a digitally altered version of the famous image of Dustin Hoffman, dressed in drag, from the movie "Tootsie," with Hoffman's body substituted for that of a male model and the original dress substituted for a dress in fashion at the time. *Id. at 1183*. Hoffman sued the publisher for, among other things, misappropriation of his right of publicity. *Id*. The district court ruled in his favor after a bench trial. *Id*. We reversed on grounds having nothing do with the transformative use defense.

We did, however, mention the defense in a footnote. The California Supreme Court had handed down *Comedy III*, which first established the test, between oral argument and our decision. We found there to be "no question that [the] publication of the 'Tootsie' photograph

contained 'significant transformative elements.' Hoffman's body was eliminated and a new differently clothed body was substituted in its place." *Id. at 1184 n.2* (quoting *Comedy III, 21 P.3d at 808*). In addition, we noted that "the entire theory of Hoffman's case rests on his allegation that the photograph is not a 'true' or 'literal' depiction of him, [*39] but a false portrayal." *Id*.

This case is distinguishable from *Hoffman*. Hilton, unlike Hoffman, does not rest her case on the allegation that the card is not a "true" or "literal" depiction of her. To the contrary, she asserts that the card's depiction copies too closely a scene that she made famous on her television show. The card juxtaposes Hilton's face with a cartoon drawing of a waitress's body, with the composite woman performing the tasks of a waitress and saying Hilton's trademark phrase. Hilton herself wore a waitress's uniform, served customers, and said, "That's hot," in an episode of "The Simple Life." By contrast, in *Hoffman*, the disputed photograph in a magazine simply depicted Hoffman's face atop the body of a male model wearing a dress. Although Hoffman had worn a woman's dress in "Tootsie," a film that predated the magazine photograph, the composite person looked very different and was not doing or saying anything that one would have attributed to Hoffman himself. Therefore, although it was clear to this court that the composite photograph in *Hoffman* contained transformative elements, the composite here more closely resembles Hilton's previous work and, thus, we do not [*40] find the answer to the question to be as clear.

We therefore reject Hallmark's argument that it is entitled to the transformative use defense as a matter of law.

2

We turn to Hallmark's last redoubt: the "public interest" defense.

Under California law, "no cause of action will lie for the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it." *Montana v. San Jose Mercury News, Inc., 34 Cal. App. 4th 790, 40 Cal. Rptr. 2d 639, 640 (Ct. App. 1995)* (internal quotation marks and alterations omitted). "Public interest attaches to people who by their accomplishments or mode of living create a bona fide attention to their activities." *Dora v. Frontline Video, Inc., 15 Cal. App. 4th 536, 18 Cal. Rptr. 2d 790, 792 (Ct. App. 1993)*.

This defense does not help Hallmark, however, because, by its terms, it only precludes liability for "the publication of matters in the public interest." *Montana, 40 Cal. Rptr. 2d at 640* (internal quotation marks omitted). The case that established the defense explicitly

2009 U.S. App. LEXIS 19571, *

linked it to the publication of newsworthy items. *See Eastwood, 198 Cal. Rptr. at 349-50* ("The scope of the privilege extends to almost all *reporting* of recent events **[\*41]** even though it involves the publication of a purely private person's name or likeness." (emphasis added)). Later opinions confirm the impression that it is about such publication or reporting. *See Montana, 40 Cal. Rptr. 2d at 640-42* (allowing the defense for a newspaper's commemorative posters of the Super Bowl victories of the San Francisco 49'ers); *Dora, 18 Cal. Rptr. 2d at 792-94* (allowing the defense for a documentary about surf culture).

We must conclude that Hallmark cannot employ the "public interest" defense because its birthday card does not publish or report information.

IV

For the foregoing reasons, we AFFIRM the denial of Hallmark's motion to strike pursuant to California's anti-SLAPP statute, but DISMISS the appeal of the denial of Hallmark's motion to dismiss the misappropriation of publicity claim and the Lanham Act claim. We REMAND for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.