PAGES 1 - 35

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VAUGHN R. WALKER

IN RE:  NCAA STUDENT-ATHLETE          )
NAME AND LIKENESS LICENSING           )
LITIGATION                            )
                                      )  NO.  C 09-1967 VRW
                                      )
                                      )  SAN FRANCISCO, CALIFORNIA
                                      )  TUESDAY, JULY 6, 2010
_____)


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF**          HAGENS, BERMAN, SOBOL, SHAPIRO, LLP
**KELLER**                 1918 EIGHTH AVENUE, SUITE 3300
                           SEATTLE, WASHINGTON  98101
                    BY:  **STEVE W. BERMAN, ESQUIRE**


                           HAGENS, BERMAN, SOBOL, SHAPIRO, LLP
                           11 WEST JEFFERSON STREET, SUITE 1000
                           PHOENIX, ARIZONA  85003
                    BY:  **ROBERT B. CAREY, ESQUIRE**
                         **LEONARD W. ARAGON, ESQUIRE**


                           WEINSTEIN, KITCHENOFF & ASHER, LLC
                           1845 WALNUT STREET, SUITE 1100
                           PHILADELPHIA, PENNSYLVANIA  19103
                    BY:  **STEVEN A. ASHER, ESQUIRE**


(FURTHER APPEARANCES ON FOLLOWING PAGES)


*REPORTED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
*             OFFICIAL COURT REPORTER, U.S. DISTRICT COURT*

1   **APPEARANCES (CONTINUED):**

2

3   **FOR PLAINTIFF**          THE PAYNTER LAW FIRM, PLLC
    **KELLER**                 1200 G STREET N.W., SUITE 800
                               WASHINGTON, D.C.
4                     **BY:**  **STUART M. PAYNTER, ESQUIRE**

5

6   **FOR PLAINTIFF**          HAUSFELD, LLP
    **O'BANNON**               44 MONTGOMERY STREET, SUITE 3400
                               SAN FRANCISCO, CALIFORNIA  94104
7                     **BY:**  **MICHAEL P. LEHMANN, ESQUIRE**
                               **JON T. KING, ESQUIRE**
8                              **ARTHUR N. BAILEY, JR., ESQUIRE**

9

10                             HAUSFELD, LLP
                               11 BROADWAY, SUITE 615
                               NEW YORK, NEW YORK  10004
11                    **BY:**  **STEIG D. OLSON, ESQUIRE**

12

13                             PEARSON, SIMON, WARSHAW, PENNY, LLP
                               44 MONTGOMERY STREET, SUITE 2450
                               SAN FRANCISCO, CALIFORNIA  94104
14                    **BY:**  **JESSICA L. GRANT, ESQUIRE**

15

16                             BOIES, SCHILLER & FLEXNER, LLP
                               5301 WISCONSIN AVENUE, N.W.
                               WASHINGTON, D.C.  20015
17                    **BY:**  **TANYA S. CHUTKAN, ESQUIRE**

18

19  **FOR PLAINTIFFS**         LIEFF, CABRASER, HEIMANN &
    **RHODES AND NEWSOME**        BERNSTEIN, LLP
                               EMBARCADERO CENTER WEST
20                             275 BATTERY STREET, 30TH FLOOR
                               SAN FRANCISCO, CALIFORNIA  94111
21                    **BY:**  **ERIC B. FASTIFF, ESQUIRE**

22

23

24

25

1  **APPEARANCES (CONTINUED):**

2

  **FOR DEFENDANT**        KEKER & VAN NEST, LLP
3  **ELECTRONIC ARTS**      710 SANSOME STREET
                           SAN FRANCISCO, CALIFORNIA  94111
4                      BY: **ROBERT A. VAN NEST, ESQUIRE**
                           **ADAM LAURIDSEN, ESQUIRE**
5

6  **FOR DEFENDANT NCAA**     MILLER, CANFIELD, PADDOCK & STONE, PLLC
                           500 FIFTH AVENUE, SUITE 1815
7                             NEW YORK, NEW YORK  10110
                    BY: **GREGORY L. CURTNER, ESQUIRE**
8                             **ROBERT WIERENGA, ESQUIRE**

9

                           STEYER, LOWENTHAL, BOODROOKAS,
10                             ALVAREZ & SMITH, LLP
                           ONE CALIFORNIA STREET, THIRD FLOOR
11                            SAN FRANCISCO, CALIFORNIA  94111
                    BY: **ALLAN STEYER, ESQUIRE**
12

13                            NATIONAL COLLEGIATE ATHLETIC
                            ASSOCIATION
14                            P.O. BOX 6222
                           INDIANAPOLIS, INDIANA  46206
15                     BY: **ELSA KIRCHER COLE, ESQUIRE**

16

  **FOR DEFENDANT CLC**      FILICE, BROWN, EAASA & MCLEOD, LLP
17                            1999 HARRISON STREET, SUITE 1800
                           OAKLAND, CALIFORNIA  94612
18                     BY: **GENNARO A. FILICE, III, ESQUIRE**

19

                           KIRKPATRICK, STOCKTON, LLP
20                            607 14TH STREET, NW
                           SUITE 900
21                            WASHINGTON, D.C.  20005
                    BY: **PETER M. BOYLE, ESQUIRE**
22

23

24

25

1                 **PROCEEDING; MONDAY, JULY 12, 2010**

2

3           **THE CLERK:**  OUR LAST MATTER:  CIVIL DOCKET

4    NO. 09-1967, IN RE: NCAA, STUDENT-ATHLETE NAME AND LIKENESS

5    LICENSING LITIGATION.

6           **MR. VAN NEST:**  GOOD MORNING, YOUR HONOR.  BOB

7    VAN NEST FOR ELECTRONIC ARTS.

8           **THE COURT:**  GOOD MORNING, MR. VAN NEST.

9           **MR. CURTNER:**  GOOD MORNING, YOUR HONOR.  GREG CURTNER

10   ON BEHALF OF THE NCAA.

11          **THE COURT:**  MR. CURTNER, GOOD MORNING.

12          **MR. WIERENGA:**  GOOD MORNING, YOUR HONOR.  BOB

13   WIERENGA ON BEHALF OF THE NCAA.

14          **THE COURT:**  MR. WIERENGA, GOOD MORNING.

15          **MR. BOYLE:**  GOOD MORNING, YOUR HONOR.  PETER BOYLE ON

16   BEHALF OF CLC.

17          **THE COURT:**  GOOD MORNING, MR. BOYLE.

18          **MR. BERMAN:**  GOOD MORNING, YOUR HONOR.  STEVE BERMAN

19   AND ROB CAREY ON BEHALF OF THE KELLER PLAINTIFFS.

20          **THE COURT:**  GOOD MORNING, MR. BERMAN.

21          **MR. LEHMANN:**  GOOD MORNING, YOUR HONOR.  MICHAEL

22   LEHMANN ON BEHALF OF THE O'BANNON ANTITRUST PLAINTIFFS.

23          **THE COURT:**  GOOD MORNING, MR. LEHMANN.

24          **MR. OLSON:**  GOOD MORNING, YOUR HONOR.  STEIG OLSON ON

25   BEHALF OF THE O'BANNON ANTITRUST PLAINTIFFS.

1          **THE COURT:**  MR. OLSON.

2          **MR. KING:**  GOOD MORNING, YOUR HONOR.  JON KING ON

3    BEHALF OF THE O'BANNON ANTITRUST PLAINTIFFS.  AND ALSO WITH US

4    TODAY IS THE PLAINTIFF ED O'BANNON.

5          **THE COURT:**  GOOD MORNING.

6          **MR. O'BANNON:**  GOOD MORNING, YOUR HONOR.

7          **MS. CHUTKAN:**  GOOD MORNING, YOUR HONOR.  TANYA

8    CHUTKAN ON BEHALF OF THE O'BANNON ANTITRUST PLAINTIFFS.

9          **THE COURT:**  GOOD MORNING.

10          **MR. ASHER:**  GOOD MORNING, YOUR HONOR.  MY NAME IS

11    STEPHEN ASHER.  I'M COUNSEL FOR BRIAN BISHOP WHO IS ONE OF THE

12    KELLER PLAINTIFFS.

13          **THE COURT:**  GOOD MORNING, MR. ASHER.

14          NOW, IS THAT EVERYBODY?

15          **MR. CURTNER:**  YOUR HONOR, I DID NOT INTRODUCE ELSA

16    COLE, WHO IS THE GENERAL COUNSEL OF THE NCAA.

17          **THE COURT:**  GOOD MORNING.

18          **MS. COLE:**  GOOD MORNING.

19          **THE COURT:**  LET'S SEE.  WHERE DO WE START?

20          MR. VAN NEST, LET'S START WITH YOU.  WHAT'S GOING ON

21    AT THE NINTH CIRCUIT IN CONNECTION WITH THIS CASE?

22          **MR. VAN NEST:**  WELL, WE HAVE A BRIEFING SCHEDULE,

23    YOUR HONOR.  WE HAVE OPENING BRIEFS DUE AUGUST 30.  WE'LL GO

24    FROM THERE.

25          I EXPECT TO HAVE THE CASE FULLY BRIEFED BY THE LATE

1   FALL AND THEN A HEARING DATE TO FOLLOW AT THEIR PLEASURE,

2   PROBABLY EARLY NEXT YEAR; THAT'S MY EXPECTATION.

3          **THE COURT:**  WHERE DOES THAT LEAVE US?

4          **MR. VAN NEST:**  WELL --

5          **THE COURT:**  OR I SHOULD SAY, WHERE DOES THAT LEAVE

6   ME?

7          **MR. VAN NEST:**  WELL, I THINK AS TO KELLER, IT LEAVES

8   YOUR HONOR WITHOUT ANYTHING TO DO YET.  I THINK OUR APPEAL IS

9   CLEARLY SUBJECT TO RIGHT UNDER THE COLLATERAL ORDER DOCTRINE,

10  AND WE THINK THAT DIVESTS THIS COURT OF JURISDICTION OF KELLER

11  UNTIL THE APPEAL IS RESOLVED.  WE BRIEFED THAT.  THIS WAS

12  PENDING WITH JUDGE WILKEN WHEN THE CASE WAS RELATED.

13         **THE COURT:**  SHE DID NOT RULE ON THAT?

14         **MR. VAN NEST:**  SHE DID NOT.  SHE SAID THAT NO ONE

15  WOULD BE OBLIGED TO ANSWER THE CONSOLIDATED COMPLAINT UNTIL 30

16  DAYS AFTER THE STAY MOTION WAS RESOLVED, AND THE PARTIES HAVE

17  STIPULATED THERE BE NO DISCOVERY UNTIL THEN.

18         SO, THAT'S KELLER.  AND THE MOTION'S PENDING.  IT'S

19  FULLY BRIEFED.

20         AS TO O'BANNON WHERE A STAY WOULD BE DISCRETIONARY,

21  AT LEAST FROM ELECTRONIC ARTS' STANDPOINT, ALSO IN THE BRIEFING,

22  THE COURT OUGHT TO STAY O'BANNON PENDING THE APPEAL AS WELL

23  BECAUSE THE ISSUES ARE INTERRELATED.

24         THE WHOLE POINT OF HAVING AN INTERIM APPEAL IS TO

25  PROTECT A DEFENDANT WHO'S PUBLISHED SOMETHING FROM GOING FORWARD

1   AND SPENDING TIME AND MONEY ON LITIGATION.  IF YOUR HONOR WERE

2   TO LEAVE US SUBJECT TO DISCOVERY IN O'BANNON, THAT PURPOSE WOULD

3   BE DEFEATED.  WE'D ALSO GET INTO LOTS OF FIGHTS, I'M SURE, ABOUT

4   THE SCOPE OF THE STAY.

5          **THE COURT:**  YOU'D WHAT?

6          **MR. VAN NEST:**  I'M SURE THERE WOULD BE A LOT OF

7   DISAGREEMENT IF O'BANNON WERE TO GO FORWARD AS TO ELECTRONICS

8   ARTS, DISAGREEMENT OVER THE SCOPE OF THE STAY IN KELLER.

9              ESSENTIALLY, THE CLAIMS AGAINST ELECTRONIC ARTS IN

10  BOTH CASES ARE VERY SIMILAR.  THEY'RE SAYING WE IMPROPERLY USED

11  THE LIKENESS AND THE NAMES OF STUDENTS, AND WE'RE SAYING THAT

12  THE GAMES AS PUBLISHED ARE SUBJECT TO PROTECTION BY THE FIRST

13  AMENDMENT.  THAT'S THE ISSUE THAT'S PENDING RIGHT NOW IN THE

14  NINTH CIRCUIT.

15             SO, FROM OUR STANDPOINT, THE MOTION THAT WE HAVE

16  PENDING THAT WAS IN FRONT OF JUDGE WILKEN WAS A MOTION FOR THE

17  COURT TO ACKNOWLEDGE AN AUTOMATIC STAY IN KELLER AND TO GRANT A

18  DISCRETIONARY STAY IN O'BANNON.

19             AGAIN, I THINK GIVEN THE SCHEDULE WE HAVE IN THE

20  NINTH CIRCUIT, WE ARE LIKELY TO HAVE ARGUMENT THERE EARLY NEXT

21  YEAR AND A DECISION SOON THEREAFTER.

22          **THE COURT:**  HOW DOES, IF AT ALL, THE RECENT SEPARATE

23  SUPREME COURT CASE, THE ONE THAT JUSTICE SOTOMAYOR WROTE

24  EARLIER, I BELIEVE THIS YEAR, EITHER THIS YEAR OR LATE LAST

25  YEAR, HOW DOES THAT EFFECT THE MOTION TO STAY?  COLLATERAL ORDER

1   DOCTRINE.

2         **MR. VAN NEST:** THE *MOHAWK*, YOUR HONOR.

3         **THE COURT:** *MOHAWK*.

4         **MR. VAN NEST:** *MOHAWK*. I DON'T THINK IT AFFECTS IT

5   AT ALL.

6         *MOHAWK* WAS LIMITED TO WHAT HAPPENS WHEN YOU HAVE

7   ATTORNEY-CLIENT PRIVILEGE CLAIMS, AND THEY ARE CONTESTED, AND DO

8   THE ATTORNEYS -- DO THE CLIENTS HAVE TO TURN OVER THE

9   INFORMATION WHEN THE DISTRICT COURT HAS ORDERED IT THUS. IT WAS

10  LIMITED TO THAT CONTEXT.

11        THE NINTH CIRCUIT'S BEEN CLEAR IN THE ANTI-SLAPP

12  CONTEXT THAT, JUST AS RECENTLY AS A COUPLE OF MONTHS AGO IN THE

13  *HILTON* CASE, THAT IT IS SUBJECT TO THE COLLATERAL ORDER

14  DOCTRINE, AUTOMATICALLY APPEALABLE, AND THERE'S REALLY NO DEBATE

15  ON THAT POINT.

16        THE DEBATE IS WHETHER THERE SHOULD BE AN AUTOMATIC

17  STAY IN KELLER AND WHETHER THAT STAY SHOULD ALSO BE IMPOSED IN

18  O'BANNON, AND THAT'S WHAT'S BEEN FULLY BRIEFED IN THE PAPERS.

19        THE ONLY -- EXCUSE ME. I THINK THAT'S IT.

20        **THE COURT:** ALL RIGHT. WHO WANTS TO BE HEARD ON THE

21  OTHER SIDE OF THIS? MR. BERMAN?

22        **MR. BERMAN:** YES, YOUR HONOR, I'LL BE SPEAKING ON

23  BEHALF OF THE POSITION OF THE KELLER PLAINTIFFS.

24        THE MATTER SHOULD NOT BE STAYED. THAT'S OUR

25  POSITION. AND WE SHOULD GO FORWARD. WE BRIEFED THE STAY

```
 1  MOTION.  I'LL BRIEFLY MENTION WHY WE THINK A STAY IS NOT

 2  APPROPRIATE HERE.

 3          FIRST, THERE'S NO AUTOMATIC STAY AS THE DEFENDANTS

 4  CONTEST.  THERE'S A CASE ON POINT, WE THINK, THE *HILTON* CASE, IN

 5  WHICH THE COURT CONSIDERED BOTH AN ANTI-SLAPP ISSUE AND A MOTION

 6  TO DISMISS, AND DECIDED IT ONLY NEEDED TO DECIDE THE SLAPP ISSUE

 7  AND LEFT ALONE THE MOTION TO DISMISS.  SO THE KEY CASE IN THE

 8  NINTH CIRCUIT HAS THE EXACT SAME FACT PATTERN WE HAVE HERE, AND

 9  WE DON'T THINK THERE IS THIS AUTOMATIC STAY THAT YOU'RE INTO THE

10  DISCRETIONARY PORTION OF YOUR DECISION MAKING.

11          THERE'S TWO OTHER REASONS WHY WE DON'T THINK THERE'S

12  AN AUTOMATIC STAY.  ONE IS THAT:  IN THE AMENDED COMPLAINT, AS

13  IN THE ORIGINAL COMPLAINT, THERE'S ALSO A CLAIM UNDER THE

14  INDIANA PRIVACY STATUTE.  WE DON'T BELIEVE THE CALIFORNIA SLAPP

15  PROCEEDINGS WOULD APPLY TO THAT CLAIM, AND YOU HAVE JURISDICTION

16  OVER THAT CLAIM.

17          **THE COURT:**  AND THAT INDIANA CLAIM, IS IT IN KELLER?

18          **MR. BERMAN:**  IT IS IN THE KELLER CASE.

19          **THE COURT:**  IS IT ALSO IN O'BANNON?

20          **MR. BERMAN:**  IT IS NOT.  O'BANNON HAS THE ANTITRUST

21  ISSUES.  WE'VE COMPARTMENTALIZED THE CLAIMS.  SO YOU HAVE

22  JURISDICTION OVER THAT CLAIM.

23          THE THIRD REASON WHY THERE'S NO AUTOMATIC STAY IS:

24  THE CASES SAY IF YOU CAN SHOW THE TRIAL COURT THAT THE ARGUMENT

25  IN THE NINTH CIRCUIT IS FRIVOLOUS, THEN THERE'S NO AUTOMATIC
```

1   STAY.  AND THE ARGUMENT HERE IS FRIVOLOUS FOR ONE SIMPLE REASON.

2   THEY CLAIM THEY HAVE FIRST AMENDED PROTECTION, BUT THEY

3   CONTRACTUALLY COMMITTED THAT THEY WOULD NOT USE THE PLAYERS'

4   LIKENESS.

5           SO IF THEY HAD A FIRST AMENDMENT RIGHT, THEY GAVE IT

6   AWAY.  THEY SAID:  WE DON'T DO IT.  BUT THEY DID IT ANYWAY.

7   THEY HAVE A FRIVOLOUS APPEAL IN THE NINTH CIRCUIT.  THERE SHOULD

8   BE NO AUTOMATIC STAY.

9           THE DISCRETIONARY FACTORS, THE FOUR FACTORS WE POINT

10  IN OUR BRIEF, THEY CAN'T COME CLOSE TO MEETING.  THEY CAN'T SHOW

11  PREJUDICE.  THEY CAN'T SHOW A SUBSTANTIAL LIKELIHOOD OF

12  SUCCEEDING ON THE MERITS.  JUDGE WILKEN'S OPINION I THINK IS

13  THOROUGHLY GROUNDED IN THE NINTH CIRCUIT CASE LAW.

14          SO THERE SHOULD BE NO AUTOMATIC STAY, AND THERE

15  SHOULD BE NO DISCRETIONARY STAY.

16          AND AS FOR THE NEXT STEPS, WE THINK WE SHOULD SET

17  SOME KIND OF SCHEDULE.  THAT'S OUR POSITION.

18          **THE COURT:**  OKAY.  MR. OLSON.

19          **MR. OLSON:**  GOOD MORNING, YOUR HONOR.

20          YOUR HONOR, I'LL ADDRESS THE O'BANNON ANTITRUST

21  MATTER, AND OUR POSITION IS THAT NO MATTER WHAT HAPPENS WITH

22  RESPECT TO THE KELLER MATTER, UNDER WHAT WE FEEL IS SETTLED,

23  ESSENTIALLY, BLACK LETTER LAW, THERE CAN BE NO DISCRETIONARY

24  STAY IN THE O'BANNON MATTER.

25          THE STANDARD FOR A DISCRETIONARY STAY WAS SET OUT

1    VERY CLEARLY LAST YEAR BY THE SUPREME COURT IN THE *NKEN V.*

2    *HOLDER* CASE.  THE FIRST WORD IS N-K-E-N.

3              THERE THE VERY QUESTION THE COURT WAS ADDRESSING WAS:

4    WHAT IS THE STANDARD FOR DISCRETIONARY STAY AND HOW STRINGENT

5    SHOULD IT BE?  AND THE COURT RULED THERE ARE FOUR FACTORS THAT A

6    COURT MUST CONSIDER WHEN CONSIDERING WHETHER TO IMPOSE A

7    DISCRETIONARY STAY LIKE THE ONE REQUESTED HERE.

8              THE FIRST FACTOR IS WHETHER THE STAY APPLICANT HAS

9    MADE A STRONG SHOWING THAT THE APPEAL IN QUESTION IS LIKELY TO

10   SUCCEED ON THE MERITS.

11             THE SECOND IS WHETHER THE APPLICANT WILL BE, QUOTE,

12   IRREPARABLY INJURED ABSENT A STAY.

13             THE THIRD IS WHETHER ISSUANCE OF THE STAY WILL

14   SUBSTANTIALLY INJURE OTHER PARTIES.

15             AND THE FOURTH IS WHERE THE PUBLIC INTEREST LIES.

16             LET'S JUST FOCUS ON THE FIRST TWO, BECAUSE THE

17   SUPREME COURT SAID THESE TWO ARE THE MOST CRITICAL.

18             NOW, BEFORE TURNING TO THEM, LET ME POINT OUT THAT

19   DEFENDANTS DON'T EVEN REALLY TRY TO SATISFY THE STANDARD.  AS

20   EA'S COUNSEL ARGUED TODAY, THE O'BANNON MATTER SHOULD BE STAYED

21   BECAUSE THERE'S SOME RELATED ISSUES ON APPEAL.  THAT IS VERY

22   CLEARLY NOT THE STANDARD THAT THE SUPREME COURT HAS HELD THIS

23   COURT MUST APPLY.

24             THE DEFENDANTS TRY TO BORROW FROM A 1936 SUPREME

25   COURT DECISION, THE *LANDIS* CASE, WHICH, ALTHOUGH RULING THAT

1    COURTS LIKE YOUR HONOR HAVE THE POWER TO IMPOSE DISCRETIONARY

2    STAYS, DID NOT ACTUALLY TACKLE WHAT THE EXACT STANDARD WAS.

3    THAT WAS TACKLED BY THE *NKEN* CASE AND ITS RESULT.

4            NOW, FOCUSING ON THE FIRST TWO FACTORS, WHICH ARE THE

5    MOST CRITICAL FOR THE COURT TO CONSIDER, WHETHER THE STAY

6    APPLICANT HAS MADE A STRONG SHOWING THAT THEY'RE LIKELY TO

7    SUCCEED ON THE MERITS, IT'S IMPORTANT TO NOTE THAT WHAT'S ON

8    APPEAL HERE IS THE APPEAL OF A DENIAL OF A MOTION TO STRIKE.

9            NOW, IN ORDER TO SUCCEED ON THAT MOTION, AND, HENCE,

10   ON THE APPEAL, EA MUST DEMONSTRATE THAT KELLER'S CLAIM LACKS

11   MERIT TO SUCH A DEGREE THAT IT DOES NOT EVEN HAVE ANY MINIMAL

12   MERIT.

13           NOW, ANOTHER CASE FROM LAST YEAR IN THE NINTH

14   CIRCUIT, THE *HILTON V. HALLMARK CARDS* CASE, APPLIED THAT

15   STANDARD.  AND WHAT IT SAYS WAS THAT TO SUCCEED ON THE APPEAL OF

16   DENIAL OF A MOTION TO STRIKE, EA MUST SHOW THAT ITS FIRST

17   AMENDMENT AFFIRMATIVE DEFENSE IS SO STRONG THAT IT'S ENTITLED TO

18   THAT DEFENSE AS A MATTER OF LAW, THAT NO REASONABLE JUROR COULD

19   POSSIBLY FIND FOR THE KELLER PLAINTIFFS.

20           THAT'S THE STANDARD UNDER THE *HILTON* CASE THAT EA

21   WILL HAVE TO MEET IN ORDER TO SURVIVE ON ITS APPEAL, AND EA CAN

22   COME NOWHERE CLOSE TO SATISFYING THAT STANDARD.  AS WE KNOW,

23   JUDGE WILKEN FOUND VERY CLEARLY THAT EA WASN'T ENTITLED TO THAT

24   FIRST AMENDMENT DEFENSE AS A MATTER OF LAW.

25           THE SECOND THING EA AND THE OTHER DEFENDANTS MUST

1   SHOW TO OBTAIN THE DISCRETIONARY STAY IS THAT THEY WILL BE

2   IRREPARABLY INJURED ABSENT A STAY.

3          NOW, NCAA AND CLC DON'T EVEN MAKE ANY COLORABLE

4   ATTEMPT TO MEET THAT STANDARD.  IT'S VERY CLEAR UNDER NINTH

5   CIRCUIT LAW, THE *LOCKYER V. MIRANT* CASE, THAT THE MERE PENDENCY

6   OF A LAWSUIT AGAINST YOU IS NOT IRREPARABLE INJURY.

7          EA MAKES SOME SORT OF ARGUMENT ABOUT IT WOULD BE

8   IRREPARABLY INJURED IF THE O'BANNON CASE PROCEEDS BECAUSE ITS

9   SPEECH COULD BE CHILLED IN SOME FASHION, BUT THAT'S NOT A

10  CONVINCING ARGUMENT.

11         IF THIS CASE PROCEEDS, EA WILL NOT HAVE TO DO

12  ANYTHING DIFFERENT THAN IT'S ALWAYS DONE WITH RESPECT TO ITS

13  VIDEO GAMES.  THERE WILL BE NO SPEECH THAT'S CHILLED.

14         SO, THE FIRST TWO STANDARDS THIS COURT HAS TO APPLY

15  TO IMPOSE A DISCRETIONARY STAY IN THE O'BANNON CASE SIMPLY

16  CANNOT BE SATISFIED, AND THOSE ARE THE MOST CRITICAL.

17         THE THIRD, OF COURSE, IS WHETHER THE O'BANNON

18  PLAINTIFFS WOULD SUFFER INJURY, AND WE SUBMIT THEY WOULD.  OUR

19  CASE --

20         **THE COURT:**  WHAT IS THAT INJURY?

21         **MR. OLSON:**  OUR CASE ADVANCES A CLAIM FOR INJUNCTIVE

22  RELIEF ON BEHALF OF A CLASS OF MEN WHO WE ALLEGE HAVE BEEN, AND

23  ARE TO THIS DAY, AND GOING FORWARD, SYSTEMATICALLY EXPLOITED BY

24  THE DEFENDANTS.

25         THEY'RE ONE OF THE ONLY CLASSES OF PEOPLE IN THIS

1   COUNTRY WHO CAN HAVE THEIR IMAGES SPLASHED ACROSS A VARIETY OF

2   MEDIUMS FOR PROFIT, AND THEY'RE CUT OFF FROM SEEING A DIME.

3          WE'VE ALLEGED IN OUR COMPLAINT -- THESE ARE AT

4   PARAGRAPHS 347 TO 349 -- THAT VERY RECENTLY THE NCAA IS

5   LAUNCHING YET ANOTHER WAY TO EXPLOIT THE IMAGES OF THESE FORMER

6   COLLEGE ATHLETES THAT -- WITHOUT PAYING THEM ANY COMPENSATION.

7   THIS IS THE VAULT SYSTEM THAT THE NCAA JUST LAUNCHED WITHIN THE

8   LAST FEW MONTHS.

9          SO, WE HAVE AN INJUNCTIVE RELIEF CLAIM.

10          AGAIN, IF THE COURT LOOKS AT THE *LOCKYER V. MIRANT*

11   CASE, THE NINTH CIRCUIT HELD WHEN THERE IS ONGOING COMPETITIVE

12   HARM BEING CHALLENGED THROUGH INJUNCTIVE RELIEF, THAT THERE IS A

13   HARM TO PLAINTIFFS IF THEY ARE STOPPED FROM PROCEEDING TO

14   JUDGMENT ON THOSE CLAIMS.  AND LET'S KEEP IN MIND, OF COURSE,

15   YOUR HONOR, THAT THE NINTH CIRCUIT COULD TAKE A YEAR TO TWO

16   YEARS TO ACT ON THE APPEAL.

17          **THE COURT:**  I AM AWARE OF THAT.

18          **MR. OLSON:**  OF COURSE YOU ARE.

19          FINALLY, THERE'S THE QUESTION ABOUT THE PUBLIC

20   INTEREST.  THAT'S THE FOURTH FACTOR.  THAT OVERLAPS.

21          AGAIN, WE THINK THIS CASE PRESENTS A VERY SIGNIFICANT

22   CHALLENGE ABOUT A CLASS OF INDIVIDUALS WHO HAVE BEEN EXPLOITED.

23   THE PUBLIC INTEREST LIES IN FAVOR OF EXPEDITIOUS RESOLUTION OF

24   THE CLAIM.

25          SO, IN SUM, YOUR HONOR, THERE ARE NO GROUNDS FOR

 1  STAYING THE O'BANNON FEDERAL ANTITRUST CLAIMS.

 2          THANK YOU.

 3          **THE COURT:**  MR. VAN NEST, DO YOU WANT TO RESPOND?

 4          **MR. VAN NEST:**  I WILL IF THE COURT WILL ALLOW.

 5          JUST A COUPLE OF POINTS ON KELLER:  ONE, CLEARLY, THE

 6  *HILTON* CASE DID NOT RESOLVE WHETHER OR NOT THERE'S A STAY HERE.

 7  WE DID FILE A MOTION TO DISMISS.  THAT WAS, ESSENTIALLY, A

 8  COPYCAT MOTION.  OUR MOTION -- OUR ANTI-SLAPP MOTION -- IN OTHER

 9  WORDS, IT DUPLICATED THE SAME ARGUMENTS THAT WERE MADE IN THE

10  ANTI-SLAPP MOTION.

11          **THE COURT:**  YOU ARE NOT TELLING ME YOU FILED A

12  COPYCAT MOTION?

13          **MR. VAN NEST:**  IT REITERATED THE SAME ISSUES, LET'S

14  PUT IT THAT WAY.

15          **THE COURT:**  I SEE.  A REITERATIVE MOTION.

16          **MR. VAN NEST:**  A REITERATIVE MOTION.

17          THAT MOTION -- WE HAVEN'T APPEALED THAT MOTION.  I

18  MEAN, THE ONLY APPEAL RIGHT NOW FROM *KELLER* IS FROM THE

19  ANTI-SLAPP, JUDGE WILKEN DENIAL OF ANTI-SLAPP.  THAT MOTION IS

20  CLEARLY SUBJECT TO APPEAL.  THERE'S NO ISSUE OF INTERTWINING

21  ISSUES.  WE'RE NOT ASKING FOR ANY OTHER MOTION TO BE REVIEWED BY

22  THE NINTH CIRCUIT NOW.  NUMBER ONE.

23          NUMBER TWO, THIS SO-CALLED INDIANA RIGHT OF PUBLICITY

24  CLAIM WASN'T IN THE CASE AT THE BEGINNING, WASN'T IN THE CASE

25  WHEN THE MOTION WAS HEARD.

1            **THE COURT:**  WHAT DIFFERENCE DOES THAT MAKE?  IT'S IN

2  NOW.

3            **MR. VAN NEST:**  IT'S IN NOW, BUT IT WAS FILED AFTER

4  THE AUTOMATIC STAY, WE BELIEVE, BECAME EFFECTIVE.

5            IF YOUR HONOR WOULD LIKE US TO BRIEF THAT AND

6  DEMONSTRATE IT'S ALSO SUBJECT TO THE CALIFORNIA ANTI-SLAPP,

7  WHICH IT IS, WE COULD CERTAINLY DO THAT.  BUT I THINK WE'LL BE

8  BACK HERE IN THE SAME PLACE WE'RE IN RIGHT NOW.

9            **THE COURT:**  HOW IS THAT?  HOW COULD A CLAIM UNDER AN

10  INDIANA STATUTE, NOT SUBJECT TO CALIFORNIA LAW, BE SUBJECT TO

11  THE CALIFORNIA ANTI-SLAPP STATUTE?

12            **MR. VAN NEST:**  IT'S A CLAIM AGAINST A CALIFORNIA

13  BUSINESS THAT CHALLENGES OUR RIGHT TO PUBLISH A VIDEO GAME.

14  AND, BASED ON THAT, IT HAS THE SAME EFFECT AS ANY OTHER COMMON

15  LAW COUNT OR STATUTORY COUNT.

16            THE ANTI-SLAPP RULES ARE NOT LIMITED TO CALIFORNIA

17  CAUSES OF ACTION.  THEY ARE LIMITED TO STATE CAUSES OF ACTION,

18  NOT FEDERAL, BUT THEY ARE CERTAINLY NOT LIMITED.

19            THEY'VE THROWN THIS IN AFTER JUDGE WILKEN RULED,

20  AFTER OUR APPEAL WAS FILED.  AFTER WE SAY THE AUTOMATIC STAY

21  BECAME EFFECTIVE, THIS NEW CLAIM WAS THROWN IN IN MARCH, JUST A

22  COUPLE OF MONTHS AGO.

23            THAT ONE WE HAVEN'T HAD EVEN HAD A CHANCE TO RESPOND

24  TO.  IF WE WERE, WE WOULD BE MAKING AN ANTI-SLAPP MOTION AS TO

25  THAT CLAIM AS WELL.

1        AS TO THE THIRD CLAIM THAT MR. BERMAN MADE AS TO OUR

2   APPEAL BEING FRIVOLOUS, CERTAINLY, WE RAISE VERY SUBSTANTIAL

3   QUESTIONS UNDER BOTH THE TRANSFORMATIVE USE TEST AND THE PUBLIC

4   INTEREST TEST.

5        JUDGE WILKEN'S OPINION WAS GROUNDED LARGELY IN

6   LANGUAGE FROM THE *HILTON* CASE, WHICH HAS BEEN MODIFIED

7   SUBSTANTIALLY SINCE HER OPINION ISSUED.  SHE RELIED ON LANGUAGE

8   IN THAT CASE THAT IS NOW NO LONGER PART OF THE *HILTON* OPINION,

9   THAT'S WHY, IN PART, THIS APPEAL IS GOING TO PRESENT SOME VERY

10  SIGNIFICANT SERIOUS ISSUES IN THE NINTH CIRCUIT.

11        WITH RESPECT TO O'BANNON, WE ACKNOWLEDGE THERE'S NO

12  AUTOMATIC RIGHT TO A STAY THERE, BUT THE WHOLE PRINCIPLE OF THE

13  ANTI-SLAPP RULES, OR PRIMARY PRINCIPAL, IS TO PROTECT THE

14  DEFENDANT FROM TIME CONSUMING AND COSTLY LITIGATION.  THAT'S WHY

15  THERE'S A RIGHT OF AN AUTOMATIC APPEAL, AND THE NINTH CIRCUIT

16  HEARS THESE IMMEDIATELY.

17        **THE COURT:**  LET'S ASSUME FOR THE SAKE OF ARGUMENT I

18  AGREE WITH YOU WITH RESPECT TO THE KELLER CASE, THAT IT MAKES

19  SENSE TO STAY THAT CASE.  O'BANNON RAISES SUFFICIENTLY DIFFERENT

20  ISSUES, DOES IT NOT, THAT IT WOULD MAKE SENSE TO PROCEED WITH

21  THE O'BANNON CASE SO WE COULD MAKE SOME PROGRESS IN MOVING THAT

22  CASE ALONG, AND THEN, PERHAPS AT SOME POINT, IF THE ANTI-SLAPP

23  MOTION DOES NOT SUCCEED IN KELLER, AT LEAST THE O'BANNON ISSUES

24  WILL HAVE BEEN DEVELOPED.

25        **MR. VAN NEST:**  I WILL SAY THIS, YOUR HONOR -- AND I

1   DON'T WANT TO PREEMPT MY COLLEAGUES.

2           **THE COURT:**  I SEE THIS HAS GOTTEN YOUR COLLEAGUE

3   MR. CURTNER ON HIS FEET.

4           **MR. VAN NEST:**  THERE ARE -- FROM OUR PERSPECTIVE, ALL

5   EA IS ASKING FOR IS A STAY AS TO ELECTRONIC ARTS ON DISCOVERY.

6           THERE ARE MANY ISSUES IN O'BANNON, YOU ARE QUITE

7   CORRECT, THAT HAVE NOTHING TO DO WITH US.  THEY ARE CHALLENGING

8   THE USE OF LIKENESSES IN TV, ON WEBSITES, IN PHOTOGRAPHS, ON

9   CLASSIC STATIONS, OTHER VIDEO GAMES MADE BY OTHER MANUFACTURERS.

10          **THE COURT:**  RIGHT.

11          **MR. VAN NEST:**  THERE ARE CERTAINLY MANY THINGS IN

12  O'BANNON THAT DO NOT AFFECT ELECTRONIC ARTS, AND WE ARE NOT HERE

13  TO ADVOCATE ONE WAY OR THE OTHER ON THOSE.

14          ALL WE'RE SAYING IS WITH RESPECT TO ELECTRONIC ARTS,

15  OUR RIGHT TO AN AUTOMATIC STAY IN KELLER SHOULD PROTECT US FROM

16  DISCOVERY IN O'BANNON.  IF OTHER O'BANNON DISCOVERY WENT FORWARD

17  AND YOUR HONOR SAID:  YOU'VE GOT TO PARTICIPATE IN IT ...

18          **THE COURT:**  YOU CAN CERTAINLY PARTICIPATE AS A THIRD

19  PARTY.

20          **MR. VAN NEST:**  ABSOLUTELY.

21          **THE COURT:**  YOU WOULD HAVE TO; YOU WOULDN'T HAVE ANY

22  CHOICE, WOULD YOU?

23          **MR. VAN NEST:**  WE COULD TAKE A RISK.  WE COULD

24  DECLINE TO PARTICIPATE AND ASK LATER.  I GATHER THAT WOULD BE A

25  BIG RISK IN THIS COURT.

1          **THE COURT:**  ALL RIGHT.

2          MR. CURTNER.

3          **MR. CURTNER:**  YOUR HONOR, ON BEHALF OF THE NCAA, AND

4   I SUSPECT CLC FEELS THE SAME WAY, ALTHOUGH THEY CAN SPEAK FOR

5   THEMSELVES, WE SEE A SUBSTANTIAL OVERLAP BETWEEN THE THEORIES IN

6   KELLER AND THE THEORIES IN O'BANNON.

7          THE KELLER THEORY IS, BASICALLY, THAT THE STUDENT

8   ATHLETES OR FORMER STUDENT ATHLETES HAVE SOME FORM OF A PROPERTY

9   RIGHT OR PROPERTY INTEREST IN THE USE OF THEIR NAMES AND/OR

10  LIKENESSES, AND KELLER RAISES THAT ISSUE:  WHAT RIGHTS THEY

11  HAVE, WHAT THE OUTER DELINEATION OF THOSE RIGHTS MAY BE.

12         THE O'BANNON THEORY IS THAT THE USE OF CERTAIN RIGHTS

13  THAT HAVE BEEN COMMITTED TO VIDEOTAPE, OR SOME OTHER KIND OF

14  HISTORICAL RECORDING IN THE PAST, DEPRIVES THE PARTIES, THE SAME

15  PEOPLE, OF PROPERTY RIGHTS UNDER THE ANTITRUST LAWS.

16         SO THE SCOPE OF THE PROPERTY RIGHTS BEING TESTED IN

17  KELLER, AT LEAST IN PART, ARE RAISED ALSO BY THE ANTITRUST

18  THEORIES IN O'BANNON.  AND, FROM OUR POINT OF VIEW, THE

19  DISCOVERY THAT WOULD TAKE PLACE, IF WE WERE TO PROCEED WITH

20  DISCOVERY, WOULD SUBSTANTIALLY OVERLAP AND INVOLVE THE RISK OF

21  EXPENSIVE AND DUPLICATIVE DISCOVERY.

22         NOW, IF WE PROCEED, IN WHOLE OR IN PART, WE WILL ASK

23  THE TWO COURT -- WE WILL FILE A NEW MOTION TO DISMISS, BECAUSE

24  THE -- SOME OF THE THINGS THEY PROMISED JUDGE WILKEN THEY WOULD

25  FIX, THEY DIDN'T FIX, AND THEY ADDED A BUNCH OF PLAINTIFFS WHO

1   HAVE CLAIMS GOING BACK TO THE 1950'S AND 60'S AND 70'S, AND

2   JUDGE WILKEN DID GRANT SOME RELIEF TO US.

3          **THE COURT:**  LET'S ASSUME I AGREE WITH YOU ULTIMATELY,

4   THAT THE PLAINTIFFS DID NOT FIX, AS YOU PUT IT, SOME OF THE

5   PROBLEMS IN THEIR INITIAL COMPLAINT IN THE O'BANNON CASE.  LET'S

6   ASSUME I AGREE WITH THAT.  DOESN'T IT MAKE SENSE NONETHELESS TO

7   GO FORWARD AND GET THOSE ISSUES RESOLVED?

8          **MR. CURTNER:**  IT WOULD, YOUR HONOR, IF WE COULDN'T

9   SEPARATE THEM OUT FROM THE KELLER ISSUES, BUT THERE ARE ALSO

10  ISSUES IN THE CONSOLIDATED AMENDED COMPLAINT RELATING TO THE

11  KELLER SIDE OF THE CASE.  FOR EXAMPLE, JUDGE WILKEN DISMISSED

12  THE INDIANA RIGHT OF PUBLICITY STATUTE CLAIM AGAINST THE NCAA.

13  THEY DIDN'T REPLEAD IT AGAINST THE NCAA, BUT THEY REPLED IT

14  AGAINST EA.  IT STILL HAS PROBLEMS.  TO ME, THE NEW MOTION TO

15  DISMISS, LIKE DISCOVERY, WOULD HAVE SUBSTANTIAL OVERLAP.

16          SO FROM OUR PERSPECTIVE, IT MAKES SENSE TO EITHER GO

17  FORWARD WITH EVERYTHING, OR, IF THAT CAN'T BE DONE BECAUSE OF

18  MR. VAN NEST'S ARGUMENTS, TO PUT EVERYTHING ON HOLD UNTIL WE CAN

19  FIGURE OUT SOME WAY TO PARSE THEM OUT.

20          TO ME, THE OVERLAP IS SUBSTANTIALLY -- SUBSTANTIAL

21  ENOUGH THAT IT DOES NOT MAKE SENSE TO GO AHEAD.

22          **THE COURT:**  OKAY.  WHAT ABOUT CLC?

23          **MR. BOYLE:**  WELL, YOUR HONOR, FOR CLC, PROBABLY EVEN

24  MORE SO THAN THE NCAA, THE CONSPIRACY CLAIMS ON BOTH THE RIGHT

25  OF PUBLICITY SIDE AND THE ANTITRUST SIDE ARE TIED SO HEAVILY TO

1   THE LICENSE AGREEMENT BETWEEN CLC AND EA, IT WOULD BE

2   PROBLEMATIC TO GO FORWARD WITHOUT EA IN THE CASE AND HAVING THEM

3   IN THE BACKGROUND.  IT WOULD HINDER OUR ABILITY TO MOUNT A

4   VIGOROUS DEFENSE.

5           I SUPPOSE WE COULD TAKE THIRD-PARTY DISCOVERY,

6   ALTHOUGH I THINK MR. VAN NEST WOULD PROBABLY ARGUE THAT WOULD

7   FRUSTRATE POLICY AND PURPOSE OF THE STAY.

8           OUR MOTION TO STAY IS BASED ON SOME UNDERLYING

9   PRESUMPTION THAT THERE IS A STAY GRANTED TO EA.  WE DO NEED

10  THEIR COOPERATION.  WE FEEL LIKE IT WOULD RESULT IN DUPLICATIVE

11  DISCOVERY IF THE CASE MOVES FORWARD WITHOUT EA.

12          CERTAINLY, AN AWARD OF THE NATURE THAT EA IS SEEKING

13  FROM THE NINTH CIRCUIT WOULD STREAMLINE SOME OF THE CLAIMS AND

14  ALLEGATIONS AGAINST CLC.

15          IF EA HAS A FIRST AMENDMENT RIGHT TO USE THE IMAGES

16  IN ITS PRODUCT THAT IT'S USING AND THAT HAVE BEEN ALLEGED BY

17  PLAINTIFFS TO VIOLATE THE RIGHT OF PUBLICITY, THEN I DON'T SEE

18  WHERE THE CONSPIRACY CLAIMS GOES EITHER ON THE RIGHT OF

19  PUBLICITY SIDE OR THE ANTITRUST SIDE AGAINST CLC, PARTICULARLY

20  WITH RESPECT TO THE EA VIDEO GAME.

21          THAT'S THE FIRST POINT.

22          SECOND OF ALL, IF, ULTIMATELY, THERE'S A STAY AND THE

23  NINTH CIRCUIT DISAGREES WITH EA, THEN I SUSPECT EA IS GOING TO

24  NEED DISCOVERY FROM CLC, GIVEN THE INTERTWINED ALLEGATIONS ABOUT

25  THE EA AND CLC LICENSE, AND WE'RE GOING TO BE FORCED TO GO

1   THROUGH DISCOVERY A SECOND TIME ON SOME OF THESE COUNTS.

2            **THE COURT:**  HOW MUCH -- THIS IS A VERY GENERAL

3   QUESTION WITH RESPECT TO ALL OF THIS LITIGATION:  HOW IMPORTANT

4   IS DISCOVERY HERE FOR SORTING OUT THE ISSUES?

5            TRUE, I CAN UNDERSTAND IF WE GET INTO DAMAGES, WE GET

6   INTO WHO'S BOUND AND ALL THAT SORT OF THING, DISCOVERY COULD BE

7   VERY IMPORTANT.  BUT, BASICALLY, WE'RE DEALING WITH FACTUAL

8   ISSUES THAT CAN'T BE DISPUTED, ARE WE NOT?  WE'VE GOT CONTRACTS.

9   WE'VE GOT ISSUES THAT APPEAR NOT TO BE IN ANY SERIOUS FACTUAL

10  DISPUTE.  AM I CORRECT, OR AM I INCORRECT?

11           **MR. BOYLE:**  WELL, JUST TO KIND OF MAYBE ITEMIZE SOME

12  OF THE THINGS I THINK CLC WOULD WANT COOPERATION FROM EA ON,

13  CERTAINLY, THERE'S THE AGREEMENT AND SOME OF THE NEGOTIATIONS

14  AROUND THE AGREEMENT TO SHOW THAT, IN FACT, THAT AGREEMENT IN NO

15  WAY, SHAPE, OR FORM INCLUDES A LICENSE TO USE ANY OF PLAINTIFFS'

16  NAMES OR LIKENESSES.  THAT'S POINT ONE, AND MAYBE YOU ARE

17  CORRECT ON THAT.

18           EA HAS GONE OUT AND IN CONNECTION WITH THEIR VIDEO

19  GAME HAS SECURED LICENSES FROM PEOPLE IN THE CLASS TO USE THEIR

20  NAMES AND LIKENESSES IN CONNECTION WITH THE GAME, AND WE WOULD

21  WANT SOME COOPERATION IN DISCOVERY ON THAT.

22           I THINK THE MOVING PART HERE THAT'S REALLY KIND OF

23  AMORPHOUS, YOUR HONOR, IS THE RELEVANT MARKET.

24           WE VIEW EA AS IMPORTANT TO HELPING US PROVE THE

25  RELEVANT MARKET HERE.  THEY ARE DEALING WITH SIMILAR ISSUES IN

1   THE *PECOVER* CASE.  WE THINK THE MARKET HERE IS VERY BROAD.  WE

2   THINK THE DISCOVERY ON THE RELEVANT MARKET COMING FROM EA WOULD

3   HELP US SHOW THAT.  AND THAT, CERTAINLY, IS NOT SOMETHING THAT

4   IS FAIRLY STRAIGHTFORWARD, AS YOUR HONOR PROBABLY KNOWS.

5            **THE COURT:**  AREN'T THE MAIN ISSUES IN O'BANNON THE

6   SECTION ONE CLAIMS?

7            **MR. BOYLE:**  THEY ARE SECTION ONE CLAIMS, BUT THE

8   RELEVANT MARKET ANALYSIS ISN'T GOING TO DIFFER FROM THE SECTION

9   TWO CLAIMS IN *PECOVER*, OR AT LEAST THERE ARE GOING TO BE

10  SIMILARITIES IN THE ANALYSIS IN THE DISCOVERY NEEDED TO PROVE

11  THE RELEVANT MARKET WHETHER IT'S A SECTION ONE CLAIM OR SECTION

12  TWO CLAIM.

13           **THE COURT:**  ALL RIGHT.  THANK YOU, SIR.

14           I SEE MR. BERMAN AND MR. OLSON HAVE NOW RISEN TO

15  THEIR FEET, SO YOU MUST HAVE SAID SOMETHING TO HIT A NERVE.

16           ALL RIGHT, MR. BERMAN.

17           **MR. BERMAN:**  THANK YOU, YOUR HONOR.  JUST VERY

18  BRIEFLY, I MAKE A SUGGESTION THAT PERHAPS WHERE THE COURT MIGHT

19  WANT TO GO NEXT AFTER LISTENING TO ALL THIS.

20           I GO BACK TO OUR INDIANA STATUTE, WHICH WAS ALWAYS IN

21  THE CASE.  WE SUED THE NCAA IN THE FIRST COMPLAINT.  JUDGE

22  WILKEN HAD AN ISSUE WITH THAT.  SHE SAID:  I THINK IT'S EA

23  THAT'S USING THE LIKENESSES, YOU NEED TO SUE THEM.  SO WE DID.

24           SO, NOW WE HAVE THIS INDIANA STATUTE.  IF WE IMAGINE

25  OURSELVES IF WE HAD GONE TO INDIANA, AND MR. VAN NEST GOT UP AND

1    SAID THE CALIFORNIA SLAPP STATUTE APPLIES, I THINK THE JUDGE

2    WOULD HAVE LOOKED AT HIM WITH DISBELIEF, BECAUSE IT WOULDN'T,

3    AND I DON'T THINK IT IS GOING TO APPLY HERE.

4            SO YOU HAVE JURISDICTION OVER THAT PART OF THE CASE.

5    SO WHAT I SUGGEST IS:  LET'S GO AHEAD WITH THE MOTIONS TO

6    DISMISS.  LET THEM BRING THE SLAPP MOTION.  YOU ARE GOING TO

7    DENY IT.  YOU ARE GOING TO HAVE JURISDICTION.  AND THEN WE COULD

8    TAKE THE NEXT STEPS PROCEEDING.

9            **THE COURT:**  ALL RIGHT.  MR. OLSON, LAST WORD?  OR

10   I'LL GIVE THE LAST WORD TO MR. VAN NEST.

11           **MR. OLSON:**  VERY BRIEFLY, YOUR HONOR.  VERY BRIEFLY.

12           THE ARGUMENT FOR THE DISCRETIONARY STAY OF THE

13   O'BANNON MATTER IS EXPRESSLY THAT THERE'S SUBSTANTIAL OVERLAP IN

14   THE ISSUES.  FIRST OF ALL, YOUR HONOR, THAT'S JUST SIMPLY NOT

15   THE STANDARD.  THE SUPREME COURT MADE THAT ABUNDANTLY CLEAR LAST

16   YEAR.

17           THERE ARE PLENTY OF CASES ALL AROUND THE COUNTRY THAT

18   COULD POSSIBLY AFFECT THE PROSECUTION OF THE O'BANNON MATTER,

19   AND YOU DON'T GET TO JUST STAY THE O'BANNON MATTER BECAUSE

20   ANOTHER CASE COULD POSSIBLY INFORM SOME ASPECT OF IT.

21           HERE IN CALIFORNIA, THERE'S ALMOST A PROCEDURAL QUIRK

22   THAT ALLOWS THIS IN APPEAL OF THE DENIAL OF A MOTION TO STRIKE.

23           **THE COURT:**  WE HAVE A LOT OF THOSE IN CALIFORNIA.

24           **MR. OLSON:**  EXACTLY.

25           THAT APPEAL OF DENIAL OF A MOTION TO STRIKE IS, AS

 1   THE *HILTON* CASE MAKES CLEAR, GOING TO BE VERY DIFFICULT TO WIN,

 2   AND THAT QUIRK SHOULD NOT -- CLEARLY CANNOT MEET THE STANDARDS

 3   THE SUPREME COURT LAID OUT.

 4          THE SECOND POINT IS THIS ARGUMENT THAT THERE'S

 5   SUBSTANTIAL OVERLAP IN DISCOVERY IS VASTLY OVERSTATED.

 6          THE O'BANNON ANTITRUST PLAINTIFFS CHALLENGE TEN

 7   DIFFERENT REVENUE STREAMS THAT THE NCAA AND CLC USE TO EXPLOIT

 8   THE LIKENESSES OF FORMER COLLEGE ATHLETES, TEN DIFFERENT ONES.

 9   NCAA AND CLC HAVE NEVER RAISED A FIRST AMENDMENT DEFENSE IN THIS

10   CASE.

11          NOW, OF THOSE TEN, ONLY ONE INVOLVES VIDEO GAMES, AND

12   EA IS JUST ONE PLAYER IN THE VIDEO GAME INDUSTRY.  SO, THE IDEA

13   THAT THE O'BANNON CASE HAS TO BE STOPPED IN ITS TRACKS BECAUSE

14   THERE'S SOMETHING ABOUT AN EA ISSUE THAT'S ON APPEAL IS VASTLY

15   OVERSTATED.

16          THAT'S ALL.  THANK YOU.

17          **THE COURT:**  ALL RIGHT.  LAST WORD, IF YOU WANT IT,

18   MR. VAN NEST.

19          **MR. VAN NEST:**  I THINK YOU'VE HEARD ENOUGH, YOUR

20   HONOR.

21          **THE COURT:**  I AM INCLINED TO DENY THE MOTION TO STAY.

22   HOWEVER, IF YOU WISH, MR. NEST, I'LL GIVE YOU AN OPPORTUNITY TO

23   BRIEF THE ISSUE WHETHER THE INDIANA STATUTE IS AFFECTED BY THE

24   CALIFORNIA ANTI-SLAPP STATUTE.  THE CLAIM UNDER THE INDIANA

25   STATUTE IS AFFECTED BY THE CALIFORNIA ANTI-SLAPP STATUTE.  I

1   DON'T BELIEVE THAT HAS BEEN BRIEFED, AND IT'S AN INTERESTING

2   ARGUMENT.  IF YOU CAN MAKE IT, I'LL GIVE YOU AN OPPORTUNITY TO

3   DO SO.

4              **MR. VAN NEST:**  WE WILL DO SO, YOUR HONOR.

5              I HAVE A QUESTION OF CLARIFICATION.  ARE YOU DENYING

6   THE STAY MOTION AS TO KELLER?

7              **THE COURT:**  I'M GOING TO SUBMIT IT UPON THE

8   SUBMISSION OF YOUR ADDITIONAL BRIEF ON WHETHER THE INDIANA CLAIM

9   IS BARRED BY THE CALIFORNIA ANTI-SLAPP STATUTE.

10             **MR. VAN NEST:**  WE WILL DO THAT.

11             **THE COURT:**  HOW LONG DO YOU NEED IN ORDER TO FILE

12  THAT?

13             **MR. VAN NEST:**  I WOULD THINK 30 DAYS WOULD BE PLENTY.

14             **THE COURT:**  THIRTY DAYS?

15             **MR. VAN NEST:**  SHOULD WE DO IT IN LESS?

16             **THE COURT:**  YOU MUST BE VERY BUSY.

17             **MR. VAN NEST:**  WE'RE ALWAYS BUSY, YOUR HONOR, YOU

18  KNOW THAT.

19             **THE COURT:**  I KNOW IT'S SUMMERTIME, BUT CAN YOU GET

20  YOUR BRIEF IN BY THE 5TH OF AUGUST?

21             **MR. VAN NEST:**  WE CAN.

22             **THE COURT:**  GOOD.  AND --

23             **MR. BERMAN:**  TEN DAYS.

24             **THE COURT:**  MR. BERMAN?

25             **MR. BERMAN:**  TEN DAYS, YOUR HONOR.

1            THE COURT:  ALL RIGHT.

2            WHY DON'T I GIVE YOU UNTIL THE 19TH?  GIVE YOU TWO

3    WEEKS, THE 19TH OF AUGUST.  AND UPON THE SUBMISSION OF THOSE

4    ADDITIONAL MEMORANDA, THE STAY MOTIONS WILL BE SUBMITTED, AND

5    I'LL TAKE ANOTHER LOOK AT THE BASIC ISSUES, BUT I AM INCLINED TO

6    DENY THE STAY MOTION.  LET ME TAKE A LOOK, ANOTHER LOOK AT THE

7    BASIC ISSUES AND THIS RATHER INTERESTING ISSUE YOU RAISE ABOUT

8    THE INDIANA CLAIMS.

9            YES, MR. OLSON.

10           MR. OLSON:  JUST TO CLARIFY, IS THE O'BANNON STAY

11   MOTION GOING TO REMAIN PENDING WHILE THESE BRIEFS ARE FILLED?

12           THE COURT:  CORRECT.

13           ALL RIGHT.  NOW -- EXCUSE ME.  NOBODY IS HERE

14   REPRESENTING THE THROWER CASE; IS THAT CORRECT?

15           MR. TERRELL:  GOOD MORNING, REGINALD TERRELL

16   APPEARING FOR THE THROWER MATTER.

17           THE COURT:  I'M SORRY.  YOUR NAME AGAIN?

18           MR. TERRELL:  REGINALD TERRELL, T-E-R-R-E-L-L.

19           THE COURT:  DO I UNDERSTAND THAT THAT COMPLAINT HAS

20   NOT BEEN SERVED?

21           MR. TERRELL:  CORRECT.

22           THE COURT:  MORE THAN 120 DAYS HAVE LAPSED SINCE THE

23   FILING OF THE COMPLAINT?

24           MR. TERRELL:  CORRECT, YOUR HONOR.  YOU ARE RIGHT.

25   WE FILED A MOTION TO RELATE THE ACTION AND MISTAKENLY ASSUMED,

 1  BEING IT WAS RELATED, THAT IT WOULD NOT BE NECESSARY TO SERVE

 2  THE ACTION.

 3          **THE COURT:**  IT WOULD NOT BE NECESSARY TO WHAT?

 4          **MR. TERRELL:**  TO SERVE IT.  BUT I CAN SEND IT OUT FOR

 5  SERVICE IMMEDIATELY.

 6          **THE COURT:**  WHAT LED YOU TO THAT CONCLUSION?

 7          **MR. TERRELL:**  I DON'T HAVE A RESPONSE FOR THAT.

 8          **THE COURT:**  YOU INTEND TO PROCEED WITH THE ACTION?

 9          **MR. TERRELL:**  WE DO.

10          **THE COURT:**  ALL RIGHT.

11          **MR. TERRELL:**  BUT BEING THAT THIS ACTION, THE

12  O'BANNON, AS WELL AS THE KELLER ACTION, WERE PENDING BEFORE THE

13  NINTH CIRCUIT, AND OUR CASE IS RELATED, I DIDN'T WANT TO

14  COMPROMISE THE WORK BEING DONE BY PLAINTIFFS' COUNSEL IN THOSE

15  TWO ACTIONS.

16          **THE COURT:**  WELL, I SHOULD GIVE YOU A DEADLINE BY

17  WHICH TIME TO COMPLETE SERVICE.

18          **MR. TERRELL:**  THAT'S FINE.

19          **THE COURT:**  CAN YOU COMPLETE SERVICE BEFORE THE 30TH

20  OF JULY?

21          **MR. TERRELL:**  I CAN.

22          **THE COURT:**  ALL RIGHT.  THEN THAT WILL BE THE ORDER.

23          **MR. TERRELL:**  VERY GOOD.  THANK YOU.

24          **THE COURT:**  ALL RIGHT.

25          NOW, WHAT ELSE DO WE HAVE TO DO IN TERMS OF MOVING

1  THESE CASES ALONG, ASSUMING THAT THE MOTION TO STAY IS DENIED IN

2  KELLER AND ALSO IN O'BANNON?  WHAT KIND OF A SCHEDULE WOULD YOU

3  LIKE TO DISCUSS WITH THE COURT?

4          **MR. LEHMANN:**  MICHAEL LEHMANN ON BEHALF OF THE

5  O'BANNON PLAINTIFFS.

6          **THE COURT:**  THANK YOU, MR. LEHMANN.

7          **MR. LEHMANN:**  AS HAS ALREADY BEEN MENTIONED,

8  RESPONSES TO THE AMENDED COMPLAINT ARE BEING WITHHELD UNTIL THE

9  MOTION TO STAY IS RULED, AND THE PARTIES AGREE TO NOT SERVE ANY

10  DISCOVERY UNTIL THE MOTION TO STAY WAS RULED UPON.

11          ONCE THAT HAPPENS, THE O'BANNON PLAINTIFFS WOULD

12  PROPOSE THAT THE COURT ORDER THE PARTIES TO CONDUCT A RULE 26(F)

13  CONFERENCE WITHIN, YOU WOULD THINK, TWO WEEKS FROM THE ORDER

14  DISPOSING OF THE MOTION TO STAY, ASSUMING IT IS DENIED.

15          DISCOVERY PLAN AND INITIAL DISCLOSURES WOULD OCCUR

16  TWO WEEKS LATER, AND THEN DISCOVERY WOULD BE OPEN WITHIN -- AT

17  THE TIME -- ONCE THE MEET AND CONFER TAKES PLACE, THE DISCOVERY

18  WOULD BE ALLOWED IN TERMS OF WRITTEN DISCOVERY, AND WE WOULD

19  WANT TO COMMENCE DEPOSITIONS AS WELL.

20          **THE COURT:**  ALL RIGHT.

21          AND MR. BERMAN?

22          **MR. BERMAN:**  WE HADN'T PREVIOUSLY DISCUSSED THIS, BUT

23  IT SOUNDS LIKE A GOOD PLAN TO US.  WE WOULD AGREE WITH WHAT THE

24  O'BANNON PLAINTIFFS ARE PROPOSING.

25          **THE COURT:**  OKAY.

1          MR. CURTNER?

2          **MR. CURTNER:**  YOUR HONOR, I THINK THE PARTIES

3   ACTUALLY HAVE AN AGREEMENT THAT COVERS MOST OF THIS, AND THAT IS

4   THAT ACTIVITY WILL BEGIN WITHIN 30 DAYS -- OR 30 DAYS AFTER THE

5   RULING ON A MOTION TO STAY.

6          AND SO ONCE YOU DECIDE THAT, I THINK WE THEN WILL

7   NEED TO START A MEET AND CONFER PROCESS, ASSUMING WE DON'T GET

8   SOME NEW MOTION TO STAY OUT OF MR. VAN NEST RELATING TO THE NEW

9   COMPLAINT.

10          AND I THINK THE PARTIES --

11          **THE COURT:**  WHEN YOU SAY "THE NEW COMPLAINT," YOU

12   MEAN?

13          **MR. CURTNER:**  THE CONSOLIDATED AMENDED COMPLAINT.

14          **THE COURT:**  I SEE.

15          **MR. CURTNER:**  IN OTHER WORDS, HIS ANTI-SLAPP MOTION

16   RELATED TO THE ORIGINAL KELLER COMPLAINT AND THEY -- WHICH HAS

17   BEEN SUPERCEDED BY THE CONSOLIDATED AMENDED COMPLAINT, WHICH HAS

18   O'BANNON AND KELLER IN THE SAME COMPLAINT.

19          BUT I THINK IF YOU DENY THE STAY MOTIONS, THEN THE

20   PARTIES HAVE AGREED TO A 30-DAY WINDOW TO MEET AND CONFER AND

21   COME UP WITH A CASE MANAGEMENT PLAN AND TO FILE NEW MOTIONS TO

22   DISMISS.

23          I SHOULD ALSO ADD THAT THE PLAINTIFFS HAVE SAID, AT

24   LEAST SOME OF THEM, THAT THEY MAY WISH TO MOVE TO DECONSOLIDATE,

25   OR SEVERE IN SOME WAY, THE TWO ACTIONS.  I DON'T KNOW IF THEY

1 STILL WANT TO DO THAT OR NOT, BUT IF THAT MOTION GETS MADE, THEN

2 I WOULD THINK WE ALL NEED TO FIND A TIME TO COME BEFORE YOU AND

3 HAVE THAT ARGUED.

4       SO WHAT I'M SAYING IS:  RATHER THAN TRY TO SET DATES

5 RIGHT NOW, THAT THE RULING ON THE MOTION TO STAY SERVE AS THE

6 TRIGGER FOR A 30-DAY WINDOW WITHIN WHICH THE PARTIES WOULD HAVE

7 TO COME UP WITH A PLAN, AND THAT I THINK WE THEN SHOULD SUBMIT A

8 NEW CASE MANAGEMENT CONFERENCE STATEMENT TO YOU AND COME UP WITH

9 A PLAN FOR MOTIONS TO DISMISS, ANY OTHER THINGS THAT NEED TO GET

10 DONE IN AN EARLY FASHION, AND THEN SEE WHETHER WE CAN COME UP

11 WITH SOME AGREEMENTS ABOUT STAGING DISCOVERY, TO THE EXTENT THAT

12 CAN BE DONE IN CASES LIKE THIS.  I THINK IT'S GOING TO BE

13 DIFFICULT, BUT IT'S WORTH A TRY.

14       SO I GUESS MY REAL POINT IS I THINK THE PARTIES

15 SHOULD TRY TO WORK THIS OUT AMONG THEMSELVES BEFORE WE ASK YOU

16 TO START SETTING DATES AND THAT WE ALREADY HAVE A SCHEDULE IN

17 PLACE THAT WILL ACCOMPLISH THAT.

18     **THE COURT:**  I DIDN'T UNDERSTAND THAT YOU HAD THAT

19 KIND OF SCHEDULE IN PLACE.  PERHAPS I --

20     **MR. CURTNER:**  THERE IS A STIPULATION THAT SAYS THAT

21 EVERYTHING IS ON HOLD UNTIL 30 DAYS AFTER THE DECISION ON THE

22 MOTIONS TO STAY.

23     **THE COURT:**  MR. LEHMANN JUST SUGGESTED TWO WEEKS

24 AFTER A DECISION ON THE MOTION TO STAY FOR A RULE 26 CONFERENCE.

25     **MR. CURTNER:**  I WOULD THINK WITHIN THAT TIME PERIOD,

1  THE PARTIES COULD CERTAINLY START WORKING TOWARDS COMING UP WITH

2  A CASE MANAGEMENT PLAN.  I THINK OUR EXISTING AGREEMENT IS

3  THERE'S A 30-DAY WINDOW.  WE CAN CERTAINLY SET ANOTHER DATE TO

4  COME BACK BEFORE YOUR HONOR FOR A RULE 26 CONFERENCE.

5          **THE COURT:**  WHY CAN'T WE GET IN PLACE A DATE FOR THE

6  RULE 26 CONFERENCE, AND INITIAL DISCLOSURES, AND SET A DATE FOR

7  ANY MOTIONS DIRECTED TO THE PLEADINGS?  CAN'T WE AT LEAST GET

8  THOSE IN PLACE?

9          **MR. CURTNER:**  I GUESS WE COULD, YOUR HONOR, ALTHOUGH

10 WE DON'T KNOW EXACTLY WHEN THE STAY MOTIONS WILL GET DECIDED.

11         **THE COURT:**  NO, WE DON'T FOR SURE, BUT WE KNOW THE

12 BRIEFING IS GOING TO BE COMPLETED BY THE 19TH OF AUGUST.

13         **MR. CURTNER:**  YES.

14         **THE COURT:**  SO THAT WOULD MEAN YOU WOULD BE GEARING

15 UP IN THIS CASE FOR SOMETIME IN SEPTEMBER FOR YOUR RULE 26

16 CONFERENCE AND PROBABLY SOME MOTIONS A BIT FURTHER INTO THE

17 FALL.

18         **MR. CURTNER:**  AND I THINK --

19         **THE COURT:**  I THINK IT MAKES A LOT OF SENSE TO GET

20 SOME DATES DOWN.  OTHERWISE, YOU'RE COMING BACK HERE, OR HAVING

21 ANOTHER STATUS CONFERENCE, SOME OTHER THINGS WILL HAVE DEVELOPED

22 IN THE MEANTIME, AND A LOT OF TIME WILL SLIP BY.

23         SO, ASSUMING THAT THE MOTION TO STAY IS DENIED, WHICH

24 I THINK IS A PROBABILITY, CAN WE SET A DATE FOR THE RULE 26

25 CONFERENCE IN MID-SEPTEMBER?  ANYBODY HAVE A PROBLEM WITH THAT?

1          **MR. BERMAN:**  NO PROBLEM WITH US, YOUR HONOR.

2          **MR. OLSON:**  THAT'S FINE, YOUR HONOR.

3          **MR. CURTNER:**  AS LONG AS IT'S BEFORE THE 22ND, YOUR

4  HONOR, BECAUSE WE HAVE SOME PROBLEMS AFTER THAT.  WE CERTAINLY

5  CAN ALSO SET A DATE FOR FILING OUR RENEWED MOTION TO DISMISS.

6          **THE COURT:**  ALL RIGHT.  THEN THE RULE 26 CONFERENCE

7  WILL BE ON OR BEFORE SEPTEMBER 15, AND INITIAL DISCLOSURES TO BE

8  COMPLETED BY -- YOU SUGGEST TO ME WHAT'S A REASONABLE DATE GIVEN

9  A RULE 26 CONFERENCE ON THE 15TH OF SEPTEMBER.

10          **MR. CURTNER:**  I THINK WE CAN PROBABLY HAVE --

11  CERTAINLY WITHIN A COUPLE OF WEEKS AFTER THE CONFERENCE, WE CAN

12  MAKE THE DISCLOSURES.  I THINK THE PARTIES HAVE ALREADY BEEN

13  THINKING ABOUT THESE ISSUES.

14          **THE COURT:**  SEPTEMBER 30?

15          **MR. BERMAN:**  THAT'S GOOD WITH US, YOUR HONOR.

16          **MR. LEHMANN:**  FINE WITH US, YOUR HONOR.

17          **THE COURT:**  ALL RIGHT.  AND THEN LET'S SEE IF WE CAN

18  GET A DATE ON CALENDAR FOR A MOTION TO DISMISS.  AND THE CLERK

19  WILL GIVE US A DATE SOMETIME IN NOVEMBER.  AND, OF COURSE, IF NO

20  MOTIONS TO DISMISS ARE FILED, WHY, WE DON'T HAVE TO WORRY ABOUT

21  THAT.

22          **THE CLERK:**  NOVEMBER 18, YOUR HONOR, AT 10:00 A.M.

23          **THE COURT:**  OKAY.  AND WE'LL COMBINE THAT -- LET ME

24  ASK THE CLERK IF WE CAN'T DO A SPECIAL SETTING, SAY ON THE DAY

25  BEFORE, SAY THE 17TH?  IS THAT AVAILABLE?  HOW ABOUT THE 19TH.

1   OR ANOTHER WAY TO ASK THE QUESTION, HOW CROWDED IS THAT

2   NOVEMBER 18 CALENDAR?  IS THERE MUCH ON IT?

3              **THE CLERK:**  NOVEMBER 18 IS OPEN, YOUR HONOR.

4              **THE COURT:**  ALL RIGHT.  WE'LL SET IT FOR NOVEMBER 18

5   AT 10:00 A.M., AND WE'LL TRY TO KEEP THAT CALENDAR PRETTY OPEN.

6              **THE CLERK:**  OKAY.

7              **THE COURT:**  AND WE'LL COMBINE THE MOTIONS TO DISMISS

8   WITH A FURTHER CASE MANAGEMENT CONFERENCE, AND THE MOTIONS TO

9   DISMISS WILL ALSO INCLUDE ANY OF THESE OTHER MOTIONS THAT YOU

10  HAVE BEEN ADVERTING TO, MR. CURTNER, THAT YOU MIGHT BE FILING

11  THE MOTION TO DECONSOLIDATE AS YOU PUT IT.

12             **MR. CURTNER:**  THE PLAINTIFFS HAVE INDICATED THEY MAY

13  WISH TO DO THAT, YOUR HONOR.

14             **THE COURT:**  ANY OF THESE KIND OF MOTIONS, JUST SET IT

15  DOWN FOR GENERAL LAW AND MOTION CALENDAR.  BUT I SUSPECT WHAT I

16  WILL SEE ARE MOTIONS TO DISMISS, AND WE'LL HAVE TO DEAL WITH

17  THOSE, AND WE'LL COMBINE THAT WITH A FURTHER CASE MANAGEMENT

18  CONFERENCE, AND PRESUMABLY SOME MORE SCHEDULING.

19             YES, MR. VAN NEST.

20             **MR. VAN NEST:**  YOUR HONOR, BRIEFLY.  COULD WE HAVE A

21  WEEK TO REPLY ON OUR RENEWED MOTION TO STAY?  YOU SET THE 5TH,

22  THE 19TH.

23             **THE COURT:**  TWENTY-SIXTH?

24             **MR. VAN NEST:**  YES, SIR.  THANK YOU.

25             **THE COURT:**  ANYTHING FURTHER?

1          MR. BERMAN:  I DON'T THINK SO, YOUR HONOR.

2          THE COURT:  GOOD.  GOOD LUCK.  INTERESTING CASE.

3          MR. BERMAN:  THANK YOU, YOUR HONOR.

4          MR. LEHMANN:  THANK YOU, YOUR HONOR.

5          THE CLERK:  COURT IS IN RECESS UNTIL 2:00 THIS

6    AFTERNOON.

7                    (PROCEEDINGS ADJOURNED.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN C 09-1967 VRW, IN RE: NCAA STUDENT-ATHLETE NAME AND LIKENESS LICENSING LITIGATION, WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.


S/B JOAN MARIE COLUMBINI

_____

JOAN MARIE COLUMBINI, CSR 5435, RPR

THURSDAY, JULY 15, 2010