1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8                                          No. C 09-1967 CW

9                                          ORDER GRANTING IN
   IN RE NCAA STUDENT-ATHLETE NAME &       PART AND DENYING IN
10  LIKENESS LITIGATION                     PART EA'S MOTION TO
                                           STAY (Docket No.
11  _____/     156), DENYING CLC'S
                                           AND NCAA'S MOTIONS
12                                          TO STAY (Docket Nos.
                                           163 and 166), AND
13                                          DENYING WITHOUT
                                           PREJUDICE PUBLICITY-
14                                          RIGHTS PLAINTIFFS'
                                           MOTION TO DE-
15                                          CONSOLIDATE (Docket
                                           No. 236)
16

17       Defendants Electronic Arts, Inc. (EA), the National Collegiate

18  Athletic Association (NCAA) and the Collegiate Licensing Company

19  (CLC) move separately to stay all proceedings and discovery in

20  these consolidated actions.  Plaintiffs Samuel Michael Keller, <u>et</u>

21  <u>al.,</u> oppose the motions.  Plaintiffs Keller, Bryan Cummings, Lamarr

22  Watkins and Byron Bishop (collectively, Publicity-Rights

23  Plaintiffs) move to de-consolidate these actions.  Plaintiffs

24  Edward C. O'Bannon, Jr.; Harry Flournoy; Alex Gilbert; Sam

25  Jacobson; Thad Jaracz; David Lattin; Patrick Maynor; Tyrone

26  Prothro; Damien Rhodes; Eric Riley; Bob Tallent; and Danny Wimprine

27  (collectively, Antitrust Plaintiffs) and Defendants oppose

28

United States District Court
For the Northern District of California

Publicity-Rights Plaintiffs' motion.[1]  Bishop asks that his counsel
be named as additional co-lead counsel for Publicity-Rights
Plaintiffs if their motion to de-consolidate is granted.  The
motions were taken under submission on the papers.  Having
considered the papers submitted by the parties, the Court GRANTS IN
PART EA's motion to stay and DENIES it in part, DENIES NCAA's and
CLC's motions to stay and DENIES Publicity-Rights Plaintiffs'
motion to de-consolidate.

BACKGROUND

In these consolidated cases, former student athletes allege
that Defendants conspired to deprive them of their rights of
publicity and engaged in unlawful restraints of trade in violation
of § 1 of the Sherman Act.  The claims and legal theories asserted
are based on those brought by Keller and O'Bannon.  On May 5, 2009,
Keller filed his complaint, asserting claims related to an alleged
conspiracy among EA, NCAA and CLC to violate his right of
publicity.  O'Bannon filed his complaint on July 21, 2009,
asserting antitrust claims against NCAA and CLC.  On September 1,
2009, Keller and O'Bannon moved to consolidate their cases.  On
October 15, 2009, Bishop moved to consolidate his case with
Keller's.  On January 15, 2010, the Court granted these Plaintiffs'
motions and consolidated all related actions.

EA, NCAA and CLC moved to dismiss Keller's complaint and,
separately, EA moved to strike his claims pursuant to California's
statute concerning strategic lawsuits against public participation

---

[1] At the time it filed its motion to stay, NCAA also sought
de-consolidation.  However, it now opposes Publicity-Rights
Plaintiffs' motion.

United States District Court

For the Northern District of California

1    (anti-SLAPP), Cal. Civ. Proc. Code § 425.16.  On February 8, 2010,

2    the Court denied EA's and CLC's motions to dismiss and EA's anti-

3    SLAPP motion to strike.  The Court granted in part NCAA's motion to

4    dismiss and denied it in part: Keller's breach of contract and

5    Indiana right of publicity claims against NCAA were dismissed with

6    leave to amend.

7         NCAA and CLC filed motions to dismiss O'Bannon's antitrust

8    claims, which the Court granted in part and denied in part:

9    O'Bannon's claim for an accounting was dismissed with leave to

10   amend to plead facts supporting the existence of complicated

11   accounts.

12        On February 18, 2010, EA notified the Court that it was

13   appealing the denial of its anti-SLAPP motion and,

14   contemporaneously, moved to stay all proceedings and discovery

15   against it.  NCAA and CLC filed their motions to stay on February

16   25.

17        Plaintiffs filed a consolidated amended complaint on March 10,

18   2010.  The amended pleading asserts seven causes of action related

19   to Plaintiffs' rights of publicity: (1) violation of Indiana right

20   of publicity, against EA;[2] (2) violation of California statutory

21   right of publicity, against EA; (3) violation of California common

22   law right of publicity, against EA; (4) civil conspiracy, against

23   EA, NCAA and CLC; (5) violation of California Business &

24   Professions Code §§ 17200, et seq., against EA; (6) breach of

25   contract, against NCAA; and (7) unjust enrichment, against EA and

26   CLC.  The complaint also contains four causes of action, asserted

27   _____

28        [2] In Keller's original complaint, he had asserted his Indiana
     right of publicity claim against NCAA.

                                  3

against all defendants, arising from Plaintiffs' antitrust allegations: (1) violation of § 1 of the Sherman Act for an unreasonable restraint of trade; (2) violation of § 1 of the Sherman Act for a group boycott and refusal to deal; (3) unjust enrichment; and (4) accounting.

On March 22, 2010, EA moved the court in <u>Pecover v. Electronic Arts Inc.</u>, Case No. C 08-2820 VRW, to relate these consolidated actions to that case. The <u>Pecover</u> court granted EA's motion and these cases were reassigned accordingly. EA and Plaintiffs filed supplemental briefing on the pending motions to stay. On October 14, 2010, Publicity-Rights Plaintiffs filed their motion to de-consolidate. On November 10, 2010, these cases were reassigned to this Court.

DISCUSSION

I.  Defendants' Motions to Stay

It is well-established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." <u>Landis v. North Am. Co.</u>, 299 U.S. 248, 254 (1936); <u>see also</u> <u>Ethicon, Inc. v. Quigg</u>, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings.") As the Ninth Circuit instructs,

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.

4

Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979).

In determining whether to grant a stay, courts generally consider the following competing interests: "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted).

A.    EA's Motion to Stay

EA bases its motion primarily on its appeal of the denial of its anti-SLAPP motion to strike. In that motion, EA had asserted that Keller's right of publicity claims under California law, and associated claims, must be stricken because they were trumped by EA's rights under the First Amendment and the California Constitution. EA asserted that, under California's transformative use test, its video games are sufficiently "transformative" to warrant constitutional protection. EA also maintained that the video games were protected under a public interest defense and a "public affairs" defense under California Civil Code § 3344(d). The Court disagreed and concluded that these defenses did not bar Keller's claims against EA as a matter of law. Because the claims related to Keller's right of publicity allegations had been otherwise sufficiently plead and substantiated, the Court denied EA's anti-SLAPP motion.

Denials of anti-SLAPP motions to strike constitute collateral orders that are immediately appealable. Hilton v. Hallmark Cards,

5

599 F.3d 894, 900 (9th Cir. 2010). EA's notice of appeal seeks review of the Court's February 8, 2010 Order "insofar as the Order denied EA's 'Special Motion to Strike Pursuant to Cal. Civ. Proc. § 425.16 (Anti-SLAPP)' . . . ." Notice of Appeal at 2 (Docket No. 154). This notice divests this Court "of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). Thus, EA's appeal imposes an automatic stay of all proceedings related to the issues raised in its anti-SLAPP motion to strike.[3] See All One God Faith, Inc. v. Hain Celestial Group, Inc., 2009 WL 4907433, at *2 n.2 (N.D. Cal.) (concluding that the "appeal of a ruling on an anti-SLAPP motion imposes an automatic stay of all further trial court proceedings on the merits" of the claims at issue). Because that motion addressed the entirety of Keller's original complaint, the stay encompasses proceedings and discovery on Keller's claims against EA contained therein.

EA maintains that the automatic stay as to Keller's original claims entitles it to a stay of all proceedings and discovery against it. However, while proceedings on appealed issues are stayed, it does not follow that an entire case must come to a halt.

---

[3] Keller contests this automatic stay. First, Keller contends that, because the Ninth Circuit does not have jurisdiction to hear an appeal of the denial of EA's motion to dismiss, the Court may go forward with proceedings on his right of publicity claims and associated claims. EA is not appealing the denial of its motion to dismiss. However, EA's appeal of the Court's denial of its anti-SLAPP motion encompasses the viability of these claims. Second, Keller asserts that EA's appeal is frivolous because it contractually waived its First Amendment rights and, therefore, EA is not entitled to an automatic stay. See Chuman v. Wright, 960 F.2d 104, 105 (9th Cir. 1992) (citing Apostol v. Gallion, 870 F.2d 1335, 1339 (7th Cir. 1989)). The Court does not find EA's appeal frivolous.

The district court only loses jurisdiction "over the particular issues involved in that appeal." City of L.A., Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882 (9th Cir. 2001); see also Nascimento v. Dummer, 508 F.3d 905, 910 (9th Cir. 2007) (opining that the interlocutory appeal "would have divested the district court of jurisdiction over the discovery issue and would not have affected its jurisdiction over other matters in the case") (citing Britton v. Co-Op Banking Group, 916 F.2d 1405, 1412 (9th Cir. 1990)). Thus, the Court has discretion whether or not to stay proceedings and discovery against EA on claims asserted by Plaintiffs, other than Keller, that are identical to those on appeal; on the recently added Indiana right of publicity claim; and on the various claims related to Plaintiffs' antitrust allegations.[4]

The Court exercises its discretion to stay all proceedings and discovery against EA on the claims asserted by other Plaintiffs that are identical to those on appeal. It would make little sense to stay litigation on these claims as to Keller, but permit those of other Plaintiffs to go forward.

Keller asserts that resolution of EA's appeal has no bearing on Plaintiffs' Indiana right of publicity claim. The Court disagrees. EA's appeal entails the scope of protection afforded by the First Amendment balanced against an individual's right of publicity. Keller does not assert that the California right of

---

[4] Notably, with regard to Plaintiffs' antitrust claims, an automatic stay cannot apply because anti-SLAPP motions do "not apply to federal law causes of action." Hilton, 599 F.3d at 901 (citing Bulletin Displays, LLC v. Regency Outdoor Adver., Inc., 448 F. Supp. 2d 1172, 1180-82 (C.D. Cal. 2006)).

publicity and its Indiana counterpart are qualitatively different.
Thus, a Ninth Circuit decision on the viability of Keller's
California right of publicity claims, to the extent that it is
based on the First Amendment, can impact the Court's decision on
Plaintiffs' Indiana right of publicity. Accordingly, because the
issues on appeal appear identical to the issues that would be
raised with regard to Plaintiffs' Indiana right of publicity claim,
the Court exercises its discretion to stay all proceedings and
discovery related to the Indiana right of publicity claim asserted
against EA.

EA argues that proceedings and discovery on Plaintiffs'
antitrust claims should likewise be stayed because they will
"disappear if the Ninth Circuit concludes that the First Amendment
protects EA's alleged inclusion of student-athletes' likenesses" in
its video games. EA Mot. 10. In support of its argument, it cites
Jefferson County School District No. R-1 v. Moody's Investment
Services, Inc. for the proposition that "the First Amendment does
not allow antitrust claims to be predicated solely on protected
speech." 175 F.3d 848, 859 (10th Cir. 1999).[5] However, Jefferson
County is distinguishable and the quoted text is not as broad as EA
purports. There, the plaintiff school district complained of the
negative rating the defendant gave to its bonds, bringing, among
others, a claim for violation of § 2 of the Sherman Act. Id. at
850-51. The court found the plaintiff's antitrust theory
unavailing, stating that the defendant could not be held liable for
an antitrust violation merely for expressing its opinion, which was

---

[5] EA cites Jefferson County as Ninth Circuit precedent, even
though it is a decision from the Tenth Circuit.

United States District Court
For the Northern District of California

protected by the First Amendment. Id. at 860. Here, EA argues

that Plaintiffs' antitrust theories are based solely on their

allegations of a conspiracy to violate their rights of publicity.

Thus, according to EA, it follows that if the Ninth Circuit rules

in its favor, the First Amendment would immunize it from antitrust

liability, similar to the defendant in Jefferson County. The Court

is not persuaded. Plaintiffs' antitrust theories revolve around

EA's alleged conduct in its dealings with NCAA and CLC for

licensing agreements. Even though EA's video games may constitute

speech protected by the First Amendment, it is not the games, on

their own, that constitute the unlawful restraint of trade of which

Plaintiffs complain.[6] Defendants' agreements enabling the

production of the video games are at issue, and EA does not

persuade the Court that the First Amendment immunizes it from all

alleged wrongdoing. See id. at 860.

EA also claims that the Noerr-Pennington immunity doctrine

precludes any antitrust liability. See generally E. R.R.

Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127

(1961); United Mine Workers v. Pennington, 381 U.S. 657 (1965).

However, that doctrine "derives from the Petition Clause of the

First Amendment and provides that 'those who petition any

department of the government for redress are generally immune from

statutory liability for their petitioning conduct.'" Kearney v.

---

[6] EA asserts that the Ninth Circuit could determine "that EA's
First Amendment rights trump plaintiffs' publicity right with
respect to the video games at issue here" and, as a result, EA
would be "constitutionally permitted to use plaintiffs' alleged
likenesses without compensating them . . . ." EA Reply 7. At this
stage in the litigation, prior to the discovery of the nature of
EA's agreements with NCAA and CLC, the Court declines to stay the
proceedings on this basis.

1  <u>Foley & Lardner, LLP</u>, 590 F.3d 638, 643-44 (9th Cir. 2009) (quoting

2  <u>Sosa v. DIRECTV, Inc.</u>, 437 F.3d 923, 929 (9th Cir. 2006)).

3  Plaintiffs do not base their antitrust allegations on any

4  petitioning activity by EA and, accordingly, <u>Noerr-Pennington</u> does

5  not apply.

6       EA has not made out a clear case of hardship or inequity in

7  being required to litigate Plaintiffs' antitrust claims during the

8  pendency of its appeal.  <u>See</u> <u>Lockyer</u>, 398 F.3d at 1112 (stating

9  that "being required to defend a suit, without more, does not

10  constitute a 'clear case of hardship or inequity' within the

11  meaning of <u>Landis</u>").  The Court declines to exercise its discretion

12  to stay proceedings and discovery on Plaintiffs' antitrust claims

13  against EA.

14       B.   NCAA's and CLC's Motions to Stay

15       As noted above, Plaintiffs assert two categories of claims

16  against NCAA and CLC.  First, Plaintiffs allege that NCAA and CLC

17  conspired with EA to violate their rights of publicity.  Second,

18  Plaintiffs complain that NCAA, CLC and EA imposed unreasonable

19  restraints of trade in violation of the Sherman Act.  NCAA and CLC

20  contend that efficiency concerns weigh in favor of staying all

21  proceedings pending EA's appeal.  Alternatively, NCAA asks the

22  Court to de-consolidate the cases.

23       NCAA and CLC contend that, if a stay is not imposed as to all

24  proceedings, they will be subject to piecemeal and duplicative

25  discovery.[7]  This argument is unavailing, particularly with regard

26

27       [7] With regard to Plaintiffs' antitrust claims, NCAA also
    asserts that if "discovery, class certification and dispositive
28                                              (continued...)

10

to Plaintiffs' antitrust claims. Plaintiffs allege, among other things, that NCAA and CLC entered into agreements with various business partners, other than EA, that imposed unreasonable restraints of trade. Plaintiffs also contend that NCAA's rules and regulations constitute unreasonable restraints of trade. NCAA and CLC provide no reason to believe that the outcome of EA's appeal would lead Plaintiffs to seek duplicative discovery on these issues. Nor do they show that discovery would be unnecessarily piecemeal. Existing procedures to prevent abusive discovery will adequately protect their interests.

NCAA also asserts that it would suffer hardship by facing discovery on the civil conspiracy claim related to Plaintiffs' right of publicity allegations. CLC suggests that it would suffer the same. However, the alleged conspiracy is also relevant to Plaintiffs' antitrust allegations. Thus, there is no indication that discovery into NCAA's and CLC's relationship with EA, which is relevant to both the right of publicity and antitrust claims, would be duplicative.

Because NCAA and CLC have not demonstrated hardship or inequity arising from continued litigation of this case pending EA's appeal, the Court declines to stay all proceedings and discovery against them.

III. Publicity-Rights Plaintiffs' Motion to De-Consolidate

Publicity-Rights Plaintiffs seek de-consolidation, asserting

---

[7](...continued) motions are allowed to proceed as to the NCAA, but stayed as to EA, the results would be chaotic." NCAA Mot. 6. This argument is unavailing because antitrust proceedings and discovery against EA will not be stayed.

that their claims are narrower than those asserted by Antitrust Plaintiffs and, as a result, can be resolved more quickly if these actions were de-consolidated.

The Court does not find it necessary at this time to de-consolidate these cases. Notably, nothing has appreciably changed since these actions were consolidated. Although drafting the Consolidated Amended Complaint might have "proved awkward," Mot. 6, this does not warrant de-consolidation. Furthermore, because Publicity-Rights Plaintiffs' claims are subject to a stay, there is no apparent benefit to de-consolidation at this time.

If the Ninth Circuit has not resolved EA's appeal by the dispositive motion deadline or if the actions appear too cumbersome to be tried in a single jury trial, the Court -- as indicated at the December, 2009 hearing -- may de-consolidate them. Unless and until such conditions arise, the Court declines to revisit its decision to consolidate.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part EA's motion to stay and DENIES it in part. (Docket No. 156). Because it has appealed the Court's denial of its anti-SLAPP motion to strike, EA is entitled to an automatic stay concerning Keller's claims addressed in that motion. The Court exercises its discretion to stay proceedings and discovery against EA on other Plaintiffs' claims that are identical to those on appeal and on Plaintiffs' newly filed Indiana right of publicity claim. EA's motion to stay is denied in all other respects. The Court DENIES NCAA's and CLC's motions to stay. (Docket Nos. 163 and 166.)

In accordance with the Court's prior order (Docket No. 198),

12

Defendants shall respond to Plaintiffs' Consolidated Amended
Complaint within thirty days of the date of this Order.  EA need
not respond to Plaintiffs' "Right of Publicity Causes of Action."
Consol. Am. Compl. 135-140:16.  If Defendants intend to move to
dismiss the Consolidated Amended Complaint, they shall do so in a
single, consolidated brief.  Plaintiffs' opposition and Defendants'
reply shall each also be contained in a single brief.  Defendants
shall not re-argue points raised in their first motions to dismiss.

Publicity-Rights Plaintiffs' motion to de-consolidate is
DENIED without prejudice.  (Docket No. 236.)

The further case management conference, currently set for
January 4, 2011, is continued to February 22, 2011 at 2:00 p.m.

IT IS SO ORDERED.


Dated: December 17, 2010

_____
CLAUDIA WILKEN
United States District Judge

13