Gregory L. Curtner (*pro hac vice*)
Robert J. Wierenga (SBN183687)
Kimberly K. Kefalas (*pro hac vice*)
Atleen Kaur (*pro hac vice*)
Kimberly L. Scott *(pro hac vice)*
Suzanne L. Wahl (*pro hac vice*)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
101 North Main St., 7th Floor
Ann Arbor, MI 48104
Telephone: (734) 663-2445
Email: curtner@millercanfield.com
       wierenga@millercanfield.com
       kefalas@millercanfield.com
       kaur@millercanfield.com
       scott@millercanfield.com
       wahl@millercanfield.com

Jason A. Geller (SBN168149)
Glen R. Olson (SBN111914)
David Borovsky (SBN 216588)
LONG & LEVIT LLP
465 California Street, 5th Floor
San Francisco, CA 94104
Telephone: (415) 397-2222
Email: jgeller@longlevit.com
       golson@longlevit.com
       dborovsky@longlevit.com

Attorneys for Defendant
National Collegiate Athletic Association

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| In re NCAA Student-Athlete Name and Likeness Licensing Litigation | Case No. 09-cv-1967-CW<br><br>**DEFENDANT NCAA'S MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**<br><br>Date: February 22, 2011<br>Time: 2 PM<br>Dept: Courtroom 2, 4th Floor<br>Judge: Hon. Claudia Wilken<br>Complaint filed: May 5, 2009 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT ......................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I. THE RIGHT OF PUBLICITY CLAIMS MUST BE DISMISSED ................................. 2

    A. Plaintiffs Have Failed To Cure The Deficiencies In Their Breach Of Contract Claim ................................................................................................ 2

    B. Plaintiffs' Conspiracy Claim Fails To Comply With Twombly .............................. 4

II. THE ANTITRUST CLAIMS MUST BE DISMISSED ...................................................... 4

    A. Plaintiffs Have Failed To Allege Sufficient Facts To Show A Restraint ............... 4

    B. Plaintiffs Have Conceded That The Alleged "Restraint" Does Not Exist ............. 5

    C. Plaintiffs Have Failed To Allege Antitrust Injury ................................................... 7

# INDEX OF AUTHORITIES

**Page(s)**

**CASES**

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) .................................................................................................... 1, 4, 5, 6

*Malletier v. The Flea Market, Inc.*,
 No. C 09-01062 CW, 2009 WL 1625946 (N.D. Cal. June 10, 2009) (Wilken, J.) ............... 5, 6

*McGlinchy v. Shell Chemical Co.*,
 845 F.2d 802 (9th Cir. 1988) ....................................................................................................... 7

*Pace Indus., Inc. v. Three Phoenix Co.*,
 813 F.2d 234 (9th Cir. 1987) ....................................................................................................... 7

*Price v. 7-Eleven, Inc.*,
 No. B212597, 2009 WL 4068607 (Cal. App. 2 Dist. Nov. 25, 2009) ....................................... 3

*Schaefer v. Williams*,
 15 Cal. App. 4th 1243, 19 Cal. Rptr. 2d 212 (Cal. App. 4 Dist. 1993) ..................................... 3

**STATUTES**

Cal. Civ. Code § 1550 ..................................................................................................................... 3

**COURT RULES**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................... 1

## NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT

PLEASE TAKE NOTICE that on February 22 at 2 pm, before the Honorable Claudia Wilken, United States District Court, defendant National Collegiate Athletic Association ("NCAA") will, and hereby does, move the Court for an order dismissing the causes of action asserted against the NCAA in the Consolidated Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). NCAA moves to dismiss these causes of action on the grounds that (1) plaintiffs have not cured the defects in their breach of contract claim; (2) the conspiracy claim fails to satisfy *Twombly*; (3) plaintiffs have failed to allege facts to support a restraint under the antitrust laws; (4) plaintiffs have conceded that the alleged restraint does not exist; and (5) plaintiffs have failed to allege antitrust injury.

## MEMORANDUM OF POINTS AND AUTHORITIES

Under questioning by the Court on the NCAA's initial motion to dismiss, lead counsel for the antitrust plaintiffs made a concession that is fatal to the antitrust claims in the Consolidated Amended Complaint ("CAC"): he *admitted* that former student-athletes are *not* precluded by the NCAA from selling their collegiate likenesses:

> THE COURT: Could I ask you again, what do you say to their argument that Mr. O'Bannon or others in the class don't allege that they actually have tried or are planning to try or would like to a market participant?
>
> MR. HAUSFELD: Because, Your Honor, there are significant, almost inseparable [sic] barriers to entry as a collective team to assert a right to participate in the licensing and royalties for revenue received after they are no longer students derived from the time when they were students.
>
> THE COURT: For a game, perhaps, but what about their individual right of publicity?
>
> MR. HAUSFELD: *Their individual right of publicity they have*.
>
> THE COURT: Are they a market participant in that?
>
> MR. HAUSFELD: *With regard to their ability to get an endorsement for a particular product or individual situation, yes*. They have not been a market participant because they were foreclosed from their ability to participate in that revenue and the royalty derived from the time that they did play as a student-athlete.
>
> THE COURT: Are you saying that there was some recent change that allowed individuals to become market participants? You

> seem to imply that that happened recently for some reason, and I am wondering what that reason was.
>
> MR. HAUSFELD: No, Your Honor, two different markets. ***One is the market for an individual endorsement by an athlete. There is no preclusion there.*** The other is the market for the licensing of collegiate athletics, games.

Ex. 1, Hrg. Trans. 63:11-64:13 (emphasis added).

Plaintiffs' admission that NCAA rules or forms do not preclude plaintiffs from post-eligibility participation in "the market for an individual endorsement by an athlete" compels dismissal of the CAC's antitrust claims. Plaintiffs have not even attempted to allege facts to support their new claim that Division I forms or rules somehow preclude plaintiffs from participating in a post-graduation market for their "collective team" collegiate likenesses, while nonetheless permitting them to participate in a market for "individual" collegiate likenesses. Nor does the CAC allege facts to support the claim, brought by several new antitrust plaintiffs, that even student-athletes who stopped playing NCAA sports in the 1960s and 70s have somehow been "restrained" by a Division I form used during the 2008-09 academic year, or by alleged "precursor" forms and rules that plaintiffs have not even attempted to identify in the CAC.

The right of publicity claims should also be dismissed. Plaintiffs' "amended" breach of contract claim is not amended at all; it is simply a slightly more verbose version of the claim that this Court has already dismissed. Their boilerplate conspiracy allegation is directly contradicted by facts plaintiffs themselves have alleged, and is therefore insufficient as well.

## I. THE RIGHT OF PUBLICITY CLAIMS MUST BE DISMISSED

### A. Plaintiffs Have Failed To Cure The Deficiencies In Their Breach Of Contract Claim

The Court granted the NCAA's previous motion to dismiss the Right of Publicity plaintiffs' breach of contract claim, holding that plaintiffs' allegations that they signed a form averring that they had "'read and understood' the NCAA's rules" and that "to the best of [their] knowledge, [they] have not violated any amateurism rules" were insufficient to "indicate that the document is a contract." *Keller* Order, Dkt. 150, at 18. The plaintiffs were given leave to amend to correct this deficiency; they failed to do so. Although the plaintiffs have now attached to the

CAC the form that they claim gives rise to their breach of contract claim, it is the *same* form on which their previous complaint relied. *See, e.g.*, CAC, Ex. A at 4 ("You affirm that you have read and understand the NCAA amateurism rules") and 2 ("By signing this part of the form, you affirm that, to the best of your knowledge, you are eligible to compete in intercollegiate competition"). There is no meaningful difference between the breach of contract claim the Court has already dismissed and the "amended" claim in the CAC. *Compare* CAC at 52-54, 138-39 to *Keller* Comp., Dkt. 1, at ¶¶14-15, 85-88. It should be dismissed for that reason alone.

Moreover, Exhibit A is clearly not a contract, and none of the language in it supports plaintiffs' claim.[1] Exhibit A is titled "Student-Athlete Statement – Division I" and states that its purpose is "[t]o assist in certifying eligibility." CAC, Ex. A at 1. The Statement contains no contractual promises or representations of any kind on behalf of the NCAA, let alone promises that the NCAA will not "[use] Right of Publicity Plaintiffs' and class members' names, pictures and likenesses for commercial purposes," *see* CAC at 139, ¶26. Nor have plaintiffs identified any consideration that they supposedly provided to the NCAA in response for the NCAA's alleged "promises." The Student-Athlete Statement is just what it says it is: a certification form. It is not a contract, and plaintiffs have alleged no facts to suggest otherwise. That failure is fatal to their claims. *See Price v. 7-Eleven, Inc.*, No. B212597, 2009 WL 4068607, at *6 (Cal. App. 2 Dist. Nov. 25, 2009); *Schaefer v. Williams*, 15 Cal. App. 4th 1243, 1246, 19 Cal. Rptr. 2d 212 (Cal. App. 4 Dist. 1993).

Plaintiffs' contract claim also fails because the Statement does not contain any of the allegedly "breached" terms. Nowhere in the Statement does it state (1) that the NCAA cannot "profit" from student-athlete likenesses, (2) that the NCAA must "insure and protect" the rights of student-athletes in its contracts with others, (3) that the NCAA cannot "permit" others to use student-athlete likenesses, (4) that the NCAA cannot "purposefully ignore[e]" others' use of

---

[1] Under California law, the essential terms for a contract are (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. *See* Cal. Civ. Code § 1550.

student-athlete likenesses, or (5) that the NCAA can or cannot do anything.[2]  *Compare* CAC at 139, ¶33 (plaintiffs' allegations regarding the breach of the "contract") with CAC Ex. A and CAC at 53-54, ¶¶188-94 (plaintiffs' own characterization of the Statement).  The "breaches" alleged by plaintiffs have nothing to do with the "contract" they have alleged.  The plaintiffs' breach of contract claim should be dismissed again, this time with prejudice.

### B. Plaintiffs' Conspiracy Claim Fails To Comply With *Twombly*

The Right of Publicity plaintiffs have also failed to allege facts sufficient to support their claim that the NCAA – which has a contract with EA that expressly ***declines*** to grant EA the right to use student-athlete likenesses in its games, *see* CAC at 52, ¶180 – nonetheless somehow "conspired" with EA in its alleged use of student-athlete images in those games.  This issue is ably addressed in CLC's motion to dismiss, and for the reasons stated therein, the Right of Publicity plaintiffs' conspiracy claims should be dismissed against the NCAA as well.

## II. THE ANTITRUST CLAIMS MUST BE DISMISSED

### A. Plaintiffs Have Failed To Allege Sufficient Facts To Show A Restraint

The CAC adds eight new antitrust plaintiffs, four of whom participated in NCAA athletics between 1963 and 1968; one between 1978 and 1980; one between 1989 and 1995, and two between 2003 and 2008.  *See* CAC at 15-41, ¶¶45-139.  Despite the fact that 45 years separates the first year of antitrust plaintiffs' NCAA participation from the last, each plaintiff's claim depends entirely on the same boilerplate claim that he

> signed one or more of the release forms discussed herein (or the precursors to them, including scholarship and eligibility papers that the NCAA has interpreted as a release of the student-athlete's rights with respect to his image, likeness and/or name . . .)

*See* CAC at 15, ¶45; 21, ¶61; 24, ¶72; 26, ¶84; 28, ¶93; 31, ¶103; 35, ¶114; 37, ¶125; 40, ¶135; 42, ¶143; 45, ¶153, 47, ¶161.  The only form "discussed herein" is Form 08-3a, which is the Student-Athlete Statement attached to the CAC as Exhibit A.  *See* CAC at 80-83, ¶¶284-294.  Form 08-3a was used for the 2008-09 academic year.  *See* CAC at 80, ¶284; CAC Ex. A.

---

[2] To be clear: the NCAA does not make commercial use of student-athlete names, pictures or likenesses, but that is a result of NCAA policy, not a contractual obligation.

It is not reasonable, or sufficient under *Twombly*, for plaintiffs whose participation in NCAA athletics ended in the 1960s, 70s and 80s to base an antitrust claim against the NCAA solely on a Division I form that was used in ***2008***. Nor is plaintiffs' attempt to skirt around this problem through boilerplate reference to "precursors" to the NCAA's alleged restraints, *see, e.g.,* CAC at 15, ¶45, sufficient.[3] *Malletier v. The Flea Market, Inc.*, No. C 09-01062 CW, 2009 WL 1625946, at *3 (N.D. Cal. June 10, 2009) (Wilken, J.). *See* CAC at 80-81, ¶¶286, 288. It is not too much to ask that plaintiffs identify the NCAA rules or forms that supposedly give rise to their claims, especially since those claims now span several decades.

Indeed, even counsel for the right of publicity plaintiffs – ***co-lead counsel in this case*** – have noted that the sparse factual allegations underlying the CAC's antitrust claims make those claims "novel" and difficult to litigate. *See* Reply in Support of Mot. to Deconsolidate, Dkt. 244 at 3 (noting that the CAC alleges "a price-fixing conspiracy where the price of the allegedly price-fixed good is 'zero'" and "a boycott without alleging that [antitrust] plaintiffs ever approached EA or other defendants to license their likenesses"). Right of publicity counsel is too kind to the antitrust claims: they are not just "novel" in their utter lack of factual support; they are impermissible under *Twombly*. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B. Plaintiffs Have Conceded That The Alleged "Restraint" Does Not Exist

Plaintiffs' antitrust claim, in a nutshell, seems to be that the NCAA's (largely unidentified and unalleged) forms and rules somehow preclude plaintiffs from selling their collegiate likenesses *after* they leave school and are no longer subject to NCAA rules. The problem is that both the CAC, and plaintiffs' counsel, admit that plaintiffs' claim is not really true.

Like the original *O'Bannon* complaint, the CAC concedes that former student-athletes are free, post-graduation, to sell or license their collegiate and post-collegiate likeness. *See* CAC at 109, ¶¶369-370; 118, ¶¶382-83. These allegations are obviously inconsistent with plaintiffs' claims that the NCAA has used its alleged "perpetual license" to "boycott" plaintiffs from making

---

[3] This is especially true in light of the fact that plaintiffs have not identified any forms that they are alleged to have signed, nor have plaintiffs cited any NCAA rule requiring a "release" of their rights related to their likenesses. *See* CAC at 80-81, ¶¶286, 288.

such sales, or to "fix" the price of such sales at zero. *See id.* at 9-10, ¶¶24-25. When the NCAA pointed out this inconsistency in its first Motion to Dismiss, the antitrust plaintiffs claimed that these were "recent exceptions," somehow allowed by recent changes to the NCAA's "restraint." O'Bannon Opp. to NCAA Mot., Dkt. 107 at 10. Plaintiffs never alleged any facts to support this "recent exception" theory.

That was probably just as well, because when the Court asked lead antitrust counsel about the claimed "recent exceptions," the story changed. Plaintiffs (incorrectly) denied ever making their "recent exceptions" argument, Ex. 1, Hrg. Trans. at 64:6-19, and instead claimed that the NCAA's "restraint" applied only to the "market for the licensing of collegiate athletics, games" or "as a collective team," while leaving plaintiffs free to participate in a market for "individual" licenses. *Id.* at 63:15-64:13; *see also supra* at 1.

The above concession, and the CAC's continuing admission that former student-athletes are free to license their collegiate likeness, compel dismissal of the antitrust claims. The CAC contains no facts to support plaintiffs' apparent claim that Division I Form 08-3a or Bylaw 12.5.1.1 – neither of which says anything about "collective" or "individual" likenesses, let alone distinguishes between the two – have somehow been used by the NCAA to obtain a "perpetual license" for "collective" or "team" collegiate images, but not for "individual" collegiate images. Nor does the CAC allege any other facts to explain why or how former student-athletes, who plaintiffs admit are free from NCAA "preclusion" when licensing their "individual" collegiate likenesses, are somehow subject to NCAA "boycotts" or "price fixes" when they attempt to license "collective" likenesses.[4] Without factual allegations to substantiate plaintiffs' collective/individual distinction, their claims against the NCAA are simply implausible: why would the NCAA's forms or rules, which mention neither collective nor individual licensing

---

[4] Worse, the CAC further contradicts itself by devoting several paragraphs to apparent complaints that plaintiffs have somehow been "precluded" from selling their "individual" likenesses. *See*, *e.g.*, CAC at 17-18, ¶50; 24-25, ¶76; 27, ¶87; 41, ¶139. The antitrust plaintiffs should not be permitted to flip-flop on their theory of the case, narrowing their claims to a restraint of "collective licensing" when challenged while simultaneously claiming that they have been precluded or "boycotted" from sales of their individual collegiate images.

activities post-graduation, preclude the former but not the latter? Plaintiffs' failure to address this gaping hole in their theory requires dismissal. *Malletier*, 2009 WL 1625946 at *3.

### C. Plaintiffs Have Failed To Allege Antitrust Injury

Plaintiffs have also failed to allege facts demonstrating antitrust injury. Plaintiffs claim that the relevant market is for "collegiate licensing," CAC at 88, ¶306, but they have alleged no facts to demonstrate that the NCAA's alleged "restraint" has injured competition as a whole in that supposed market. On the contrary: they have conceded that the NCAA's "restraint," at most, affects only a fraction of the "market," since they have conceded that former student-athletes remain free of NCAA "preclusion," "boycott" or "price fixes" when they license or sell their individual collegiate or post-collegiate images. In light of this concession, plaintiffs were required to allege facts supporting their implicit claim that the NCAA's partial "preclusion" of the "collegiate licensing" market has nonetheless injured competition as a whole in that market. Their failure to do so compels dismissal. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 811 (9th Cir. 1988).

The claims of new antitrust plaintiffs Flournoy, Jaracz, Lattin, Tallent and Gilbert should also be dismissed because plaintiffs have not come close to alleging facts demonstrating that these plaintiffs have suffered a personal injury as a result of the alleged NCAA "restraint." Flournoy, Jaracz, Lattin and Tallent were last subject to the NCAA's rules in the 1960s; Gilbert was last subject to them in the 1970s. *See* CAC 19-32, ¶¶56-110. Given the extreme amount of time that has passed since these plaintiffs were even arguably subject to NCAA rules, it was incumbent on plaintiffs to allege some facts demonstrating how they were nonetheless personally injured by those rules during the last four years. *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987). Plaintiffs have not even attempted to do so.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
By:   */s/ Robert J. Wierenga*
    Gregory L. Curtner (*pro hac vice*)
    Robert J. Wierenga (SBN183687)
    Attorneys for Defendant
Dated: January 18, 2011     National Collegiate Athletic Association

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification to the e-mail addresses registered.

By: */s/ Robert J. Wierenga*
Robert J. Wierenga (SBN183687)
MILLER, CANFIELD PADDOCK AND STONE
Attorneys for Defendant NCAA

18,740,779.1\063863-00040