LATHAM & WATKINS LLP
DANIEL M. WALL - #102580
Email: dan.wall@lw.com
TIMOTHY L. O'MARA - #212731
Email: tim.omara@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
Email: rvannest@kvn.com
R. JAMES SLAUGHTER - #192813
Email: rslaughter@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendant
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE NCAA STUDENT-ATHLETE NAME & LIKENESS LICENSING LITIGATION | Case No. CV-09-1967-CW<br><br>*(Consolidated w/Case Nos. C-09-03329-CW; C-09-04128-CW; C-09-04882-CW; C-09-05100-CW; C-09-05134-CW; C-09-05372-CW; and C-09-05378-CW)*<br><br>**DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO DISMISS SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing:  Per Court Order (Doc. #325), Motion Taken Under Submission On The Papers<br>Judge:  The Honorable Claudia Wilken |

**TABLE OF CONTENTS**

Page(s)

I.   INTRODUCTION ........................................................................................................... 1

II.  LEGAL STANDARD.................................................................................................... 2

III. DISCUSSION ................................................................................................................ 2

   A.   Plaintiffs Have Failed To Plead Facts Demonstrating EA's
        Agreement To Participate In An Antitrust Conspiracy........................................ 2

   B.   The Additional Facts Plaintiffs Have Added About EA's
        Commercial Dealings With the NCAA and CLC Are Insufficient
        to Plead an Antitrust Conspiracy ........................................................................ 4

IV.  CONCLUSION.............................................................................................................. 7

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 6

*In re Graphics Processing Units Antitrust Litigation*,
  527 F. Supp. 2d 1011 ................................................................................................................ 6

*Kendall v. Visa U.S.A. Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ............................................................................................... 2, 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................................................................. 6

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984) .................................................................................................................. 6

### RULES

Federal Rules of Civil Procedure 12 ............................................................................................. 1

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT Defendant Electronic Arts Inc. will, and hereby does, move to dismiss each of the Antitrust Case Causes of Action asserted in Plaintiffs' Second Consolidated Amended Class Action Complaint on the grounds that they fail to state a claim upon which relief can be granted. The briefing schedule for this motion has been set by Court Order. *See* Order Granting EA's Mot. to Dismiss and Denying CLC's and NCAA's Mots. to Dismiss at 16, May 2, 2011 (Doc. #325) (C. Wilken) ("Order"). Further, the Court's Order states that this motion "will be taken under submission on the papers." *Id*. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings on file in this action, and upon such other matters presented to the Court at the time of any hearing held for this motion.

# RELIEF SOUGHT

Defendant Electronic Arts Inc. seeks dismissal of the "Antitrust Case Causes of Action" asserted in Plaintiffs' Second Consolidated Amended Class Action Complaint ¶¶ 487-522, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: May 31, 2011

Respectfully Submitted,

LATHAM & WATKINS LLP
Daniel M. Wall
Timothy L. O'Mara

By  /s/ Timothy L. O'Mara
Timothy L. O'Mara
Attorneys for Defendant
ELECTRONIC ARTS INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

On May 2, 2011, the Court granted Electronic Arts Inc.'s motion to dismiss each of the antitrust causes of action asserted against it.[1] The Court held that there were no factual allegations indicating that EA joined or agreed to participate in a group boycott, refusal to deal, or price-fixing conspiracy. Order at 9-11. Significantly, the Court noted that EA had commercial relationships with the NCAA, CLC, and others as a licensee. *Id.* at 9-10. However, distinguishing these activities from a conspiracy "that was intended to impose an unreasonable restraint of trade," the Court found the antitrust allegations against EA deficient. *Id.* at 9-11. The Court granted Plaintiffs leave to amend, and instructed Plaintiffs to plead, if possible, "a factual basis for EA's participation in an antitrust conspiracy." *Id*. at 16.

Plaintiffs filed the Second Amended Complaint on May 16, 2011. The Second Amended Complaint identifies a handful of paragraphs that purport to plead "additional facts" regarding EA, but concedes that "[i]n all other respects, the Antitrust Claims remain unchanged."[2] One can focus, thus, on the purported new allegations to determine the sufficiency of the Second Amended Complaint as a whole.

In reality, the "additional facts" are not new or materially different allegations. Rather, each concerns (a) EA's alleged efforts to obtain greater rights from the NCAA to use student-athlete names and likenesses, or (b) EA's alleged use of student-athlete publicity rights. Categorically, that is exactly what Plaintiffs alleged previously. At best, the "additional facts" are slight elaborations of allegations that were (i) contained in the previous complaint, (ii) addressed by the parties in the prior motion to dismiss, *and* (iii) found by the Court to be insufficient. The adage "same wine, new bottle" could not be more on point.

---

[1] *See* Order Granting EA's Mot. to Dismiss and Denying CLC's and NCAA's Mots. to Dismiss at 11, 16, May 2, 2011 (Doc. #325) ("Order"). The procedural history of this case is set forth in the Order at 7-8.

[2] Second Consol. Am. Class Action Compl. ¶ 1 , May 16, 2011 (Doc. #327)("Second Am. Compl."). Plaintiffs state that the new allegations against EA are found in paragraphs 373, 377, 388, 399-400, 404, and 407-18 of the Second Am. Compl. *Id.*

Plaintiffs have failed entirely to address the pleading defect at the heart of the Court's Order dismissing the antitrust claims against EA. The prior complaint was not lacking in detail about EA's dealings with the NCAA; it was lacking factual allegations linking EA to a *competition-reducing* conspiracy. That is, there were no allegations suggesting that EA had any role in adopting the "amateurism" rules that allegedly force student-athletes to relinquish their publicity rights for zero consideration, or the vaguely-alleged "price-fixing conspiracy intended to set at zero dollars the price paid to Antitrust Plaintiffs and putative class members for the use of their images, likenesses and/or names." Order at 9-11 (quotation omitted). In fact, the Second Amended Complaint says nothing new at all about these issues. As such, it fares no better than its predecessor; there are simply no "facts demonstrating EA's agreement to engage in an antitrust conspiracy with NCAA and CLC." Order at 11.

Because Plaintiffs have failed to "plead a factual basis for EA's participation in an antitrust conspiracy," as mandated by the Court (Order at 16), the antitrust-based claims against EA should be dismissed with prejudice.

## II. LEGAL STANDARD

The legal standards governing dismissal under Rule 12(b)(6) are summarized at page 8 of the Order.

## III. DISCUSSION

### A. Plaintiffs Have Failed To Plead Facts Demonstrating EA's Agreement To Participate In An Antitrust Conspiracy

In dismissing the antitrust claims brought against EA, the Court held that Plaintiffs had failed to identify "any…agreement to which EA was a party that relates to the alleged price-fixing scheme," or to provide "any allegations to suggest that EA agreed to participate in [the group boycott / refusal to deal] conspiracy." Order at 9-11. That decision rejects the sufficiency of a slew of facts that Plaintiffs had alleged about the commercial agreements EA has with the other defendants and about the licensing relationship EA has had with the NCAA and CLC. *See* Order at 9 ("An 'account of a defendant's commercial efforts' is not, on its own, sufficient to support a § 1 claim.") (quoting *Kendall v. Visa U.S.A. Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008)).

The Court granted Plaintiffs leave to amend to plead a factual basis for EA's participation "in an antitrust conspiracy" (Order at 16), a phrase that in context clearly meant either or both of (i) "Defendants' concerted action to require all current student-athletes to sign forms each year that purport to require each of them to relinquish all rights in perpetuity for use of their images, likenesses and/or names," and (ii) "to deny compensation" to student-athletes "through restrictions in the [NCAA] Bylaws." Order at 11 (quotation omitted, bracket in original). The Second Amended Complaint, however, pleads no such facts. Indeed, there are *no additional allegations whatsoever* that EA was involved, in any respect, in the NCAA Division I rules and forms which (a) purportedly address the eligibility of student-athletes to participate in collegiate sports, and (b) supposedly force student-athletes to relinquish for zero consideration the legal rights to profit from the use of their likenesses as NCAA athletes. Accordingly, the exact same analysis that mandated dismissal of the Amended Complaint still holds; the Second Amended Complaint contains no "facts demonstrating EA's agreement to engage in an antitrust conspiracy with NCAA and CLC." Order at 11.

Plaintiffs' failure to plead any facts indicating that EA had any role in creating, implementing, or maintaining the NCAA forms or rules underlying their antitrust claims is fatal. Plaintiffs simply have not pled what the Court said they must plead. In addition, the very existence of the NCAA's amateurism rules eviscerates any argument that a potential "buyer" (technically, licensee) of publicity rights, like EA, would have a motive to join an NCAA-led price-fixing or group boycott conspiracy to "deny compensation" to student-athletes. The NCAA's amateurism rules make it impossible for a potential licensee, like EA, to pay current student-athletes for whatever name and likeness rights they may hold, because payment destroys the athletes' eligibility and gets them kicked-off the team, in which case EA would no longer be interested in using their names or likenesses. None of this is EA's doing or even preference and, thus, does not plausibly infer EA's participation in an antitrust conspiracy.

\ \ \ \

### B. The Additional Facts Plaintiffs Have Added About EA's Commercial Dealings With the NCAA and CLC Are Insufficient to Plead an Antitrust Conspiracy

Plaintiffs identify several paragraphs in the Second Amended Complaint—specifically ¶¶ 373, 377, 388, 399-400, 404, and 407-18—which they claim "plead additional facts" as to EA. Second Am. Compl. ¶ 1. All of these "additional facts" fall into two buckets: (a) allegations regarding EA's efforts to obtain greater rights to use student-athlete names and likenesses from its licensor (CLC), the NCAA, and NCAA member schools, or (b) allegations regarding EA's alleged use of student-athlete publicity rights. These "additional facts" have no antitrust significance.

In the first instance, Plaintiffs' "additional facts" are essentially no different than the allegations contained in Plaintiffs' prior complaint. Plaintiffs' opposition to EA's original motion to dismiss summarized the key allegations against EA in a manner that now provides a handy reference point (bullets added for greater clarity):

> "The [Amended Complaint] alleges that EA
>
> - persuaded the NCAA and CLC to agree to more photo-realistic depictions of athletes (¶¶ 376-79),
> - permitted hacks that allowed student-athletes' names to be used in EA videogames (¶ 385),
> - entered into selective license deals, but not for student athletes generally, (¶¶ 383-84),
> - attended practice sessions at NCAA member schools to make its games more realistic (¶ 393),
> - rampantly commercialized its games (¶¶ 379-401),
> - reached out to add 'classic teams' to its games (¶¶ 388-89),
> - succeeded in making its games photorealistic as to athletes (¶¶ 390-92), and
> - profited from this exploitation despite not having any valid rights to student-athlete names, images or likenesses (¶¶ 381-82, 402)."[3]

---

[3] Pls.' Combined Opp. to Defendants' Mots. to Dismiss at 9-10, Feb. 16, 2011 ("Pls' Opp.").

Many of the "additional facts" added to the Second Amended Complaint merely elaborate on the allegations listed above. For example, the second bullet above references Plaintiffs' previous allegation that EA permitted "hacks" that allowed student-athletes' names to be used in EA videogames. Am. Compl. ¶ 385; *see also* Pls.' Opp. at 9. In the Second Amended Complaint, Plaintiffs simply repackage that exact same point, alleging that EA "purposefully and knowingly allow[s] third parties to create and market modifications to the NCAA videogames which allow players to upload complete roster information for various teams, including player names." Second Am. Compl. ¶ 412. That is not different in kind, and it does not remotely cure the pleading defects that mandated dismissal of the previous complaint.

The repackaging of prior allegations is most evident in relation to the first bullet point above: the notion that EA wanted to put more photorealism in its videogames than the NCAA bylaws would allegedly allow, and the NCAA allegedly acceded in part to EA's request.[4] Virtually all of the "new" facts are in this exact same vein. The Second Amended Complaint alleges: EA has advocated for and obtained agreement to make its NCAA-themed videogames as photorealistic as possible (¶ 399); EA and the NCAA have had extensive discussions about the use of student-athlete names (¶ 399); EA affirmatively lobbied for proposed amendments to the NCAA bylaws that would allow the use of student-athlete names (¶¶ 399, 417); EA wanted to put student-athlete names in future editions of its games and was working with the NCAA on doing so (¶ 404); EA was "constantly exploring" with the NCAA the use of real player names and images (¶ 407); EA wanted to include "actual student-athlete names and likenesses" in its games and the NCAA was investigating it (¶ 408); EA allowed third parties to use the names of student-athletes in televised presentations of EA videogames and in internet marketing (¶¶ 410-411); and, finally, EA developed web-based tools for its own website that allowed users to create and upload team rosters (¶¶ 413-416).

---

[4] Plaintiffs previously alleged that EA "persuaded the NCAA and CLC to agree to more photo-realistic depictions of athletes" and "succeeded in making its games photorealistic as to athletes." Pls.' Opp. at 9-10 (citing Am. Compl. ¶¶ 376-79, 390-92); *see also* EA's Reply in Support of Mot. to Dismiss Consol. Am. Class Action Compl. at 7-8, Fed. 10, 2011, (Doc. #304).

The legal question these allegations raise is identical to that addressed at length in EA's briefing in support of its original motion to dismiss—namely, do EA's alleged efforts to get additional rights from the NCAA make EA a participant in the conspiracy that plaintiffs have alleged against the NCAA and CLC? The Court's Order correctly held that they do not; these are the very same "commercial efforts" that the Court held were not "on [their] own, sufficient to support a §1 claim." Order at 9 (quoting *Kendall*, 518 F.3d at 1048). The Court's holding is well grounded in the bedrock legal principal that "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws." *Kendall*, 518 F.3d at 1049 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-57 n.5 (2007)). The essence of this fundamental rule is that when a defendant acts in a way that could be rational and normal for one who is *not* a member of a conspiracy, that behavior cannot be used to infer membership in the conspiracy as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("[C]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy.") (citations omitted); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) (dismissing complaint that inferred agreement from "conduct [that is] consistent with conspiracy but … equally consistent with lawful conduct," and holding that normal business interaction "is presumed legitimate and is not a basis from which to infer conspiracy, without more."). *See also Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984) (holding that, in order to infer conspiracy, "there must be evidence that tends to exclude the possibility of independent action….").

The essential point once again is that a licensee like EA does not have to be part of an unlawful conspiracy to desire more or different rights, and the law does not punish efforts to obtain more rights by imputing membership in an antitrust conspiracy. Plaintiffs admit that the popularity of EA's NCAA-branded videogames depends in part on the depiction of NCAA

school logos, uniforms, mascots, etc., and that photorealism in the depiction of players would contribute to the games' popularity.[5] One would therefore expect EA to do—independently and unilaterally—everything that Plaintiffs allege as proof of conspiracy. Any videogame licensee would (i) "advocate and obtain agreement on making its NCAA-themed videogames as photorealistic as possible," (ii) have "extensive discussions about the use of the names of student-athletes" with the NCAA, (iii) participate in "yearly meetings involving the NCAA…and CLC regarding the product approval process," (iv) "create 'pitches' for the NCAA to review to incorporate certain items into the videogame," (v) discuss playoffs and coaches with the NCAA, and (vi) lobby the NCAA for modifications to its bylaws that would allow commercial entities to incorporate actual names and photorealistic images of student-athletes into the videogame. *See* Second Am. Compl. ¶¶ 373, 399, 409, 417. Each of these "additional facts" concerns the rational, legitimate commercial efforts of a licensee to maximize the value of the intellectual property it licenses from an upstream licensor. Not one is new, and not one implies or infers participation in an unlawful antitrust conspiracy.

## IV.   CONCLUSION

For these reasons, Plaintiffs' antitrust-based claims against EA should be dismissed with prejudice.

Dated: May 31, 2011

Respectfully submitted,

LATHAM & WATKINS LLP
  Daniel M. Wall
  Timothy L. O'Mara

By: /s/ Timothy L. O'Mara
  TIMOTHY L. O'MARA
  Attorneys for Defendant
  ELECTRONIC ARTS INC.

SF\858736

---

[5] Pls.' Opp. at 5.