**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

**IN RE NCAA STUDENT-ATHLETE NAME & LIKENESS LITIGATION**

Case No. 09-cv-01967 CW (NC)

**ORDER DENYING PLAINTIFFS' MOTIONS TO COMPEL NCAA RESPONSES TO DOCUMENT AND INTERROGATORY REQUESTS**

Re: Dkt. Nos. 377, 378, 386, 387, 388, and 394

The question presented is whether an unincorporated association, the National Collegiate Athletic Association, may be compelled to provide responses to document and interrogatory requests on behalf of its member institutions. The institutions are not parties to this lawsuit. The question is a significant one for purposes of case management, yet it may be resolved through a straightforward analysis of Rules 33 and 34 of the Federal Rules of Civil Procedure. As Plaintiffs have failed to establish that the NCAA has "control" of its member institutions and that the particular information they seek about member institutions is "available" to the NCAA, the NCAA cannot be compelled to produce documents or information that it does not already possess. Accordingly, Plaintiffs' motions to compel are DENIED.

//

## I. BACKGROUND

Plaintiffs, former college student-athletes, assert that the NCAA, Collegiate Licensing Company (CLC), and Electronic Arts Inc. (EA) have conspired against them in violation of antitrust and "right of publicity" laws.[1]

The NCAA is an unincorporated association of colleges, universities, and athletic conferences that governs collegiate athletics. The CLC allegedly handles licensing for the NCAA. EA develops and distributes video games, including games that allegedly depict images of current and former college athletes.

Plaintiffs' claims are under two legal theories. The "Antitrust Plaintiffs" assert that Defendants have conspired to restrain trade in violation of the Sherman Act. Plaintiffs contend that this anti-competitive conspiracy has foreclosed them from receiving compensation in connection with the commercial exploitation of their images, likenesses, and names. The "Right of Publicity Plaintiffs" contend that Defendants have unlawfully used Plaintiffs' likenesses in games produced and distributed by EA.

Supervision of all discovery in this case has been referred to this Court by District Judge Claudia Wilken as provided by 28 U.S.C. § 636(b) and Civil Local Rule 72. The parties report that they have "zealously pursued discovery." Dkt. No. 403 at 6. More than 325,000 pages of documents have been exchanged in discovery, and third parties have produced more than 35,000 pages in response to subpoenas.[2] *Id.*

The present discovery dispute is summarized in joint statements submitted by Plaintiffs and the NCAA. Dkt. Nos. 377, 378. First, must the NCAA produce documents in the possession of NCAA members? Dkt. No. 378. Plaintiffs contend that the NCAA has "control" of documents possessed by its member institutions. Second, in

---

[1] The allegations in the Second Amended Complaint are summarized in the District Court's July 28, 2011, order denying EA's motion to dismiss. Dkt. No. 345. A procedural history of the case is provided in the District Court's May 2, 2011, order granting in part and denying in part motions to dismiss. Dkt. No. 325.

[2] This order does not resolve Plaintiffs' motions to compel (i) the deposition of NCAA President Mark Emmert and (ii) the production of documents from the Big Ten Conference and Big Ten Network in related case 11-mc-80300 CW.

response to interrogatory requests, is information possessed by member institutions "available" to the NCAA, so that the NCAA may be compelled to provide it? Dkt. No. 377.

To be clear, this discovery dispute does not concern whether the NCAA must produce documents and information in its possession, even if such documents or information came from members. Dkt. No. 378 at 3. The NCAA states that it has no objection to producing documents in its possession, custody, or control, and that it has no objection to responding to interrogatories with information that is presently in its possession or control. Dkt. Nos. 377, 378. This dispute also does not concern whether the documents and information sought are relevant to this case. It is assumed for purposes of this order that the documents and information sought are relevant. Finally, this order does not determine whether NCAA members are "real parties in interest" to this case, because Plaintiffs have not advanced that theory. *See University of Texas v. Vratil*, 96 F.3d 1337, 1340 (10th Cir. 1996) (declining to require the NCAA to respond to discovery on behalf of its members under the theory that the members were "real parties in interest" under Kansas law).

The Court issues this order after determining that a hearing is unnecessary in accordance with Civil Local Rule 7-1(b).

**II. DISCUSSION**

The crux of this discovery dispute is whether the NCAA has control of its member institutions for purposes of responding to discovery requests. The NCAA is an unincorporated not-for-profit association comprised of member colleges, universities, and conferences. Second Am. Compl. ¶ 280; *see* Brest Decl., Dkt. No. 387, and Curtner Decl., Dkt. No. 388. The basic purpose of the NCAA is to maintain intercollegiate athletics. The NCAA's membership is broken into three classifications: Divisions I, II, and III. Each Division is governed by a committee structure comprised of representatives from member institutions. There are more than 1,000 institutions and conferences associated in the NCAA, and roughly 340 schools and 30 conferences

participate in Division I. Dkt. Nos. 327, 378, 387, 388.

The NCAA is governed by a Constitution and Bylaws that together span more than 400 pages. Dkt. No. 327 at ¶ 282; Dkt. No. 388. Changes to NCAA rules are made under a process set forth in Article 5 of the NCAA Constitution. Dkt. No. 387 at ¶ 4. Amending existing rules or creating new ones requires the approval of NCAA members. *Id.*

According to S. David Brest, the Vice-President for Division I at the NCAA, "[t]he NCAA cannot order its members to produce documents to it or provide it with information without some basis for that order in NCAA legislation. The NCAA has no ability to order its membership to produce documents or information on its own authority, apart from NCAA legislation." Dkt. No. 387 at ¶ 5.

In sum, according to Brest and the NCAA, the NCAA does not have the authority to acquire from its members the documents and information that Plaintiffs seek. Plaintiffs, on the other hand, maintain that the NCAA Bylaws permit the NCAA to exert sufficient control over its members that it should be able to provide information and documents. At the least, Plaintiffs contend, the NCAA should ask its members to voluntarily provide information, or should play a facilitating role in collecting documents and information. Dkt. No. 378 at 2.

**A. Document Requests Under FED. R. CIV. P. 34.**

Plaintiffs' document requests seek materials in physical possession of the NCAA's members, specifically "template likeness release/consent forms, television and licensing contracts, copyright policies, and broadcasting manuals." Dkt. No. 378 at 1.

Under Federal Rule of Civil Procedure 34, the NCAA's obligation to produce documents extends to relevant non-privileged documents in its "possession, custody, or control." The documents under discussion in this order are not in the NCAA's physical possession or custody. The question is whether the NCAA "controls" documents possessed by its member institutions.

"Control is defined as the legal right to obtain documents upon demand." *In re Citric Acid Lit.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (quoting *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989)). "The party seeking production of the documents … bears the burden of proving that the opposing party has such control." *Int'l Union*, 870 F.2d at 1452. The Ninth Circuit in *International Union* emphasized that proof of "theoretical control is insufficient; a showing of actual control is required." *In re Citric Acid*, 191 F.3d at 1107 (quoting *Int'l Union*, 870 F.2d at 1453-54).

In the *Citric Acid* case, plaintiffs asked the Court to define "control" in a manner that focuses on a party's "practical ability" to obtain requested documents. 191 F.3d at 1107. The Ninth Circuit rejected the argument. It is not enough that a party may have a "practical ability to obtain the requested documents" from an affiliated organization, because the other entity "could legally–and without breaching any contract–continue to refuse to turn over such documents." *Id.* at 1108.

Here, Plaintiffs advance three theories in support of their assertion that the NCAA has "control" of its members' documents.

**1. Does the NCAA Have a "Legal Right" to Obtain Documents?**

First, Plaintiffs, citing *International Union*, assert that the NCAA has the "legal right" to obtain the desired documents upon demand. 870 F.2d at 1452. In support of this position, Plaintiffs state generally that the NCAA has "plenary power to collect information and data from members when association-wide issues are at stake, and it does exactly that when it chooses." Dkt. No. 378 at 3. More specifically, Plaintiffs point to NCAA Bylaw 3.2.4.17.2, which requires member institutions to "maintain written policies" for licensing and other commercial agreements involving the use of student-athletes' name or likeness. Such policies "shall be made available for examination on request" by the NCAA. Bylaw 3.2.4.17.2; *see* Dkt. No. 386 at 6 n.4. During an NCAA enforcement action, members are required to make "full and complete disclosure" of "any relevant information" requested by NCAA enforcement staff. Bylaw 19.01.3.

The Court finds that Plaintiffs have fallen short of establishing that the NCAA has a "legal right" to acquire the documents sought from its member institutions. Neither the NCAA Constitution nor the Bylaws grants the NCAA the right to take possession of its members' documents showing template likeness release/consent forms, television and licensing contracts, copyright policies, and broadcasting manuals. At best, the relationship between the NCAA and its members is analogous to the "cross-sales agent relationship" described in *Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Systems, Inc.*, No. C 04-05368 SI, 2006 WL 3742244, at *3 (N.D. Cal. Dec. 19, 2006) (finding no "control" where cross-licensing agreement was not as strong as a traditional principal-agent relationship). Here, as in that case, the NCAA rules do not grant one party control over the other.

Furthermore, the fact that the NCAA can take enforcement action against member institutions that violate NCAA rules does not mean that the NCAA has power to compel members to produce the documents sought in this litigation. *See Int'l Union*, 870 F.2d at 1452 (finding that International Union did not have "control" over local union documents even though International had power to dissolve local union, revoke charter, and remove recalcitrant leaders under certain circumstances).

**2. Does the NCAA Have a "Practical Ability" to Obtain Documents?**

In the alternative, Plaintiffs invite this Court to adopt a "practical ability" test for "control," even though that standard was rejected by the Ninth Circuit in *Citric Acid*. 191 F.3d at 1107-08. Plaintiffs contend that even if the NCAA does not have a "legal right" to acquire the documents possessed by its members, it still has the "practical ability" to obtain the documents.

In support of this invitation, Plaintiffs note that two former Magistrate Judges in this District found that "control" could be demonstrated by a "practical ability" to obtain documents from a non-party. *Hitachi, Ltd. v. AmTran Tech. Co., Ltd.,* No. C 05-2301 CRB (JL), 2006 WL 2038248 at *2 (N.D. Cal. July 18, 2006); *Synopsys, Inc. v. Ricoh Co., Ltd.* Nos. C 03-22899 MJJ (EMC) & C 03-4669 MJJ (EMC), 2006 WL 1867529, at *2 (N.D. Cal. July 5, 2006).

A close look at the facts of those two cases, however, demonstrates that they are distinctly different than the circumstances presented by the NCAA and its members. In *Hitachi*, a patent dispute, Chief Magistrate Judge James Larson focused on the fact that an "agent-principal" relationship was established between non-party Inpro and party Hitachi. 2006 WL 2038248 at *2. Furthermore, non-party Inpro had "actively participated" in the litigation and was present at a mediation session in the case. *Id.* Under these circumstances, the Court found that Hitachi had "control" over its agent Inpro. *Id.*

Similarly, in the *Synopsys* case, Magistrate Judge Edward M. Chen found it "especially telling" that a non-party and party agreed to be represented by the same attorney for purposes of discovery and that their discovery conduct amounted to more than just "voluntary cooperation." 2006 WL 1867529 at *2.

Here, in contrast to the *Hitachi* and *Synopsys* cases, (i) there is no evidence to support that the NCAA and its members are in an agent-principal relationship; (ii) individual institutions have not "actively participated" in this litigation to the extent of Inpro in the *Hitachi* case; and (iii) there is no evidence presented that the NCAA and its members have done more than voluntarily cooperate in response to the discovery demands.[3]

At bottom, this Court agrees with Magistrate Judge Paul S. Grewal that the "practical ability" test for "control" in the *Hitachi* decision does not square with Ninth Circuit precedent. *Genentech, Inc. v. Trustees of the Univ. of Penn.*, No. C 10-2037 PSG, 2011 WL 5373759, at *2 (N.D. Cal. Nov. 7, 2011). But even if this Court were to apply the "practical ability" test proposed, Plaintiffs here have not established facts to support the assertion that the NCAA has the "practical ability" to produce documents possessed by its member institutions.

---

[3] Plaintiffs ominously charge that the NCAA is "covertly exerting control" of responses to Plaintiffs' subpoenas to Division I conferences, but the evidence in support of the charge is a privilege log entry of a Memorandum and an assertion that there have been conference calls. Dkt. No. 378 at 2 n.3.

### 3. Did the NCAA Waive Its Objection to Producing Its Members' Documents by Pleading a "Single Actor" Affirmative Defense?

Finally, Plaintiffs assert that it is unfair for the NCAA to withhold its members' documents because the NCAA's ninth affirmative defense states that "[i]n connection with the challenged conduct, NCAA acted as a single actor and its actions did not constitute a conspiracy." Dkt. No. 378 at 2. Plaintiffs contend that the NCAA is inequitably seeking to be a "single actor" for purposes of conspiracy law while seeking to be a separate actor for purposes of discovery. But the NCAA's ninth affirmative defense does not assert that "the NCAA *and its members* acted as a single actor." And Plaintiffs cite no authority for the proposition that asserting a "single actor" defense to a conspiracy charge means that an alleged conspirator has to produce discovery possessed by all the co-conspirators. The Court concludes that the NCAA's ninth affirmative defense does not waive its objection to producing documents outside its control.

## B. Interrogatory Requests Under Fed. R. Civ. P. 33.

The NCAA objected to responding on behalf of its members as to interrogatories asking: (i) what rights do NCAA members possess to license current or former student-athletes' names, images or likenesses, Interrogs. 6, 8; (ii) the factual basis for a "copyright defense" asserted by NCAA members, Interrog. 9; and (iii) NCAA members' justifications for not compensating former student-athletes for the licensing of their names, images, or likenesses, Interrog. 22. Dkt. No. 386 at 6.

Under Federal Rule of Civil Procedure 33(b)(1)(B), an interrogatory addressed to the NCAA must be answered by an officer or agent, "who must furnish the information available to the party." The key inquiry here, similarly to the document requests discussed above, is whether information requested by Plaintiffs that is known by NCAA members is "available" to the NCAA.

As Plaintiffs point out, the language in Rule 33 differs from that in Rule 34. In *Hitachi*, the Court held that information "readily obtainable" from a third-party is discoverable through an interrogatory. 2006 WL 2038248, at *3. For example, a parent corporation must respond to an interrogatory with information from a subsidiary. *In re*

*ATM Fee Antitrust Lit.*, 233 F.R.D. 542, 545 (N.D. Cal. 2005). "'Rule 33 requires that a corporation furnish such information as is available from the corporation itself or from sources under its control.'" *Id.* (quoting *Brunswick Corp. v. Suzuki Motor Co., Ltd.*, 96 F.R.D. 684, 686 (D. Wis. 1983)).

Again, Plaintiffs have failed to establish that the information they seek from member institutions is "available" to the NCAA. As discussed above, Plaintiffs have not proven that the NCAA has a legal right to acquire this specific information from its members. And the Court is not convinced that if it were to order the NCAA to survey its members for more information that there would be any remedy if the member institutions refused to comply. Plaintiffs' motion to compel further interrogatory responses is therefore denied.

**III. CONCLUSION**

Because Plaintiffs have failed to establish that the NCAA has "control" of its member institutions, their motion to compel further document responses is denied. Similarly, because Plaintiffs have failed to show that particular licensing and copyright information is "available" to the NCAA, their motion to compel further interrogatory responses is denied.

At bottom, Plaintiffs are not without a means to discover documents and information from athletic conferences, colleges, and universities, as they may utilize Federal Rule of Civil Procedure 45. They may not, however, compel the NCAA to respond to discovery on behalf of its members.

IT IS SO ORDERED.

DATED: January 17, 2012

NATHANAEL M. COUSINS
United States Magistrate Judge