UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE NCAA STUDENT-ATHLETE NAME & LIKENESS LICENSING LITIGATION** | Case No. 09-cv-01967 CW (NC)<br>*Related to* 11-mc-80300 CW (NC) and 12-mc-80020 CW (NC)<br><br>**ORDER DENYING MOTIONS TO COMPEL PRODUCTION OF DOCUMENTS BY NONPARTIES** |

Antitrust plaintiffs move to compel nonparties The Big Ten Conference, The Big Ten Network, and Fox Broadcasting Company to produce documents responsive to three subpoenas issued under Federal Rule of Civil Procedure 45.[1] The Court finds that although antitrust plaintiffs' document requests call for some documents relevant to the claims or defenses in this action, their substantially overly broad scope would subject the nonparties to significant expense and undue burden if the nonparties were compelled to respond to them in their current form. The Court also finds that antitrust plaintiffs did not make reasonable efforts to limit the scope of their document requests to avoid imposing an undue burden on the nonparties, and that they

---

[1] Antitrust plaintiffs filed a motion to compel with respect to each of the nonparties. *See* Pls.' Mot. against The Big Ten Conference at 11-mc-80300 CW, Dkt. No. 2; Pls.' Mot. Against The Big Ten Network at 11-mc-80300 CW, Dkt. No. 26; and Pls.' Mot. Against Fox at 12-mc-80020 CW, Dkt. No. 2. This order resolves all three motions.

ended the meet-and-confer process prematurely. Accordingly, each of the three motions filed by antitrust plaintiffs is DENIED.

The nonparties must produce only the documents that fall within the parameters outlined below, and antitrust plaintiffs must pay for the attorneys' fees and costs incurred by the nonparties in connection with the motions resolved in this order.

## I. BACKGROUND[2]

### A. Summary of Antitrust Plaintiffs' Claims

Antitrust plaintiffs are former student-athletes who played Division I basketball and football at NCAA member institutions.[3] Antitrust plaintiffs bring two claims against defendants NCAA, Collegiate Licensing Company, and Electronic Arts. First, antitrust plaintiffs claim that defendants conspired to restrain trade in violation of Section 1 of the Sherman Act by agreeing to fix at zero the amount of compensation antitrust plaintiffs were allowed to receive under NCAA rules for the use of their names, images, and likenesses in products or media.[4] Second, antitrust plaintiffs claim that defendants engaged in a "group boycott" conspiracy in violation of Section 1 of the Sherman Act by requiring them to sign forms through which student-athletes relinquished for perpetuity all rights pertaining to the use of their images, likenesses, or names, and by subsequently denying them any revenues derived from the for-profit use of their images, likenesses, or names in "television contracts, rebroadcasts of classic games, DVD game and highlight film sales and rentals, on-demand streaming and sales of games and clips, stock footage sales to corporate advertisers and others, photograph sales, video game sales, and jersey and other apparel sales."[5]

Antitrust plaintiffs intend to move to certify two classes to prosecute these claims. The

---

[2] The procedural history of this consolidated action is summarized in the following order by District Judge Wilken: Order on Motion to Dismiss, May 2, 2011, Case No. 09-01967 CW, Dkt. No. 325.

[3] Case No. 09-01967 CW, Dkt. No. 327, Second Consolid. Am. Compl. ¶ 8.

[4] *Id.* ¶¶ 9, 10, 496, 501.

[5] *Id.*; Second Consolid. Am. Compl. ¶ 18 (internal quotation marks omitted).

"Antitrust Declaratory and Injunctive Relief Class" consists of current and former student-athletes who participated in Division I basketball or football and whose images, names, or likenesses have been licensed or sold by defendants, their co-conspirators, or their licensees after the conclusion of the student-athletes' participation in college sports.[6] The "Antitrust Damages Class" consists of former student-athletes who participated in Division I basketball or football and whose images, likenesses, or names have been licensed or sold by defendants, their co-conspirators, or their licensees from July 21, 2005, until final judgment in this action.[7]

All three defendants raised affirmative defenses to the claims of antitrust plaintiffs.[8] In support of one of its affirmative defenses, the NCAA claims that the NCAA's rules, including those governing scholarship awards to student-athletes, promote amateurism and competitive balance between and among NCAA member institutions.[9] The NCAA's answer does not identify any of the specific NCAA rules it claims promote amateurism and competitive balance.

**B.   The Subpoenas at Issue**

Antitrust plaintiffs served three subpoenas requesting documents on nonparties The Big Ten Conference, The Big Ten Network, and Fox Broadcasting Company respectively under the theory that the nonparties possess information relevant to antitrust plaintiffs' claims concerning the licensing, sale, and use of former student-athletes' names, images, and likenesses in non-live television broadcasts.[10] Each of the subpoenas contains thirty-six, twenty-seven, and twenty-eight document requests respectively.[11] After the nonparties objected to the document requests

---

[6] *Id.* ¶¶ 8, 268.

[7] *Id.*

[8] *See* Case No. 09-01967 CW, Dkt. No. 348, Electronic Arts' Answer at 61-66; Dkt. No. 333, Collegiate Licensing's Answer at 56-59; Dkt. No. 330, NCAA's Answer at 54-58.

[9] NCAA's Answer ¶ 24.

[10] *See* 11-mc-80300 CW, Dkt. No. 62, Tr. Hearing on Pls.' Mot., Feb. 8, 2012, at 20.

[11] Case No. 11-mc-80300 CW, Dkt. No. 43; Rosenman Decl., Ex. 3, Subpoena to Big Ten Conference; Case No. 11-mc-80300 CW, Dkt. No. 40-1, Singer Decl., Ex. 2, Subpoena to Big Ten Network; Case No. 12-mc-80020 CW, Dkt. No. 2-1, Ex. A, Subpoena to Fox.

as overly broad and as calling for irrelevant or privileged documents, antitrust plaintiffs narrowed the scope of the subpoenas to eleven, eight, and eight document requests respectively.[12] Despite this reduction in scope, the nonparties refused to produce any documents, arguing that the document requests continued to call for documents that are privileged or irrelevant to the claims or defenses in this action.

**C.    The Motions at Issue**

Antitrust plaintiffs filed three motions to compel against each of the nonparties for failing to produce documents in response to the subpoenas.[13] They filed a motion to compel against The Big Ten Network and another against The Big Ten Conference in the Northern District of Illinois, and they filed a motion to compel against Fox in the Central District of California. All three motions were transferred to this District under 28 U.S.C. § 1404 and referred to this Court for discovery.[14]

Antitrust plaintiffs do not specify in their motions whether they seek to compel the nonparties to respond to each document request in the original subpoenas or to respond only to the document requests that fall within the narrowed versions of the subpoenas. Based on the arguments presented at the hearing on the motions, however, it appears that only the narrowed versions of the document requests are at issue.

Finally, antitrust plaintiffs' motion against The Big Ten Conference includes a request under Federal Rule of Civil Procedure 37(a)(5) for attorneys' fees and costs.

---

[12] Case No. 11-mc-80300 CW, Dkt. No. 43; Rosenman Decl., Ex. 7, Letter to Big Ten Conference; Case No. 11-mc-80300 CW, Dkt. No. 40-1, Singer Decl., Ex. 5, Letter to Big Ten Network; Case No. 12-mc-80020 CW, Dkt. No. 2-1, Ex. C, Letter from Pls. to Fox.

[13] *See* Pls.' Mot. against The Big Ten Conference at 11-mc-80300 CW, Dkt. No. 2; Pls.' Mot. Against The Big Ten Network at 11-mc-80300 CW, Dkt. No. 26; and Pls.' Mot. Against Fox Broadcasting Company at 12-mc-80020 CW, Dkt. No. 2.

[14] 11-mc-80300 CW, Dkt. Nos. 32, 33, 38; 12-mc-80020 CW, Dkt. Nos. 10, 11, 14.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 45 governs any request for the production of documents by subpoena. The scope of the discovery that can be requested through a subpoena under Rule 45 is the same as can be requested under Rule 34, which in turn is the same as can be requested under Rule 26(b).[15] Rule 26(b) allows a party to obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense.[16] The court must limit the extent of the discovery sought if it is unreasonably duplicative, it can be obtained from a source that is more convenient or less burdensome, or the burden of producing it outweighs its likely benefit.[17]

If a person commanded to produce documents by subpoena objects to the document request on a timely basis, the serving party may move to compel the document production.[18] The court, however, "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."[19] Additionally, the court may modify or quash a subpoena that requires the disclosure of confidential commercial information.[20]

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.[21] The issuing court "must enforce this duty and impose an appropriate sanction" on any party or attorney who fails to comply.[22]

---

[15] FED. R. CIV. P. 45 advisory committee's note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules"); FED. R. CIV. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)").

[16] FED. R. CIV. P. 26(b)(1).

[17] FED. R. CIV. P. 26(b)(2)(C).

[18] FED. R. CIV. P. 45(c)(2)(B)(i).

[19] FED. R. CIV. P. 45(c)(2)(B)(ii).

[20] FED. R. CIV. P. 45(c)(3)(B)(i).

[21] FED. R. CIV. P. 45(c)(1).

[22] *Id.*

## III. DISCUSSION

### A. The Document Requests Are Overly Broad

As a preliminary matter, the Court finds that the time-frame for the documents requested is overly broad and not tailored to discover relevant documents. Antitrust plaintiffs seek documents generated from January 1, 2000, to the present with respect to The Big Ten Network and Fox, and from January 1, 2002, to the present with respect to The Big Ten Conference.[23] Antitrust plaintiffs have provided no sufficient justification for requesting documents that cover a ten- to twelve-year period.

Additionally, during oral argument antitrust plaintiffs indicated that they suggested search terms and limited custodians to other nonparties subject to document requests similar to the ones here in order to reduce the burden of responding to those requests.[24] Yet there is no evidence that antitrust plaintiffs attempted to limit the document requests here in a similar fashion, even though antitrust plaintiffs admitted during oral argument that they have discovery material and information from various sources that they could have used to narrow the requests.[25]

With this in mind, the Court turns to each of the document requests. Each request was addressed to all three nonparties unless noted otherwise.

---

[23] Case No. 11-mc-80300 CW, Dkt. No. 43; Rosenman Decl., Ex. 7, Letter from Pls. to Big Ten Conference; Case No. 11-mc-80300 CW, Dkt. No. 40-1, Singer Decl., Ex. 5, Letter from Pls. to Big Ten Network; Case No. 12-mc-80020 CW, Dkt. No. 2-1, Ex. C, Letter from Pls. to Fox. Antitrust plaintiffs agreed to reduce the temporal scope of one of the eleven document requests they served on The Big Ten Conference from covering ten years to covering two years, specifically, the request that calls for documents that relate to potential changes to the collegiate model, competitive balance issues, commercialism debates including related to NCAA Legislative Proposal 2010-26, or increased player benefits, as discussed in section seven below. *See* Case No. 11-mc-80300 CW, Dkt. No. 43, Rosenman Decl., Ex. 8, E-mail from Antitrust Plaintiffs to Big Ten Conf.

[24] Tr. Hearing on Pls.' Mot., Feb. 8, 2012, at 35.

[25] *Id.* at 28, 62.

**1.   Handbooks**

<u>Request at issue</u>:

"Any handbook and/or manuals relating to participation in college athletics, including athletic codes of conduct." [Addressed to The Big Ten Conference only].

<u>Analysis</u>:

The Big Ten Conference contends that the handbook responsive to this request is publicly available.[26]  As antitrust plaintiffs have not provided the Court with any information with respect to the relevance of documents responsive to this request, and because it appears that antitrust plaintiffs have access to at least some responsive materials through a less burdensome source within the meaning of Rule 26(b)(2)(C), this request is denied as overly broad.

**2.   Broadcasting and Licensing Agreements Concerning Non-Live Footage**

<u>Requests at issue</u>:

(1) "Any television or broadcast contracts affecting or concerning men's Division I basketball or Division I football."

(2) "Any Licensing Agreements with major entities including, but not limited to, Collegiate Images, Thought Equity Motion, CLC [Collegiate Licensing Company], and Electronic Arts.  Minor, local promotions with entities other than those described above need not be produced." [Addressed to The Big Ten Conference only].

(3) "Any Licensing Agreements with the NCAA or any of its member schools or conferences in which the license granted includes rights to the name, image, or likeness of student athletes competing (or who competed in the past) in men's Division I football or basketball." [Addressed to The Big Ten Network and Fox Broadcasting Company only].

(4) "Any contracts with outside licensing entities.  If the Big Ten [Conference] has not used any outside licensing entities, please produce all documents containing revenue information for products sold containing footage/photographs." [Addressed to The Big Ten

---

[26] Case No. 11-mc-80300 CW, Dkt. No. 43, Rosenman Decl., Ex. 9, Letter from The Big Ten Conference to Antitrust Plaintiffs at 1, Category 1.

Conference only].

(5) "Any documents, including, but not limited to, reports, relating to the licensing agreements described above."

<u>Analysis:</u>

Antitrust plaintiffs claim that these agreements and related documents are relevant to the claims or defenses in this case because they concern the allocation of rights to non-live broadcast footage containing student-athletes' names, images, or likenesses. Antitrust plaintiffs argue that these agreements may guide their damages calculation and their understanding of the operation of the conspiracy alleged in the complaint.[27]

All three nonparties object to these document requests as overly broad and as calling for highly confidential commercial information. Despite these objections, The Big Ten Network and Fox agreed to produce any television broadcast and licensing agreements to which they are parties concerning NCAA Division I football or basketball, as well as any nonprivileged documents concerning the negotiation of any contract provisions that mention the student-athletes' right of publicity, names, images, or likenesses.[28] These excerpts would contain contract provisions that mention student-athletes' right of publicity, names, images, or likenesses, as well as identifying information concerning the parties to the agreements and whether the agreements relate to NCAA Division I football or basketball.[29] Additionally, The Big Ten Network and Fox agreed to provide a summary of the distribution rights conveyed by each agreement produced.[30]

Antitrust plaintiffs rejected this proposed compromise as insufficient during the meet-and-confer process and again during the hearing on the motions, arguing that "there are many

---

[27] *See* Tr. Hearing on Pls.' Mot., Feb. 8, 2012, at 15-17, 20-21.

[28] Case No. 11-mc-80300 CW, Dkt. No. 40-1, Singer Decl., Ex. 10, Letter from The Big Ten Network to Pls. at 1-2.

[29] *Id.*

[30] *Id.*

more provisions [in the broadcast and licensing agreements] that relate to the bundle of rights" that allegedly are at issue in this action.[31]  Antitrust plaintiffs, however, did not specify which contract provisions they seek from the nonparties in addition to the ones The Big Ten Network and Fox have agreed to produce; instead, they argued that they have received from other sources unredacted versions of agreements similar to the ones they seek from the nonparties here.[32]

The agreements responsive to these requests are at least marginally relevant to the claims of antitrust plaintiffs, because they concern the for-profit use of the images, likenesses, or names of student-athletes in products or media, which, according to the operative complaint, include "television contracts, rebroadcasts of classic games, DVD game and highlight film sales and rentals, on-demand streaming and sales of games and clips, and stock footage sales to corporate advertisers and others."[33]  The document requests, however, call for highly confidential commercial information from the nonparties and are not tailored to minimize the potential prejudice that the nonparties could suffer by releasing such information.  Given the confidential nature of the agreements, the Court finds that the compromise proposed by The Big Ten Network and Fox is reasonable, and that antitrust plaintiffs have not established a substantial need for any material that falls outside of this proposed compromise.[34]  Accordingly, the requests are denied in their current form.

By March 20, 2012, each of the nonparties must produce to antitrust plaintiffs excerpts of any responsive broadcasting or licensing agreements that were generated from January 1, 2002, to the present, limited by the criteria proposed by The Big Ten Network and Fox, as set forth above.

---

[31] Tr. Hearing on Pls.' Mot., Feb. 8, 2012, at 16-17.

[32] *Id.* at 62.

[33] Second Consolid. Am. Compl. ¶ 18 (internal quotation marks omitted).

[34] *See* FED. R. CIV. P. 45(c)(3)(C).

Case No. 09-cv-01967 CW (NC)
ORDER DENYING MOTIONS
TO COMPEL                                       9

3. **Exemplar Release Forms**

Requests at issue:

(1) "Any specific documents relating to or addressing the question of the rights to continue to license, use, or sell all products containing images of former student-athletes, including, but not limited to, any name, image, or likeness release or consent form used or administered by the conference [or by the Networks]. (We do not want the signed Forms 08-3(a), only exemplars)."

(2) "Any documents relating to policies governing when the Networks must or should secure a likeness release or consent form from a student athlete." [Addressed to The Big Ten Network and Fox Broadcasting Company only].

Analysis:

Antitrust plaintiffs stated during oral argument that what they seek to obtain through these document requests are consent forms governing the release of rights to student-athletes' images, names, and likenesses.[35] They argue that these consent forms, and any documents that discuss them, are relevant to the claims or defenses in this action because at least one of these forms requires student-athletes to release the rights to their names, images, and likenesses for perpetuity.[36]

The Big Ten Conference objects to producing any documents that "relate to" the consent forms or to policies concerning the consent forms, as searching for these documents would be unduly burdensome given the current wording of the document requests.[37]

The Court finds that any exemplar consent forms generated between January 1, 2002, to the present are relevant to the claims in this action, and therefore, The Big Ten Conference must produce them to antitrust plaintiffs by March 20, 2012. The portions of the document requests that call for material other than the exemplar consent forms themselves are overly broad,

---

[35] Tr. Hearing on Pls.' Mot., Feb. 8, 2012, at 21-22.

[36] *Id.*

[37] *Id.* at 54.

however, because they contain no meaningful limitations to reduce the burden on the nonparties of producing responsive documents. Accordingly, these portions of the requests are denied.

### 4. Copyright and Licensing Policies

Request at issue:

"Any documents relating to policies regarding copyright, ownership and/or licensing of products utilizing or incorporating the name, image, or likeness of student athletes, including, but not limited to, game footage and photographs."

Analysis:

Antitrust plaintiffs stated during oral argument that what they seek to obtain through this document request are "specific documents embodying those policies relating to ownership [and] licensing" that are in the possession of The Big Ten Conference.[38] When asked to provide an example of one of these documents, antitrust plaintiffs mentioned a memo "related to NCAA policies concerning the use of student name, image, and likeness" written by The Big Ten Commissioner Delaney before attending a conference of the Collegiate Commissioners' Association, and "a document that was circulated by CLC [Collegiate Licensing Company] to the conferences that discussed what the conferences should be doing in negotiating to retain the copyright in the broadcast footage."[39]

The Big Ten Conference claims that it has no documents responsive to this request.[40]

The Court finds that this document request is overly broad and unduly burdensome. Although antitrust plaintiffs provided some examples of the types of documents they seek during the hearing, these examples are insufficient to provide guidance to the nonparties as to which specific documents to search for. Moreover, it appears that at least some of the documents responsive to this request are in the possession of Collegiate Licensing Company,

---

[38] Tr. Hearing on Pls.' Mot., Feb. 8, 2012, at 24-26.

[39] *Id.* at 25.

[40] Case No. 11-mc-80300 CW, Dkt. No. 43, Rosenman Decl., Ex. 9, Letter from The Big Ten Conference to Antitrust Plaintiffs at 2, Categories 7 and 10.

one of the parties to this case. Accordingly, this request is denied.

### 5. Documents Concerning Electronic Arts' Games

Request at issue:

"Documents relating to EA [Electronic Arts] Sports games, including, but not limited to, any materials or information provided by the Big Ten [or by the Networks] to EA (footage, broadcasts, player bios and stats, consents or licenses from players) and information on payments by EA to the Big Ten [or to the Networks]."

Analysis:

Antitrust plaintiffs stated during oral argument that what they seek to obtain through this document request are "documents that the Big Ten has that EA [Electronic Arts] doesn't have," such as internal documents authored by employees of The Big Ten Conference.[41] They also stated that they have received documents from other conferences and schools showing communications between Electronic Arts and the conferences regarding royalty reports for the use of conference paraphernalia.[42]

The Court finds that this request is overly broad, and that antitrust plaintiffs have not articulated sufficient limitations based on the discovery they have obtained from other sources to reduce the burden on the nonparties of searching for responsive documents. Accordingly, the request is denied.

### 6. Documents Concerning This Litigation

Request at issue:

"Any documents referencing or referring to the present litigation, also known as the *O'Bannon* and/or *Keller* litigation."

Analysis:

Antitrust plaintiffs stated during oral argument that what they seek to obtain through this document request are nonprivileged communications between the conferences and television

---

[41] Tr. Hearing on Pls.' Mot., Feb. 8, 2012, at 27.

[42] *Id.* at 28.

networks that reference this action.[43]  An example of the type of communications antitrust plaintiffs seek are ones showing that nonparties are "standing in the way of getting the documents produced in the litigation that need to be produced."[44]  Antitrust plaintiffs claim that these documents are relevant to the claims or defenses in this action because "the parties' discussion of the claims and defenses is relevant to the claims and defenses."[45]  To the extent that privileged communications are responsive to the request, antitrust plaintiffs ask that the nonparties produce a privilege log.[46]

The Big Ten Conference claims that it has no nonprivileged documents responsive to this request and that it should not be required to create a privilege log because the privileged communications are protected by the joint defense privilege or common interest rule.[47]  The Big Ten Network and Fox Broadcasting Company agreed to produce nonprivileged correspondence between them and other parties involved in this lawsuit that mention the claims or defenses in this case, as well as a privilege log identifying any such correspondence if appropriate.[48]

The Court finds that this document request is overly broad and that antitrust plaintiffs have failed to show that the documents responsive to it are relevant to the claims or defenses in this action.  Accordingly, this request is denied.

**7.  Documents Concerning Industry Meetings and the Collegiate Model**

<u>Requests at issue</u>:

(1) "Any documents relating to attendance at any trade association or industry association meeting where the rights in, or ownership of, players' photos or footage was

---

[43] Tr. Hearing on Pls.' Mot., Feb. 8, 2012, at 32-33.

[44] *Id.* at 34.

[45] *Id.* at 34.

[46] *Id.* at 32-33.

[47] Case No. 11-mc-80300 CW, Dkt. No. 43, Rosenman Decl., Ex. 9, Letter from The Big Ten Conference to Antitrust Plaintiffs at 2, Category 9.

[48] Case No. 11-mc-80300 CW, Dkt. No. 40-1, Singer Decl., Ex. 10, Letter from The Big Ten Network to Pls. at 2.

discussed.  This request is limited to meetings of the (a) National Association of Collegiate Directors of Athletics; (b) International Collegiate Licensing Association; (c) National Association of Collegiate Marketing Administrators; and (d) College Athletic Business Management Association."[49]  [Addressed to The Big Ten Conference only].

(2) "Documents generated within the last two years and that relate to potential changes to the collegiate model, competitive balance issues, commercialism debates including related to NCAA Legislative Proposal 2010-26, or increased player benefits such as covering the full cost of attendance.  These documents should include materials pertaining to NCAA President Emmert's August 'Presidential Retreat.'"[50] [Addressed to The Big Ten Conference only].

Analysis:

Antitrust plaintiffs stated during oral argument that both of the document requests in this section are related, and that what they seek to obtain through the requests are documents relating to NCAA legislative proposal 2010-26, "which has to do with changes to the NCAA's current policies relating to the use of student athlete image and likeness."[51]  They claim that these documents are relevant to the NCAA's affirmative defense concerning competitive balance.[52]

The Big Ten Conference responds that it has no documents responsive to this request and that none of its employees attended President Emmert's retreat.[53]

The Court finds that these document requests are overly broad.  The first request does not contain any limitations with respect to specific industry meetings.  The second request fails to identify any custodians or search terms The Big Ten Conference can employ to reduce the number of documents responsive to the request.  Accordingly, both requests are denied.

---

[49] Case No. 11-mc-80300 CW, Dkt. No. 43, Rosenman Decl., Ex. 8, E-mail from Antitrust Plaintiffs to Big Ten Conf., Request No. 10.

[50] Id. Request No. 11.

[51] Tr. Hearing on Pls.' Mot., Feb. 8, 2012, at 29.

[52] Id.

[53] Case No. 11-mc-80300 CW, Dkt. No. 43, Rosenman February 24, 2012Decl., Ex. 9, Letter from The Big Ten Conference to Antitrust Plaintiffs at 2, Categories 7, 10, 11.

1  **B.   Sanctions Against Antitrust Plaintiffs Are Warranted**

2  A party serving a subpoena "must take reasonable steps to avoid imposing undue burden
3  or expense on a person subject to the subpoena."[54] This duty is heightened when the person
4  subject to the subpoena is a nonparty to the litigation.[55] The court "*must enforce* this duty and
5  impose an appropriate sanction," including attorneys' fees, on a party or attorney who fails to
6  comply.[56] The Ninth Circuit has upheld the imposition of sanctions on a party serving an overly
7  broad subpoena on a nonparty when, in part, "no attempt had been made to try to tailor the
8  information request to the immediate needs of the case." *Mattel, Inc. v. Walking Mountain*
9  *Prods.*, 353 F.3d 792, 813 (9th Cir. 2003) (internal quotation marks omitted).

10  Here, sanctions against antitrust plaintiffs are appropriate under Rule 45, as antitrust
11  plaintiffs failed to take reasonable steps to avoid imposing an undue burden on the nonparties.
12  First, there is no evidence that antitrust plaintiffs used any of the discovery they have obtained
13  from other sources to meaningfully reduce the breadth of the document requests. Despite the
14  significant efforts made by the nonparties to articulate with specificity the reasoning for their
15  relevance, privilege, and undue burden objections and to continue the negotiations with respect
16  to the scope of the document requests, there is no evidence that antitrust plaintiffs considered
17  additional limitations to the breadth of the document requests based on these objections and
18  invitations to negotiate. Instead, antitrust plaintiffs rejected reasonable attempts to compromise,
19  as discussed above, and ended the negotiations with respect to the scope of the document
20  requests by stating that further efforts to meet and confer "would be fruitless."[57]

---

[54] FED. R. CIV. P. 45(c)(1).

[55] *See* FED. R. CIV. P. 45(c)(2)(B)(ii) (noting that after a motion to compel compliance with a subpoena is filed, the court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance"); *see also* FED. R. CIV. P. 45(c)(1) advisory committee's note (1991).

[56] FED. R. CIV. P. 45(c)(1) (emphasis added).

[57] Case No. 11-mc-80300 CW, Dkt. No. 43, Rosenman Decl., Ex. 10, Letter from Antitrust Plaintiffs to The Big Ten Conference at 1.

Based on the submissions and oral argument, it is evident that further negotiations would not have been "fruitless" as antitrust plaintiffs contend. As the party requesting documents from nonparties, antitrust plaintiffs at all times had the burden of tailoring their requests to avoid imposing an undue burden on the responding parties. Antitrust plaintiffs failed to meet this burden prior to filing their motions because they did not take advantage of the discovery they obtained from other sources in tailoring their document requests. This, in addition to antitrust plaintiffs' unwillingness to compromise during the meet-and-confer process, establishes that antitrust plaintiffs' motions are substantially unjustified. Accordingly, antitrust plaintiffs must pay for the costs incurred by the nonparties in connection with the motions.

### C. Antitrust Plaintiffs' Request for Sanctions Against The Big Ten Conference Is Denied

Antitrust plaintiffs request an award of attorneys' fees and costs under Federal Rule of Civil Procedure 37(a)(5) and Civil Local Rule 37 against The Big Ten Conference.[58] In support of this request, antitrust plaintiffs allege that The Big Ten Conference failed "to meaningfully cooperate in meet-and-confer efforts" and "to identify clearly responsive documents."[59]

Federal Rule of Civil Procedure 37(a)(5) provides that even when a court orders the production of discovery after a motion to compel is filed, the court cannot order the payment of the movant's expenses by the party opposing the motion if (1) the movant filed the motion before attempting in good faith to obtain the discovery without court action, or (2) the nondisclosure by the party opposing the motion was substantially justified.[60]

Here, the Court cannot award attorneys' fees and costs to antitrust plaintiffs because, as discussed above, the motions to compel were substantially unjustified as a result of antitrust plaintiffs' unwillingness to compromise and to reasonably narrow the scope of the document requests during the meet-and-confer process. Additionally, The Big Ten Conference's refusal to

---

[58] Pls.' Mot. against The Big Ten Conference at 11-mc-80300 CW, at 1.

[59] *Id.* at 20.

[60] FED. R. CIV. P. 37(a)(5).

Case No. 09-cv-01967 CW (NC)
ORDER DENYING MOTIONS
TO COMPEL                    16

produce documents in response to the subpoenas was appropriate because, as a nonparty, responding to them would have been unduly burdensome and expensive. Accordingly, antitrust plaintiffs' request for attorneys' fees and costs is denied.

### IV. CONCLUSION

Because the document requests are overly broad, each of the three motions to compel brought by antitrust plaintiffs is DENIED. The nonparties must produce documents only to the extent described above. Additionally, because antitrust plaintiffs did not make reasonable attempts to avoid imposing an undue burden on the nonparties, sanctions against antitrust plaintiffs are warranted under Rule 45. By March 14, 2012, the nonparties may file a motion for sanctions in accordance with Civil Local Rule 7-8 that includes detailed billing statements itemizing the attorneys' fees and costs they incurred in connection with the motions to compel resolved in this order. Antitrust plaintiffs may file an opposition no more than seven days after the nonparties file a motion for sanctions.

IT IS SO ORDERED.

DATED: February 27, 2012

NATHANAEL M. COUSINS
United States Magistrate Judge