IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE NCAA STUDENT-ATHLETE
NAME & LIKENESS LICENSING
LITIGATION.

_____/

No. C 09-1967 CW

ORDER DENYING
ELECTRONIC ARTS
INC.'S MOTION FOR
JUDGMENT ON THE
PLEADINGS
(Docket No. 366)

Defendant Electronic Arts Inc. (EA) moves for judgment on the pleadings for the claims asserted against it in the Second Consolidated Amended Complaint (2CAC). Plaintiffs Edward C. O'Bannon, Jr., Harry Flournoy, Alex Gilbert, Sam Jacobson, Thad Jaracz, David Lattin, Patrick Maynor, Tyrone Prothro, Damien Rhodes, Eric Riley, Bob Tallent, and Danny Wimprine (collectively, Antitrust Plaintiffs) oppose the motion. Having considered the parties' papers and their arguments at the hearing on the motion, the Court DENIES EA's motion.

BACKGROUND

Because the Court's Orders of May 2, 2011 and July 28, 2011 describe the factual allegations and procedural history of the case in detail, the Court does not repeat them here in their entirety.

Antitrust Plaintiffs in these consolidated cases bring claims based on an alleged conspiracy among EA, Defendants Collegiate Licensing Company (CLC) and National Collegiate Athletic Association (NCAA) to restrain trade in violation of section one of the Sherman Act. Plaintiffs Samuel Keller, Bryan Cummings, Lamarr Watkins, and Bryon Bishop (collectively, Publicity

United States District Court
For the Northern District of California

Plaintiffs) bring claims based on Defendants' alleged violations of their statutory and common law rights of publicity.  Publicity Plaintiffs' claims are not at issue here, nor are any of the claims against CLC or the NCAA.

In its May 2, 2011 Order, the Court granted EA's motion to dismiss Antitrust Plaintiffs' Sherman Act and related common law claims for failure to state a claim for which relief can be granted.  The Court found that Plaintiffs' Consolidated Amended Complaint (CAC) had not sufficiently alleged a factual basis for either of two Sherman Act claims asserted against EA.  The Court granted Plaintiffs leave to amend to plead facts demonstrating EA's agreement to engage in the alleged conspiracies.

On May 16, 2011, Plaintiffs filed the 2CAC, adding allegations regarding EA's involvement in the purported conspiracy, many of which are summarized in the Court's July 28, 2011 Order, including that EA is the only NCAA licensee which uses images of current or former players, and that, in its licensing agreements with CLC, EA has expressly agreed to abide by the NCAA's rules prohibiting student-athlete compensation, and has "agreed to extend its agreement with the NCAA, prohibiting compensation to student-athletes, to former student-athletes." 2CAC ¶¶ 373, 400.

On May 31, 2011, EA filed a motion to dismiss the antitrust claims asserted against it in the 2CAC.

On July 28, 2011, the Court denied EA's motion to dismiss. The Court stated that "many of Plaintiffs' new allegations do not suggest anything more than EA's commercial efforts to obtain new rights and use its existing rights," but that "Plaintiffs have

United States District Court
For the Northern District of California

added a significant additional allegation: that in addition to agreeing to abide by NCAA's rules prohibiting compensation of current student-athletes, EA also agreed not to offer compensation to former student-athletes."  Order Denying EA's Motion to Dismiss at 6.  The Court found that this "allegation that EA agreed not to compensate former student-athletes for use of their images, likenesses and names, going beyond the requirements of NCAA's rules and policies, satisfies the requirement that Antitrust Plaintiffs plead the existence of a price-fixing agreement involving EA," because it shows that "EA was not merely doing business in the context of the NCAA's amateurism policies" and instead "suggests that EA was actively participating to ensure that former student-athletes would not receive any compensation for use of their images, likenesses and names."  Id. at 7 (internal quotations and citations omitted).  The Court similarly found, "This allegation sufficiently suggests EA's agreement to participate in the claimed group boycott conspiracy."  Id. at 8. As a result, the Court found that Antitrust Plaintiffs had sufficiently alleged that EA agreed to participate in the alleged antitrust conspiracies with NCAA and CLC for both Sherman Act claims.

With the instant motion, EA has requested that the Court take judicial notice of its license agreements with CLC.  Plaintiffs do not oppose judicial notice.  The agreements state in part,

> Licensee recognizes that any person who has collegiate
> athletic eligibility cannot have his or her name and/or
> likeness utilized on any commercial product without the
> express written permission of the Institution.
> Therefore, in conducting licensed activity under this
> Agreement, Licensee shall not encourage or participate
> in any activity that would cause an athlete or an

> Institution to violate any rule of the National
> Collegiate Athletic Association (NCAA) or other
> governing body.  Moreover, Licensee acknowledges and
> agrees that no license or right is being granted
> hereunder to utilize the name, face or likeness of any
> past or current athlete of any Institution.

Request for Judicial Notice (RJN), Exs. A at 6-7, B at 7, C at 6,
D at 6.

LEGAL STANDARD

A motion for judgment on the pleadings, like a motion to
dismiss for failure to state a claim, addresses the sufficiency of
a pleading.  Judgment on the pleadings may be granted when the
moving party clearly establishes on the face of the pleadings that
no material issue of fact remains to be resolved and that the
moving party is entitled to judgment as a matter of law.  Hal
Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550
(9th Cir. 1989).  The court may consider, in addition to the face
of the pleadings, exhibits attached to the pleadings, Durning v.
First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987), and facts
which may be judicially noticed, Heliotrope Gen., Inc. v. Ford
Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999).  As with a
motion to dismiss, the Court may consider documents "whose
contents are alleged in a complaint and whose authenticity no
party questions, but which are not physically attached to the
pleading."  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994),
overruled on other grounds by Galbraith v. County of Santa Clara,
307 F.3d 1119 (9th Cir. 2002) (motion to dismiss); Dent v. Cox
Commc'n Las Vegas, Inc., 502 F.3d 1141, 1143 (9th Cir. 2007)
(motion for judgment on the pleadings).

In testing the sufficiency of a pleading, the well-plead
allegations of the non-moving party are accepted as true, while

United States District Court
For the Northern District of California

1  any allegations of the moving party which have been denied are

2  assumed to be false.  Hal Roach Studios, 896 F.2d at 1550.

3  However, the court need not accept conclusory allegations.  W.

4  Mining Counsel v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  The

5  court must view the facts presented in the pleadings in the light

6  most favorable to the non-moving party, drawing all reasonable

7  inferences in that party's favor, General Conference Corp. of

8  Seventh Day Adventists v. Seventh-Day Adventist Congregational

9  Church, 887 F.2d 228, 230 (9th Cir. 1989), but need not accept or

10  make unreasonable inferences or unwarranted deductions of fact,

11  McKinney v. De Bord, 507 F.2d 501, 504 (9th Cir. 1974).

12                            DISCUSSION

13      Plaintiffs challenge whether Defendants may properly bring a

14  motion for judgment on the pleadings and argue that the instant

15  motion is in fact for reconsideration of the Court's July 28, 2011

16  Order.  Defendants need not provide intervening case law or new

17  facts in order to move for judgment on the pleadings after having

18  brought a motion to dismiss.  In the instant motion, EA makes new

19  and distinct arguments that were not before the Court at the time

20  it ruled on EA's earlier motions.  While it is true that the Court

21  considered the text of the licensing agreements between EA and CLC

22  in conjunction with CLC's motion to dismiss in the May 2, 2011

23  Order, these contracts were not submitted or discussed by either

24  party in connection with EA's motion addressed in the May 2, 2011

25  Order.  Thus, EA's motion is not procedurally improper, and the

26  Court will consider the merits of the motion.

27      Plaintiffs allege two § 1 claims that rest on conspiracies

28  purportedly joined by EA: (1) a price-fixing conspiracy to set at

zero dollars the price paid to Antitrust Plaintiffs and putative

class members for use of their images, likenesses and names; and

(2) a "group boycott/refusal to deal" conspiracy for use of their

images, likenesses and names.

In this motion, EA contends that the Court found previously

that Antitrust Plaintiffs sufficiently alleged that EA had joined

in these conspiracies, based solely on their assertion that, in

its licensing agreements with CLC, EA expressly agreed not to

compensate former student-athletes for the use of their images,

likenesses and names.  EA argues now that these allegations are

conclusively refuted by the actual terms of the licensing

agreements.

Contrary to EA's characterization, the Court's prior orders

did not reduce the antitrust claims against it to "a single

allegation."  As the Court has previously noted, to state a claim

for a violation of § 1 of the Sherman Act, a plaintiff must plead,

among other things, facts suggesting the existence of "a contract,

combination or conspiracy among two or more persons or distinct

business entities" that was intended to impose an unreasonable

restraint of trade.  Kendall v. Visa U.S.A., Inc., 518 F.3d 1042,

1047 (9th Cir. 2008) (citing Les Shockley Racing Inc. v. Nat'l Hot

Rod Ass'n, 884 F.2d 504, 507 (9th Cir. 1989)).  While a statement

of parallel commercial activities "gets the complaint close to

stating a claim," the allegations must include some "further

circumstance pointing toward a meeting of the minds" with regard

to concerted, anticompetitive conduct to be sufficient.  Kendall,

518 F.3d at 1048 (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 557 (2007)); see also Kline v. Coldwell, Banker & Co., 508

United States District Court
For the Northern District of California

F.2d 226, 232 (9th Cir. 1974) ("Nor will proof of parallel
business behavior alone conclusively establish agreement.").
While the Court previously found that Antitrust Plaintiffs'
allegations regarding the licensing agreements provided the
crucial additional circumstance that demonstrated that Defendants'
parallel conduct was the result of a "meeting of the minds," this
does not mean that the allegations of parallel business conduct
between EA and the other Defendants are not also among the facts
suggesting the existence of a conspiracy.

Reading Antitrust Plaintiffs' allegations about the
agreements in the context of their overall complaint, rather than
in isolation, the Court finds, drawing all reasonable inferences
in favor of Antitrust Plaintiffs, as the non-movants, that the
actual terms of the licensing agreements do not refute Antitrust
Plaintiffs' allegations.  In their complaint, Antitrust Plaintiffs
allege that Defendants required student-athletes to sign NCAA Form
08-3a, or a form similar to it, each year prior to participating
in intercollegiate athletics events, in accordance with NCAA
bylaws, and that in this form, student-athletes were required to
give NCAA and third parties acting on its behalf the right to use
their name or image.  Antitrust Plaintiffs further allege
Defendants have interpreted these forms as existing in perpetuity
and allowing them to enter licensing agreements to distribute
products containing student-athletes' images, likenesses and names
without payment to the student-athletes, even after the student-
athletes have ended their collegiate athletic careers.

In the licensing agreements, EA agrees that it will "not
encourage or participate in any activity that would cause an

United States District Court
For the Northern District of California

7

athlete or an Institution to violate" the NCAA's rules.  In this term, the agreement does not distinguish between former and current student-athletes, even though, in the next sentence, it acknowledges that both may be encompassed within the word "athlete."  In the context of Antitrust Plaintiffs' other allegations, on a motion for judgment on the pleadings, these terms can fairly be read to evidence a "meeting of the minds" between EA and the other Defendants not to compensate former student-athletes, where such a contract would interfere with the student-athletes' existing agreements with the NCAA.  Such a meeting of the minds is further supported by the other terms in the licensing agreements.  For example, the agreements require written approval from CLC and, through it, the NCAA of all licensed products, which would include the video games that are alleged to contain former student-athletes' likenesses.  Further, the agreements give broad authority to the CLC and NCAA to inspect EA's financial records related to the products, allowing them to see that payments were almost never made to former student-athletes.

EA argues that Antitrust Plaintiffs' allegations that some former student-athletes have licensed their collegiate likenesses are inconsistent with their theories of anticompetitive conduct. The Court has previously rejected this argument.  See, e.g., Order Granting EA's Mot. to Dismiss and Denying CLC's and NCAA's Mots. to Dismiss, Docket No. 325, at 14.  EA offers no reason to alter this ruling.

United States District Court
For the Northern District of California

CONCLUSION

For the reasons set forth above, the Court DENIES EA's motion for judgment on the pleadings (Docket No. 366).

IT IS SO ORDERED.

Dated:  5/16/2012

CLAUDIA WILKEN
United States District Judge