HAUSFELD LLP
Michael P. Lehmann (Cal. Bar No. 77152)
Jon T. King (Cal. Bar No. 205073)
44 Montgomery Street, 34th Floor
HAUSFELD LLP
Tel:  (415) 633-1908
Fax:  (415) 358-4980
Email: mlehmann@hausfeldllp.com
           jking@hausfeldllp.com

*Plaintiffs' Interim Co-Lead Class Counsel with
Principal Responsibility for the Antitrust Claims*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| **IN RE NCAA STUDENT-ATHLETE NAME & LIKENESS LICENSING LITIGATION** | Case No. 11-mc-80300 CW (NC)<br>Case No. 12-mc-80020 CW (NC)<br><br>Related to Case No. 09-1967 CW (NC)<br><br>**CLASS ACTION**<br><br>**MOTION FOR RELIEF FROM NON-DISPOSITIVE ORDER OF MAGISTRATE JUDGE IMPOSING SANCTIONS ON ANTITRUST PLAINTIFFS**<br><br>Date: [No Hearing Set Per Civil L.R.72-2]<br>Time:<br>Court: |

**Factual Background**. On August 7, 2012, nearly four months after cancelling a scheduled hearing on the issue, Magistrate Judge Cousins entered an order imposing sanctions on Antitrust Plaintiffs ("Plaintiffs") and their counsel totaling $67,384.64. (Dkt. No. 500 ("8/7 Order"), attached as Ex. 15 to the Supplemental Declaration of Ellen Meriwether ("Decl.").) The sanctions were imposed under Federal Rule of Civil Procedure 45(c)(1), *despite the fact* that Plaintiffs had engaged in eight separate meet-and-confer discussions with the subpoenaed parties over more than two months before filing their motions to compel; *despite the fact* that Plaintiffs, during the course of negotiations, narrowed their requests to merely three categories of documents, which would have been treated with the utmost confidentiality; *despite the fact* that Judge Cousins agreed that some of the materials sought in the motion—the contracts, licensing agreements and release forms—were relevant; and, perhaps most significantly, *despite the fact* that Judge Cousins rejected the non-parties' principal basis for their refusals to produce. *See* Decl. ¶¶5-31.

After more than two months of wrangling with The Big Ten Conference ("Big Ten"), The Big Ten Network ("BTN") and Fox, Plaintiffs' efforts to obtain responsive documents without the aid of the court had amounted to nothing. The Big Ten refused to produce *even a single responsive document* because it insisted that Plaintiffs' claims were precluded by copyright law, First Amendment privileges and/or principles of amateurism. Similarly, BTN and Fox ("the Networks") refused to produce anything beyond a smattering of contract excerpts, based on similar assertions. Most of the parties' meet-and-confer discussions, and almost all of their correspondence, concerned their divergent views of copyright law and First Amendment privileges, and the role these legal issues played in the discovery dispute at hand.

With a discovery deadline then looming, and given the non-parties' near-total refusal to produce any documents, Plaintiffs moved to compel. The bulk of the briefing addressed the First Amendment and copyright arguments. On February 27, 2012, Magistrate Judge Cousins ruled on the motions. "Order Denying Motions to Compel" (Feb. 27, 2012) (Dkt. No. 430) ("2/27 Order"), attached as Decl. Ex. 1. Although he rejected the non-parties' copyright preclusion and First Amendment arguments and concluded that the contracts and other related documents sought were "at least marginally relevant," Judge Cousins nevertheless determined that sanctions against

Plaintiffs under Rule 45(c)(1) were warranted because they purportedly failed to take "reasonable steps to avoid imposing undue burden or expense" on the non-parties; Judge Cousins invited the non-parties to file motions seeking their attorneys' fees and costs. *Id*. at 1-2, 17. This determination was entirely unexpected. In neither his tentative ruling issued the day before argument, nor at the argument itself did Judge Cousins give *any* indication that he believed Plaintiffs' conduct was sanctionable. Decl. at ¶¶32-36.

Plaintiffs timely filed in this Court a motion for relief from the 2/27 Order. (Dkt. No. 433.) That motion was denied, with leave to renew following further proceedings on the motions for sanctions then pending before Judge Cousins. (Dkt. No. 444.) The Court noted that Judge Cousins had scheduled a hearing on April 18, 2012 to hear argument on these motions.

That hearing was cancelled, however. On August 7, 2012, without *any* hearing or argument, Judge Cousins entered an order imposing sanctions on Plaintiffs and their counsel in the amount of $67,384.64. For the reasons set forth below, both the 2/27 and 8/7 Orders are clearly erroneous and contrary to law and must be set aside under Fed R. Civ. P. 72(a).[1]

**Clearly Erroneous Factual Determinations**. In awarding sanctions, Judge Cousins found that "antitrust Plaintiffs did not make reasonable efforts to limit the scope of their document requests to avoid imposing an undue burden on the non-parties…." (Decl. Ex. 1, at 1.) Judge Cousins further found that Plaintiffs showed an "unwillingness to compromise during the meet and confer process," "rejected reasonable attempts to compromise" and "ended the meet-and-confer process prematurely." *Id.* at 1, 15-16. These findings are not supported by the record and are therefore clearly erroneous.

With respect to the Big Ten, Plaintiffs initially narrowed their subpoena from 35 categories to 11, and in subsequent discussions, Plaintiffs narrowed and clarified many of the requests even

---

[1] Non-dispositive orders of a magistrate judge must be set aside under Rule 72(a) if they are "clearly erroneous and contrary to law." *Plascencia v. Lending 1st Mortgage*, No 07-4485, 2011 WL 5914278, at *3 (N.D. Cal. Nov. 28, 2011) (Wilken, J.) ("[a]n order is clearly erroneous when, 'although there is evidence to support it, the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed.'") (citation omitted).

further. Decl. at ¶¶7-10.² The Big Ten, however, refused to produce even a single document and consistently declined to reconsider its position. *Id.* at ¶¶11-15. The basis for its refusal to produce any documents was not that the requests (as narrowed by the parties' discussion) were overbroad or burdensome. *Id*. at ¶¶19-20. Rather, from the outset, the Big Ten claimed the documents sought were irrelevant because the NCAA was not a party to the Big Ten's television contracts; Plaintiffs' claims were preempted by the Copyright Act; state law precluded Plaintiffs' claims; and/or Plaintiffs claims were barred under *NCAA v. Bd. of Regents of Univ. of Okla*, 468 U.S. 85 (1984). It never wavered from this position and never proposed any compromise. Decl. at ¶¶11-17.

As the Supplemental Declaration makes clear, discussions during the meet and confer were focused almost entirely on these relevance issues raised by the Big Ten. *Id.* at ¶¶11, 16, 18. While Plaintiffs addressed these issues at length during their meet-and-confer discussions, The Big Ten *never wavered from its position that all of the requested documents were irrelevant and that it would produce nothing.* It never made any proposal to compromise on production, and refused to produce even obviously relevant documents. *Id*. at ¶15.

Similarly, in meet-and-confer discussions with BTN and Fox, Plaintiffs initially narrowed their subpoenas from 27 categories to 8. After several telephone conferences, Plaintiffs further narrowed their requests to just 4 categories: television-contract excerpts, licensing-agreement excerpts, revenue or royalty reports pertaining to those agreements; and documents discussing the litigation (and/or any attendant privilege log). Decl. at ¶¶23-25. As with the Big Ten, the parties' meet-and-confer discussions were almost entirely debates about the Networks' assertion that copyright law and the First Amendment preempt any claims arising from or premised on the use of broadcast footage, purportedly rendering the requested documents irrelevant. Decl. at ¶¶24-25.

---

² For example, Plaintiffs narrowed Request no. 6 (pertaining to release forms that the conference requires its student athletes to sign) to seek only an exemplar release form for each year. As to Request no. 7 (documents relating to policies regarding copyright, ownership and or licensing of products containing student athlete name, image or likeness), Plaintiffs limited it to "documents that concern the policy itself or potential policy changes." Plaintiffs limited Request no. 10 to the four specified trade associations (and as so limited, the Big Ten had no responsive documents). Upon the Big Ten's assertion that Request no. 11 (relating to "amateurism") was overbroad, Plaintiffs narrowed that request, both as to subject matter and temporal scope. Decl. at ¶¶ 8-10.

1    After two months of discussing and exchanging letters on these issues, the Networks, while
2 still contesting relevance, proposed a very limited production of "excerpts" from television
3 agreements that specifically "mention student athletes' right of publicity, name, image or
4 likeness," along with "documents concerning negotiation of any such provisions, to the extent they
5 exist." *Id*. at ¶25. Plaintiffs countered this proposal in writing, requesting that any production also
6 include licensing agreements, and specifying additional contractual provisions that are critical to
7 an analysis of their claims and damages. Plaintiffs specifically stated that *a production in*
8 *accordance with Plaintiffs' proposal would be considered full compliance with the subpoena*. *Id*.
9 at ¶¶26-28. The Networks rejected Plaintiffs' offer and made an unacceptable counter proposal
10 that excluded materials that Plaintiffs had already explained they needed. *Id.* at ¶¶29-30.

11   In short, Plaintiffs "took reasonable steps to avoid imposing undue burden" on the
12 Networks by ultimately limiting their document requests to:  (1) *excerpts* from television
13 broadcast agreements relating to men's Division 1 basketball and football; (2) *excerpts* of
14 licensing agreements in which the license granted includes rights to the name, image and likeness
15 of student-athletes; and (3) documents referring or relating to the litigation (or a privilege log
16 should a privilege be claimed for any such documents).

17   In his 8/7 Order, Judge Cousins stated that "the requests were 'substantially overly broad'
18 and that responding to them *as drafted* would subject the non-parties to significant expense and
19 undue burden." Decl. Ex. 15 at 2 (emphasis added). But the point is that *Plaintiffs never pressed*
20 *for a response to the requests "as drafted."*   Rather, the requests were repeatedly narrowed and
21 eliminated while the third parties insisted they would respond to virtually no requests regardless of
22 their limitations.  Sanctions under such circumstances are not warranted.

23   **Rulings Contrary To Law**.  Judge Cousins' Orders are likewise contrary to law.
24 "[S]anctions are appropriate if the subpoenaing party fails to take reasonable steps to avoid
25 imposing an undue burden on a third party." *High Tech Medical Instrumentation, Inc. v. New*
26 *Image Indus.,* 161 F.R.D. 86, 88 (N.D. Cal. 1995) ("*High Tech*"). A subpoena is unduly
27 burdensome "if the information is wholly irrelevant under any reasonable legal theory; if the
28 subpoena was issued for the purpose of harassment; or if the party issuing the subpoena did not, in

good faith, believe … that the subpoena was not unreasonable ….” *Builders Ass'n of Chicago v. City of Chicago*, 215 F.R.D. 550, 554 (N.D. Ill. 2003) (“*BA*”). Here, the information requested was not irrelevant—Judge Cousins himself acknowledged that "some of the document requests called for relevant documents," and that "the court did not uphold the non-parties' [copyright preemption and First Amendment] objections." 8/7 Order at 2. Nor is there any basis to conclude that the subpoenas were "meant to harass." *See Chevron Corp. v. Salazar*, No. 11-0691-LAK, 2011 WL 7112979, at *3 (D. Or. Nov. 30, 2011) (“*Chevron*”) (imposing sanctions where deposition subpoena was issued in retaliation for dispute over privilege log). To the contrary, Plaintiffs went to great lengths to avoid unduly burdening the non-parties by significantly reducing the scope of their requests during negotiations and moving to compel only when it became apparent that the non-parties would not produce a single meaningful document. Even if the Court had denied Plaintiffs' motion in full, however, "[a] disputed subpoena on its own, even if ultimately found unwarranted, typically does not support an imposition of sanctions." *N. Am. Rescue Prods. v. Bound Tree Med. LLC*, 2009 WL 4110889 at *13 (S.D. Ohio Nov. 19, 2009); *see BA*, 215 F.R.D. at 554 (vacating sanctions where city's requests were based on "a good faith argument"). Under the circumstances, it is impossible to characterize the subpoenas as being "served for the purpose of annoying and harassment and not really for the purpose of getting information," such that sanctions would be appropriate. *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (the *only* case authority on sanctions cited by Judge Cousins in his 2/27 Order).[3] Accordingly, the Orders imposing sanctions should be vacated.

---

[3] In his 8/7 Order, Judge Cousins cited *High Tech* and *Chevron*, both of which, are distinguishable. Judge Cousins also cited *United States v. C.B.S.*, 666 F.2d 364 (9th Cir. 1982), but that case did not involve the imposition of sanctions under Rule 45(c)(1).

| | | |
|---|---|---|
| 1 | Dated: August 21, 2012 | Respectfully submitted, |
| 2 | | /s/ Jon T. King |
| 3 | | Michael P. Lehmann (Cal. Bar No. 77152) |
| 4 | | Jon T. King (Cal. Bar No. 205073) |
| | | HAUSFELD LLP |
| 5 | | 44 Montgomery St., 34th Floor |
| | | San Francisco, CA 94104 |
| 6 | | Tel: (415) 633-1908 |
| 7 | | Fax: (415) 358-4980 |
| | | mlehmann@hausfeldllp.com |
| 8 | | jking@hausfeldllp.com |
| 9 | | Michael D. Hausfeld |
| | | HAUSFELD LLP |
| 10 | | 1700 K Street, NW, Suite 650 |
| | | Washington, DC 20006 |
| 11 | | Tel: (202) 540-7200 |
| 12 | | Fax: (202) 540-7201 |
| | | mhausfeld@hausfeldllp.com |
| 13 | | |
| | | *Plaintiffs' Interim Co-Lead Class Counsel* |
| 14 | | *With Principal Responsibility for the Antitrust* |
| | | *Claims* |
| 15 | | |
| 16 | | Ellen Meriwether |
| | | Bryan L Clobes |
| 17 | | CAFFERTY CLOBES MERIWETHER & |
| | | SPRENGEL LLP |
| 18 | | 1101 Market St. |
| | | Philadelphia, PA 19107 |
| 19 | | Tel: (215) 864-2800 |
| 20 | | Fax: (215) 864-2810 |
| | | emeriwether@caffertyclobes.com |
| 21 | | bclobes@caffertyclobes.com |
| 22 | | *Additional Counsel for Antitrust Plaintiffs* |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |