Gregory L. Curtner (p*ro hac vice*)
Robert J. Wierenga (SBN 183687)
Frederick R. Juckniess (SBN 210454)
Kimberly K. Kefalas (p*ro hac vice*)
Suzanne L. Wahl (p*ro hac vice*)
Jessica A. Sprovtsoff *(pro hac vice)*
SCHIFF HARDIN LLP.
340 S. Main St., Suite 210
Ann Arbor, MI 48104
Telephone: (734) 222-1500
Facsimile: (734) 222-1501
Email: gcurtner@schiffhardin.com
　　　　rwierenga@schiffhardin.com
　　　　rjuckniess@schiffhardin.com
　　　　kkefalas@schiffhardin.com
　　　　swahl@schiffhardin.com
　　　　jsprovtsoff@schiffhardin.com

Rocky N. Unruh (SBN 084049)
SCHIFF HARDIN LLP
One Market, Spear Street Tower, Ste 3200
San Francisco, CA 94105
Telephone: (415) 901-8700
Facsimile: (415) 901-8701
Email: runruh@schiffhardin.com

Attorneys for Defendant
National Collegiate Athletic Association

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re NCAA Student-Athlete Name and Likeness Licensing Litigation | Case No. 09-cv-1967-CW<br><br>**NCAA AND ANTITRUST PLAINTIFFS' JOINT STATEMENT ON SHORTENING THE RESPONSE TIME TO THE NCAA'S SECOND SET OF INTERROGATORIES**<br><br>Dept:　　　　SF Courthouse A, 15th Floor<br>Judge:　　　　Hon. Nathanael Cousins<br>Complaint filed: May 5, 2009 |

**I. NCAA's Statement of the Issue:** Pursuant to Federal Rule of Civil Procedure 33(b)(2), Antitrust Plaintiffs should be ordered to answer the NCAA's second set of interrogatories by no later than September 20, 2012.

**Antitrust Plaintiffs' Statement of the Issue:** Please see below.

**II.    The NCAA Position**

On Friday, August 31, 2012, Antitrust Plaintiffs filed a motion for class certification in which they fundamentally changed their theories about (1) the allegedly unlawful "restraint of trade" in which defendants supposedly have engaged, (2) the identity of the putative class members who supposedly have been impacted by that "restraint" and (3) the damages those putative class members supposedly have suffered. For three years, Antitrust Plaintiffs' liability and damages theories were limited to the notion that former student-athletes had been illegally "restrained" from selling or licensing their "collegiate image" *after they had stopped playing NCAA sports. See, e.g.,* Dkt. 327, Second Consolidated Amended Class Action Complaint ("SCAC") at 9 (claiming that defendants have restrained trade by "unlawfully foreclos[ing] class members from receiving compensation in connection with the commercial exploitation of their images, likenesses and/or names *following their cessation of intercollegiate athletic competition*") (emphasis added). Antitrust Plaintiffs repeatedly and specifically admitted -- to both defendants and this Court -- that the claims alleged in the Second Consolidated Amended Complaint "do not emanate from the live broadcasts" of NCAA basketball or football games. 2/8/12 Hrg. Tr. 14:22.[1] Indeed, just a few months ago plaintiffs' counsel told this Court that the Antitrust Plaintiffs "don't claim rights to be compensated for appearing in live broadcasts or playing on the field." *Id.* at 15:21-22.

In their motion for class certification, Antitrust Plaintiffs threw away the case they have been pursuing for the last three years and propose to pursue an entirely new one. They changed the class definition and now claim to represent a class of all football and men's basketball players whose "image, likeness and/or name" has been "included in game footage," including live

---

[1] This was the hearing on the Antitrust Plaintiffs' motion to compel production by the Big Ten Network, Fox and others. The NCAA will provide this transcript to Court upon request.

1

broadcasts of "game footage." Dkt. 530, Class Cert. Br. 1-2; Class Cert Br. Ex. A, Noll Rpt. at 12, 14. Plaintiffs now claim that these class members were illegally restrained from selling or licensing their "image, likeness and/or name" *while they were still participating in NCAA athletics*. Dkt. 530 at 2. And their "expert" claims that class members are entitled to receive damages of tens or hundreds of thousands of dollars, each, because their name, image or likeness supposedly were included in "telecasts of live and archival games." Noll Rpt. at 96. This is precisely the sort of "compensat[ion] for appearing in live broadcasts" that plaintiffs recently told the Court they were *not* seeking. 2/8/12 Hrg. Tr. 15:21-22. Indeed, according to their "expert" more than 99% of the damages plaintiffs seek derive directly from live broadcasts.

Plaintiffs, in other words, are now proceeding on precisely the type of liability theory that they have admitted their complaint does not set forth, and demanding the types of damages that their complaint does not seek. It is hard to imagine a clearer example of litigation by ambush.[2]

Defendants are still assessing the remedies they will request for Antitrust Plaintiffs' dilatory and deceptive litigation tactics. As an initial matter, however, the NCAA requests that plaintiffs be required to respond in shortened time to the NCAA's second set of interrogatories, served on September 6, 2012.[3] The interrogatories are brief, and seek information that relates directly to plaintiffs' new liability, class certification, and damages theories. Permitting the plaintiffs to take the full 30 days to respond would unduly prejudice defendants, because defendants' opposition to Antitrust Plaintiffs' class certification papers is currently due on October 31, 2012. The NCAA could not have been expected to propound interrogatories exploring plaintiffs' new class definition, or their new liability or damages theories, before plaintiffs provided notice of those new theories on Friday. Antitrust Plaintiffs' prompt responses

---

[2] In their statements to the press, plaintiffs' counsel have freely admitted – indeed, practically bragged about – the fact that their class certification papers have fundamentally altered the nature of their allegations and the proposed class proceedings. A recent ESPN article, for example, quotes an unnamed "member of plaintiffs' legal team" boasting that "I'm sure the NCAA will go ballistic over this . . . [t]his is their worst nightmare, this issue coming front and center this deep into the case" *Change in Compensation Sought*, Sep. 2, 2012, *available at* http://espn.go.com/college-sports/story/_/id/8324732/new-motion-lawsuit-ncaa-change-how-athletes-compensatedhttp://espn.go.com/college-sports/story/_/id/8324732/new-motion-lawsuit-ncaa-change-how-athletes-compensated.

[3] The NCAA will provide the interrogatories upon request.

2

to these interrogatories are necessary for defendants to prepare their class certification papers within the current schedule.

Because defendants need this information promptly, the NCAA further requests that the Court admonish the plaintiffs that these interrogatories must be answered with all of the information reasonably available to them, and that it is not appropriate for plaintiffs to respond to these interrogatories by arguing that the interrogatories are premature, seek expert information, or other blanket objections.

At the same time they criticize the NCAA for taking three business days to review their voluminous class certification papers and new case theories, and propound responsive interrogatories, plaintiffs insist on at least three business days to tell the NCAA whether they will answer those interrogatories in 14 days rather than 30. The NCAA believes it is perfectly reasonable for plaintiffs to answer that question within 24 hours. The NCAA's proposed compromise is that plaintiffs substantively answer the interrogatories by September 20, 2012 without blanket objections.

**II. The Antitrust Plaintiffs' Position**

Plaintiffs' motion for class certification was filed on Friday, August 31. Nearly one week later--on Thursday, September 6 at 1:35 p.m. Pacific Time--the NCAA sent an e-mail attaching its second set of interrogatories to the antitrust class plaintiffs and insisted that they agree to shorten the time period for any response to September 20--even though, under the present schedule, the NCAA's opposition to the motion for class certification is due to be filed on October 31, 2012.The NCAA assumed that plaintiffs might not be agreeable to this request and attached to its e-mail a proposed joint letter to the Court, which it said it would file on September 7. It demanded that plaintiffs provide it with their portion of that letter by 3 p.m. Eastern Time on September 7.

Renae Steiner, on behalf of plaintiffs, responded to this e-mail at 4 p.m. Pacific Time on September 6 and noted "[w]e disagree, of course, that the NCAA can unilaterally decide when interrogatory responses are due, and we disagree with your assertions that the class certification motion prompts the urgent need for answers to the discovery served today. Indeed, it seems like

3

the NCAA and its members would have access to the answers to these interrogatories, as at a quick glance the questions all seem to be about the NCAA and its partners' use of game footage, something that you know without the need for confirmation from plaintiffs. We also note that you took nearly a week to raise this 'urgent' issue." Ms. Steiner indicated that responsible counsel on the plaintiffs' side were unable to meet and confer with the NCAA on the requested relief on Friday and requested that such a meet and confer occur on Monday, August 10, at 2 p.m. Central Time. The NCAA's counsel refused this reasonable request.

Plaintiffs therefore ask that any consideration of the NCAA's request to shorten the time for responses to the new set of interrogatories transmitted by the NCAA be deferred until the parties have been allowed to meet and confer concerning that issue. Local Rule 37-1(a) would require such a meeting before the Court would entertain a request or motion to resolve a disclosure or discovery dispute and plaintiffs believe such a procedure should be followed in this instance. See *Center for Food Safety v. Vilsack*, No. 11–1310–SC, 2011 WL 5038500 at *2 (N.D.Cal. Oct. 24, 2011)) (a motion to shorten the time on a hearing to complete the administrative record was deemed to involve disclosure and discovery matters and hence was subject to the meet and confer requirement of Local Rule 37-1(a)).

Respectfully submitted,

SCHIFF HARDIN LLP


By:  */s/ Robert J. Wierenga*
     Robert J. Wierenga (SBN183687)
     Attorneys for Defendant NCAA
     350 S. Main St., Suite 210
     Ann Arbor, MI 48104

Dated: September 7, 2012

4

# CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification to the e-mail addresses registered.

By: */s/ Robert J. Wierenga*
Robert J. Wierenga (SBN183687)
SCHIFF HARDIN LLP
Attorneys for Defendant NCAA