UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NCAA STUDENT-ATHLETE NAME AND LIKENESS LICENSING LITIGATION | Case No. 09-cv-01967 CW (NC)<br><br>**ORDER DENYING MOTION TO SEAL**<br><br>Re: Dkt. No. 529 |

Antitrust Plaintiffs moved to seal their motion for class certification, their expert reports, and the exhibits offered in support of those reports. These documents had been designated confidential in accordance with a stipulated protective order. Antitrust Plaintiffs were required to file a motion to seal under Local Rule 75-9(d), but it is the NCAA that seeks to keep under seal documents designated confidential. The issue is whether the NCAA has made a sufficient showing of good cause to overcome the presumption of public access and warrant filing these documents under seal. Because the NCAA has not met its burden of good cause, the Court DENIES the motion to seal.

## I. BACKGROUND

**A.  Chief Judge Wilken's September 14, 2012 Order Regarding the Motion to Seal.**

Chief Judge Wilken denied part of the motion and instructed Plaintiffs to file Exhibits 4, 14, 20-21, 40, 42, 46, 49-50, 52-53, 72-74, and 80-81 to the Gosselin declaration in the public record. Dkt. No. 550. Chief Judge Wilken then referred to this Court the remainder of the motion to seal to determine whether the NCAA has established

Case No. 09-cv-01967 CW (NC)
ORDER DENYING MOTION TO SEAL

good cause to seal Exhibits 1, 5-6, 8-10, 12-13, 23, 44-45, 47-48, 54-68, 71, and 76-78, along with references to these exhibits in the motion for class certification and expert declarations. *Id.*

This Court ordered the parties to submit to chambers copies of the documents they seek to file under seal. Dkt. No. 553. In response to that order, the NCAA withdrew its request to file under seal Exhibits 1, 5-6, 8, 10, 12-13, 23, 44-45, 47-48, 54-65, 67, 68, and 71 to the Gosselin declaration and submitted only Exhibits 9, 51, 66, and 76-78. Accordingly, the Court considers only whether the NCAA has established good cause to seal Exhibits 9, 51, 66, and 76-78.

**B.    The NCAA's Contentions for Filing Under Seal.**

The NCAA filed the declaration of Robert Wierenga, outside counsel to the NCAA, in support of the motion to seal. Dkt. No. 539.

Exhibits 9 and 66 are email chains between employees of the NCAA that discuss the ongoing negotiations between the NCAA and EA about the potential launch of a video game of the college basketball tournament and the NCAA property rights in the game, including the use of student-athlete likenesses, NCAA logos, and Final Four logos. Regarding Exhibit 9, Wierenga states that the email "contains a non-public, high level internal discussion of the NCAA's negotiations with certain business partners," which is "competitively sensitive" and that if this information is made public, the "NCAA will be harmed." *Id.* at ¶ 14. Wierenga characterizes Exhibit 66 as containing "extremely sensitive business information," namely a "frank discussion of negotiations" and "an evaluation of relationships" with business partners. *Id.* at ¶¶ 57, 58. Wierenga declares that the NCAA would be "commercially harmed when negotiating in the future" if this email is not sealed. *Id.* at ¶ 58.

Exhibits 51 and 76-78 are agreements between the NCAA and business partners that provide for the distribution of NCAA content. Exhibit 51 is an agreement entered into on August 23, 2010 between the NCAA and Turner Sports Interactive, Inc. and is the current agreement between these parties. *Id.* at ¶¶ 31, 32. Wierenga declares that the agreement

1  contains "non-public highly confidential financial information and negotiated licensing
2  terms," which, if made public would competitively disadvantage both the NCAA and
3  Turner in future licensing negotiations. *Id.* at ¶ 32. This agreement includes a
4  confidentiality clause. *Id.* Exhibit 76 is the current agreement between the NCAA and
5  Turner Broadcasting System, Inc. and CBS Broadcasting, Inc. entered into on April 22,
6  2010. *Id.* at ¶¶ 64, 65. This agreement also contains "non-public highly confidential
7  financial information and negotiated licensing terms," which, if made public would
8  competitively disadvantage the NCAA, Turner, and CBS in future licensing negotiations.
9  *Id.* at 64.

10  Exhibit 77 is a prior agreement between the NCAA and CBS Broadcasting, Inc.
11  entered into on November 18, 1999. *Id.* at ¶¶ 66, 67. The terms of the agreement went into
12  effect on September 1, 2002 and will expire on August 31, 2013. Ex. 77 at ¶ 2. Wierenga
13  declares that the agreement contains "non-public highly confidential financial information
14  and negotiated licensing terms," which, if made public would competitively disadvantage
15  both the NCAA and CBS in future licensing negotiations. Dkt. No. 539 at ¶ 67.

16  Exhibit 78 is an earlier agreement between the NCAA and CBS entered into on
17  December 6, 1994. *Id.* at ¶ 68. The terms of that licensing agreement expired at the end of
18  2002. Ex. 78 at ¶ 1. Wierenga declares that the agreement contains "non-public highly
19  confidential financial information and negotiated licensing terms," which, if made public
20  would competitively disadvantage both the NCAA and CBS in future licensing
21  negotiations. Dkt. No. 539 at ¶ 69.

## II. STANDARD OF REVIEW

23  There is a presumption of public access to judicial records and documents. *Nixon v.*
24  *Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Accordingly, a party seeking to file a
25  motion to seal in connection with a non-dispositive motion must show "good cause" under
26  Federal Rule of Civil Procedure 26(c). *In re Midland Nat'l Life Ins. Co. Annuity Sales*
27  *Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012); *Pintos v. Pac. Creditors Ass'n*, 605
28  F.3d 665, 678 (9th Cir. 2010) ("In light of the weaker public interest in nondispositive

materials, we apply the 'good cause' standard when parties wish to keep them under seal."). "[T]he party seeking protection bears the burden of showing specific prejudice or harm will result," *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002), and must make a "particularized showing of good cause with respect to any individual document," *San Jose Mercury News, Inc. v. U.S. Dist. Court, N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)

## III. DISCUSSION

**A.   The NCAA Has Not Demonstrated Good Cause to Seal Exhibits 9 and 66.**

The NCAA alleges that if Exhibits 9 and 66 are made available in the public record, it will be "harmed" and "commercially harmed when negotiating" by the sensitive business information contained in the email exchanges. Beyond this conclusory statement, however, the NCAA fails to show with particularity how it will be prejudiced. The test for good cause requires the party seeking protection to describe the harm that will result if the content is not sealed. Although Wierenga describes the emails as frank and candid conversations about business partners and negotiations, his declaration does not list any specific examples of the consequences of including these exhibits in the public record. Because the NCAA has failed to show specific prejudice, it has not met the good cause standard necessary to overcome the presumption of public access. Accordingly, the NCAA's request to seal Exhibits 9 and 66 to the Gosselin declaration is DENIED.

**B.   The NCAA Has Articulated the Specific Prejudice that Will Result from Making Exhibits 51 and 76 Public, But Has Not Shown Good Cause for Sealing Exhibits 77 and 78**.

The NCAA argues that unless Exhibits 51 and 76-78 are sealed, it and the other parties to the agreements contained in the Exhibits will be competitively disadvantaged in future licensing negotiations. "[S]ources of business information that might harm a litigant's competitive standing" often warrant protection under seal. *Nixon*, 435 U.S. at 598. But, a decision to seal such records must still be based on articulated reasons. *Apple*

*Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011) (vacating a district court's grant of a motion to seal for failing to provide specific, articulated explanations); s*ee also Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 307 (N.D. Cal. 2005) (finding that an assertion of good cause based on harm to competitive and financial position requires a showing of "specific demonstrations of fact, supported where possible by affidavits and concrete examples").

Here, Exhibits 51 and 76 are the current licensing agreements between the NCAA, Turner, and CBS. They contain terms, including fee arrangements, content packages, and advertising requirements, that could be beneficial to parties that wish to participate in future negotiations for the licensing and distribution of NCAA content. The Court notes that these terms might be particularly useful to the competitors of Turner and CBS, neither of whom is a party to this litigation, in gaining access to NCAA content in the future. Because parts of these agreements could disadvantage the NCAA, Turner, and CBS in future negotiations, the NCAA should redact the competitively sensitive information from these agreements. Redactions, as opposed to filing entire documents under seal, "have the virtue of being limited and clear." *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1183 (9th Cir. 2006). The NCAA must submit redacted copies of Exhibits 51 and 76 to this Court by the Case Management Conference on October 3, 2012 at 10:00 a.m. Accordingly, the motion to seal Exhibits 51 and 76 is DENIED.

The NCAA also states that it and CBS will be competitively disadvantaged if their prior agreements, Exhibits 77 and 78, are made public. The NCAA does not specify, however, how agreements that were entered into thirteen and eighteen years ago would be relevant to a licensing negotiation in the future. That both of these agreements have been superseded only indicates that the terms that may be advantageous to a competitor negotiating a future licensing agreement are not the terms contained in these outdated agreements. In the absence of specific examples of how the NCAA and CBS would be prejudiced, the NCAA has not shown good cause to overcome the presumption of public access. Therefore, the Court DENIES the motion to seal Exhibits 77 and 78.

Case No. 09-cv-01967 CW (NC)
ORDER DENYING MOTION TO SEAL 5

## IV. CONCLUSION

The NCAA has not made a sufficient showing of good cause to overcome the presumption of public access and to warrant filing Exhibits 9, 51, 66, and 76-78 under seal. Accordingly, the Court DENIES the motion to seal. Nevertheless, the NCAA has demonstrated that Exhibits 51 and 76 contain some commercially valuable information that could competitively disadvantage the NCAA, Turner, and CBS. Therefore, the NCAA must submit redacted copies of Exhibits 51 and 76 to this Court by the Case Management Conference on October 3, 2012 at 10:00 am. The Court will issue a further ruling after receiving the NCAA's proposed redactions.

IT IS SO ORDERED.

Date: September 28, 2012

_____
Nathanael M. Cousins
United States Magistrate Judge