Plaintiffs' and Defendants' Counsel

Listed on Signature Block

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NCAA STUDENT-ATHLETE NAME & LIKENESS LICENSING LITIGATION | Case No. 4:09-cv-1967 CW (NC) <br><br> **JOINT STATEMENT OF ANTITRUST PLAINTIFFS AND DEFENDANT NCAA RE: NCAA'S REQUEST FOR FURTHER DEPOSITIONS OF ANTITRUST PLAINTIFFS** <br><br> Date:  **No Hearing scheduled per Civil Standing Order** <br> Dept.:  SF Courthouse A, 15th Floor <br> Judge:  Hon. Nathanael Cousins <br><br> Complaint Filed: May 5, 2009 <br><br> Trial Date: June 9, 2014 |

*NCAA's Statement of the Issue:* Is the NCAA entitled to time and scope limited additional depositions of the named Antitrust Plaintiffs ("APs"), excluding those plaintiffs newly named in the Third Consolidated Amended Complaint ("3CAC"), regarding the new theory of antitrust liability that APs added in the 3CAC, and as to which the NCAA did not have the opportunity to depose those named APs before the discovery cut-off? NCAA answers "yes."[1]

*Antitrust Plaintiffs' Response:* The NCAA has long demanded second depositions of these APs, yet Judge Wilken has not allowed such discovery. The NCAA *already asked* these APs questions about live broadcasts and amateurism. No further depositions are warranted.

## I.     NCAA'S POSITION

In considering APs' motion for class certification after the close of discovery, Judge Wilken recognized that APs "raised a new theory of antitrust liability in their class certification motion," Dkt. No. 855 (Sept. 10, 2013 Order) at 2, and instructed counsel for the NCAA that: "Perhaps there's some discovery that wasn't done because the theory was changed, but I don't really think so. **But if there was any, I suppose you could go to Judge Cousins and explain what it was and why you need to reopen it**," Dkt. 827, at 5 (emphasis added) (June 20, 2013 Hr'g Tr.). The NCAA now requests limited re-depositions of the named plaintiffs who are former student-athletes regarding APs' new theory of antitrust liability.

APs' original theory involved *former* student-athletes allegedly being "restrained" by NCAA "forms" from being paid for the use of their name, image or likeness in *archival* video or photographs. *See* Dkt. No. 855 at 4:3-14. APs' new theory, alleged for the first time near the close of discovery, was that *current* student-athletes were "restrained" by Division I amateurism rules from demanding that their schools pay them for appearing in *live* broadcasts of football and basketball games. This change was especially significant because APs had expressly represented

---

[1] During the meet-and-confer, APs agreed to supplement their prior document production with any post-production documents (through the present date) related to any named APs' actual or prospective licensing of his name, image, or likeness for any purpose (including but not limited to commercials, endorsements, appearances, speeches, awards, or autograph opportunities). The NCAA has refrained from moving to compel these documents based on APs' agreement. APs, however, have refused to commit to a date for producing the documents, and the NCAA requests the Court order a full production within 21 days, and before the depositions that the NCAA requests in this motion.

-2-

JOINT STATEMENT OF ANTITRUST PLAINTIFFS AND DEFENDANT NCAA RE: NCAA'S REQUEST FOR FURTHER DEPOSITIONS OF ANTITRUST PLAINTIFFS

to the Court that their original claims involved neither (1) a demand for a share of live broadcast revenues nor (2) a challenge to the NCAA's amateurism rules.  *Id.*

Since APs made this about face after the NCAA had already deposed the named APs, the NCAA did not have the opportunity to take these depositions with a full understanding of APs' theory of the case.  The NCAA's depositions of the named APs did touch upon television but only at a high level of generality.  That made sense because APs' theory at the time concerned rebroadcasts and other televised uses of footage of games that had already been played, and the NCAA's depositions touched upon live broadcasts only by way of comparison to these other uses.  Because APs had never made any allegations about the original live broadcasts, the NCAA had no reason and no incentive to fully explore the live broadcast theory involving current student-athletes that APs only later adopted.  It would simply be unfair for APs to call the named APs at trial to testify about their new theory without permitting the NCAA to depose them regarding that theory.[2]

The NCAA deposed the newly added named APs, who are *current* student-athletes, following their addition to the case and APs' change of theory.  These depositions showed that APs' new theory raises new issues that must be explored with the previously named APs.  Many of these issues go beyond the mechanics of live broadcasts and relate to APs' experiences while they were student-athletes, including the importance of being a student as well as an athlete, *see, e.g.*, 10/11/13 Garnham Depo. at 76:10-15; 10/12/13 Smith Depo. at 40:14-17, and the scholarships, academic services, athletic training, and other services that schools provide to student-athletes, *see, e.g.*, 10/12/13 Fischer Depo. at 22:12-23:5, 39:22-42:1; 10/17/13 Alipate Depo. at 52:21-55:6; 11/11 Robinson Depo. at 32:10-19, 53:22-56:6.  These issues relate to the effect on schools and athletics programs if 50% of all revenue from television broadcasts went to a small subset of student-athletes rather than to athletic and academic programs more generally.  They are squarely relevant to any claims regarding live broadcasts that either current or former

---

[2] *See, e.g.*, *City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 454 (9th Cir. 2011) (affirming finding of undue prejudice when plaintiff sought fourth amendment of complaint after defendant had deposed 5 of 6 key witnesses); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (new theory would require reopening discovery).

-3-

student-athletes may have—whether for damages or injunctive relief— but they were tangential at best to what the case was about when the NCAA originally deposed the former APs: *former* student-athletes' claims involving revenue for the use of game footage *after* they had left school. Thus, the NCAA had no reason to explore these specific lines of questioning at that time.

Burden is not an issue with this request for supplemental depositions.  The NCAA has offered to limit each deposition to three hours and to conduct these depositions at a location convenient for the witnesses.  Further, these depositions will not cause any delay to the trial schedule that Judge Wilken entered after the parties submitted a Joint Statement regarding their scheduling proposals.  *See* Dkt. No. 855.  That order did not mention, and therefore it is unclear whether the order resolved, the issues presented in the parties' Joint Statement, including the NCAA's request to take further discovery on APs' new theory.  Accordingly, under the very same order, this discovery dispute is properly directed to the Magistrate Judge.[3]

APs completely changed their theory of the case after the NCAA had already deposed the named APs.  If APs want to present and call the named APs to testify regarding that theory at trial, fairness requires that the NCAA be able to depose those witnesses on APs' new theory.

## II.   ANTITRUST PLAINTIFFS' POSITION

This is not the first time that the NCAA has requested that fact discovery be extended or reopened for discovery about the APs' claims for damages based on live broadcasts, including to redepose the original APs. Although the NCAA has requested this discovery at least four times, Judge Wilken has not permitted it.[4]  In fact, with the second request pending and upon hearing

---

[3] *See id.* at 8:25-27 ("Any discovery disputed must be presented to the discovery Magistrate Judge in accordance with his procedures.").

[4] On December 21, 2012, the NCAA requested an additional six months for discovery if its motion to strike was denied. Dkt. 665. Judge Wilken denied the NCAA's motion to strike but reset the case schedule without the additional discovery the NCAA sought. Dkt. 673. On June 13 2013, the NCAA requested additional discovery related to live broadcasts if class certification was granted. Dkt. 813. At the June 20, 2013 class certification hearing, Judge Wilken stated, "Perhaps there's some discovery that wasn't done because the theory was changed, but I don't really think so." Dkt. 827 at 5. On July 30, 2013, the NCAA requested a case management conference to address the reopening of discovery on the legal theories in the 3CAC. Dkt. 837. Judge Wilken denied this request and directed the parties to meet and confer regarding the case schedule.  Dkt. 845. On August 19, 2013, following an unsuccessful meet and confer, the NCAA requested the reopening of discovery *for almost a year* (until July 31, 2014) for discovery on live broadcast claims, *redepositions of the original APs*, and depositions of the new APs.  Dkt. 851.

-4-

JOINT STATEMENT OF ANTITRUST PLAINTIFFS AND DEFENDANT NCAA RE: NCAA'S REQUEST FOR FURTHER DEPOSITIONS OF ANTITRUST PLAINTIFFS

argument on this topic from the NCAA at the June 20, 2013 class certification hearing, Judge Wilken explicitly stated, "Perhaps there's some discovery that wasn't done because the theory was changed, but I don't really think so."[5] Dkt. 827 at 5. The NCAA has put forth no new facts or law that should lead this Court to a different conclusion.

The 16 original APs have been thoroughly questioned about live broadcasts, the NCAA's amateurism and eligibility rules, and whether student-athletes (SAs) should remain amateurs.[6] The NCAA has not identified a single new question related to live broadcast claims that it would ask nor any particular new information that it hopes to obtain.[7] Importantly, the deposition of one

---

On September 10, 2013, Judge Wilken reopened fact discovery, but only for the limited purpose of taking written discovery and depositions of the new APs, implicitly denying the request for redepositions of the original APs. Dkt. 855.

[5] Although she continued, "But if there was any, I suppose you could go to Judge Cousins and explain what it was and why you need to reopen it," Judge Wilken's skepticism was evident. *Id.*

[6] *See, e.g.*, Ellis Depo. at 57-62; 73-4; 78-9; 106-12; 115-24; 125; 260-61; Flournoy Depo. at 34-5; 54-57; 185- 6; 188-9; 235-6; George Depo. at 13-9; 43; 59-60; 71-72; Gilbert Depo at 21-3; 36-8; 103-4; 106-7; Jacobson Depo. at 12-3; 19-8; 27-3; 36-9; 44; 114-5; 130-1; Jaracz Depo. at 69-70; 74-7; 113; 117-8; 120-4; Lattin Depo. at 31-3; 59-64; 74-6; 82; 176-7; 186; 222-5; Maynor Depo. 23; 28-35; 50-1; 64; 69-71; 117-8; 121-8; 140-3; 169; 216-9; 237-44; 252-6; O'Bannon Depo. at 28-9; 33-4; 84-7; 95; 100; Prothro Depo. at 37-43; 47-8; 52-3; 131-3; 170-2; 186-7; 198; Rhodes Depo. at 31; 42; 48-51; 66-7; 101; 107; 119-125; 146-8; Riley Depo. at 39-42; 45-6; 55-7; 64-7; 186; Robertson Depo. at 22; 273-276; 314; 320-2; 325; Russell Depo. at 46; 48; 136; 186-187; Tallent Depo. at 31; 35-6; 41-4; 111; Wimprine Depo. at 23-4; 34-3; 80-2; 169-172. In order to comply with the page limitation, the APs could not include the specific transcript citations. To the extent the Court is willing to entertain the NCAA's motion, the APs request the opportunity to submit *all* relevant deposition transcript excerpts (or entire transcripts if preferred) to the Court for consideration.

[6] *See, e.g.*, Ellis Depo. at 57-62; 73-4; 78-9; 106-12; 115-24; 125; 260-61; Flournoy Depo. at 34-5; 54-57; 185- 6; 188-9; 235-6; George Depo. at 13-9; 43; 59-60; 71-72; Gilbert Depo at 21-3; 36-8; 103-4; 106-7; Jacobson Depo. at 12-3; 19-8; 27-3; 36-9; 44; 114-5; 130-1; Jaracz Depo. at 69-70; 74-7; 113; 117-8; 120-4; Lattin Depo. at 31-3; 59-64; 74-6; 82; 176-7; 186; 222-5; Maynor Depo. 23; 28-35; 50-1; 64; 69-71; 117-8; 121-8; 140-3; 169; 216-9; 237-44; 252-6; O'Bannon Depo. at 28-9; 33-4; 84-7; 95; 100; Prothro Depo. at 37-43; 47-8; 52-3; 131-3; 170-2; 186-7; 198; Rhodes Depo. at 31; 42; 48-51; 66-7; 101; 107; 119-125; 146-8; Riley Depo. at 39-42; 45-6; 55-7; 64-7; 186; Robertson Depo. at 22; 273-276; 314; 320-2; 325; Russell Depo. at 46; 48; 136; 186-187; Tallent Depo. at 31; 35-6; 41-4; 111; Wimprine Depo. at 23-4; 34-3; 80-2; 169-172. In order to comply with the page limitation, the APs could not include the specific transcript citations. To the extent the Court is willing to entertain the NCAA's motion, the APs request the opportunity to submit *all* relevant deposition transcript excerpts (or entire transcripts if preferred) to the Court for consideration.

[7] While the NCAA purports to cite examples of the types of questions it had the opportunity to ask the new APs but not the original ones, none of these questions *have anything to do with claims for damages based on live broadcasts*. Supra at 3:27-4:2. Moreover, similar questions have already been asked of the APs. Finally, the APs are not proper parties to testify about the effect on schools and athletics programs if 50% of all revenue from television broadcasts went to a small subset of student-athletes rather than to supporting athletic and academic programs more generally. They are not school administrators, athletic administrators, or economists. Thus, this is not a topic on which they have personal knowledge or are otherwise qualified to testify. The

-5-

of the original APs, Bill Russell, took place on December 7, 2012, more than three months after the NCAA learned of APs' live broadcast claims.[8] Yet, the NCAA did not ask him any questions about the importance of being a student as well as an athlete, the various benefits the schools provided in terms of scholarship, academic services, athletic training, and other perks, or the effect of the proposed 50/50 revenue split—the very types of questions it now claims are necessary to ask. Thus, the NCAA's claim of undue prejudice is without merit, and the Court should deny its request for unnecessary, burdensome, and costly second depositions of 16 APs.[9]

Even if the Court were inclined to consider further depositions, the NCAA's request is overbroad. The claims set forth in the 3CAC are based on the license, use, or sale of NILs in videogames, rebroadcasts, and live broadcasts from July 21, 2005 forward. Among the 16 original APs, only Damien Rhodes, Patrick Maynor, and Tyrone Prothro were student-athletes during that period and therefore have claims based upon live broadcasts (as opposed to rebroadcasts). Thus, the Court should not reopen depositions aimed solely at questioning 13 of the APs about claims that they do not have.[10]

Finally, the NCAA notes that APs have agreed to supplement certain previous document productions with any subsequent responsive documents concerning licensing opportunities but cannot yet provide a date for production as counsel confers with the APs. The NCAA's insistence on production before the requested depositions, *even though none of these documents could possibly relate to live broadcast claims*, is telling and unwarranted, as are the depositions.

---

NCAA has thoroughly questioned the APs' economists about their proposed damages model.
[8] Since Mr. Russell's deposition took place after knowledge of the live broadcast claims, he should not be subject to redeposition.
[9] During the four and a half month period during which discovery was still open, the NCAA made no attempt to redepose any of the APs that had already been deposed, further evidencing the lack of prejudice.
[10] Contrary to the NCAA's assertion, the APs explained during the meet and confer that it is premature to make any decisions about who will be called to testify since Judge Wilken has not made any determinations about the scope and structure of any trial.

JOINT STATEMENT OF ANTITRUST PLAINTIFFS AND DEFENDANT NCAA RE: NCAA'S REQUEST FOR FURTHER DEPOSITIONS OF ANTITRUST PLAINTIFFS

| | |
|---|---|
| MUNGER TOLLES & OLSON<br><br>/s/  Kelly M. Klaus  _____<br>Glenn D. Pomerantz (Cal. Bar. No. 112503)<br>Kelly M. Klaus (Cal. Bar. No. 161091)<br>Rohit K. Singla (Cal. Bar. No. 213057)<br>Carolyn H. Luedtke (Cal. Bar. No. 207976)<br>MUNGER, TOLLES & OLSON LLP<br>560 Mission Street, Twenty-Seventh Floor<br>San Francisco, California 94105<br>Tel:     (415) 512-4000<br>Fax:    (415) 512-4077<br>Email: glenn.pomerantz@mto.com<br>           rohit.singla@mto.com<br>           kelly.klaus@mto.com<br>           carolyn.luedtke@mto.com<br><br>SCHIFF HARDIN LLP<br><br>/s/ Robert J. Wierenga _____<br><br>Gregory L. Curtner (*pro hac vice*)<br>Robert J. Wierenga (Cal. Bar. No. 183687)<br>Kimberly K. Kefalas (*pro hac vice*)<br>350 S. Main St., Suite 210<br>Ann Arbor, MI 48104<br>Tel: 734-222-1500<br>Fax: 734-222-1501<br>Email: gcurtner@schiffhardin.com<br>           rwierenga@schiffhardin.com<br>           kkefalas@schiffhardin.com<br><br>***Attorneys for Defendant***<br>***National Collegiate Athletic Association*** | HAUSFELD LLP<br><br>/s/  Hilary K. Scherrer _____<br>Michael D. Hausfeld (*pro hac vice*)<br>Hilary K. Scherrer (Cal. Bar No. 209451)<br>Sathya Gosselin (Cal. Bar No. 269171)<br>1700 K Street, NW, Suite 650<br>Washington, DC 20006<br>Tel: (202) 540-7200<br>Email: mhausfeld@hausfeldllp.com<br>           hscherrer@hausfeldllp.com<br>           sgosselin@hausfeldllp.com<br><br>Michael P. Lehmann (Cal. Bar No. 77152)<br>Arthur N. Bailey, Jr. (Cal. Bar No. 228460)<br>44 Montgomery Street, 34th Floor<br>Tel:     (415) 633-1908<br>Email: mlehmann@hausfeldllp.com<br>           abailey@hausfeldllp.com<br><br>***Plaintiffs' Interim Co-Lead Class Counsel with Principal Responsibility for the Antitrust Claims***<br><br>HAGENS BERMAN SOBOL SHAPIRO<br><br>/s/ Robert B. Carey_____<br><br>Robert B. Carey (*pro hac vice*)<br>Leonard W. Aragon (*pro hac vice*)<br>11 West Jefferson<br>Suite 1000 Phoenix, AZ, 85003<br>Tel: (602) 840-5900<br>Fax: (602) 840-3012<br>Email:  rcarey@hbsslaw.com<br>             leonard@hbsslaw.com<br><br><br>Steve W. Berman (*pro hac vice*)<br>HAGENS BERMAN SOBOL SHAPIRO<br>Seattle, Washington 98101<br>Tel:  (206) 623-7292<br>Fax:   (206) 623-0594<br>E-Mail:  steve@hbsslaw.com<br><br>***Plaintiffs' Interim Co-Lead Class Counsel With Primary Responsibility for the Right of Publicity Claims*** |

JOINT STATEMENT OF ANTITRUST PLAINTIFFS AND DEFENDFANT NCAA RE: NCAA'S REQUEST FOR FURTHER DEPOSITIONS OF ANTITRUST PLAINTIFFS