1  Michael P. Lehmann (Cal. Bar No. 77152)
   Arthur N. Bailey, Jr. (Cal. Bar No. 248460)
2  HAUSFELD LLP
   44 Montgomery St., 34th Floor
3  San Francisco, CA 94104
   Telephone: (415) 633-1908
4  Facsimile: (415) 358-4980
   Email: mlehmann@hausfeldllp.com
5         abailey@hausfeldllp.com

6
   Michael D. Hausfeld (*pro hac vice*)
7  Hilary K. Scherrer (Cal. Bar No. 209451)
   Sathya S. Gosselin (Cal. Bar No. 269171)
8  HAUSFELD LLP
   1700 K Street, NW, Suite 650
9  Washington, DC 20006
   Telephone:  (202) 540-7200
10 Facsimile:  (202) 540-7201
   Email: mhausfeld@hausfeldllp.com
11         hscherrer@hausfeldllp.com
           sgosselin@hausfeldllp.com
12
   *Plaintiffs' Interim Co-Lead Class Counsel*
13 *with Principal Responsibility for the*
   *Antitrust Claims*
14

15

16                     UNITED STATES DISTRICT COURT

17                    NORTHERN DISTRICT OF CALIFORNIA

18                              OAKLAND DIVISION

19

| | |
|---|---|
| 20  IN RE NCAA STUDENT-ATHLETE NAME & LIKENESS LICENSING LITIGATION | Case No.  4:09-cv 1967 CW |
| 22  This document relates to: ANTITRUST PLAINTIFFS' ACTIONS | **ANTITRUST PLAINTIFFS' OPPOSITION TO DEFENDANT NCAA'S MOTION TO SEVER OR, ALTERNATIVELY, TO CONTINUE TRIAL**<br><br>Date:         None<br>Time          None<br>Judge:       Honorable Claudia Wilken<br>Courtroom:  2, 4th Floor<br>Complaint filed: May 5, 2009 |

# TABLE OF CONTENTS

I. INTRODUCTION. .................................................................................................................. 1

II. ARGUMENT. ........................................................................................................................ 2

    A. The NCAA's Argument Based On The Pending *Certiorari* Petition In *NCAA I* Is Specious. ....................................................................................................................... 2

    B. The NCAA's Arguments Based On Judicial Efficiency, Prejudice And Seventh Amendment Concerns Are Equally Specious. ............................................................. 3

III. CONCLUSION ..................................................................................................................... 6

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bloxham v. Mountain West Farm Bureau Mut. Ins. Co.*,
    43 F. Supp. 2d 1121 (D. Mont. 1999) ................................................................................... 5

*Deguchi v. Allstate Ins. Co.*,
    No. 07–00144 JMS–LEK, 2007 WL 3022235 (D. Haw. Oct. 11, 2007) ................................ 5

*Hangarter v. Paul Revere Life Ins. Co.*,
    236 F. Supp. 2d 1069 (N. D. Cal. 2002), *aff'd in part and rev'd in part on other grounds*, 373 F.3d 998 (9th Cir. 2004) ................................................................................. 5

*Hart v. Electronic Arts, Inc.*,
    No. 3:09-cv-05990-FLW-LHG (D.N.J.) ................................................................................ 2

*In re NCAA Student-Athlete Name & Likeness Litig.*,
    724 F.3d 1268 (9th Cir. 2013) ..................................................................................... 1, 2, 3, 6

*In re NCAA Student-Athlete Name & Likeness Litig.*,
    No. C 09-1967 CW, 2014 WL 1410451 (N.D. Cal. Apr. 11, 2014) ................................ 3, 4, 6

*Keller v. Electronic Arts, Inc.*,
    No. 4:09-cv-1967 CW (N.D. Cal.) .............................................................................. 2, 4, 6

*Laitram Corp. v. Hewlett-Packard Co.*,
    791 F. Supp. 113 (E.D. La. 1991) ........................................................................................ 5

*McNeil v. Nat'l Football League*,
    790 F. Supp. 871 (D. Minn. 1992) ........................................................................................ 4

*Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Md.*,
    763 F. Supp. 28 (S.D.N.Y.), *modified*, 768 F. Supp. 115 (S.D.N.Y. 1991) ........................... 5

*Ortiz v. Pearson*,
    88 F. Supp. 2d 151 (S.D.N.Y. 2000) ..................................................................................... 5

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) .............................................................................................................. 4

*Waller v. Financial Corp. of America*,
    828 F.2d 579 (9th Cir. 1987) ................................................................................................. 3

**STATUTES**

15 U.S.C. § 1 .................................................................................................................................. 4

28 U.S.C. § 1292(b) ....................................................................................................................... 1

OTHER AUTHORITIES

Fed. R. Civ. P. 23(f) ....................................................................................................................... 1

Fed. R. Civ. P. 42 ........................................................................................................................... 6

## I. INTRODUCTION.

Although it has long known that the June 9 trial would encompass the Antitrust Plaintiffs' ("APs") claims as to videogames, the National Collegiate Athletic Administration ("NCAA"), in what only be characterized as a desperate eleventh-hour move, now seeks to have those claims "entirely severed, without any mention of the videogame issues at the trial on broadcast and rebroadcast claims" or to defer the entire trial indefinitely. "Defendant NCAA's Notice of Motion And Motion For Severance Or, Alternatively To Continue Trial; Memorandum of Points And Authorities In Support Thereof," p. 7 (Apr. 25, 2014) (Dkt. No. 1029) ("NCAA Br."). This motion is part of an overarching strategy by the NCAA to prevent the June 9 trial from going forward. As part of that strategy, it has also filed: (a) a petition under Fed. R. Civ. P. 23(f) to have the Ninth Circuit review this Court's ruling amending the injunctive class definition (Dkt. No. 1035), (b) a motion for certification of an interlocutory appeal under 28 U.S.C. § 1292(b) of this Court's ruling denying its cross-motion for summary judgment on live broadcast claims (Dkt. No. 1032), and (c) a motion for leave to file a motion for partial reconsideration of the summary judgment order (Dkt. No. 1033). All of these filings were timed, not coincidentally, to occur at the time the APs were preparing for the exchange of jury instructions, *in limine* motions, trial exhibit lists and deposition designations that took place on April 30, pursuant to the Court's standing order. These obstructionist tactics should not be countenanced.

The NCAA points out that it has waited nearly seven months for the settlement among the APs, the Right of Publicity plaintiffs ("ROPPs"), Electronic Arts, inc. ("EA") and Collegiate Licensing Corporation ("CLC") to materialize. NCAA Br. at 1. That settlement agreement is expected to be submitted to the Court shortly; the parties are finalizing the details with respect to it and working on the various components of a motion for preliminary approval motion. As a result, the NCAA's arguments based on the pendency of the petition for *certiorari* with respect to the ruling in *In re NCAA Student-Athlete Name & Likeness Litig.*, 724 F.3d 1268 (9th Cir. 2013) ("*NCAA I*") will be moot. Its contentions that having a single trial serves the goal of judicial efficiency and best protects its Seventh Amendment rights are equally wrongheaded; the APs' and ROPPs' cases are based on different legal violations that involve distinct factual predicates.

1137297.3

APS' OPPOSITION TO MOTION
TO SEVER OR CONTINUE
4:09-CV 1967 CW (NC)

The NCAA has *admitted* that they should not be tried together. Two trials are proper here, and any factual resolutions in the first can operate to bind the NCAA in the second through principles of offensive collateral estoppel.

## II.    ARGUMENT.

### A.    The NCAA's Argument Based On The Pending *Certiorari* Petition In *NCAA I* Is Specious.

In assessing the NCAA's arguments based on the pending petition for *certiorari* in *NCAA I* (NCAA Br. at 7-8), it is important at the outset to appreciate the scope of the settlement with EA and CLC and why it has taken so long to be finalized. There are three plaintiff groups involved in the settlement: (1) the ROPPs in *Keller v. Electronic Arts, Inc.*, No. 4:09-cv-1967 CW (N.D. Cal.) ("*Keller* Plaintiffs"); (2) the ROPPs in *Hart v. Electronic Arts, Inc.*, No. 3:09-cv-05990-FLW-LHG (D.N.J.) ("*Hart* Plaintiffs") and the related case of *Alston v. Electronic Arts, Inc.*, 3:13-cv-05157-FLW-LHG (D.N.J.); and (3) the APs. Counsel for these parties participated in a mediation before Randy Wulff ("Wulff") of the Wulff Quinby Sochynsky dispute resolution firm on September 10, 2013. The basic parameters of the settlement were agreed upon at that first session and set forth in a summary term sheet. As has been reported publicly, the amount of the settlement is $40 million. A long-form settlement agreement was drafted and the APs supported most of it basic terms.

The client in *Hart* then replaced his counsel, claiming it lacked authority to settle on his behalf. New counsel were brought in and it took them a period of time to review the terms of the settlement and agree to support it. There followed extensive discussions between the *Hart* and *Keller* counsel regarding the respective allocations between their two groups of ROPPs. Eventually, these issues were resolved in a further session with Wulff held on April 14, 2014. Another delaying factor was whether the NCAA would participate in this settlement. Two sessions before Magistrate Judge Cousins were held on March 18 and 24, 2014 but those were unsuccessful. Dkt. Nos. 1015, 1017.

The final version of a long-form agreement is being prepared and the parties plan to file it shortly as part of a motion for preliminary approval, which is also in the process of being

finalized.

As a result, the NCAA's claims relating to the pendency of the petition for *certiorari* in *NCAA I* are effectively undermined. Once final approval is granted and a judgment is entered, that petition will be withdrawn. The NCAA presents a lot of speculation that the settlement may never be finalized, either because of its objections or the objections of putative settlement class members. NCAA Br. at 4-5. But self-serving speculation is insufficient to justify the extraordinary relief it now seeks. As a non-settling defendant, the NCAA normally has no standing to challenge the settlement (*Waller v. Financial Corp. of America*, 828 F.2d 579, 582-83 (9th Cir. 1987)), and its speculation about other potential objectors is not entitled to any credence. The APs believe that the Court will find the $40 million settlement releasing those claims with respect to EA and CLC to be fair and reasonable. *See In re NCAA Student-Athlete Name & Likeness Litig.*, No. C 09-1967 CW, 2014 WL 1410451, at *19 (N.D. Cal. Apr. 11, 2014) ("*NCAA II*").

### B. The NCAA's Arguments Based On Judicial Efficiency, Prejudice And Seventh Amendment Concerns Are Equally Specious.

As for the NCAA's arguments based on judicial efficiency and its Seventh Amendment rights (NCAA Br. at 3-7), it provides no good reasons to sever the videogame claims from the June 9 trial or to defer that trial. The NCAA raises the specter of inconsistent verdicts and factual findings, argues that having two trials undermines judicial economy, and contends that it would be unfairly prejudiced by duplicative trials. *Id*. at 5. Of course, that is the polar opposite of what it previously told the Court when it opposed consolidation of the APs' and ROPPs' cases:

> Moreover, consolidation is not in the interest of judicial economy; it will complicate rather than simplify matters, will substantially prejudice Defendants and increase litigation costs and delay, and will likely lead to confusion in briefing, motion practice and ***at trial. There is no risk here of inconsistent verdicts, as the questions the Court and the jury will be considering if these cases go forward are separate and distinct, as are the putative classes Plaintiffs purport to represent and the relief Plaintiffs seek***.

Dkt. No. 83 at 2 (emphases added).

The NCAA's point about potential confusion at trial, given the distinctness of the ROPPs' and APs' statutory claims, was correct, especially in light of the way this case has evolved. The

bases for the APs' and ROPPs' claims are different. The antitrust damage theory is based on the existence of a market that was ready, willing and able to compensate college players appearing on preseason rosters for the use of their names, images and likenesses ("NIL") through a group license mechanism. The ROPPs' claims turn primarily on state statutory damages for college athletes whose images were used in videogames. The settlement agreement with EA and CLC reflects these differences. Likewise, this Court itself has noted that the First Amendment analysis for the APs' claims may not necessarily be controlling for the ROPPs' claims and that the latter may require a distinct analysis. *NCAA II*, 2014 WL 1410451, at \*6 n.6. Thus, there are differences between the two claims that justify separate trials. Indeed, the counsel for the *Keller* Plaintiffs detailed these differences at some length in a prior deconsolidation motion. Dkt. No. 236 at 4-7.

Of course, this is not to say there is no factual overlap between the two sets of claims. But even to the extent such overlap exists, judicial efficiency is not lost by having two trials. The NCAA will be the defendant in both trials. To the extent the jury makes any findings about its videogame-related conduct at the June 9 trial, principles of offensive collateral estoppel should serve to preclude its relitigation of those findings in any separate trial involving the ROPPs' claims. *E.g., Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331-32 (1979); *McNeil v. Nat'l Football League*, 790 F. Supp. 871, 890-96 (D. Minn. 1992). These principles will serve to minimize the NCAA's asserted risk of such inconsistencies.

In addition, severing the APs' unitary claim for a conspiracy to restrain trade under Section 1 of the Sherman Act (15 U.S.C. § 1) so that the evidence relevant to that claim involving videogames *cannot even be mentioned* in the June 9 trial is highly prejudicial to them. The conspiracy here affected multiple products; the portion of the claim relating to videogames arises from the common NCAA policy of not compensating college athletes for use of their NIL that also applied to broadcasts and rebroadcasts. The APs will present common evidence of the conspiracy to implement that policy, which will include documentary evidence and testimony from fact and expert witnesses. It makes no logical sense and does not serve the goal of judicial

efficiency for the APs to present only a portion of their antitrust conspiracy case at trial. "[E]ven if bifurcation might somehow promote judicial economy, courts should not order separate trials when 'bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice.'" *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1991) (quoting *Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1433 (D. Del. 1989)). Here, the APs would be prejudiced by a further delay of their ability to try a significant portion of their case. They would also be prejudiced by having to present the evidence relating to their antitrust claim on a piecemeal basis, thereby being unfairly deprived of the ability to offer evidence that the NCAA has no doubt determined to be highly unfavorable to it.[1]

The other alternative—deferral of trial to some indefinite date in the future—is also highly prejudicial. Under the NCAA's alternative proposal, the entire June 9 trial would be delayed "until settlement and *certiorari* proceedings are resolved" (NCAA Br. at 3), which could take many months. There is a great potential for loss of live witness testimony or diminished recollection of events by witnesses under this approach, as well as for the further indefinite delay of a case already nearly five years old.

Finally, the NCAA's Seventh Amendment argument (NCAA Br. at 6) is bogus. One of the authorities that the NCAA cites—the *Manual for Complex Litigation (Fourth)* § 22.93 (2004)—notes that trial judges are given leeway to conduct unitary trials, to bifurcate issues in a

---

[1] *See Hangarter v. Paul Revere Life Ins. Co.,* 236 F. Supp. 2d 1069, 1094-95 (N. D. Cal. 2002), *aff'd in pertinent part and rev'd in part on other grounds*, 373 F.3d 998 (9th Cir. 2004) (court declined to bifurcate intertwined issues of liability and punitive damages; Ninth Circuit found no abuse of discretion); *Ortiz v. Pearson,* 88 F. Supp. 2d 151, 155 (S.D.N.Y. 2000) (where claims arise from the same basic underlying facts and defendants are represented by same counsel would not be severed; *"*a trial on one claim is not necessarily less burdensome than two separate trials with duplicative evidence and argument"); *Bloxham v. Mountain W. Farm Bureau Mut. Ins. Co.,* 43 F. Supp. 2d 1121, 1129-30 (D. Mont. 1999) (contract claim and unfair trade practice claim involving intertwined evidence would not be bifurcated); *Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Md.*, 763 F. Supp. 28, 35 (S.D.N.Y.), *modified on other grounds*, 768 F. Supp. 115 (S.D.N.Y. 1991) (judicial economy not served by bifurcating trial of plaintiff's breach of contract claim from its fraud and breach of the covenant of good faith and fair dealing claims, given the connection between the two sets of claims); *Deguchi v. Allstate Ins. Co.*, No. 07–00144 JMS–LEK, 2007 WL 3022235, at *3-4 (D. Haw. Oct. 11, 2007) (no bifurcation of issue as to insurance coverage from issue of bad faith denial of coverage given common witnesses and documents relevant to both claims).

trial or to utilize other "helpful trial structures" so long as issues can be presented to separate juries without confusion or uncertainty. Here, all the issues relating to the APs' case that are triable to a jury will be presented in one trial to a single jury. The distinct issues in the ROPPs' case brought under a separate theory and a separate body of law will be tried to another jury, presumably in another unitary trial. Nothing in the Constitution or Fed. R. Civ. P. 42 mandates a joint trial of these separate claims.

It is true, as the NCAA notes (NCAA Br. at 3), that these cases were consolidated by this Court. But the Court had also previously observed, in connection with the aforementioned *Keller* Plaintiffs' deconsolidation motion, that it had the power to deconsolidate them for trial purposes depending on the status of the *NCAA I* appeal or if a single trial would be too cumbersome. Dkt. No. 253 at 12. The NCAA opposed the *Keller* Plaintiffs' deconsolidation motion on the ground that it might lead to uncoordinated pretrial discovery; however, it also noted:

> This is not to say that the NCAA objects to the Court's consolidation order being revisited at a later date. The NCAA opposed plaintiffs' motion for consolidation when it was filed last year, … and ***continues to believe that consolidated class certification, summary judgment or trial proceedings will almost certainly be unwarranted and inappropriate here.*** But those questions are better addressed in the future, when the parties and the Court have a better sense of the claims and the evidence.

Dkt. No. 237 at 2 (emphases added).

The Court effectively did grant deconsolidation (at least for trial purposes) when it ordered the APs to proceed by themselves to trial on June 9. *NCAA II*, 2014 WL 1410451, at *20. It did so, presumably, in light of the claims and evidence, as revealed in the cross-motions for summary judgment and in the Third Consolidated Amended Complaint (Dkt. No. 832). The NCAA has shown no basis for reconsidering that ruling on the very eve of trial.

### III. CONCLUSION

The NCAA's motives here are transparent; it is doing everything in its power to try to avoid a trial on the antitrust claims. Respectfully, the Court should not permit these diversionary tactics, especially in light of the fact that the APs are diligently working to comply with various pretrial deadlines. The NCAA's alternative motion for severance of videogame claims from the

June 9 trial or for deferral of that trial should be rejected.

Dated: May 2, 2014 Respectfully submitted,

By: */s/ Michael P. Lehmann*

Michael P. Lehmann (Cal. Bar No. 77152)
Arthur N. Bailey, Jr. (Cal. Bar No. 248460)
HAUSFELD LLP
44 Montgomery St., 34th Floor
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980
E-mail: mlehmann@hausfeldllp.com
          abailey@hausfeldllp.com


Michael D. Hausfeld (*pro hac vice*)
Hilary K. Scherrer (Cal. Bar No. 209451)
Sathya S. Gosselin (Cal. Bar. No. 269171)
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
E-mail:mhausfeld@hausfeldllp.com
          hscherrer@hausfeldllp.com
          sgosselin@hausfeldllp.com

*Antitrust Plaintiffs' Lead Class Counsel*

# CERTIFICATE OF SERVICE

I, Michael P. Lehmann, declare that I am over the age of eighteen (18) and not a party to the entitled action. I am a partner in the law firm of HAUSFELD LLP, and my office is located at 44 Montgomery Street, Suite 3400, San Francisco, California 94104.

On May 2, 2014, I caused to be filed the following:

**ANTITRUST PLAINTIFFS' OPPOSITION TO DEFENDANT NCAA'S MOTION TO SEVER OR, ALTERNATIVELY, TO CONTINUE TRIAL**

with the Clerk of Court using the Official Court Electronic Document Filing System, which served copies on all interested parties registered for electronic filing.

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Michael P. Lehmann*
Michael P. Lehmann