Robert B. Carey (*Pro Hac Vice*)
Leonard W. Aragon (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rob@hbsslaw.com
leonard@hbsslaw.com

Stuart M. Paynter (226147)
Celeste H.G. Boyd (*Pro Hac Vice*)
THE PAYNTER LAW FIRM PLLC
1200 G Street N.W., Suite 800
Washington, DC 20005
Telephone: (202) 626-4486
Facsimile: (866) 734-0622
stuart@smplegal.com
cboyd@smplegal.com

Attorneys for Plaintiffs

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re NCAA Student-Athlete Name & Likeness Licensing Litigation | Case No. 4:09-cv-1967 CW<br><br>**RIGHT OF PUBLICITY PLAINTIFFS' RESPONSE IN SUPPORT OF THE NCAA'S MOTION FOR SEVERANCE OR, ALTERNATIVELY, TO CONTINUE TRIAL**<br><br>Judge: Hon. Claudia Wilken<br>Courtroom: 2, 4th Floor<br><br>Complaint Filed: May 5, 2009 |

1	The *Keller* Right of Publicity Plaintiffs[1] join the NCAA's Motion to Sever the *O'Bannon* Antitrust Plaintiffs' videogame-related claims and allegations from the June 9, 2014 trial, and also agree that all videogame-related claims should be consolidated for trial with the *Keller* Right of Publicity claims.

The *Keller* Right of Publicity Plaintiffs claim that the NCAA violated California's and Indiana's right of publicity ("ROP") laws, and are therefore entitled to millions in damages. The *O'Bannon* Antitrust class seeks only injunctive relief and, at best, issues related to the right of publicity are ancillary to the antitrust claims. If the claims are not severed and consolidated, the *O'Bannon* Antitrust Plaintiffs may nonetheless collaterally estop the *Keller* ROP class from seeking damages from the NCAA because issues central to the *Keller* ROP claims—whether the NCAA conspired with Electronic Arts Inc. ("EA") to use the names, images, and likenesses ("NIL") of student-athletes in NCAA-branded videogames—are *arguably* at issue during the antitrust trial and may be adjudicated. This is unfair to putative ROP class members because (1) the Keller *ROP* Plaintiffs were given primary responsibility for ROP claims and are best equipped to address such claims at trial, but have not been able to complete discovery due to the interlocutory appeal filed by EA. The *Keller* ROP Plaintiffs have now settled their claims against EA, and EA agreed to allow discovery related to the remaining claims against the NCAA.[2] But until the *Keller* ROP Plaintiffs complete discovery, the claims should not move forward without the plaintiffs given primary responsibility for ROP claims, and (2) the *O'Bannon* Antitrust Plaintiffs cannot adequately represent the interests of the putative *Keller* ROP class because the two classes have divergent claims seeking different relief. It is therefore unnecessary and unfair for issues related to the *Keller* ROP Plaintiffs' claims to be litigated without their input and participation when the videogame-related claims can easily be severed and tried at a later date.

If the Court is not inclined to sever the claims, the *Keller* ROP Plaintiffs agree that the case should be continued if there is *any* chance the antitrust trial will have a preclusive or binding effect on the ROP Plaintiffs or otherwise foreclose them from litigating any element of their ROP claims

---

[1] Samuel Michael Keller, Bryan Cummings, Lamarr Watkins and Bryon Bishop.
[2] The parties expect to sign the agreement on or about May 5, 2014.

1

RESPONSE TO MOTION FOR SEVERANCE
Case. No. 09-CV-1967 CW

1    at a subsequent trial. The *Keller* ROP Plaintiffs believe they can be ready for trial six months from

2    the day the Court lifts the stay. Alternatively, if the Court rules that the antitrust case will not be

3    afforded preclusive effect on any ROP issues, the *Keller* Plaintiffs take no position on the request

4    to continue the trial.

5    **I.      The Videogame-Related Claims Should Be Severed From The Antitrust Trial.**

6            The Court consolidated the antitrust and ROP cases with the caveat that the cases may be

7    severed for trial. Order Granting Motion to Consolidate, Dkt. 145 ("The consolidation is without

8    prejudice to a later determination as to whether the cases should be tried together.") The *Keller*

9    ROP Plaintiffs agree with Defendants NCAA and EA that the Court should sever the videogame-

10   related claims from the antitrust trial scheduled for June 9, 2014. The *Keller* ROP Plaintiffs support

11   severance for two reasons.

12           **First**, the videogame-related claims are not ripe for trial because the plaintiffs given

13   primary responsibility to litigate ROP claims have yet to complete discovery. The Court stayed the

14   *Keller* ROP claims against EA pending resolution of the anti-SLAPP appeal. During the stay, the

15   *Keller* ROP Plaintiffs actively participated in discovery with the Antitrust Plaintiffs, NCAA and

16   CLC, but were never able to seek discovery from EA due to the stay. And while the *O'Bannon*

17   Antitrust Plaintiffs were able to seek limited discovery from EA during the stay, the discovery was

18   focused on the alleged antitrust conspiracy, not the elements of an ROP violation related to

19   videogames. The *Keller* ROP Plaintiffs' claims are inextricably intertwined with the videogames

20   created, produced, and sold by Defendants. Until the *Keller* ROP Plaintiffs can complete discovery,

21   issues related to an ROP violation should not be adjudicated, nor should the *O'Bannon* Antitrust

22   Plaintiffs be allowed to litigate videogame-related issues on a partial record. Allowing the

23   videogame-related claims to go to trial without the *Keller* ROP Plaintiffs' input and participation is

24   contrary to this Court's consolidation order, and therefore severance is appropriate.

25           **Second**, the *O'Bannon* Antitrust Plaintiffs cannot adequately represent the interests of the

26   ROP Plaintiffs because the two classes have divergent interests. Antitrust Plaintiffs are not required

27   to show that the NCAA violated California or Indiana right of publicity law—causes of action

28

2

asserted by the ROP Plaintiffs—to prevail on their antitrust claims. Order Resolving Cross-Motions for Summary Judgment, pp. 27-29, Dkt. 1025. At best, the right of publicity issues are ancillary to the antitrust claims.[3] The two classes do not even seek the same damages. The putative ROP class seeks substantial damages, including statutory damages, for the putative class, in addition to injunctive relief. The antitrust class seeks only class-wide injunctive relief. EA, moreover, quit producing NCAA-branded videogames, thus making injunctive relief a minor concern for the ROP Plaintiffs. The NCAA, in contrast, continues to broadcast and re-broadcast games, making injunctive relief paramount to the *O'Bannon* Antitrust Plaintiffs. The *O'Bannon* Antitrust Plaintiffs, with different causes of action and claims for relief that barely touch on issues central to the ROP claims, cannot reasonably be relied on to litigate the videogame-related issues.

In short, it would be unfair to the *Keller* ROP Plaintiffs to be collaterally estopped from fully litigating their ROP claims against the NCAA as a result of an antitrust case seeking only injunctive relief. Indeed, it would be unfair to require the *Keller* ROP Plaintiffs to defend a collateral estoppel claim when the argument can be avoided entirely by severing the videogame-related claims. The ROP Plaintiffs do not concede that any issue decided in the antitrust case will result in issue preclusion during the ROP trial. But the parties cannot anticipate every issue that will be decided at trial, and the NCAA will certainly argue issue preclusion at a subsequent trial if it favors the institution.[4] For these reasons, the *Keller* ROP Plaintiffs respectfully request that the videogame-related issues be severed from the June 9, 2014 trial.

---

[3] To the extent this is incorrect and ROP issues are integral to the antitrust claims, efficiency is best served by one trial on all ROP claims, not a piecemeal adjudication by someone other than the court appointed plaintiffs with primary responsibility for ROP claims.

[4] Alternatively, the Court could declare that, for the purposes of judicial efficiency, although NIL evidence will be permitted in the antitrust trial, no preclusive effect will be afforded any findings on elements of the ROP claims. *See, e.g., Collins v. D.R. Horton, Inc.,* 505 F.3d 874, 882 (9th Cir. 2007)(recognizing that trial courts are given broad discretion when determining when collateral estoppel should apply and that it should not apply when unfair.)

3

## II. If The Court Is Inclined To Deny The Motion To Sever, The *Keller* Right Of Publicity Plaintiffs Ask That The Court Continue The Trial And Lift The Stay.

The *Keller* ROP Plaintiffs do not want to interfere with the antitrust trial date. But if there is any chance the trial will result in issue preclusion, the ROP Plaintiffs respectfully request that the Court sever the claims or continue the trial. If the Court is not inclined to sever the claims, the ROP Plaintiffs respectfully request that the court continue the trial to a date where the claims can be tried together. The *Keller* ROP Plaintiffs believe they can be ready for trial in six months from the day the Court lifts the stay. If the Court agrees that issues decided in the antitrust case will not have preclusive effect on the issues raised in the ROP trial, the *Keller* Plaintiffs take no position on the request to continue the trial.

Dated: May 2, 2014

Hagens Berman Sobol Shapiro LLP

By    /s/ Leonard Aragon
Robert B. Carey (*Pro Hac Vice*)
Leonard W. Aragon (*Pro Hac Vice*)
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rob@hbsslaw.com
leonard@hbsslaw.com

Stuart M. Paynter (226147)
Celeste H.G. Boyd (*Pro Hac Vice*)
The Paynter Law Firm PLLC
1200 G Street N.W., Suite 800
Washington, DC 20005

Steve Berman (*Pro Hac Vice)*
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett (217895)
Hagens Berman Sobol Shapiro LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

4

RESPONSE TO MOTION FOR SEVERANCE
Case. No. 09-CV-1967 CW