IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAMUEL KELLER, et al.,

      Plaintiffs,

   v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION; COLLEGIATE
LICENSING COMPANY; and
ELECTRONIC ARTS INC.,

      Defendants.

_____/

No. C 09-1967 CW

ORDER DENYING
MOTION TO SEVER
TRIAL ISSUES OR
CONTINUE TRIAL
DATE AND SETTING
DATES (Docket No.
1029)

EDWARD O'BANNON, et al.,

      Plaintiffs,

   v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION; COLLEGIATE
LICENSING COMPANY; and
ELECTRONIC ARTS INC.,

      Defendants.

_____/

No. C 09-3329 CW

On April 25, 2014, Defendant National Collegiate Athletic
Association (NCAA) moved to continue the trial of Antitrust
Plaintiffs' claims against it or, in the alternative, to sever
certain claims to be tried later.  Right-of-Publicity Plaintiffs
and Defendants Electronic Arts Inc. (EA) and Collegiate Licensing
Company (CLC) filed briefs in support of the motion.  Antitrust
Plaintiffs oppose the motion.  After considering all of the

United States District Court
For the Northern District of California

parties' submissions and the arguments raised at the May 15, 2014

status conference, the Court denies the motion.

BACKGROUND

As explained in prior orders, these consolidated cases

involve two groups of Plaintiffs.  The first group, known as the

Right-of-Publicity Plaintiffs, alleges that the NCAA, EA, and CLC

misappropriated their names, images, and likenesses for use in

NCAA-branded videogames.  They have asserted various tort and

contract claims against all Defendants under Indiana and

California state law.  Their claims against EA have been stayed

pending their interlocutory appeal and the Ninth Circuit's

issuance of a mandate, which has been stayed pending EA's petition

for a writ of certiorari.  Docket No. 853.  The Supreme Court,

apparently in response to requests by the parties, has continued

the deadline for Right-of-Publicity Plaintiffs to file their

opposition to this petition.

The second group of Plaintiffs, known as the Antitrust

Plaintiffs, alleges that the NCAA conspired with EA and CLC to

restrain competition in two distinct but related markets: (1) the

"college education" market, in which Division I colleges and

universities compete to recruit the best student-athletes to play

men's football or basketball; and (2) the "group licensing"

market, in which broadcasters and videogame developers compete for

group licenses to use the names, images, and likenesses of

student-athletes on Division I football and basketball teams in

live game broadcasts, archival footage, and videogames.  Antitrust

Plaintiffs have asserted claims against all Defendants under the

United States District Court
For the Northern District of California

Sherman Antitrust Act, 15 U.S.C. §§ 1 et seq.  These claims are currently set for trial on June 9, 2014.

In September 2013, both groups of Plaintiffs notified the Court that they had reached a settlement in principle with EA and CLC.  Because they represented that this settlement would resolve all of their pending claims against EA and CLC, the Court stayed all of these claims.  Plaintiffs represent that they recently finalized their settlement agreement with EA and CLC and are planning to submit, on May 23, 2014 or not later than May 30, 2014, their motion for preliminary approval.

As a result of this Court's stay of the claims against EA and CLC and the Ninth Circuit's stay of its mandate, the only claims that currently remain active in these cases are those asserted against the NCAA.

DISCUSSION

The Court considers the NCAA's request to continue the trial on Antitrust Plaintiffs' claims before turning to its request for severance.

I.   Continuance

The NCAA, EA, CLC, and Right-of-Publicity Plaintiffs contend that the trial on Antitrust Plaintiffs' claims against the NCAA should be continued for various reasons.

First, the NCAA argues that the Court cannot try Antitrust Plaintiffs' claims before Right-of-Publicity Plaintiffs' claims because the Seventh Amendment requires that claims for monetary damages be tried before claims for injunctive relief.  This argument presumes that Antitrust Plaintiffs' claims overlap substantively with Right-of-Publicity Plaintiffs' claims; however,

the NCAA has not demonstrated that these claims do, in fact, raise overlapping issues.[1] More importantly, even if Antitrust Plaintiffs' claims and Right-of-Publicity Plaintiffs' claims did require the adjudication of some common issues, the Seventh Amendment would not require that they be tried together. As explained at the status conference, Antitrust Plaintiffs and Right-of-Publicity Plaintiffs originally filed separate complaints in separate actions and, had the Court not consolidated these cases, they would have proceeded to separate trials on their respective claims against the NCAA without running afoul of the Seventh Amendment. The fact that these cases were consolidated for a time does not create a Seventh Amendment barrier to trying them separately. Indeed, the two cases have been proceeding along separate schedules for years due to EA's interlocutory appeal and the concomitant stay. The Court specifically noted that it would consider de-consolidating the cases if EA's appeal remained pending when trial was set to begin. See Docket No. 253, December 17, 2010 Order, at 12. The Supreme Court has long recognized that "consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single

---

[1] Most of the issues that the NCAA has flagged as potentially overlapping are, in reality, only directly relevant to Right-of-Publicity Plaintiffs' claims -- not Antitrust Plaintiffs' claims. For instance, the question of whether any videogames actually use student-athletes' names, images, and likenesses is not dispositive of Antitrust Plaintiffs' claims because it is not determinative of whether or not a market for group licenses to use student-athletes' names, images, and likenesses exists. Nor is the question of whether the videogames meet the transformative use test. As previously explained, videogame developers may have sought to acquire group licenses to use student-athletes' names, images, and likenesses as a precautionary measure, even if they believed that their use of the names, images, and likenesses would ultimately be lawful.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

cause, or change the rights of the parties, or make those who are parties in one suit parties in another." Johnson v. Manhattan R. Co., 289 U.S. 479, 496-97 (1933).[2]  The Court has discretion to -- and will -- de-consolidate these cases for trial.  If factual issues are decided at the bench trial that are important to the subsequent jury trial, then those issues may be re-tried during the jury trial unless res judicata or collateral estoppel applies. Thus, the NCAA's Seventh Amendment right to a jury trial on Right-of-Publicity Plaintiffs' damages claims will not be infringed by trying Antitrust Plaintiffs' equitable claims first.

Second, the NCAA suggests -- for the first time in its post-hearing brief -- that the Court should perhaps send out class notice to members of the certified Rule 23(b)(2) class.  However, Rule 23(c) makes clear that district courts have broad discretion to decide whether or not to send notice to classes certified under Rule 23(b)(2).  See Fed. R. Civ. P. 23(c)(2) ("For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." (emphasis added)); see also Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2558 (2011) ("The procedural protections attending the (b)(3) class -- predominance,

---

[2] The one case that the NCAA cites for support, United States v. Nordbrock, 941 F.2d 947 (9th Cir. 1991), is inapposite for two reasons. First, Nordbrock involved the trial of an issue that was clearly dispositive in both of the cases consolidated for trial.  As noted above, the NCAA has not identified any issues raised by both Antitrust Plaintiffs' claims and Right-of-Publicity Plaintiffs' claims that are clearly dispositive in both cases.  Second, the district court in Nordbrock consolidated two cases involving the exact same parties and denied one of those parties a right to a jury trial on his claims for monetary relief.  Here, in contrast, the consolidated cases involve claims asserted by separate parties -- Antitrust Plaintiffs and Right-of-Publicity Plaintiffs -- and the NCAA will still receive a jury trial on any claims for monetary relief.

**United States District Court**
For the Northern District of California

1  superiority, mandatory notice, and the right to opt out -- are

2  missing from (b)(2) not because the Rule considers them

3  unnecessary, but because it considers them unnecessary <u>to a (b)(2)</u>

4  <u>class</u>." (emphasis in original)).  Accordingly, there is no need to

5  delay the trial in order to send out class notice.  The Court

6  notes that, during the nineteen months since the June 9, 2014

7  trial date was set, none of the parties had proposed that class

8  notice be issued.

9      While Right-of-Publicity Plaintiffs, EA, and CLC initially

10  joined in the NCAA's request to continue trial, they have not

11  provided any independent, persuasive reasons why the trial should

12  be continued.  A continuance is therefore not justified.

13  II.  Severance

14      In the alternative, the NCAA moves to sever Antitrust

15  Plaintiffs' claims related to videogames from their claims related

16  to live game broadcasts and archival footage.  It contends that

17  Antitrust Plaintiffs' videogame-related claims raise many of the

18  same legal and factual questions as Right-of-Publicity Plaintiffs'

19  claims and, as such, should be tried in a single trial with those

20  claims at a later date.  According to the NCAA, severing the

21  videogame-related claims in this way -- so that only the live

22  broadcast and archival footage claims proceed to trial in June

23  2014 -- would avoid duplicative litigation and conserve judicial

24  resources.[3]

25

26      [3] The NCAA also initially argued that the lack of a final
27  settlement between Antitrust Plaintiffs, EA, and CLC left open the
   possibility that the Court would eventually have to hold a separate
   trial on Antitrust Plaintiffs' claims against EA and CLC, all of which
28  relate to videogames.  However, this concern has been mitigated by the

United States District Court
For the Northern District of California

This argument is not persuasive.  Even if Antitrust Plaintiffs' videogame-related claims overlap with Right-of-Publicity Plaintiffs' claims -- and, as noted above, it is not clear that they do -- the NCAA's severance proposal would not avoid duplicative litigation or conserve judicial resources. Antitrust Plaintiffs' videogame-related claims overlap more significantly with their live broadcast and archival footage claims so trying them separately, as the NCAA proposes, would inevitably lead to greater duplicative litigation and wasted judicial resources.  The NCAA's severance proposal merely replaces one set of potentially overlapping issues with a greater one. Accordingly, severance is not justified here.

CONCLUSION

For the reasons set forth above, the NCAA's motion to sever or continue trial (Docket No. 1029) is DENIED.  Antitrust Plaintiffs' motion for leave to file a reply to the NCAA's supplemental brief (Docket No. 1089) and the NCAA's motion for leave to file a sur-reply (Docket No. 1090) are GRANTED.  The Court orders that these cases be de-consolidated for trial.  The joint consolidated complaint filed by Antitrust Plaintiffs and Right-of-Publicity Plaintiffs is divided into separate sections which clearly delineate which factual allegations and causes of action each group of Plaintiffs has asserted in its respective case.  Antitrust Plaintiffs have previously amended the sections of the complaint relevant to their claims without altering Right-of-Publicity Plaintiffs' claims or allegations.  See Docket No.

_____

fact that these parties have now finalized their settlement agreement and plan to move for preliminary settlement approval shortly.

**United States District Court**
For the Northern District of California

832.   Accordingly, paragraphs 1-4, 7-17, 22-24, 29-236, 240-47,
337-557, 595-630, and the sections of the complaint entitled
"Antitrust Prayer for Relief" and "Antitrust Jury Demand" shall be
deemed the complaint in the Antitrust Plaintiffs' action.
Paragraphs 1-6, 18-21, 25-28, 237-239, 248-336, 558-594, and the
sections of the complaint entitled "Right of Publicity Prayer for
Relief" and "Right of Publicity Jury Demand" shall be deemed the
complaint in the Right-of-Publicity Plaintiffs' action.  All
future filings related to Antitrust Plaintiffs' claims shall be
filed in the docket for case no. 09-3329, which shall be referred
to as O'Bannon v. NCAA.[4]  All future filings related to Right-of-
Publicity Plaintiffs' claims shall be filed in the docket for case
no. 09-1967, which shall be referred to as Keller v. NCAA.  All
prior filings in the docket for case no. 09-1967, which has been
referred to as In re NCAA Student-Athlete Name & Likeness
Litigation, shall be deemed to be part of the record in both
cases.

    A bench trial of no more than fifteen days on all of
Antitrust Plaintiffs' claims against the NCAA shall be held
beginning at 8:30 a.m. on June 9, 2014.  Pursuant to the amended
pretrial schedule proposed by Antitrust Plaintiffs and the NCAA,
any oppositions to motions in limine are due today.  The deadline
for the parties to exchange objections to deposition counter-
designations and rebuttal designations shall be continued from May

---

        [4] The following actions shall remain consolidated with O'Bannon:
Jacobson v. NCAA, case no. 09-5372 ; Rhodes v. NCAA, case no. 09-5378;
Wimprine v. NCAA, case no. 09-5134; Russell v. NCAA, case no. 11-4948;
and Robertson v. NCAA, case no. 11-0388.  Bishop v. EA, case no. 09-
4128, shall remain consolidated with Keller.

United States District Court
For the Northern District of California

26, 2014 to May 28, 2014.  The parties shall each submit a trial
brief, not to exceed twenty-five pages, by June 3, 3014.  The
pretrial conference remains set for May 28, 2014 at 2:00 p.m.

Right-of-Publicity Plaintiffs and Antitrust Plaintiffs shall
file their joint motion for preliminary settlement approval as
soon as possible.  If they fail to file to do so by May 30, 2014,
then they shall submit a status report at 5:00 p.m. on that date
and every court day thereafter.  A preliminary approval hearing
will be held, if necessary, at 2:00 p.m. on July 3, 2014.  The
Court anticipates that class notice will be issued on September 3,
2014, after it has rendered a verdict on Antitrust Plaintiffs'
claims against the NCAA.  The opt-out deadline could then be set
for early October 2014 and the final approval hearing for early
December 2014.  The parties shall attempt to settle Right-of-
Publicity Plaintiffs' claims against the NCAA as quickly as
possible so that, if a settlement is achieved, class notice of it
can be included in the notice of the settlement with EA and CLC.
If the parties reach a settlement as to the Right-of-Publicity
Plaintiffs' claims against the NCAA, they shall notify the Court
promptly.

Right-of-Publicity Plaintiffs shall file their motion for
class certification on all of their claims against the NCAA on
June 26, 2014.  The NCAA shall file its opposition on July 10,
2014.  On July 14, 2014, EA and CLC may join in the relevant
portions of the NCAA's opposition or separately file a joint
brief, not to exceed eight pages, opposing Right-of-Publicity
Plaintiffs' motion; if EA and CLC file a separate brief, they
shall focus only on Right-of-Publicity Plaintiffs' civil

conspiracy claim, which is the only claim that Right-of-Publicity Plaintiffs have asserted against the NCAA that they have also asserted against EA and CLC.  In the alternative, EA and CLC will be given an opportunity to oppose class certification later if the settlement is not consummated.  Right-of-Publicity Plaintiffs shall file their reply on July 17, 2014.  The class certification hearing will be held at 2:00 p.m. on July 31, 2014.  If a class is certified, it may be desirable to include notice of it in the September 3, 2014 class notice regarding the settlement with EA and CLC.

The Court adopts the Right-of-Publicity Plaintiffs and NCAA's joint proposed discovery schedule for the claims involving them. Expert reports shall be exchanged on August 15, 2014; rebuttal expert reports shall be exchanged on September 15, 2014; and fact discovery shall conclude on October 1, 2014.

The NCAA's motion for summary judgment, contained in a single twenty-five page brief along with any Daubert motions, shall be filed on October 16, 2014.  Right-of-Publicity Plaintiffs shall file their response, contained in a single twenty-five page brief with any cross-motions, on October 30, 2014.  The NCAA shall file its reply, contained in a single fifteen page brief with its opposition to any cross-motions, on November 14, 2014.  Right-of-Publicity Plaintiffs shall file their reply to any of their cross-motions in a single fifteen page brief on December 3, 2014.  The summary judgment hearing will be held at 2:00 p.m. on December 18, 2014.

The Court will hold a final pre-trial conference at 2:00 p.m. on March 11, 2015.  A jury trial of no more than ten days on all

United States District Court
For the Northern District of California

of Right-of-Publicity Plaintiffs' claims against the NCAA will begin at 8:30 a.m. on March 23, 2015.

IT IS SO ORDERED.

Dated: 5/23/2014

_____
CLAUDIA WILKEN
United States District Judge