1  Michael A. Geibelson, Bar No. 179970
   MAGeibelson@rkmc.com
2  ROBINS KAPLAN LLP
   2049 Century Park East, Suite 3400
3  Los Angeles, CA 90067-3208
   Telephone:    310-552-0130
4  Facsimile:    310-229-5800

5  Attorneys for TIMOTHY J. MCILWAIN
   Interested Party and Former Counsel to Ryan Hart
6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 | SAMUEL MICHAEL KELLER on behalf of     | Case No. 09-cv-1967 CW
   | himself and all others similarly situated |
12 |                                         | **TIMOTHY J. MCILWAIN'S NOTICE OF**
   |          Plaintiffs,                    | **MOTION AND  MOTION FOR**
13 |                                         | **ATTORNEYS' FEES AND COSTS AND**
   |       v.                                | **CONDITIONALLY TO INTERVENE**
14 |                                         | **PURSUANT TO FEDERAL RULE OF**
   | ELECTRONIC ARTS INC.,                   | **CIVIL PROCEDURE 24;**
15 |                                         | **MEMORANDUM OF POINTS AND**
   |          Defendant.                     | **AUTHORITIES**
16 |                                         |
17 |                                         | **[Filed Concurrently herewith:**
   |                                         | **Declarations of Michael Rubin, Eugene**
18 |                                         | **Egdorff, Timothy McIlwain, and Michael**
   |                                         | **Geibelson**
19 |                                         |
   |                                         | Date:      July 16, 2015
20 |                                         | Time:      2:00 p.m.
   |                                         | Location:  Ctrm. 2, 4th Floor
21 |                                         | Before:    Hon. Claudia Wilken
22 | EDWARD O'BANNON, et al.,                 | Case No. 09-cv-3329 CW
23 |          Plaintiffs,                    |
24 |       v.                                |
25 | NATIONAL COLLEGIATE ATHLETIC            |
   | ASSOCIATION; COLLEGIATE LICENSING       |
26 | COMPANY; and ELECTRONIC ARTS INC.,      |
27 |          Defendants.                    |
28

MOTION FOR FEES AND COSTS, AND
                                                                          CONDITIONALLY TO INTERVENE

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ........................................................................................... 1

II.   THE CONTRIBUTION OF *HART V. ELECTRONIC ARTS, INC.* TO THE
      SETTLEMENT ............................................................................................. 2

      A.   McIlwain's Investigation and Retention ...................................... 2

      B.   The Initial State Court Complaint and Removal to Federal Court ........................ 3

      C.   The District Court Grants EA's Motion to Dismiss the First Amended
           Complaint .................................................................................... 4

      D.   The Judicial Panel on Multidistrict Litigation Denies Keller's Motion for
           Consolidation .............................................................................. 4

      E.   Hart Files a More Specific Second Amended Complaint ........................ 5

      F.   The District Court Grants EA's Motion for Summary Judgment .................... 5

      G.   The Third Circuit Court of Appeals' Reverses, and Upholds The Right of
           Publicity ..................................................................................... 6

      H.   Addition of the Lanier Firm to the Hart Action ........................................ 9

      I.   The Copycat Alston Case Is Filed in the District of New Jersey ................... 9

      J.   The Mediation and Hagens Berman's Agreement to Allocate Attorneys'
           Fees ............................................................................................ 9

      K.   The Events of September 26, 2013, and Hart's Termination of McIlwain ........... 10

      L.   November 2013 to Present ........................................................... 12

III.  MCILWAIN IS ENTITLED TO ATTORNEYS' FEES FOR HIS
      SUBSTANTIAL CONTRIBUTION IN CREATING A COMMON FUND THAT
      BENEFITS THE CLASS ............................................................................. 13

      A.   Attorneys Whose Efforts Create Or Benefit A Common Fund Are Entitled
           To Be Compensated From That Fund. ............................................ 13

      B.   McIlwain Created a Substantial Benefit for the Settlement Class in its
           Entirety ...................................................................................... 14

           1.    The *Hart* Opinion Prompted the Successful Mediation ................... 14

           2.    The *Hart* Case Produced Numerous Findings Harmful to EA ............ 15

3.  The *Hart* Opinion Provided Authority for the Opinion in *Keller* ............. 16

IV.   MCILWAIN'S FEE REQUEST IS REASONABLE IN LIGHT OF THE EXTENT OF HIS WORK, THE NOVELTY OF THE ISSUES, AND THE RESULTS ACHEIVED ................................................................................................. 17

V.   MCILWAIN SHOULD BE PERMITTED TO INTERVENE IN THE ACTION ........... 19

A.   McIlwain Meets the Requirements for Intervention as a Matter of Right ............ 20

1.  McIlwain's Motion To Intervene Is Timely. ............................................. 20

2.  McIlwain Has A Significantly Protectable Interest In The Award of Fees ..................................................................................................... 21

3.  Intervention Is Necessary To Adequately Protect McIlwain's Interest ...................................................................................................... 21

4.  Others Cannot Adequately Represent McIlwain's Interests. .................... 22

B.   McIlwain Meets the Requirements for Permissive Intervention ........................... 22

VI.   CONCLUSION ............................................................................................................. 23

- ii -

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>PAGE</u>

3

**Cases**

4

*7-Eleven Owners for Fair Franchising v. Southland Corp.*,

5

85 Cal. App. 4th 1135 (2000) ........................................................................... 14

6

*Alston v. Electronic Arts, Inc.*,

7

D.N. J. Case No. 3:13-cv-05157-FLW-LHG ........................................................ 9, 12

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,

8

712 F.3d 1349 (9th Cir. 2013) ............................................................................ 23

9

*Boeing Co. v. Van Gemert*,

10

444 U.S. 472 (1980) .......................................................................................... 13

11

*Brown v. Entertainment Merchants Ass'n.*

(formerly captioned *Schwarzenegger, et al. v. Entertainment Merchants Ass'n.*),

12

131 S.Ct. 2729 (2011) ........................................................................................ 6

13

*Cabozon Band of Mission Indians v. Wilson*,

14

124 F.3d 1050 (9th Cir. 1997), *cert. denied*, 524 U.S. 926 (1998) ............................ 20

15

*Cabrales v. County of Los Angeles*,

864 F.2d 1454 (9th Cir. 1988) ............................................................................ 18

16

*Cairns v. Franklin Mint Co.*,

17

292 F.3d 1139 (9th Cir. 2002) ............................................................................ 18

18

*California ex. Rel. Lockyer v. United States*,

19

450 F.3d 436 (9th Cir. 2006) ............................................................................. 21

20

*Cnty. of Orange v. Air California*,

799 F.2d 535 (9th Cir. 1986), *cert. denied*, 418 U.S. 946 (1987) ............................. 21

21

*Davis v. City of San Francisco*,

22

976 F.2d 1536 (9th Cir. 1992) ............................................................................ 19

23

*Davis v. Electronic Arts, Inc.*,

24

775 F.3d 1172 (9th Cir. 2015) ............................................................................ 16

25

*Hart v. Electronic Arts*,

(D.N.J. Case No. 3:09-cv-05990-FLW-LHG) ............................................................ 3

26

*Hart v. Elec. Arts, Inc.*,

27

808 F. Supp. 2d 757 (D.N.J. 2011) ............................................................... 5, 6, 15

28

*Hart v. Electronic Arts, Inc.*,

60752963.8

717 F.3d 141 (3d Cir. 2013) ............................................................................. passim

*In re Diet Drugs*,
   582 F.3d 524 (3d Cir. 2009) ................................................................................. 13

*In re HPL Techs., Inc. Secs. Litig.*,
   366 F. Supp. 2d 912 (N.D. Cal. 2005) .................................................................. 18

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................. 18

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ................................................................................. 18

*In re Student-Athlete Name & Likeness Licensing Litigation*,
   N.D. Cal. Case No. CV-09-1967-CW (NC) ........................................................... 11

*In re TD Ameritrade Account Holder Litig.*,
   2011 U.S. Dist. LEXIS 103222 (N.D. Cal. 2011) .................................................. 14

*In re WorldCom, Inc. Securities Litig.*,
   2004 U.S. Dist. LEXIS 22991 (S.D.N.Y. Nov. 10, 2004) ...................................... 13

*In re Zyprexa Prods. Liab. Litig.*,
   594 F.3d 113 (2d Cir. 2010) ................................................................................. 13

*Jones v. R.R. Donnelley & Sons*,
   2005 U.S. Dist. LEXIS 1316 (N.D. Ill. Jan. 3, 2005) ....................................... 14, 20

*Just Film, Inc. v. Merch. Servs.*,
   2013 U.S. Dist. LEXIS 186623 (N.D. Cal. 2013)
   474 Fed. Appx. 493, 2012 U.S. App. LEXIS 6004 ................................................ 14

*Keller v. Elec. Arts Inc. (In re NCAA Student-Athlete Name & Likeness Licensing Litig.)*,
   724 F.3d 1268 (9th Cir. 2013) ........................................................................ passim

*Lobatz v. U.S. West Cellular*,
   222 F.3d 1142 (9th Cir. 2000) ............................................................................. 19

*Natural Resources Defense Council v. Kempthorne*,
   539 F. Supp. 2d 1155 (E.D. Cal. 2008) ................................................................ 22

*No Doubt v. Activision Publishing, Inc.*,
   192 Cal. App. 4th 1018 (2011) ............................................................................. 16

*Northwest Forest Resource Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996) ................................................................................. 22

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

*O'Bannon v. NCAA,*
    7 F. Supp. 3d 955 (N.D. Cal. 2014) ................................................................. 2, 15, 16

*Panola Land Buying Assoc. v. Clark,*
    844 F.2d 1506 (11th Cir. 1988) ................................................................................ 21

*Paul, Johnson, Alston, & Hunt v. Graulty,*
    886 F.2d 268 (9th Cir. 1989) .................................................................................... 18

*In re Portal Software, Inc. Sec. Litig.,*
    2007 U.S. Dist. LEXIS 88886, 2007 WL 4171201 .................................................. 18

*Rose v. Bank of Am. Corp.,*
    2014 U.S. Dist. LEXIS 121641 (N.D. Cal. Aug. 29, 2014) ...................................... 17

*Rosenfeld v. United States DOJ,*
    904 F. Supp. 2d 988 (N.D. Cal. 2012) ...................................................................... 19

*Sagebrush Rebellion, Inc. v. Watt,*
    713 F.2d 525 (9th Cir. 1983) .................................................................................... 22

*Scotts Valley Band of Pomo Indians v. United States,*
    921 F.2d 924 (9th Cir. 1990) .................................................................................... 20

*Sierra Club v. EPA,*
    995 F.2d 1478 (9th Cir. 1993) ............................................................................ 20, 21

*Six Mexican Workers v. Az. Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990) .................................................................................. 18

*Skaff v. Le Meridien,*
    2008 U.S. Dist. LEXIS 123537 (C.D. Cal. Aug. 29, 2008) ...................................... 19

*Smiley v. Sincoff,*
    958 F.2d 498 (2d Cir. 1992) ..................................................................................... 13

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .................................................................................... 13

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972) .................................................................................................. 22

*U.S. v. State of Or,*
    745 F.2d 550 (9th Cir. 1984) .................................................................................... 21

*U.S. v. State of Or.,*
    839 F.2d 635 (9th Cir. 1988) .................................................................................... 22

*United States ex. Rel McGrough v. Covington Techs. Co.,*
    967 F.2d 1391 (9th Cir. 1992) .................................................................................. 20

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

*United States v. $12,248 U.S. Currency*,
   957 F.2d 1513 (9th Cir. 1992) .................................................................................... 19

*United States v. Oregon*,
   913 F.2d 576 (9th Cir. 1990), *cert. denied*, 501 U.S. 1250 (1991) ............................ 20

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989) .................................................................................... 23

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) .................................................................................... 13

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................................ 17, 18

**Statutes**

28 U.S.C. § 1407 ............................................................................................................ 4

Cal. Civ. Code § 3344 .................................................................................................... 3

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 4

Fed. R. Civ. P. 24(a) ........................................................................................... 14, 20, 21

Fed. R. Civ. P. 24(a)(2) ........................................................................................... 20, 22

Fed. R. Civ. P. 24(b)(1)(B) ...................................................................................... 22, 23

Fed. R. Civ. P. 24(b)(3) ............................................................................................... 23

**Other Authorities**

C. Wright, A. Miller & M. Kane,
   FEDERAL PRACTICE & PROCEDURE § 1908.1 ............................................................ 21

C. Wright, A. Miller, & M. Kane,
   FEDERAL PRACTICE AND PROCEDURE § 1911 ........................................................... 23

60752963.8

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

1    TO THIS HONORABLE COURT, AND ALL PARTIES AND THEIR ATTORNEYS

2    OF RECORD HEREIN:

3        PLEASE TAKE NOTICE that on July 16, 2015 at 2:00 pm. or as soon thereafter as the

4    matter may be heard in Courtroom 4 of the above-entitled Court by the Honorable Claudia

5    Wilken, Timothy J. McIlwain, Interested Party and Former Counsel for Plaintiff Ryan Hart in the

6    action entitled *Hart v. Electronic Arts* (D.N.J. Case No. 3:09-cv-05990-FLW-LHG), will and

7    hereby does move the Court for an Order (1) awarding him reasonable attorneys' fees in the sum

8    of $4.62 Million and $76,209.91 in expenses, pursuant to Federal Rules of Civil Procedure

9    54(d)(2) and 23(h) and this Court's Order Granting Preliminary Approval Of Class Action

10   Settlement With Defendant Electronic Arts Inc. herein (Dkt. 1177), and (2) Conditionally

11   granting leave to intervene in the action as Class Counsel (as defined in the Settlement

12   Agreement) or as a real party interest.

13       This Motion is made on the grounds that, during his time as counsel for Ryan Hart in the

14   above-referenced action, Mr. McIlwain created a substantial and common benefit for the class in

15   that he litigated the *Hart* action and secured the Third Circuit Court of Appeals' confirmation of

16   college athletes' right of publicity that was exploited and infringed by Electronic Arts, Inc.'s

17   video games. That result led to the mediation and settlement-in-principle upon which the

18   settlement before the court is based. And, in pursuing the action in New Jersey, McIlwain also

19   expanded the class period and the number of athletes entitled to relief by invoking New Jersey's

20   statute of limitations which is several years longer than California's.

21       In September 2013, Mr. McIlwain and the Lanier firm (who had by then associated with

22   McIlwain in the case) entered into an agreement concerning the allocation of attorneys' fees to be

23   awarded from the settlement with Hagens, Berman, Sobol, Shapiro LLP. Under the agreement,

24   McIlwain (and Lanier) were to receive 40% of the fees to be awarded from the settlement of the

25   case. However, Hagens Berman has since reneged on and stated its unwillingness to abide by the

26   agreement. Mr. McIlwain, by and through his undersigned counsel, has repeatedly attempted to

27   meet and confer about and reach an informal resolution of the allocation of Mr. McIlwain's

28   entitlement to fees with Robert Carey of Hagens, Berman, Sobol, Shapiro LLP, Arthur Owens

and Dennis Drasco of Lum, Positan & Drasco, LLP, and Keith McKenna of The McKenna Law Firm LLC. These attempts included discussions at a conference with the New Jersey District Court on November 7, 2013 with Owens, Drasco and McKenna, and through phone calls and correspondence with all of them in October through December, 2013, and March through April 2014. Those attempts have been unsuccessful.

Accordingly, Timothy J. McIlwain ("McIlwain") respectfully requests that the Court issue an order awarding fees to him from the common fund settlement for the common benefit he created for the settlement class in his litigation of the *Hart* case. Mr. McIlwain requests that the Court award 33% of the $40 Million common fund in attorneys' fees, that he be awarded $4.62 Million out of that amount as attorneys' fees (calculated as $40 Million - $5 Million (Antitrust Allocation in ¶ 19.a. of the Settlement Agreement) x 33% (agreed-upon and requested fee-as-percent of common fund) x 40% (allocation previously agreed between the Hagens Berman firm on the one hand (although later rescinded by the Hagens Berman firm) and McIlwain and Lanier on the other hand, inasmuch as McIlwain has been authorized to seek the fees and costs incurred by Lanier). McIlwain further requests that his and Lanier's expenses be reimbursed from the common fund settlement in the sum of $76,209.91.

This Motion is and will be based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Eugene Egdorff, Michael Rubin, Timothy McIlwain, and Michael Geibelson filed herewith, along with their respective exhibits, the dockets, pleadings and papers on file in this action and in the *Hart* action (both from the United States District Court for the District of New Jersey and the United States Court of Appeals for the Third Circuit) of which the Court is requested to take judicial notice, and upon such other and further evidence and argument as may be submitted at and before the time of the hearing of this Motion.

DATED: April 13, 2015

Respectfully submitted,

ROBINS KAPLAN LLP

By:   /s/ Michael A. Geibelson
Michael A. Geibelson
Attorneys for Timothy J. McIlwain
Former Counsel to Ryan Hart

MOTION FOR FEES AND COSTS, AND CONDITIONALLY TO INTERVENE

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### INTRODUCTION

4      Attorney Timothy McIlwain represented Ryan Hart in prosecuting a complaint against

5   Electronic Arts, Inc. Like Plaintiff Keller in this Court, Hart alleged that EA violated his and a

6   class of college athletes' rights of publicity by using their physical, performance, and stylistic

7   attributes in videogames without their authorization. Because New Jersey's statute of limitations

8   was twice as long as California's, the class alleged by *Hart* was larger than that alleged in *Keller.*

9      *Unfortunately*, the United States District Court for the District of New Jersey dismissed

10  the complaint, holding that EA's First Amendment rights precluded Hart's claim. *Fortunately*,

11  McIlwain obtained a reversal of the dismissal on appeal to the Third Circuit Court of Appeals in

12  *Hart v. Electronic Arts, Inc.*, 717 F.3d 141 (3d Cir. 2013). The Court held that the games at issue

13  did not sufficiently transform players' identities to sidestep their right of publicity. In the process,

14  McIlwain secured for Hart and the Class significant admissions and concessions from EA that

15  would later pave the way to class certification and a liability finding. That proved unnecessary.

16      After the reversal, EA's counsel requested to mediate the *Hart* case with McIlwain and the

17  team of renowned lawyers he had assembled to wage litigation against EA – namely, Michael

18  Rubin of Altshuler Berzon, and Eugene Egdorff and Arthur Miller of The Lanier Law Firm. After

19  the Ninth Circuit issued its opinion in *Keller v. Elec. Arts Inc. (In re NCAA Student-Athlete Name*

20  *& Likeness Licensing Litig.)*, 724 F.3d 1268, 1278 (9th Cir. 2013) (citing *Hart*), those plaintiffs'

21  lawyers were invited to the impending mediation. That mediation produced the settlement-in-

22  principle that flourished into the long form agreement that is now before the court for approval.

23      As part of the settlement discussions, and in recognition of McIlwain's contribution to the

24  settlement through his work in the *Hart* case, Hagens Berman on the one hand and McIlwain and

25  Lanier on the other agreed to a 60-40 allocation of attorneys' fees to be awarded from the

26  settlement's common fund. But shortly after the settlement in principle was reached on

27  September 26, 2013, Hart terminated his relationship with McIlwain and retained Keith McKenna

28  (McIlwain's former partner) and the Lum Drasco firm to represent him. Then Hagens Berman

MOTION FOR FEES AND COSTS,
                        AND CONDITIONALLY TO INTERVENE

1   reneged on the fee allocation agreement based upon hart's initial refusal to participate in the

2   settlement. And all these counsel have refused to mediate or even seriously discuss Mr.

3   McIlwain's entitlement to attorneys' fees from the settlement.

4          There was some work to be done in finalizing the agreement and administering the

5   settlement after the September 2013 mediation. That work was contemplated by and included in

6   the 60% share Hagens Berman and McIlwain agreed was an equitable allocation of fees for their

7   respective work. However, the fact remains that the settlement was driven principally and

8   primarily by Mr. McIlwain's prosecution of the *Hart* action and his success in securing the

9   reversal of its dismissal in the Third Circuit Court of Appeals that established the test by which

10  the right of publicity claims would be judged. And it did so in a state with a statute of limitations

11  twice that of California.

12         Therefore, Mr. McIlwain moves this Court for an award of attorneys' fees and expenses,

13  and conditionally to intervene in the action, to secure the fees to which he is entitled for the

14  substantial benefit he provided in creating the common fund for the Settlement Class through his

15  work in *Hart*. For the reasons set forth below, and in his Declaration which provides information

16  with which to perform a lodestar cross-check, Timothy McIlwain requests that the Court award

17  him $4.62 Million in fees and $76,209.91 in expenses.[1]

18                                          **II.**
19  **THE CONTRIBUTION OF *HART V. ELECTRONIC ARTS, INC.* TO THE SETTLEMENT**

20         While the Court is indubitably familiar with *Keller* and *O'Bannon*, it was the vigorous

21  litigation and Third Circuit's opinion in *Hart* that triggered EA's desire to mediate, and that

22  resulted in EA's settlement of *Hart* and the other cases for which approval is now sought.

23  **A.      *McIlwain's Investigation and Retention***

24         Originally naming Timothy McIlwain's college roommate, University of California

25  _____

26  [1] This amount of fees requested is calculated by first paying Hausfeld from the $5 Million
    specifically attributable to the antitrust claims in Paragraph 19.A of the Settlement Agreement.
27  The remaining $35 Million is multiplied by 33% (the proposed fee based upon a percentage of the
    common fund), then multiplied by 40% (the amount previously agreed would be McIlwain's
28  share when Hart concurred in the settlement). McIlwain Decl. at ¶¶ 38-43, Ex. B.

- 2 -

1   Berkeley quarterback Troy Taylor, the *Hart* case was born of McIlwain's own time playing

2   college football, his prior representation of Jim Brown, and the resultant empathy for athletes

3   whose identities, biographical information and likenesses were being misappropriated to make

4   video games for which the athletes received nothing. As is described in much greater detail in the

5   time entries and summary attached to his declaration, Mr. McIlwain exhaustively researched

6   applicable law. He tirelessly interviewed class members and potential class representatives. He

7   invested substantial time, energy and expense in the pursuit of these right of publicity claims. And

8   he did so all on a contingent fee basis knowing the market power and legal budget of EA. That

9   investigation led to the conclusion that New Jersey's six year statute of limitations would permit

10  the pursuit and certification of a broader class that covered a substantially longer class period than

11  that provided by California's three-year statute limiting the enforcement of Civil Code § 3344.

12  **B.**     ***The Initial State Court Complaint and Removal to Federal Court***

13  On June 15, 2009, McIlwain's firm McKenna McIlwain, LLP filed a putative class action

14  on behalf of Plaintiffs Ryan Hart and Troy Taylor in the New Jersey Superior Court against EA

15  alleging that EA violated the rights of publicity associated with college athletes' identities and

16  likenesses by using them in video games. *Ryan Hart v. Electronic Arts,* (D.N.J. Case No. 3:09-cv-

17  05990-FLW-LHG) ("Hart Dkt.") Dkt. 1 at Ex. A.

18  On October 26, 2009, after meeting and conferring about a then-pending motion for a

19  more definite statement, a First Amended Complaint was filed naming Hart as the sole Plaintiff

20  and as the representative of a Class of athletes whose likenesses EA used in the advertisement and

21  sale of video games bearing their identities and likenesses without their authorization, and in

22  disregard of their rights. Hart Dkt. 1-2, ¶¶ 3-5, 12. The First Amended Complaint alleged causes

23  of action for: (1) Invasion of Privacy - Appropriation of Likeness; (2) Invasion of Privacy -

24  Appropriation of Likeness for Commercial Purposes; (3) Unfair and Unlawful Business Practices

25  in Violation of NJ Consumer Fraud Act, NJSA § 56:8-2; (4) Unjust Enrichment; and (5)

26  Conspiracy. *Id*. On November 24, 2009, EA removed the case from the Superior Court of New

27  Jersey in and for Somerset County to the United States District Court for the District of New

28  Jersey, Trenton Division (as Case No. 3:09-cv-05990). Hart Dkt. 1 at Ex. A.

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

**C.**     ***The District Court Grants EA's Motion to Dismiss the First Amended Complaint***

On January 12, 2010, EA moved to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Hart Dkt. 8. As to Plaintiff's right of publicity claim, EA argued that Plaintiff failed to identify specific attributes that were misappropriated in the video game, that the video game's use of Plaintiff's height, weight, and home state do not infringe upon Plaintiff's right of publicity and that the games are expressive works entitled to First Amendment protection. Hart Dkt. 23. On March 5, 2010, Hart opposed EA's motion.[2] Hart Dkt. 20.

On September 22, 2010, the Court granted Defendant's motion to dismiss the First Amended Complaint with prejudice on all counts other than Plaintiff's right of publicity claim, which it dismissed without prejudice. Hart Dkt. 23 at 16, 21. The Court held that because the First Amended Complaint did not allege "what aspects of [Plaintiff's] likeness [were] appropriated," the Court could not decide, as a matter of law, whether Plaintiff stated a right of publicity claim under New Jersey law. *Id*. at 6-7, 10. The Court granted leave to amend, stating that it would consider EA's First Amendment defense if Hart filed a Second Amended Complaint. *Id*. at 10-11.

**D.**     ***The Judicial Panel on Multidistrict Litigation Denies Keller's Motion for Consolidation***

On October 29, 2010, pursuant to 28 U.S.C. § 1407, Northern District of California Plaintiffs Samuel Keller, Bryon Bishop, Bryan Cummings, and Lamarr Watkins moved the Judicial Panel on Multidistrict Litigation to transfer numerous actions, including *Hart*, to the Northern District Of California pursuant to 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings. MDL 2212, Dkt. 1. However, Hart opposed consolidation and filed a memorandum explaining the bases for the opposition. MDL 2212, Dkt. 14.

On January 20, 2011, McIlwain was designated to give oral argument on the motion, and on January 27, 2011 he did so. MDL 2212, Dkt. 23, 36 at 15-16.

On February 4, 2011, the Panel issued its Order Denying Transfer. MDL 2212, Dkt. 38;

---

[2] It should be noted that Mr. McKenna's electronic signature of papers filed with the New Jersey District Court was of convenience for the firm in filing documents, is not reflective of his participation in the drafting of those papers, and is certainly not reflective of his participation to the exclusion of Mr. McIlwain. To the contrary, Mr. McIlwain's time and involvement eclipsed that of Mr. McKenna during their association and work on *Hart*. McIlwain Decl. ¶47.

60752963.8

763 F.Supp.2d 1379 (2011). The Panel characterized as "most persuasive" in its analysis that Hart (along with EA and the Tennessee plaintiffs) opposed consolidation. *Id.*

**E.      *Hart Files a More Specific Second Amended Complaint***

On October 12, 2010, Hart filed his Second Amended Complaint ("SAC") alleging EA violated his right of publicity, under New Jersey law, by misappropriating his identity and likeness for the commercial purpose of incorporating them into EA's video games. Hart Dkt. 25. The SAC alleged Hart's likeness was misappropriated and incorporated into EA's *NCAA Football 2004, NCAA Football 2005, NCAA Football 2006,* and *NCAA Football 2009,* all in violation of his right of publicity. Hart Dkt. 25 ¶ 32; *see also,* Hart Dkt. 54, *Hart v. Elec. Arts, Inc.,* 808 F. Supp. 2d 757, 764 (D.N.J. 2011). The *NCAA Football* games included "attributes of the 'virtual' player . . . [that] are Plaintiff Ryan Hart's physical attributes as referenced in the Rutgers University Football Media Guide," along with other physical, performance, and stylistic attributes that made the virtual player identifiable as Hart. *Id.* at ¶¶ 33-42. The SAC further alleged these attributes were incorporated into the games to increase sales and profits by heightening the games' realism. Hart Dkt. 25 ¶¶ 46, 59-63, 66-67. The SAC defined the putative class broadly as:

> All athletes whose unauthorized images were used by Defendant(s) for the sale of products bearing the identities and likenesses of the Plaintiff and Class Members in disregard of the rights of the Plaintiff and Class Members.

Hart Dkt. 28, ¶16. The class is broad in that it is not limited to a particular period, game or sport but covers "[a]ll athletes whose unauthorized images were used by Defendant(s)." *Id.*

**F.      *The District Court Grants EA's Motion for Summary Judgment***

Despite the more specific allegations in the Second Amended Complaint, on November 12, 2010, EA moved to dismiss, or in the alternative for summary judgment. Conceding for purposes of the motion that it had violated Plaintiff's right of publicity, EA argued that the First Amendment to the United States Constitution barred the claim. Hart Dkt. 31. On December 23, 2010, Hart opposed the motion, arguing EA's First Amendment interests did not trump his right of publicity. Hart Dkt. 44 ¶ 9. The briefing addressed the complicated and then-unresolved question of what test courts should use to balance First Amendment rights against the right of

- 5 -

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

publicity – the transformative test borrowed from the copyright fair use doctrine, or the *Rogers* test.[3] *Hart*, 808 F. Supp. 2d at 770.

On June 21, 2011, the district court stayed and administratively terminated Defendant's motion pending the United States Supreme Court's potentially instructive opinion in *Brown v. Entertainment Merchants Ass'n.* (formerly captioned *Schwarzenegger, et al. v. Entertainment Merchants Ass'n.*), No. 08-1448 (opinion at 131 S.Ct. 2729 (2011)). Hart Dkt. 50 at 1. In response to the Court's order, on July 14, 2011, McIlwain (for Hart) and EA filed supplemental letter briefs addressing the decisions in *Brown* and other relevant cases. Hart Dkt. Nos. 50-52.

On September 9, 2011, the district court granted EA's motion for summary judgment, finding that "EA [was] entitled to assert the First Amendment defense." Hart Dkt. 54 ¶ 67; *Hart*, 808 F. Supp. 2d at 794. The Court held that "the transformative test best encapsulate[d] the type of nuanced analysis required to properly balance the competing right of publicity and First Amendment interest." *Id.* Having "concluded that EA is entitled to First Amendment protection under either the transformative test or either of the Rogers' tests, the Court [did] not decide which test should generally apply to misappropriation cases." *Id.*

**G.     *The Third Circuit Court of Appeals' Reverses, and Upholds The Right of Publicity***

On October 5, 2011, McIlwain filed Hart's Notice of Appeal of the District Court's grant of summary judgment. Hart Dkt. 56. On February 9, 2012, McIlwain substituted into the appeal for his prior firm. (Case No. 11-3750 Doc. No. 003110804909, 2/9/12). (McIlwain's partnership with McKenna had dissolved months earlier. McIlwain Decl. at ¶47.)

On February 10, 2012, McIlwain filed the Opening Brief on behalf of Hart in the Third Circuit Court of Appeals. Doc. No. 003110806271 (2/1012). On February 17, 2012, McIlwain filed a statement pursuant to the Third Circuit's Local Rule setting forth the reasons for oral

---

[3] The transformative test asks "whether the celebrity likeness is one of the 'raw materials' from which an original work is synthesized, or whether the depiction or imitation of the celebrity is the very sum and substance of the work in question." *Id.* at 778-79. *Rogers* "fashioned a 'relevance' test, which mandates that Lanham Act liability not be imposed unless the title to the challenged work has no relevance to the underlying work, or, if the title bears some relevance, whether the title misleads the public as to the content or source of the work." *Id.* at 788.

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

60752963.8

1    argument in the case. *Id.* at Doc. No. 003110812603 (2/17/12).

2          On July 19, 2012, McIlwain filed Hart's Reply Brief. Dkt. 003110962905. In his briefing

3    of this case of first impression in the circuit, Hart explained that for purposes of the appeal, "EA

4    does not dispute several crucial facts, including that: 1) Hart pleaded a valid right-of-publicity

5    claim under New Jersey law, EA Br. 11; 2) the depictions of Ryan Hart and other college athletes

6    in '*NCAA Football*' realistically replicated players' likenesses and personal attributes, *id.* at 34; 3)

7    EA's decision to use realistic replicas of actual college football players, rather than anonymous

8    stock characters, does not affect its games' functionality or operation or the creative and

9    expressive elements of those games, *id.* 28-29; and 4) the reason EA chosen to depict actual, well-

10   known athletes was to increase the games' 'sense of verisimilitude,' *id.* at 35 – thus increasing the

11   games' appeal to potential purchasers and leveraging the athletes' fame for commercial gain." *Id.*

12   at 9. Through McIlwain's efforts, the Court of Appeals also received briefs from numerous amici.

13         After working closely with Michael Rubin of Altshuler Berzon LLP to develop the

14   arguments on appeal, McIlwain invited Rubin to argue the appeal for Hart. (Rubin Decl. ¶¶ 5-6.)

15   On September 19, 2012, the Court of Appeals heard oral argument. On the panel, sitting by

16   designation, was Senior Circuit for the Ninth Circuit Court of Appeals, Judge Wallace Tashima.

17         On May 21, 2013, the Court of Appeals reversed the District's Court's grant of summary

18   judgment, adopting the Transformative Use Test as the most appropriate for the case, and finding

19   that "based on the combination of both the digital avatar's appearance and the biographical and

20   identifying information -- the digital avatar does closely resemble the genuine article." *Id. Hart v.*

21   *Elec. Arts, Inc.*, 717 F.3d 141, 145, 153, 165, 170. (3d Cir. 2013). In considering the context

22   within which the digital avatar exists, the Court held that the "digital Ryan Hart does what the

23   actual Ryan Hart did while at Rutgers: he plays college football, in digital recreations of college

24   football stadiums, filled with all the trappings of a college football game." *Id.* at 166. The Court

25   found that the game did not satisfy the Transformative Use Test simply because it contained a

26   feature to alter the avatar's appearance. *Id.* at 166, 168. And the Court held that the games at issue

27   did not sufficiently transform the player's identity to avoid the right of publicity. *Id.* at 170.

28         The Third Circuit's opinion sounded the death knell for EA's defense of the right of

- 7 -

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

1    publicity cases. By surveying instructive decisions, the Court rejected the Predominant Use Test

2    because it is "subjective at best, arbitrary at worst, and in either case calls upon judges to act as

3    both impartial jurists and discerning art critics [and] [t]hese two roles cannot co-exist." *Id*. at 153-

4    54. The Court also rejected the *Rogers* Test as inapposite. It found that "adopting this test would

5    potentially immunize a broad swath of tortious activity," and that the test "is a blunt instrument,

6    unfit for widespread application in cases that require a carefully calibrated balancing of two

7    fundamental protections: the right of free expression and the right to control, manage, and profit

8    from one's own identity." *Id*. at 155, 157. The Court also criticized *Rogers'* application for its

9    "weakness [in] comparing the right of publicity to trademark protections [because] the right of

10   publicity is broader and, by extension, protects a greater swath of property interests." *Id*. at 157.

11          Ultimately, the Court adopted the Transformative Use Test despite the absence of "a

12   significant body of case law related to its application." *Id*. at 159-60. The Court found that the

13   Transformative Use Test "strike[s] the best balance because it provides courts with a flexible --

14   yet uniformly applicable – analytical framework" and "excel[s] precisely where the other two

15   tests falter." *Id*. at 162. It focuses on whether the work "was merely created to exploit a celebrity's

16   likeness." *Id*. This test "therefore recognizes that if *First Amendment* protections are to mean

17   anything in right of publicity claims, courts must begin by considering the extent to which a work

18   is the creator's own expression." *Id*. The Court used "the term 'identity' to encompass not only

19   Appellant [Hart]'s likeness, but also his biographical information [and held] [i]t is the

20   combination of these two parts -- which, when combined, identify the digital avatar as an in-game

21   recreation of Appellant – that must be sufficiently transformed." *Id*. at 165. The Court found

22   "based on the combination of both the digital avatar's appearance and the biographical and

23   identifying information – the digital avatar does closely resemble the genuine article."

24          The Court also considered "to what extent the ability to alter a digital avatar represents a

25   transformative use of Appellant's identity" and found that "mere presence of this feature, without

26   more, cannot satisfy the Transformative Use Test" as such a conclusion would result in "video

27   game companies . . . commit[ting] the most blatant acts of misappropriation only to absolve

28   themselves by including a feature that allows users to modify the digital likenesses." *Id*. at 166-

60752963.8

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

67. And the Court held that "Appellee [sought] to create a realistic depiction of college football for the users [and] [p]art of this realism involve[d] generating realistic representations of the various college teams -- which include[d] the realistic representations of the players." *Id*. at 168.

In short, the Court concluded the games at issue did not sufficiently transform Hart's identity to escape the right of publicity claim" and "the District Court erred in granting summary judgment in favor of Appellee." *Id*. at 170. On June 4, 2013, EA sought rehearing before the original panel and the Court *en banc*, but rehearing was denied on June 25, 2013. Case No. 11-3750, Dkts. 003111281953, 003111304996. In the meantime, on June 17, 2013, the District Court *sua sponte* reopened the action for further proceedings. Hart Dkt. 62. On July 17, 2013, EA filed an Answer to the Second Amended Complaint and Jury Demand. Hart Dkt. 63.

**H.**    *Addition of the Lanier Firm to the* **Hart** *Action*

On August 7, 2013, McIlwain moved to admit attorneys from the Lanier Law Firm, PC *pro hac vice* for the purposes of acting as counsel for Plaintiffs. Dkt. 68. These attorneys included W. Mark Lanier, Arthur R. Miller, Eugene R. Egdorf, Brian A. Abramson, Evan M. Janush and Michelle Carreras. *Id*.

**I.**    *The Copycat* **Alston** *Case Is Filed in the District of New Jersey*

On August 27, 2013 – three months after the *Hart* decision and long after the *Hart* mediation had been set for September 10 – local counsel William Pinilis filed a copycat lawsuit on behalf of Shawne Alston against EA in the District of New Jersey. *Alston v. Electronic Arts, Inc.*, D.N. J. Case No. 3:13-cv-05157-FLW-LHG, Dkt. 1 (8/27/13). The improper motive for filing in New Jersey is illustrated by the fact that Alston was alleged to be a West Virginia resident and the former starting running back for the West Virginia University football team, and EA is a Delaware corporation. *Id*. at ¶¶ 6-7. The complaint listed Hagens Berman attorneys on its face as "Pro Hac Vice pending," although Mr. Pinilis appears to have first applied for admission for the Hagens Berman and Paynter firm attorneys on October 8, 2013 – nearly a month after the mediation, and more than two weeks after the Settlement Term Sheet was executed.

**J.**    *The Mediation and Hagens Berman's Agreement to Allocate Attorneys' Fees*

On September 10, 2013, the cases proceeded to mediation before Randall Wulff. Present

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

for Ryan Hart and the class he represented were Mr. McIlwain, Michael Rubin (Altshuler Berzon), Gene Egdorff (Lanier), Arthur Miller (Lanier), Evan Janush (Lanier), Brian Abramson (Lanier). As a result of Mr. McIlwain's and Mr. Hart's combined efforts, by the time of the mediation Mr. McIlwain had secured numerous additional putative class representatives who could have provided the representation of each year of the EA games through 2013. McIlwain Decl. ¶ 48; *and see* Hart Dkt. 76.

Mediated settlement discussions continued through September 23, including with respect to the allocation of attorneys' fees. Ultimately, a settlement in principle was reached that included EA's payment of the all-inclusive sum of $40 Million – the same amount that was preliminarily approved and is now sought to be finally approved. McIlwain Decl. ¶ 43, Ex. C.

All but expressly recognizing the significant contribution made by McIlwain and the impetus for settlement created by the *Hart* case, on September 24, 2013 Hagens Berman agreed to allocate fees between their firm one the one hand, and McIlwain and Lanier on the other on a 60-40 basis. McIlwain Decl. at ¶ 38-43, 46. Specifically, Mr. Egdorff (of the Lanier firm) wrote to Steve Berman with a courtesy copy to Robert Carey (both of Hagens Berman) to confirm that, "For any fee award or agreement to our firms (Hagens Berman, The Lanier Law Firm, and Tim McIlwain), we agree to consider those as a joint award which will be pooled together for our collective group," and that "we agree that 60% of such fees will be paid to Hagens Berman, and the remaining 40% to Lanier and McIlwain." *Id*. Mr. Berman responded, simply, "This is agreed." *Id.* Hagens Berman later reneged on the agreement. McIlwain Decl. at ¶ 42, Ex. B.

**K.**     ***The Events of September 26, 2013, and Hart's Termination of McIlwain***

On September 26, 2013, the parties through their respective lawyers executed a Term Sheet that stated the settlement terms in principle. Among the terms was one entitled "Confidentiality": "The parties agree to keep the terms of this agreement strictly confidential until the long-form agreement is submitted for court approval." (McIlwain Decl. ¶ 43, Ex. C.) Mr. McIlwain abided both the letter and spirit of that term. McIlwain Decl. at ¶ 44.

However, on September 26, 2013, EA Sports' GM of American Football, Cam Weber, posted an "Update on College Football" in which it informed the public that EA would "not be

1  publishing a new college football game next year, [is] evaluating [its] plan for the future of the

2  franchise," and is "working to settle the lawsuits with the student-athletes." (Geibelson Decl. at

3  Ex. A, last accessed 3/12/2015 at http://www.ea.com/news/update-on-college-football.) Then, in

4  an apparently insufficiently inconspicuous filing captioned "Stipulation And [Proposed] Order,"

5  the lawyers for the parties in *In re Student-Athlete Name & Likeness Licensing Litigation*, filed

6  public notice of the settlement. N.D. Cal. Case No. CV-09-1967-CW (NC), Dkt. 861. Mr.

7  McIlwain had no notice of this filing in California. McIlwain Decl. ¶ 44. By contrast, no notice of

8  the settlement was provided in the *Hart* action until weeks later – October 15, 2013. Hart Dkt. 78.

9      Regardless, the postings in the California action appear to have comforted lawyers *other*

10  *than McIlwain* in confirming the consummation of a settlement to the press, and prompted

11  numerous media outlets to publish articles announcing the settlement. See Geibelson Decl., Exs.

12  B-D. McIlwain's ability to explain to the Court what happened that resulted in the termination of

13  his relationship with Mr. Hart is constrained by the attorney-client privilege except to the extent

14  that Mr. Hart (personally, and through his counsel) has waived that privilege. According to Mr.

15  Hart, "On September 26, 2013, [Mr. Hart] learned of the proposed settlement from an article on

16  the Wall Street Journal website," not from McIlwain or Egdorff, and then terminated McIlwain's

17  retention based in significant part upon that fact. *Hart*, Dkt. 82-1, Hart Decl. ¶¶ 8, 14-16. Even

18  after gaining knowledge of the terms of the settlement, Mr. Hart and his new counsel (Messrs.

19  McKenna and Drasco) refused for a substantial period to take a position about whether Hart

20  supported the settlement. Dkt. 82 at 21. Of course, Hart now approves of the settlement that

21  McIlwain was instrumental in securing for him and the Class. Dkt. 1108.

22      A substantial dispute about what occurred on and after September 26 ensued, and remains.

23  To resolve the issue, and permit the settlement approval process to proceed without delay, Mr.

24  McIlwain and Mr. Hart's new counsel entered into a "Stipulation and Agreement Between

25  Counsel" that was mediated by the New Jersey District Court's Hon. Lois Goodman on

26  November 7, 2013, and under which Mr. McIlwain agreed to withdraw from the case. McIlwain

27  Decl. ¶ 45. That Agreement expressly contemplated the submission of this application for fees for

28  Mr. McIlwain's work in litigating, appealing, and settling the *Hart*. *Id.*; Hart Dkt. 96. McIlwain

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

1   agreed to withdraw from the New Jersey action to end the distraction from the ultimate goal of

2   reaching a final resolution of the action that benefitted the entire class, a class he continued to

3   abide an obligation to even while Hart (through his new counsel) would not commit to whether

4   Hart would or would not support the settlement. McIlwain Decl. ¶ 45.

5   **L.**      ***November 2013 to Present***

6          As was explained in and contemplated by the motion for preliminary approval, counsel

7   took the year and half from November 2013 through the present to finalize a long form settlement

8   agreement, secure preliminary approval from this Court, and to give notice to the class. Keller

9   Dkt. 1108. The settlement agreement was filed as part of the motion for preliminary approval.

10  Keller Dkt. 1108-1 at 10, Ex. 1.

11         At some point during the preparation of the long form agreement, likely to artificially

12  minimize the significant role and benefit conferred by McIlwain, Mr. Hart and his new counsel

13  (among them McIlwain's former partner) appear to have acceded to changes in the final long

14  form settlement agreement which differ from what had been agreed to in the September 26, 2013

15  Term Sheet. Specifically, the long form agreement submitted to the court inexplicably narrows

16  the "Hart/Alston Right of Publicity Class Period" to "the period May 4, 2003 to May 4, 2007."

17  (Dkt. 1108-2 at 12:15-16, ¶ 25.) The Term Sheet did not include such a limitation. McIlwain

18  Decl. Ex.C. Indeed, the Term Sheet called for an allocation to "All *Hart/Alston* putative class

19  members, for their claims arising on or before May 5, 2007," (*Id.*, Term Sheet Part 2.b.), and a

20  ***separate*** allocation for a group of individuals that included "all *Hart/Alston* class members, for

21  their claims arising after May 5, 2007" (*Id.*, Term Sheet Part 2.c.). This content in the Settlement

22  Agreement may be intended to do no more than acknowledge that the *Hart* and *Keller* classes

23  overlapped. If the omission of the post-May 5, 2007 *Hart/Alston* claims that were included in the

24  Term Sheet (Part 2.c.) were omitted from the Settlement Agreement (¶ 19c) for another purpose,

25  the Settlement Agreement improperly and unfairly ignores the broader scope of the *Hart* class.

26  Despite securing the right to comment on the settlement agreement in the resolution among

27  McIlwain, McKenna and Drasco, McIlwain could not secure amendments to the final agreement

28  before its filing.

60752963.8                                          MOTION FOR FEES AND COSTS, AND
                                                    CONDITIONALLY TO INTERVENE

**III.**

**MCILWAIN IS ENTITLED TO ATTORNEYS' FEES FOR HIS SUBSTANTIAL CONTRIBUTION IN CREATING A COMMON FUND THAT BENEFITS THE CLASS**

Timothy McIlwain's meticulous investigation and research of the claims asserted for Ryan Hart that began with his prior representation of Jim Brown allowed him to overcome the adversity of dismissal in the New Jersey District Court and secure victory in the Third Circuit Court of Appeals. That victory spurred EA to settlement talks with counsel for Hart that, with the other later additions, resulted in the settlement now before the Court. For his substantial contribution, McIlwain is entitled to a significant share of the common fund as an award of attorneys' fees.

**A.     Attorneys Whose Efforts Create Or Benefit A Common Fund Are Entitled To Be Compensated From That Fund.**

"Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003)(quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Specifically, the common fund doctrine provides that an attorney "whose efforts create, discover, increase, or preserve a fund to which others have a claim" is entitled to recover attorneys' fees and costs. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977).

Indeed, courts apply the "common benefit doctrine" to award attorney fees when "litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *In re Diet Drugs*, 582 F.3d 524, 546 (3d Cir. 2009); *see also In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128–130 (2d Cir. 2010) (Kaplan, J. concurring); *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992). Therefore, "it is standard practice for courts to compensate attorneys who work for the common benefit of all plaintiffs by setting aside a fixed percentage of settlement proceeds." *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 265–266 (E.D.N.Y. 2006) (Weinstein, J.); *In re WorldCom, Inc. Securities Litig.*, 2004 U.S. Dist. LEXIS 22991 at *2 (S.D.N.Y. Nov. 10, 2004).

The fact that Hart discharged McIlwain before the court's final approval of the settlement

MOTION FOR FEES AND COSTS, AND CONDITIONALLY TO INTERVENE

1    does not change the contribution McIlwain and Lanier made. Nor does it diminish the entitlement

2    to fees and costs. Courts commonly award fees to prior counsel who helped create a common

3    fund. *See, e.g., Just Film, Inc. v. Merch. Servs.*, 2013 U.S. Dist. LEXIS 186623, *1-2 (N.D. Cal.

4    2013) (Wilken, J.) (court awarded fees to class counsel and prior counsel from the common fund),

5    *aff'd on other grounds*, 474 Fed. Appx. 493, 2012 U.S. App. LEXIS 6004; *In re TD Ameritrade

6    Account Holder Litig.*, 2011 U.S. Dist. LEXIS 103222 *42 (N.D. Cal. 2011)(same); *Jones v. R.R.

7    Donnelley & Sons*, 2005 U.S. Dist. LEXIS 1316 (N.D. Ill. Jan. 3, 2005) (granting former

8    counsel's motion to intervene under Fed. R. Civ. Proc. 24(a) and awarding fees be paid from

9    common fund); *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th

10   1135, 1166 (2000) (addressing objection of discharged counsel to amount awarded to them).

11   **B.      *McIlwain Created a Substantial Benefit for the Settlement Class in its Entirety***

12          While the counsel who remain interested in sharing in the fees will predictably disagree,

13   the contribution of McIlwain and the Third Circuit's *Hart* decision to the settlement is

14   undeniable, and the common benefit they created is greater than that of any other involved

15   counsel. The opinion both prompted the mediation that resulted in a settlement, and made a

16   settlement necessary for EA. The opinion also figured prominently in EA's appeal of the Court's

17   denial of the anti-SLAPP motion in *Keller*.

18          **1.      The *Hart* Opinion Prompted the Successful Mediation**

19          Before the Third Circuit Court of Appeals handed down its *Hart* opinion in May 2013,

20   understandably, EA had no interest in mediating a class-wide settlement. It had won a motion for

21   summary judgment on the pleadings and the case was dismissed with prejudice. After the Court

22   of Appeals' opinion, EA faced liability for violating the right of publicity of every athlete it

23   incorporated into two of its best-selling games for more than a decade, from 2003 through 2013.

24   As a result, *Hart* presented a claim with a class period under the New Jersey statute of limitations

25   that was three years longer than the same claim it faced in California in *Keller.* More profoundly,

26   if liability was determined, EA's concessions for the purposes of summary judgment would have

27   become findings of fact that would have impaired its ability to defend other claims on First

28   Amendment grounds. Thus, the Third Circuit's opinion made the settlement of *Hart* not only

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

1    expedient, but a business necessity. As a result, EA's counsel and Hart's then counsel, through

2    Mr. McIlwain and Gene Egdorff (Lanier), confirmed settlement would proceed with EA.

3         It was only later, after the Ninth Circuit issued its opinion in *Keller,* that *Keller* was

4    invited to participate in the mediation. (McIlwain Decl. at ¶ 49-50, Ex. D.) Because *Hart* had a

5    longer class period than *Keller*, the right of publicity claims in *Hart* could have been settled on a

6    classwide basis and consumed those claims in *Keller.* But a settlement of *Keller* and/or *O'Bannon*

7    would have left claims pending, and exposure for EA, in the broader *Hart* case. The Third

8    Circuit's *Hart* decision remains the seminal authority on the issue of NCAA athletes' right of

9    publicity in their likeness. That right is an enduring one.

10        **2.      The *Hart* Case Produced Numerous Findings Harmful to EA**

11        In addition to the Third Circuit's resolution of the right of publicity and the First

12   Amendment issue, the case also produced a number of findings and admissions that would have

13   haunted EA in the absence of a settlement. For example, the district court found that "It is true

14   that the virtual player bears resemblance to Hart and was designed with Hart's physical attributes,

15   sports statistics, and biographical information in mind." *Hart,* 808 F. Supp. 2d at 784. EA

16   admitted on appeal that "EA's interest in drawing on the names and likenesses of athletes as an

17   'important element of the shared communicative resources of our cultural domain' is therefore

18   strong." Case No. 11-3750, Dkt. 003110900890 ¶ 68 (Br. for Def.-Appellee Elec. Arts Inc.). EA

19   acknowledged "the undeniable fact that EA's alleged use of Hart's likeness is drawn from

20   publicly available statistics and biographical data about Hart and his game performance, as the

21   district court recognized." *Id*. The Court of Appeals also found that the "focus on realism also

22   ensures that the 'over 100 virtual teams' in the game are populated by digital avatars that

23   resemble their real-life counterparts and share their vital and biographical information. Thus, for

24   example, in NCAA Football 2006, Rutgers' quarterback, player number 13, is 6'2" tall, weighs

25   197 pounds and resembles Hart." *Hart*, 717 F.3d at 145-46 (3d Cir. 2013)."Appellee seeks to

26   create a realistic depiction of college football for the users. Part of this realism involves

27   generating realistic representations of the various college teams -- which includes the realistic

28   representations of the players . . . , therefore, Appellee seeks to capitalize on the respective fan

MOTION FOR FEES AND COSTS,
AND CONDITIONALLY TO INTERVENE

1    bases for the various teams and players." *Hart,* 717 F.3d at 167.

2         **3.    The *Hart* Opinion Provided Authority for the Opinion in *Keller***

3         To assess the import of *Hart* to Keller's success before the Ninth Circuit, one need look

4    no further than Keller's own supplemental letter brief filed in the Ninth Circuit on May 22, 2013.

5    Ninth Circuit Case No. 10-15387, Dkt. 163. Keller noted, "Pertinent here, the *Hart* court adopted

6    the same analysis employed by Judge Wilken and asserted by Keller on this appeal while

7    rejecting the arguments asserted here." *Id.* at 1. He continued, "*Hart* then interpreted the

8    transformative-use test ***precisely as Keller urges*** and applied it to the facts before the court to

9    conclude that EA's video games did not sufficiently transform Hart's identity to merit First

10   Amendment protection by EA." *Id.* (citations omitted, emphasis added).

11        The similarity of the two cases was not lost on the Ninth Circuit. That court discussed

12   *Hart* with approval in affirming the denial of the Anti-SLAPP motion in *Keller v. Elec. Arts (In re*

13   *NCAA Student-Athlete Name & Likeness Licensing Litig.)*, 724 F.3d 1268, 1278-79 (9th Cir.

14   2013) (concluding that "EA's use of the likenesses of college athletes like Samuel Keller in its

15   video games is not, as a matter of law, protected by the First Amendment"). The Court found that

16   in *Hart,* "EA faced a ***materially identical*** challenge under New Jersey right-of-publicity law,

17   brought by . . . Hart." 724 F.3d at 1278 (emphasis added). Consistent with the Third Circuit's

18   guidance, the Ninth Circuit also relied on *No Doubt v. Activision Publishing, Inc*., 192 Cal. App.

19   4th 1018, 166-68 (2011). 724 F.3d at 1278.

20        The Ninth Circuit also noted the *Hart* Court's criticism of the Sixth Circuit's inconsistent

21   incorporation of the *Rogers* test in the publicity arena. *Id.* at 1281-1282. It recognized its approval

22   of *Hart* again in *Davis v. Electronic Arts, Inc.*, 775 F.3d 1172 (9th Cir. 2015). Numerous other

23   courts have relied upon *Hart*, and dozens of scholarly legal journal articles have discussed the

24   case as well. (Geibelson Decl at Ex. E.) To this day, commentators continue to talk about *Hart*

25   and *Keller* together. (Geibelson Decl at Ex. F.) Indeed, this Court cited *Hart* when it granted a

26   permanent injunction in *O'Bannon v. NCAA*, 7 F. Supp. 3d 955 (N.D. Cal. 2014).

27        It was Mr. McIlwain who filed the briefs on behalf of Ryan Hart in the *Hart* appeal.

28   (Geibelson Decl., Exs. G and H.) It was Mr. McIlwain who brought Michael Rubin into the case

- 16 -

MOTION FOR FEES AND COSTS,
                                                   AND CONDITIONALLY TO INTERVENE

1    to argue the appeal. It was Mr. McIlwain who brought the Lanier firm into the case to amplify

2    EA's exposure at trial after the success on appeal. And it was this work that laid the legal

3    groundwork and created the undeniable exposure for EA that required it to settle with the class.

4        Beyond logic, Mr. Rubin and Mr. Egdorff participated in the mediation and have both

5    opined that the value contributed by this work was significant. See Rubin Decl. at ¶¶ 7-9 ("Mr.

6    McIlwain's efforts in bringing the *Hart* class action lawsuit, in pursuing his clients' interests

7    vigorously and thoughtfully, and in reaching out to others with expertise who could help

8    accomplish those goals on his clients' behalf were, in my opinion, a significant factor in

9    achieving the eventual settlement."); Egdorff Decl. at ¶ 16 ("the successful appeal before the

10   Third Circuit was the strongest factor motivating EA Sports' settlement of these related actions.")

11   Even Hagens Berman, in its September 2013 agreement, recognized and calculated the value of

12   McIlwain's work to be forty percent of the work in the case.[4]

13       A substantial common benefit will unquestionably be realized by the class upon the final

14   approval of the settlement. For the benefit his work in *Hart* created for the Class, Mr. McIlwain is

15   entitled to a substantial share of the attorneys' fees to be paid from the common fund.

16   **IV.**

17   **MCILWAIN'S FEE REQUEST IS REASONABLE IN LIGHT OF THE EXTENT OF HIS**
     **WORK, THE NOVELTY OF THE ISSUES, AND THE RESULTS ACHEIVED**
18

19       "Under Ninth Circuit law, the district court has discretion in common fund cases to choose

20   either the percentage-of-the-fund or the lodestar method" for awarding attorneys' fees. *Rose v.*

21   *Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 121641, 28-29 (N.D. Cal. Aug. 29, 2014)(citing

22   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)). In assessing whether the

23   percentage requested is fair and reasonable, courts generally consider the following factors: (1)

24   the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work

25   performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made

26   _____

27   [4] The post-September 2013 work, while necessary and compensable, was ministerial. The fact
     that McIlwain did not represent Mr. Hart after the settlement was consummated in principle
28   neither diminishes nor eliminates the value McIlwain provided to the class as a whole.

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

1    in similar cases. *Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers v. Az. Citrus Growers*, 904

2    F.2d 1301 (9th Cir. 1990). Courts also conduct a lodestar cross-check. The lodestar method

3    involves multiplying the attorneys' number of hours reasonably expended by a reasonable hourly

4    rate. *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). The lodestar

5    also considers "a multiplier thought to compensate for various factors (including unusual skill or

6    experience of counsel, or the ex ante risk of nonrecovery in the litigation." *In re HPL Techs., Inc.*

7    *Secs. Litig.*, 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005). The multiplier is calculated from the ratio

8    of the proposed percentage fee to the computed lodestar fee and is assessed for reasonableness. *In*

9    *re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886, 2007 WL 4171201, at *14.

10   Where the lodestar method is used as a cross-check to the percentage method, it can be performed

11   with a less exhaustive cataloguing and review of counsel's hours. *See In re Rite Aid Corp. Sec.*

12   *Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither

13   mathematical precision nor bean-counting."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d

14   1166, 1176 (S.D. Cal. 2007). In determining a reasonable amount of attorney's fees, factors to

15   consider include: "(1) the novelty and complexity of the issues, (2) the special skill and

16   experience of counsel, (3) the quality of representation, ... [and] (4) the results obtained."

17   *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988). However, the court need

18   not consider every factor. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002).

19        We will not here duplicate the points expected to be submitted by other counsel with

20   respect to the 33% "percentage of fund" fee request agreed to by the parties as part of the

21   settlement. Suffice it to say that percentage is consistent with, and appropriately at the upper end

22   of, the benchmarks approved by the Ninth Circuit because of the novelty, complexity, and

23   importance of these right of publicity issues. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886

24   F.2d 268, 273 (9th Cir. 1989). Indeed, the Third Circuit acknowledged that this was an issue of

25   "first impression." *Hart v. Elec. Arts, Inc*., 717 F.3d 141, 152 (3d Cir. 2013)("we are presented

26   with a case of first impression.") Accordingly, the appeals process involved extensive briefing,

27   research and preparation based on the law in numerous Circuits. The results achieved are

28   significant and far reaching, giving rights of publicity where none existed before, and paying

substantial sums to those entitled to receive them. The risk of the litigation is best illustrated by the fact that it had been dismissed and had to be resurrected by an appeal. Until the Third Circuit ruled, extensive litigation and delays threatened the recovery. As the Court has surely observed, the lawyers involved in the dispute are sophisticated and highly skilled practitioners.

The reasonableness of McIlwain's fee request is also demonstrated by the time and effort disclosed in his lodestar crosscheck, the amount of which exceeds $3 Million. McIlwain's time is accounted for by date. The remainder of the time, including that the Lanier firm has authorized him to pursue, is summarized. McIlwain Decl. ¶¶ 19-32, Ex. A thereto; Egdorff Decl. ¶¶ 19-27 (summary), ¶ 28 (authorization). That time records summarize attorney records, meetings and notes does not preclude an award of attorney fees. *See United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1521 (9th Cir. 1992)("this circuit has held that 'basing the attorneys' fee award in part on reconstructed records developed by reference to litigation files and other records is not an abuse of discretion.'"); see also *Davis v. City of San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1992); *Lobatz v. U.S. West Cellular*, 222 F.3d 1142, 1148-49 (9th Cir. 2000) (affirming fee award based on summaries of attorney time records); *Rosenfeld v. United States DOJ*, 904 F. Supp. 2d 988, 1005 (N.D. Cal. 2012)("To the extent that descriptions in Plaintiff's time records are general in nature, such descriptions are sufficient to support a fee award if they describe the general subject matters upon which time was spent."); *Skaff v. Le Meridien*, 2008 U.S. Dist. LEXIS 123537, 15-16 (C.D. Cal. Aug. 29, 2008)("the Ninth Circuit permits the counsel moving for fees to supplement and clarify his time sheets with additional documentation of his work")

Also, the rates used are reasonable, and are understood to be comparable to those of other involved attorneys and in general. See Rubin Decl. at ¶¶ 7-9; Egdorff Decl. ¶¶ 10-25, Exs. A-F.

## V.

### MCILWAIN SHOULD BE PERMITTED TO INTERVENE IN THE ACTION

Whether as a matter of right or on a permissive basis, McIlwain should be permitted to intervene in this action as a real party in interest, or denominated as former counsel, on the issue of the award of attorneys' fees. See, e.g. *Jones v. R.R. Donnelley & Sons*, 2005 U.S. Dist. LEXIS 1316 (N.D. Ill. Jan. 3, 2005) (granting former counsel's motion to intervene under Fed. R. Civ.

1   Proc. 24(a) and awarding fees be paid from common fund).

2   **A.**   ***McIlwain Meets the Requirements for Intervention as a Matter of Right***

3   Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that upon a timely filed

4   motion, the court must permit a party to intervene as of right when the applicant, "claims an

5   interest relating to the property or transaction that is the subject of the action, and is so situated

6   that disposing of the action may as a practical matter impair or impede the movant's ability to

7   protect its interest, unless existing parties adequately represent that interest. (*Id.*) The Ninth

8   Circuit's four-part test assesses whether to grant intervention of right: "(1) the motion must be

9   timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property

10   or transaction which is the subject of the action; (3) the applicant must be so situated that the

11   disposition of the action may as a practical matter impair or impede its ability to protect that

12   interest; and (4) the applicant's interest must be inadequately represented by the parties to the

13   action." *See Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) (citing *Scotts Valley Band*

14   *of Pomo Indians v. United States*, 921 F.2d 924, 926 (9th Cir. 1990)) *overr'ld on other grounds*

15   *by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *Cabazon Band of*

16   *Mission Indians v. Wilson*, 124 F.3d 1050, 1061 (9th Cir. 1997), *cert. denied*, 524 U.S. 926

17   (1998). Courts construe  these factors broadly in favor of intervention. *Sierra Club*, 995 F.2d at

18   1481; *see also U.S. ex. Rel McGrough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir.

19   1992). McIlwain has a right to intervene in this case because he meets each of these requirements.

20   **1.**   **McIlwain's Motion To Intervene Is Timely.**

21   The Ninth Circuit considers three criteria in assessing timeliness: (1) the stage of the

22   proceedings; (2) whether the existing parties would be prejudiced; and (3) the reason for any

23   delay in moving to intervene. *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990), *cert.*

24   *denied*, 501 U.S. 1250 (1991). Of these criteria, prejudice to the existing parties is the main

25   consideration as the "[m]ere lapse of time alone is not determinative." *Cnty. of Orange v. Air*

26   *California*, 799 F.2d 535, 537 (9th Cir. 1986), *cert. denied*, 418 U.S. 946 (1987). Additionally,

27   "the timeliness requirement for intervention as of right should be treated more leniently than for

28   permissive intervention because of the likelihood of more serious harm." *U.S. v. State of Or*, 745

1 | F.2d 550, 552 (9th Cir. 1984).

2 |     The present fee motions and the associated objections and replies are the first time the

3 | Court will have any opportunity to assess the propriety of, and the need for intervention. Only if

4 | the Court determines McIlwain either has no right to fees, or if his fees are contested to be

5 | unreasonable by counsel or an objector would the need for intervention arise. Without any

6 | objection or adverse determination, intervention is unnecessary. That is why the motion is made

7 | conditionally. Given the nascent determination of the allocation of fees, no party can be

8 | prejudiced by intervention.

9 |     **2.**     **McIlwain Has A Significantly Protectable Interest In The Award of Fees**

10 |     As is illustrated by his Declaration, McIlwain has expended a significant amount of time,

11 | money and resources in the prosecution of *Hart* – in the New Jersey court, in the federal district

12 | court, on appeal, and in mediation. That time and expense created a significant benefit to the

13 | Settlement Class for which he is entitled to be paid fees. Despite repeated attempts, McIlwain has

14 | not been able to resolve the allocation of fees among counsel. As above, Hagens Berman reneged

15 | on the agreed allocation. Other counsel have vigorously protested McIlwain's entitlement to fees.

16 |     Given the amounts at stake and requested, McIlwain plainly has a significant protectable

17 | interest in attorneys' fees to be awarded among counsel. His interest in this action is direct and is

18 | not contingent upon any other action. *See* C. Wright, A. Miller & M. Kane, Federal Practice &

19 | Procedure § 1908.1 (Rule 24(a) requires "a direct, substantial, legally protectable interest in the

20 | proceeding") (quoting *Panola Land Buying Assoc. v. Clark,* 844 F.2d 1506, 1509 (11th Cir.

21 | 1988); *see also Sierra Club*, 995 F.2d at 1484; and *California ex. Rel. Lockyer v. United States*,

22 | 450 F.3d 436, 441 (9th Cir. 2006).

23 |     **3.**     **Intervention Is Necessary To Adequately Protect McIlwain's Interest.**

24 |     No other counsel will protect McIlwain's interests. To the contrary, other counsel are

25 | likely to contest and attempt to minimize McIlwain's interest at every step. Thus, unless the Court

26 | awards McIlwain the fees he is requesting and he is entitled to counter objections to the

27 | settlement, his interests cannot be adequately protected without intervention. *See U.S. v. State of*

28 | *Or.*, 839 F.2d 635, 639 (9th Cir. 1988).

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

4. **Others Cannot Adequately Represent McIlwain's Interests.**

It is likewise clear that the existing counsel and parties cannot adequately represent McIlwain's interests while pursuing their own. In making this determination, the Ninth Circuit considers: (a) whether the interest of the existing party is such that it will undoubtedly make all the intervenor's arguments; (b) whether the existing party is capable and willing to make such arguments; and (c) whether the proposed intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996). These conditions are satisfied if the proposed intervenor makes the minimal showing that the representation by the current party or parties "may be" inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see also Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (same). They are plainly inadequate here.

Other counsel vying for shares of the common fund are plainly adverse to McIlwain's interests. The parties also have no interest in protecting McIlwain; one of them even terminated the lawyer-client relationship with him. *See Natural Resources Defense Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1187-88 (E.D. Cal. 2008) (defendants could not adequately represent interests of intervenors where they represented a broad set of competing interests).

Because McIlwain has met all of the considerations under Rule 24(a)(2), he should be entitled to intervene in the instant action as a matter of right.

**B.** *McIlwain Meets the Requirements for Permissive Intervention*

McIlwain also requests, in the alternative, permissive intervention under Rule 24(b)(1)(B). More specifically, Rule 24(b)(1)(B) provides that a person can seek permissive intervention when he "has a claim or defense that shares with the main action a common question of law or fact." (*Id.*) Permissive intervention may be granted in the court's discretion if, "(1) the movant must show an independent ground for jurisdiction; (2) the motion must be timely; and (3) the movant's claim or defense and the main action must have a question of law and fact in common." *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989), *aff'd*, 495 U.S. 82 (1990); *see also Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013).

As above, the present motion for final approval and the competing requests for attorneys'

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

fees all concern the same share of the common fund. McIlwain has an interest in asserting his rights himself, responding to objectors, if any, and perfecting his and the class's rights for appeal against professional objectors. These interests *directly* overlap with the matters to be adjudicated by the court. *See* C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE, CIVIL 2D § 1911 at 357 ("[p]ermissive intervention may be permitted when the intervenor has an economic interest in the outcome of the suit").

Further, there will not be undue delay or prejudice that would prevent intervention under Rule 24(b)(3). The schedule for final approval has been set. And McIlwain's motion for fees may be considered at the same time as his request for intervention. Therefore, McIlwain is entitled to permissive intervention under Rule 24(b)(l)(B).

## VI.

## CONCLUSION

For these reasons, Timothy J. McIlwain respectfully requests that the Court award him attorneys' fees in the sum of $4.62 Million and expenses in the sum of $76,209.91 for his work in *Hart* that spawned the settlement of this action and created and enlarged the common fund to be paid to the class.

Respectfully submitted,

DATED: April 13, 2015                ROBINS KAPLAN LLP


By:     /s/ Michael A. Geibelson
        Michael A. Geibelson
        Attorneys for Interested Party and
        Former Counsel to Ryan Hart
        TIMOTHY J. MCILWAIN

MOTION FOR FEES AND COSTS, AND
CONDITIONALLY TO INTERVENE

**CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, Suite 3400, Los Angeles, California 90067-3208.

On April 13, 2015, I caused to be served the foregoing document(s) described as **TIMOTHY J. MCILWAIN'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS AND CONDITIONALLY TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action who are not on the Court's CM/ECF list to receive e-mail notices for this case (who therefore require manual noticing), by placing a true and correct copy thereof enclosed in a sealed envelope as follows:

**SEE ATTACHED SERVICE**

[X] **BY MAIL:** I caused such envelope to be deposited in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing in affidavit.

[X] **(Federal)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 13, 2015, at Los Angeles, California.

LA DONNA BRYANT-WILSON

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

61011849.1

CERTIFICATE OF SERVICE

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1

## SERVICE LIST

2

3   Arthur N. Bailey
    Arthur N. Bailey & Associates
    111 West Second Street, Suite 4500
4   Jamestown, NY 14701

5   Thomas Kay Boardman
    Pearson Simon, Warshaw and Penny, LLP
    44 Montgomery Street, Suite 2450
6   San Francisco, CA 94104

7   David P. Borovsky
    Meckler Bulger Tilson Marick & Pearson LLP
8   575 Market Street, 22nd Floor
    San Francisco, CA 94105

9

10  Stanley M. Chesley
    Waite Schneider Bayless & Chesley
11  1513 Fourth & Vine Tower
    1 West Fourth Street
12  Cincinnati, OH 45202

13  Courtney Elizabeth Curtis
    Gersh | Derby, LLP, Attorneys of Law
    15821 Ventura Boulevard, Suite 515
14  Encino, CA 91436

15  Dennis J. Drasco
    Lum Danzis Drasco & Positan LLC
16  103 Eisenhower Parkway
    Roseland, NJ 07068

17

18  David A. Goodwin
    608 Second Avenue South
19  Minneapolis, MN 55402

20  Keith McKenna
    The McKenna Law Firm LLC
21  96 Park Street
    Montclair, NJ 07042

22  Arthur M. Owens
    Lum Drasco & Positan LLC
23  103 Eisenhower Parkway
    Roseland, NJ 07068

24

25  Joe Sibley
    Camara & Sibley LLP
26  2339 University Boulevard
    Houston, TX 77005

27

28

61011849.1

CERTIFICATE OF SERVICE

1   Jack Simms
    Boies Schiller & Flexner LLP
2   5301 Wisconsin Ave, Suite 800
    Washington, DC 20015
3
    Jeremy S. Spiegel
4   Weinstein Kitchenoff & Asher LLC
    1845 Walnut Street, Suie 1100
5   Philadelphia, PA 19103

6   Sara M. Vanderhoff
    Kilpatrick Stockton LLP
7   1100 Peachtree Street, Suite 2800
    Atlanta, GA 30309-4530
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES