MICHAEL D. HAUSFELD (*pro hac vice*)
mhausfeld@hausfeld.com
HILARY K. SCHERRER (SBN 209451)
hscherrer@hausfeld.com
SATHYA S. GOSSELIN (SBN 269171)
sgosselin@hausfeld.com
SWATHI BOJEDLA (*pro hac vice*)
sbojedla@hausfeld.com
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone:     (202) 540-7200
Facsimile:     (202) 540-7201

MICHAEL P. LEHMANN (SBN 77152)
mlehmann@hausfeld.com
BONNY E. SWEENEY (SBN 176174)
bsweeney@hausfeld.com
BRUCE J. WECKER (SBN 78530)
bwecker@hausfeld.com
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, California  94104
Telephone:     (415) 633-1908
Facsimile:     (415) 358-4980

*Class Counsel for Antitrust Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| EDWARD C. O'BANNON, JR. on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION (NCAA); ELECTRONIC ARTS, INC.; and COLLEGIATE LICENSING COMPANY,<br><br>Defendants. | Case Nos. 4:09-cv-1967 CW, 4:09-cv-3329 CW<br><br>**ANTITRUST PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:          Hon. Claudia Wilken<br>Courtroom:   Courtroom 4, 2nd Floor<br>Trial:            June 9-27, 2014 |

1

## **TABLE OF CONTENTS**

2   I.     INTRODUCTION ................................................................................... - 2 -

3   II.    BACKGROUND .................................................................................... - 4 -

4   III.   ARGUMENT ......................................................................................... - 6 -

5         A.   Antitrust Class Counsel's Considerable Work on the Litigation
Warrants a Fee. ......................................................................... - 7 -

6         B.   Attorneys' Fees of 30% of the Common Fund Are Reasonable. ................. - 8 -

7               1.   Antitrust Class Counsel Achieved an Excellent Recovery for the
Class, Including Enduring Benefits Beyond the Cash Settlement
Fund. ......................................................................... - 10 -

10            2.   Antitrust Class Counsel Settled the Case in the Face of Great
Risk. .......................................................................... - 12 -

12            3.   Antitrust Class Counsel Undertook a Significant Burden in
Prosecuting this Case. ..................................................... - 13 -

13            4.   Antitrust Class Counsel Litigated the Case on a Pure
Contingency Basis. ......................................................... - 14 -

15            5.   A Lodestar Cross-Check Confirms the Reasonableness of the
Requested 30% Fee ........................................................ - 14 -

16         C.   Antitrust Class Counsel for APs Are Entitled to 66.67% of the Total
Fee Award. ......................................................................... - 17 -

18         D.   Antitrust Class Counsel's Expenses Are Reasonable ................................ - 19 -

19         E.   Class Representatives' Incentive Awards Are Reasonable and
Appropriate. ........................................................................ - 20 -

21         F.   The Lone Objection to the Settlement Thus Far Is Motivated by Self-
Interest. .............................................................................. - 21 -

23   IV.   CONCLUSION .................................................................................... - 23 -

24

25

26

27

28

i

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3 **Cases**

4 *In re Activision Sec. Litig.*,
5    723 F. Supp. 1373 (N.D. Cal. 1989) .......................................................................... 9, 10

6 *Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ........................................................................................................ 7

7 *Brailsford v. Jackson Hewitt Inc.*,
8    Case No. C 06-00700 CW, 2007 WL 1302978 (N.D. Cal. May 3, 2007) .................... 9, 11

9 *Chao v. Aurora Loan Servs., LLC*,
   Case No. C 10-3118 SBA, 2015 WL 294823 (N.D. Cal. Jan. 21, 2015) .......................... 10
10

11 *Ching v. Siemens Indus., Inc.*,
   Case No. 11-CV-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27,
12    2014) ............................................................................................................................ 10

13 *Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ........................................................................................... 3, 6, 12
14

15 *In re Critical Path, Inc.*,
   Case No. C 01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18,
16    2002) ........................................................................................................................ 17, 18

17 *In re CV Therapeutics, Inc. Sec. Litig.*,
   Case No. C 03-3709 SI, 2007 WL 1033478 (N.D. Cal. April 4, 2007) ............................ 8
18

19 *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   Master File No. M-02-1486-PJH, MDL No. 1486, 2007 WL 2416513
20    (N.D. Cal. Aug. 16, 2007) .......................................................................................... 8, 17

21 *Flintkote Co. v. Lysfjord*,
   246 F.2d 368 (9th Cir. 1957) .......................................................................................... 7

22 *In re FPI/Agretech Sec. Litig.*,
23    105 F.3d 469 (9th Cir. 1997) ........................................................................................ 17

24 *Garner v. State Farm Mut. Auto. Ins. Co.*,
   Case No. CV 08 1365 CW, 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) .................. 9, 11
25

26 *Garner v. State Farm Mut. Auto. Ins. Co.*,
   Case No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22,
27    2010)............................................................................................................................ 21

28

*Gerlach v. Wells Fargo & Co.,*
    Case No. C-05-0585-CW, 2007 WL 163189 (N.D. Cal. Jan. 19, 2007)............................ 9

*Goldberger v. Integrated Resources, Inc.,*
    209 F.3d 43 (2d Cir. 2000) ........................................................................... 15

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .......................................................................... 8

*Hart v. Electronic Arts, Inc.,*
    Case No. 09-CV-05990-FLW-LHG (D.N.J.) ............................................... 2, 6, 18

*Hawaii v. Standard Oil Co. of California,*
    405 U.S. 251 (1972) ..................................................................................... 7

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) .................................................................................... 10

*Hopkins v. Stryker Sales Corp.,*
    Case No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) .................... 10

*In re Ivan F. Boesky Sec. Litig.,*
    948 F.2d 1358 (2d Cir. 1991) ........................................................................ 22

*Knight v. Red Door Salons, Inc.,*
    Case No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................. 19

*In re McKesson HBOC, Inc. ERISA Litig.,*
    391 F. Supp. 2d 844 (N.D. Cal. 2005)................................................................ 21

*In re Media Vision Tech. Sec. Litig.,*
    913 F. Supp. 1362 (N.D. Cal. 1996).................................................................. 19

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) .......................................................................... 20

*Meijer v. Abbott Laboratories,*
    Case No. C-07-05985 (N.D. Cal. Aug. 11, 2011) .................................................... 8

*In re Mercury Interactive Corp. Sec. Litig.,*
    618 F.3d 988 (9th Cir. 2010) .......................................................................... 22

*In re Omnivision Tech., Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)...................................................... 10, 12, 19

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015) ................................................................. *passim*

iii

*Parker v. Anderson,*
  667 F.2d 1204 (5th Cir. 1982) ........................................................................ 22

*Passantino v. Johnson & Johnson Consumer Products, Inc.,*
  212 F.3d 493 (9th Cir. 2000) .......................................................................... 17

*Paul, Johnson, Alston & Hunt v. Graulty,*
  886 F.2d 268 (9th Cir. 1989) ....................................................................... 7, 9

*Pillsbury Co. v. Conboy,*
  459 U.S. 248 (1983) ......................................................................................... 7

*In re Portal Software, Inc. Sec. Litig.,*
  Case No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ..................... 16

*Presley v. Carter Hawley Hale Profit Sharing Plan,*
  Case No. C9704316SC, 2000 WL 16437 (N.D. Cal. 2000) ................................. 21

*Reiter v. Sonotone Corp.,*
  442 U.S. 330 (1979) ......................................................................................... 7

*Rodriguez v. West Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009) .......................................................................... 20

*Smith v. Qwest Commc'ns Co.,*
  Case No. C11-02599 TEH, 2013 WL 3200592 (N.D. Cal. June 24, 2013) ....................... 15

*In re Sorbates Direct Purchaser Antitrust Litig.,*
  Case Nos. C 98-4886MMC, 99-1358MMC, 99-1499MMC, 00-2145MMC,
  00-3854MMC, 99-4252MMC, 99-4473MMC, 2002 WL 31655191 (N.D.
  Cal. Nov. 15, 2002) ......................................................................................... 21

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
  Case No. 07-md-1819-CW (N.D. Cal. June 30, 2011) ......................................... 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  Case No. M 07-1827 SI, MDL No. 1827, 2013 WL 1365900 (N.D. Cal.
  Apr. 3, 2013) ............................................................................................ 8, 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  Case No. M 07-1827 SI, MDL No. 1827, 2013 WL 149692 (N.D. Cal. Jan.
  14, 2013) ............................................................................................ 8, 16, 21

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  Case No. MDL 03:07-md-1827 SI, 2011 WL 7575003 (N.D. Cal. Dec. 27,
  2011) ............................................................................................................. 8

iv

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................. 9

*In re Veeco Instruments Inc. Sec. Litig.*,
    Case No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7,
    2007) ................................................................................................................. 14

*Vizcaino v. Microsoft Corp.*,
    142 F. Supp. 2d 1299 (W.D. Wash. 2001) ................................................. 10, 12

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................... *passim*

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................................... 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ............................................................. 7, 8, 9, 14

*Young v. Polo Retail, LLC*,
    Case No. C 02-4546-VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ....... 15

*Zucker v. Occidental Petroleum Corp.*,
    192 F.3d 1323 (9th Cir. 1999) ........................................................................ 17

**Other Authorities**

*Manual for Complex Litigation* § 21.642 (4th ed.) ................................................ 22

v

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE that at 2:00 PM on July 16, 2015**, Antitrust Plaintiffs in the above-captioned matter will, and hereby do move before the Honorable Claudia Wilken, United States Senior District Judge, at the United States Courthouse, 1301 Clay Street, Oakland, CA 94612, for:

- An award of attorneys' fees in the amount of 30% of the $40 million EA Settlement (**$12,000,000.00**) plus interest, 66.67% ($8,000,000.00) of which Antitrust Plaintiffs respectfully request be allocated to Antitrust Plaintiffs' counsel, and 33.33% ($4,000,000.00) of which Antitrust Plaintiffs respectfully request be allocated to Right of Publicity Plaintiffs' counsel;

- Reimbursement of litigation expenses in the amount of **$1,836,505.89**; and

- Payments to the class representatives of **$5,000** or **$15,000** for their time and effort representing the class throughout the litigation.

This motion is brought pursuant to Fed. R. Civ. P. 23(h), 54(b) and 54(d)(2) and relates only to Antitrust Plaintiffs' request for attorneys' fees, reimbursement of expenses, and payment of incentive awards from the EA Settlement.

This motion is advanced on the grounds that (a) the requested fees are fair and reasonable in light of Class Counsel's sterling efforts in achieving a settlement for the class; (b) the requested fees are appropriate under the Ninth Circuit case law on common fund cases; (c) the expenses for which reimbursement is sought were reasonably and necessarily incurred in connection with the prosecution of this action; and (d) a reasonable payment of $5,000 or $15,000 to each class representative for their efforts on behalf of the class is warranted given their longstanding efforts in representing the class and advancing the litigation.

This motion is supported by the attached Memorandum of Points and Authorities; the Declaration of Michael D. Hausfeld in Support of Antitrust Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Incentive Awards;

1    other records, pleadings, and papers filed in this action; and upon such argument and further

2    information as may be presented to the Court at the final approval hearing.

3    **MEMORANDUM OF POINTS AND AUTHORITIES**

4    **I.      INTRODUCTION**

5              Antitrust Plaintiffs ("APs" or "the *O'Bannon* Plaintiffs") and their counsel ("Antitrust

6    Class Counsel") respectfully submit this Memorandum of Points and Authorities in Support

7    of APs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Class

8    Representative Incentive Awards.  APs have achieved a $40 million settlement agreement

9    with defendants Electronic Arts, Inc. ("EA") and Collegiate Licensing Company ("CLC"),

10   which will provide substantial cash benefits to the class.  By this Motion, APs seek a total

11   award for APs' counsel and other class counsel of attorneys' fees in an amount equal to 30%

12   of the $40 million EA settlement ($12,000,000).  This request is less than the 33%

13   ($13,200,000) permissible under the EA settlement agreement.  Case No. 09-3329, Dkt. No.

14   288-1, p. 66.  APs do not seek a fee award from the separate settlement of the *Keller* plaintiffs

15   with the National Collegiate Athletic Association ("NCAA"), which was created in significant

16   part through the work of Antitrust Class Counsel as detailed herein and which represents

17   further cash benefits for thousands of the very same class members represented by APs.

18             From the $12,000,000 requested fee award from the EA settlement, APs seek an

19   allocation of $8,000,000 for APs' counsel for their sizable and disproportionate contributions

20   to the resolution of all outstanding litigation against EA and CLC, which undoubtedly aided

21   the conclusion of the *Keller* litigation against the NCAA as well.  While *Keller* and *Hart*

22   lingered on interlocutory appeal after motion practice on the pleadings, the *O'Bannon*

23   plaintiffs and their counsel accumulated a wealth of documentary and testimonial evidence,

24   obtained various favorable rulings from the Court concerning discovery and on eight motions

25   to dismiss, and litigated class certification for a year (which included hundreds of pages of

26   briefing, hundreds of pages of expert testimony, hundreds of exhibits, and dozens of fact

27   declarations), setting the stage for fruitful settlement negotiations.

28
- 2 -

APs also seek reimbursement of their reasonable litigation expenses in the amount of $1,836,505.89 and incentive awards for the named class representatives for their service in this case.  APs seek awards of $15,000 for lead class representative Ed O'Bannon and $5,000 for 20 additional class representatives.

Antitrust Class Counsel actively prosecuted this case for 4.5 years on a pure contingent basis, facing tremendous risk of financial loss in the process.  Indeed, Antitrust Class Counsel litigated against three sizable defendants with considerable financial resources (who employed some of the largest defense firms in the country) simultaneously, incurring thousands of hours of attorney time and millions of dollars of unreimbursed expenses, all with no guarantee of success.  The settlement represents an excellent recovery for the class that will provide significant cash payments to thousands of class members, and it opens the door to additional revenue streams should the NCAA and its members choose to revive its popular videogame series.  An analysis of the circumstances surrounding this litigation shows that the fee Antitrust Class Counsel seeks is reasonable.

During the course of the litigation, Antitrust Class Counsel faced significant challenges, including:

- the risk that the consolidated complaints would not withstand several rounds of joint and individual motions to dismiss;

- the risk of litigating against defendants with overwhelming financial resources, who in turn engaged some of the largest and most sophisticated law firms in the country to mount a vigorous defense;

- the risks associated with achieving class certification of a damages and an injunctive class in this complex antitrust case (underscored by the Court's subsequent decision on class certification and the intervening legal developments in antitrust class actions (*see, e.g., Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013));

- • the risk that each defendant could successfully argue that the anticompetitive agreement at issue nonetheless yields greater countervailing procompetitive effects that justify the restraint;

- • the risk that each defendant could successfully argue that the Antitrust Plaintiffs lacked antitrust injury.

Given all of these factors, APs' request for a fee award of 30%, with an apportionment of $8 million for Antitrust Class Counsel, is fair and reasonable. As discussed herein, many courts in this circuit have awarded similar or higher fees where, as here, the litigation poses substantial risks. Further, Antitrust Class Counsel should be reimbursed for reasonable and necessary expenses advanced on behalf of the class as relating to EA and CLC, including travel expenses specifically tied to depositions of EA and CLC and expert witness fees concerning work common to all defendants. Finally, Antitrust Class Counsel respectfully request that the Court award 21 Class Representatives reasonable incentive awards for their time and service to the Class.

## II. BACKGROUND

The first complaint in this matter was filed in 2009, and Plaintiffs aggressively litigated the case for 4.5 years before settling in principle with EA and CLC. As detailed in the accompanying Declaration of Michael D. Hausfeld, the work done by Antitrust Class Counsel was reasonable and necessary, of high quality, and performed efficiently. Among myriad other projects over the course of the litigation, Antitrust Class Counsel:

- • Conducted an initial investigation to determine the legal and factual basis for novel antitrust claims against EA, CLC, and their co-conspirator the NCAA, including potential defenses and likely class certification responses;

- • Drafted various individual complaints and three consolidated complaints, totaling hundreds of pages of specific factual allegations;

- • Defeated eight motions to dismiss (three of which were defeated as the parties negotiated the settlement agreement), including five from EA and CLC;

- 4 -

- Conducted extensive discovery of defendants and numerous affiliated third parties, including attendant motion practice (often initiated by defendants), all of which would later prove useful at class certification; summary judgment (against the NCAA); and trial (against the NCAA);

- Reviewed and coded over a million pages of documents, including 45,395 documents totaling 204,564 pages produced by EA and 83,647 documents totaling 193,945 pages produced by CLC;

- Took and defended 76 depositions, including 11 depositions of EA and CLC witnesses;

- Researched, drafted, and responded to seven distinct class certification-related briefs (including sur-replies) over the course of nearly a year, all of which were filed prior to the settlement;

- Commissioned or otherwise reviewed and analyzed 11 class certification expert reports totaling over 1,000 pages and took and defended 11 related expert depositions;

- Negotiated the settlement over the course of eight months among multiple plaintiff groups and EA counsel; and

- Drafted the settlement agreement and preliminary approval papers, in conjunction with all counsel; worked with vendors to design a notice program; drafted notice materials; and responded to class-member inquiries regarding the settlement.

Declaration of Michael D. Hausfeld in Support of Antitrust Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Incentive Awards ("Hausfeld Decl.") ¶ 19.

Class certification briefing began in August 2012. APs devoted significant time and energy to strategizing class-certification issues, briefing class certification over the course of a year, defending and deposing class-certification experts, and providing oral argument to the

- 5 -

Court that distilled almost a year's worth of briefing.  *Id*.  For nearly 4.5 years, settlement dialogue had been intermittent though not fruitful, but those conversations finally came to a head in the fall of 2013, with the class-certification decision looming.  Likely wary of the risk of an unfavorable damages class-certification decision, and cognizant of the evidence uncovered to date (principally through Antitrust Class Counsel's efforts), EA finally agreed to a settlement in principle of $40 million in September 2013 ("Settlement in Principle").  *Id*. ¶ 5.  This Settlement in Principle was reached jointly among APs, plaintiffs in the *Keller* action, *Keller v. Electronic Arts, Inc*. et al., Case No. 4:09-cv-01967-CW (N.D. Cal.) ("*Keller*"), and plaintiffs in the *Hart* action, *Hart v. Electronic Arts, Inc*., Case No. 09-CV-05990-FLW-LHG (D.N.J.) ("*Hart*") (collectively, "ROP Plaintiffs").  *Id*.  Thereafter, Antitrust Class Counsel halted work litigating against EA and CLC (which was a released party in the Settlement in Principle but not a signatory).  The parties continued to negotiate the precise contours of a final settlement agreement over the next eight months, and the parties filed a signed settlement agreement with the Court on May 30, 2014, which was later superseded by the July 23, 2014 amended settlement agreement, Case No. 09-3329, Dkt. No. 288-1 ("EA Settlement Agreement" or "Settlement").

APs continued to litigate against the NCAA.  After certifying an injunctive class, APs defeated the NCAA's motion for summary judgment and took the NCAA to trial.  On the first day of trial, despite very little litigation activity in *Keller* in the months that followed the Settlement with EA and CLC, the NCAA announced a settlement agreement with the *Keller* Plaintiffs to settle the videogame right-of-publicity and civil-conspiracy claims against it ("NCAA Settlement").  That settlement totals $20,000,000.00.

## III.  ARGUMENT

APs respectfully request: (1) a total award of attorneys' fees in the amount of 30% of the Settlement, of which $8,000,000 (or 66.67% of the fee award) is to be allocated to Antitrust Class Counsel; (2) reimbursement of reasonable and necessary expenses advanced by Antitrust Class Counsel on behalf of the class; and (3) modest incentive awards for named

1   class representatives.  As discussed below, these requests are reasonable and appropriate

2   under Ninth Circuit law, and thus APs respectfully request that the Court approve their

3   request in full.

     A.    **Antitrust Class Counsel's Considerable Work on the Litigation Warrants a**
4
           **Fee.**
5

6          Antitrust Class Counsel has produced a substantial benefit for the class and thus

7   should be compensated for their work.  The Ninth Circuit has found that "the private antitrust

8   action is an important and effective method of combatting unlawful and destructive business

9   practices. The private suitor complements the Government in enforcing the antitrust laws."

10  *Flintkote Co. v. Lysfjord*, 246 F.2d 368, 398 (9th Cir. 1957); *see also Pillsbury Co. v. Conboy*,

11  459 U.S. 248, 262–63 (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 331 (1979); *Hawaii v.*

12  *Standard Oil Co. of California*, 405 U.S. 251, 266 (1972).

13         In order to compensate attorneys for their work on this type of litigation and to

14  promote future private enforcement actions, the Supreme Court and the Ninth Circuit have

15  long recognized the "common fund doctrine" and held that attorneys responsible for creating

16  a common fund for the benefit of the class are entitled to an award from that fund.  *See*

17  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (Supreme Court "has recognized

18  consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons

19  other than himself or his client is entitled to a reasonable attorney's fee from the fund as a

20  whole."); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994)

21  ("*WPPSS*") ("those who benefit from the creation of the fund should share the wealth with the

22  lawyers whose skill and effort helped create it."); *Paul, Johnson, Alston & Hunt v. Graulty*,

23  886 F.2d 268, 271 (9th Cir. 1989) ("*Paul, Johnson*") (well-settled that lawyer who helps

24  create common fund should be allowed to share in the award).

25         Here, Antitrust Class Counsel's efforts contributed greatly to a common fund of $40

26  million from the EA Settlement Agreement for the benefit of the class—as well as an

27  additional $20 million available to class members from the NCAA Settlement, which was

28
                                        - 7 -

1   facilitated by Antitrust Class Counsel's extensive work gathering evidence while *Keller* was

2   in appellate limbo.  Antitrust Class Counsel's fee is warranted in light of the results achieved,

3   the work performed, and the complexity and risks associated with this case, as further

4   discussed below.  Thus, Antitrust Class Counsel is entitled to a portion of the Settlement as

5   payment for their work.

6         **B.**     **Attorneys' Fees of 30% of the Common Fund Are Reasonable.**

7         Courts in this circuit have considerable discretion in determining what constitutes a

8   reasonable fee.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *WPPSS*,

9   19 F.3d at 1296.  In making this determination, courts utilize either a percentage-of-the-

10  recovery approach or a lodestar calculation.  *In re Online DVD-Rental Antitrust Litig.*, 779

11  F.3d 934, 949 (9th Cir. 2015) ("*Online DVD*"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

12  1047 (9th Cir. 2002) ("*Vizcaino II*"); *WPPSS*, 19 F.3d at 1296.

13        In the Northern District of California, most courts have adopted the percentage method

14  to determine reasonable fees in large antitrust class actions. *See, e.g.*, *In re TFT-LCD (Flat*

15  *Panel) Antitrust Litig.*, No. MDL 03:07-md-1827 SI, 2011 WL 7575003, at *1–2 (N.D. Cal.

16  Dec. 27, 2011) ("*LCD I*") (granting class counsel 30% of the common fund achieved through

17  settlement); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, MDL No. 1827,

18  2013 WL 149692, at *1–2 (N.D. Cal. Jan. 14, 2013) ("*LCD II*") (30%); *In re TFT-LCD (Flat*

19  *Panel) Antitrust Litig.*, No. M 07-1827 SI, MDL No. 1827, 2013 WL 1365900, at *7–8 (N.D.

20  Cal. Apr. 3, 2013) ("*LCD III*") (28.6%); *In re Static Random Access Memory (SRAM)*

21  *Antitrust Litig.*, Case No. 07-md-1819-CW (N.D. Cal. June 30, 2011) (Dkt. No. 1370)

22  ("*SRAM*") (30%); *Meijer v. Abbott Laboratories*, C-07-05985 (N.D. Cal. Aug. 11, 2011) (Dkt.

23  No. 514) ("*Meijer*") (33⅓%); *In re CV Therapeutics, Inc. Sec. Litig.*, Case No. C 03-3709 SI,

24  2007 WL 1033478, at *1 (N.D. Cal. April 4, 2007) ("*CV Therapeutics*") (30%); *In re*

25  *Dynamic Random Access Memory (DRAM) Antitrust Litig.*, Master File No. M-02-1486-PJH,

26  MDL No. 1486, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007), at *1 ("*DRAM*") (25%).  The

27  percentage method is generally applied to the entire fund, and not to the net fund after

28   

- 8 -

expenses are deducted.  *See Online DVD*, 779 F.3d at 953.  At least one court in this district has concluded that the percentage approach is the only appropriate method for calculating fees in a common fund case.  *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ("*Activision*") (Patel, J.).

This Court has utilized the percentage method to determine reasonable attorneys' fees in several recent common-fund cases.  *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW, 2010 WL 1687829, at *1 (N.D. Cal. Apr. 22, 2010) ("*Garner I*") (30%); *Gerlach v. Wells Fargo & Co.*, No. C-05-0585-CW, 2007 WL 163189, at *1 (N.D. Cal. Jan. 19, 2007) (25%); *Brailsford v. Jackson Hewitt Inc.*, No. C 06-00700 CW, 2007 WL 1302978, at *5 (N.D. Cal. May 3, 2007) (25%).

The benchmark in this circuit under a percentage approach is a 25% award.  *Paul, Johnson*, 866 F.2d at 273.  But courts must analyze each case individually and determine a reasonable award based on the facts of the case, exercising ample discretion to grant an upward adjustment based on certain factors.  *See Vizcaino II*, 290 F.3d at 1048 ("The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases."); *id.* (court must have "considered all the circumstances of the case and reached a reasonable percentage"); *WPPSS*, 19 F.3d at 1298 (courts "cannot rationally apply any particular percentage—whether 13.6 percent, 25 percent or any other number—in the abstract, without reference to all the circumstances of the case"); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ("This 'benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors.'") (quoting *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

In the Northern District of California, a fee award of 30% is often requested and frequently granted.  *See Garner I*, 2010 WL 1687829, at *1 ("A fee award of 30 percent is within the 'usual range' of fee awards that Ninth Circuit courts award in common fund

- 9 -

1  cases.") (citing *Vizcaino II*, 290 F.3d at 1047) (Wilken, J.); *Activision*, 723 F. Supp. at 1377

2  ("[T]his court finds that in most recent cases the benchmark is closer to 30%."); *Chao v.*

3  *Aurora Loan Servs., LLC*, Case No. C 10-3118 SBA, 2015 WL 294823, at *1 (N.D. Cal. Jan.

4  21, 2015) (upward adjustment to 30% reasonable); *Ching v. Siemens Indus., Inc.*, Case No.

5  11-CV-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (same); *Hopkins v.*

6  *Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *1 (N.D. Cal. Feb. 6,

7  2013) (same).

8  Here, the district court must evaluate the reasonableness of APs' fee request to

9  determine whether 30% is appropriate in this case. The Ninth Circuit recently described the

10  factors that guide this analysis for courts in this circuit:

11  In [*Vizcaino II*], we listed several factors courts may consider in assessing a request
   for attorneys' fees that was calculated using the percentage-of-recovery method.
12  These factors include the extent to which class counsel "achieved exceptional
   results for the class," whether the case was risky for class counsel, whether
13  counsel's performance "generated benefits beyond the cash settlement fund," the
   market rate for the particular field of law (in some circumstances), the burdens class
14  counsel experienced while litigating the case (e.g., cost, duration, foregoing other
   work), and whether the case was handled on a contingency basis. In addition, a
15  court may cross-check its percentage-of-recovery figure against a lodestar
   calculation.
16

17  *Online DVD*, 779 F.3d at 954-55 (citations omitted). An analysis of the *Vizcaino* factors

18  confirms the reasonableness of Antitrust Class Counsel's request that 30% of the Settlement

19  be allocated to attorneys' fees.

20
   **1.  Antitrust Class Counsel Achieved an Excellent Recovery for the
21       Class, Including Enduring Benefits Beyond the Cash Settlement
         Fund.**
22

23  Courts emphasize that the recovery achieved is an important factor to be considered in

24  determining an appropriate fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983);

25  *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1303 (W.D. Wash. 2001) *aff'd,* 290 F.3d

26  1043 (9th Cir. 2002) ("*Vizcaino I*"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1046

27  (N.D. Cal. 2008) ("*Omnivision*").

28

Here, Antitrust Class Counsel, in conjunction with counsel for the ROP Plaintiffs ("ROP Class Counsel"), have achieved a $40 million cash settlement. The Settlement will offer immediate cash payments to a wide range of current and former college athletes who have never before received compensation for the use of their names, images, and likenesses in videogames. Moreover, the favorable rulings and evidence obtained by Antitrust Class Counsel as they litigated *O'Bannon* (and even tried the case against the NCAA) have created a climate in which current and former college athletes will almost undoubtedly receive a share of revenue from any future college athletic videogames, should they be revived.

This cash recovery is all the more significant given the Court's subsequent decision to deny a damages class in *O'Bannon*, leaving the settlement avenue as the only means to compensate the class for past acts. *See Garner I*, 2010 WL 1687829, at *1 ("Class Counsel achieved outstanding monetary results for the Class members, particularly given the uncertainty regarding how damages would be measured in this case, even had Plaintiffs prevailed at trial.") (Wilken J.).

Furthermore, Antitrust Class Counsel's continued litigation pressure on the NCAA, including Antitrust Class Counsel's unswerving commitment to a speedy trial following the Court's favorable summary judgment decision (despite great opposition from the NCAA, including an unsuccessful constitutional argument), undoubtedly aided the *Keller* Plaintiffs' NCAA Settlement, which was first announced in the opening moments of the *O'Bannon* trial. While *Keller* lingered in the federal appellate courts for three years, Antitrust Class Counsel soldiered on, amassing a compelling evidentiary record that the *Keller* plaintiffs stood poised to deploy in their own case, as evidenced by the very short schedule they proposed to the Court on the eve of the *O'Bannon* trial. *See* Case No. 09-1967, Dkt. No. 1077; Hausfeld Decl. ¶¶ 21-24 . Thus, Antitrust Class Counsel's efforts contributed directly or indirectly to $60 million in cash benefits to the class, though Antitrust Class Counsel seeks no portion of the $20 million NCAA Settlement. *See Brailsford*, 2007 WL 1302978, at *5 ("amount recovered for the benefit of class members effectively exceeds the . . . recovery negotiated by

1  Class Counsel" where litigation was significant factor in defendant agreeing to settle with

2  others) (Wilken, J.).

3       The $60 million in aggregate common fund benefits (only $40 million of which is the

4  subject of Antitrust Class Counsel's instant fee request) to class members represents an

5  outstanding monetary recovery for the class.  Furthermore, Antitrust Class Counsel's

6  litigation efforts have led to a change in the industry—and the NCAA's decision to stop

7  authorizing the use of current and former college athletes' names, images, and likenesses in

8  videogames without compensation to the athletes.  This nonmonetary benefit also weighs in

9  favor of an increased fee award.  *Vizcaino II*, 290 F.3d at 1049.

10      Together, these factors weigh in favor of an upward adjustment for attorneys' fees to

11  30% of the common fund.

12           **2.       Antitrust Class Counsel Settled the Case in the Face of Great Risk**.

13      "The risk that further litigation might result in Plaintiffs not recovering at all,

14  particularly a case involving complicated legal issues, is a significant factor in the award of

15  fees."  *Omnivision*, 559 F. Supp. 2d, at 1046-47.  Substantial risk can lead to an increase of a

16  fee award above the 25% benchmark. *Vizcaino I*, 142 F. Supp. 2d at 1303–04.

17  Throughout the litigation, Antitrust Class Counsel persevered in the face of sizable risks

18  associated in bringing this unique and untested Rule of Reason antitrust case.  Plaintiffs faced

19  three defendants with seemingly limitless resources, each represented by top-flight defense

20  counsel from large, nationally recognized law firms.  Despite these odds, Plaintiffs were able

21  to defeat eights hard-fought motions to dismiss, succeed on numerous discovery-related and

22  other motions, and eventually prevail at summary judgment and trial—which EA and CLC

23  determined to forego in favor of settlement.

24      In the changing landscape of antitrust and class-action law, this case always carried

25  considerable uncertainty as to class certification.  At the time the Settlement in Principle was

26  reached, the parties had spent a year briefing challenging class certification issues against a

27  legal backdrop that featured *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) and *Wal-Mart*

28                                        - 12 -

*Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).  After the Settlement in Principle was reached, Plaintiffs ultimately were unable to secure certification of a damages class.  Antitrust Class Counsel properly weighed the risks inherent in proposing class certification in this novel case and the benefits posed by the settlement, thus ensuring that class members would receive considerable payment as a result of this litigation despite the subsequent ruling denying a damages class.

Thus, this factor too weighs in favor of a 30% fee award.

### 3. Antitrust Class Counsel Undertook a Significant Burden in Prosecuting this Case.

Over the course of 4.5 years (2009 to 2013), 33 Antitrust Class Counsel firms expended significant attorney hours litigating this case against all defendants.  As discussed below, the total lodestar expended litigating against EA, CLC, and the NCAA until the September 10, 2013 mediation (that spawned this settlement) was $33,438,899.20.  Hausfeld Decl. ¶ 13.  Even the total amount of lodestar spent litigating principally against just EA and CLC (to the extent separable in this conspiracy case, which frequently involved issues common to all defendants) and settling with those defendants is substantial: $4,095,806.67 ($3,550,840.15 + $544,966.52).  *Id*. ¶¶ 12, 29.  These hours were spent on a contingent matter that substantially impaired Antitrust Class Counsel's ability to work on other matters with a more immediate chance of recovery, or on behalf of paying clients, for 4.5 years (and even longer as to the NCAA).  Antitrust Class Counsel also expended significant financial resources litigating against these defendants and various third parties—millions of dollars in attorney time and expenses advanced on a contingency basis with no guarantee of success.  *See Vizcaino II*, 290 F.3d at 1050 (9th Cir. 2002) (representation of class on contingency basis, costing counsel hundreds of thousands of dollars of expenses and requiring "counsel to forgo significant other work" weighed in favor of uplift).  Thus, this factor also supports a fee award of 30% of the Settlement.

### 4. Antitrust Class Counsel Litigated the Case on a Pure Contingency Basis.

The Ninth Circuit has identified contingency as an important consideration in determining the reasonableness of a fee request from a common fund.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* § 21.9, at 534–35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299. Other courts have noted how difficult class actions are and the absence of any guarantees of success. *See, e.g., In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007) ("[T]he risk of non-payment in complex cases, such as this one, is very real."). This case was taken on contingency and remained that way for the entirety of the litigation, which is now six years old. Hausfeld Decl. ¶ 4. Even at this late date, nearly a year after a trial victory, Antitrust Class Counsel have not yet been reimbursed for *any* of their time or out-of-pocket expenses. *Id.*

Antitrust Class Counsel took on this representation knowing full well that the chances of recovery were slim and that, even if successful, the case would take years to settle or bring to trial. As such, this is exactly the type of contingent case noted in *WPPSS* as warranting a reward. Hence, this factor also weighs in favor of an adjustment to 30% of the common fund.

### 5. A Lodestar Cross-Check Confirms the Reasonableness of the Requested 30% Fee.

As discussed above, Antitrust Class Counsel have devoted an enormous amount of time to litigating this case against all three defendants. As of September 9, 2013—the day before the ultimately successful mediation among the settling parties—Antitrust Class Counsel's lodestar, as against all defendants (the appropriate measure in this antitrust conspiracy case), at historical rates, totaled $33,438,899.20. *See Online DVD*, 779 F.3d at 949 ("The lodestar method requires multiplying the number of hours the prevailing party

- 14 -

1    reasonably expended on the litigation (as supported by adequate documentation) by a

2    reasonable hourly rate for the region and for the experience of the lawyer.") (quotation marks

3    omitted); *see also Smith v. Qwest Commc'ns Co.,* No. C11-02599 TEH, 2013 WL 3200592, at

4    *3 (N.D. Cal. June 24, 2013) (using lodestar across multiple related cases as cross-check for

5    one case where "the overlapping nature of the discovery, motion practice, research, litigation,

6    and settlement efforts . . . prevented Settlement Class Counsel from segregating their fees and

7    expenses").  After the settlement mediation in September 2013, a small group of Antitrust

8    Class Counsel expended a further $544,966.52 in lodestar (again at historical rates)

9    negotiating and drafting the settlement agreement, preparing preliminary-approval papers

10   (including draft forms of notice), strategizing a notice plan, engaging with settling parties'

11   counsel on these issues, and otherwise facilitating the settlement.  Hausfeld Decl. ¶ 29.

12          A lodestar cross-check does not require an intensive review of all time billed in a case;

13   instead, all that is required is an attestation from lead counsel regarding "(1) the experience

14   and qualifications of the attorneys who worked on the case; (2) those attorneys' customary

15   billing rates during the pendency of the case; and (3) the hours reasonably expended (reduced

16   if necessary in the exercise of professional billing judgment) by those attorneys in prosecuting

17   the case."  *Young v. Polo Retail, LLC*, No. C 02-4546-VRW, 2007 WL 951821, at *6 (N.D.

18   Cal. Mar. 28, 2007); *see also id.* ("In contrast to the use of the lodestar method as a primary

19   tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive

20   cataloging and review of counsel's hours."); *Goldberger v. Integrated Resources, Inc.,* 209

21   F.3d 43, 50 (2d Cir. 2000) ("Of course, where [the lodestar method is] used as a mere cross-

22   check, the hours documented by counsel need not be exhaustively scrutinized.").

23          In previous filings, Antitrust Class Counsel submitted hourly time details and lodestar

24   for all work against the NCAA, CLC, and EA (save for time details associated with the

25   mediation on September 10, 2013, and Settlement-related work that followed), with various

26   reductions in an exercise of billing judgment.  *See* Hausfeld Decl. ¶¶ 6-8.  Concurrent with

27   this Motion, Antitrust Class Counsel also submits a declaration detailing the $33,438,899.20

28
                                              - 15 -

1   pre-mediation lodestar (as against all defendants) referenced above, as well as the

2   $544,966.52 post-mediation lodestar concerning only the Settlement.  *Id.*  ¶¶ 13, 29.  All of

3   this lodestar was calculated using customary, historical hourly rates for each firm that are

4   reasonable in this district, rates which even the NCAA has conceded are reasonable.  *Id.* ¶ 10;

5   *see also* AP's Amended Motion for Fees, Costs, and Expenses, Case No. 09-3329, Dkt. No.

6   341, pp. 6-10 ("NCAA Fee Motion"); *LCD II*, 2013 WL 1365900, at *1, *9 (approving fees

7   ranging from $300-$1000, similar to the range here).  The attorneys working on this matter

8   are experienced and skilled in class action and antitrust matters.  Hausfeld Decl. ¶ 10.  And

9   the hours were reasonably expended on the litigation and settlement for the work performed,

10  demonstrating an exercise of billing judgement.  *Id.*

11      Here, Antitrust Class Counsel's total lodestar for prosecuting this matter against the

12  NCAA, EA, and CLC up until the September 2013 mediation, combined with lodestar

13  associated with the settlement agreement, mediation, and administration after that date, is

14  $33,983,865.72 ($33,438,899.20 + $544,966.52).[1]  *Id.* ¶ 30.  This figure does not include time

15  spent by ROP Class Counsel, who are submitting their own lodestar separately.  That this

16  number (even without ROP Class Counsel's additional lodestar) is significantly higher than

17  the total fee award requested—representing a negative multiplier of nearly three—confirms

18  the reasonableness of Antitrust Class Counsel's request.  *See Online DVD*, 779 F.3d at 955

19  ("[W]here, as here, the lodestar amount was three times the benchmark, it was not an abuse of

20  discretion for the district court to accept the benchmark using a quick cross-check of class

21  counsel's lodestar summary figures."); *see also In re Portal Software, Inc. Sec. Litig.*, No. C-

22  03-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) (negative multiplier

23  confirms reasonableness of percentage-based award); *LCD II*, 2013 WL 149692, at *1 ("The

24  negative multiplier cross-check serves to confirm the reasonableness of the fees requested.").

---

[1] These figures, pulled from Antitrust Class Counsel's earlier detailed calculations, are under-
inclusive for purposes of this Motion because Class Counsel excised all time relating
exclusively to certification of a damages class, time which would be properly sought here
given the timing of the Settlement in Principle prior to the Court's decision not to certify the
damages class.  Hausfeld Decl. ¶ 8.

ANTITRUST PLAINTIFFS' MOT. FOR ATTYS'
FEES, EXPENSES, AND INCENTIVE AWARDS

1    Thus, using the lodestar cross-check as dictated by the Ninth Circuit, Antitrust Class

2    Counsel's proposal that 30% of the common fund be allocated to attorneys' fees is

3    reasonable.[2]

4    ### C.    Antitrust Class Counsel for APs Are Entitled to 66.67% of the Total Fee
         Award.
5
6    The district court is granted broad discretion in determining what constitutes a

7    reasonable fee and how it is to be distributed among various counsel requesting a fee award.

8    *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 518 (9th Cir.

9    2000); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999) ("the

10   district court must exercise its inherent authority to assure that the amount and mode of

11   payment of attorneys' fees are fair and proper.); *In re FPI/Agretech Sec. Litig.*, 105 F.3d 469,

12   474 (9th Cir. 1997).  Given Antitrust Class Counsel's sizable contributions to this resolution

13   during the years-long period in which the ROP Class Counsel were unable to advance their

14   cases toward trial, APs respectfully request a 66.67% allocation of the total fee award.

15   When determining how to allocate fees among different law firms requesting fees

16   from the same fund, a court can make "conclusions regarding the degree and quality of labor

17   expended by the [several] firms, among other considerations."  *In re Critical Path, Inc.*, No. C

18   01-00551 WHA, 2002 WL 32627559, at *10 (N.D. Cal. June 18, 2002).  *Cf. In re*

19   *FPI/Agretech Sec. Litig.*, 105 F.3d at 474 ("relative efforts of, and benefits conferred upon the

20   class by, co-counsel" relevant to final fee allocation between co-counsel).  Where one firm

21   "undertook most of the work (including document review and negotiation with defendants)

22
     _____

23   [2] In the event that that the Court awards the total amount requested by Antitrust Class Counsel
     in this fee motion and awards the total amount requested in APs' NCAA Fee Motion—and the
24   NCAA actually pays that requested amount once it exhausts any and all appeals—the result
     will be compensation slightly greater than Antitrust Class Counsel's total lodestar, a modest
25   multiplier of 1.16, which is well within the range of appropriate multipliers in this circuit, *see,
     e.g., Vizcaino II*, 290 F.3d at 1050–51 (determining multiplier of 3.65 to be reasonable);
26   *DRAM*, 2007 WL 2416513, at *1 (multiplier of 2.3), and warranted for the superlative and
     distinct results obtained here.  *See generally* Case No. 09-3329, Dkt. No. 341, pp. 5, 15-16
27   (discussing factors warranting upward adjustment).

28
                                          - 17 -

1   that actually delivered real benefit to the classes," that firm appropriately receives a larger

2   share of the final fee award.  *Critical Path*, 2002 WL 32627559, at *10.

3         Here, Antitrust Class Counsel performed a substantial majority of the work in this

4   litigation that contributed to EA's decision to settle the case (save for the ROP Plaintiffs'

5   appeals in *Hart* and *Keller*).  EA decided to mediate and settle the case only on the eve of

6   AP's class certification hearing, with the benefit of extensive briefing; hundreds of exhibits

7   gathered from the discovery record; and expert reports reflecting a year of work on the class-

8   certification issue alone.  Hausfeld Decl. ¶ 19.  Furthermore, the prospect of trebled antitrust

9   damages for a certified damages class surely was a significant consideration for EA as class

10  certification rapidly approached.

11        In addition, APs conducted all of the discovery against EA, and the vast bulk of

12  discovery against the NCAA and CLC.  *Id.*  In contrast, a review of lodestar for the *Keller* and

13  *Hart* attorneys will likely show considerably less time devoted to the litigation before the

14  Settlement in Principle was reached in September 2013, with a larger proportion of time

15  committed to the effort to finalize and facilitate the settlement (i.e. relatively risk-free

16  lodestar).  Indeed, years ago *Keller* Class Counsel noted the greater demands and challenges

17  inherent in the antitrust litigation.  *See* Case No. 09-1967, Dkt. No. 236, p. 5 ("[D]iscovery in

18  *O'Bannon* is far different and much broader than discovery in Keller . . . . Expert and fact

19  discovery will involve, at a minimum, dozens of witnesses to show the alleged conspiracy to

20  deprive the antitrust Plaintiffs from commercially exploiting their images.")  Given the

21  relative disparity in work done on behalf of the class to advance the litigation, it is appropriate

22  for Antitrust Class Counsel to receive a larger share of the total award.

23        Finally, Antitrust Class Counsel do not seek any fees from the NCAA Settlement with

24  the *Keller* Plaintiffs despite every reason to believe that Antitrust Class Counsel's efforts and

25  continued litigation pressure on the NCAA helped bring about that resolution, announced in

26  the opening moments of the *O'Bannon* trial.  Thus, even if the Court grants Antitrust Class

27  Counsel's allocation request and awards $8 million in fees to Antitrust Class Counsel, *Keller*

28

- 18 -

1  Class Counsel will likely receive an equivalent or even larger fee across the two settlements

2  (assuming 29% fees in the NCAA Settlement, the maximum allowable under the NCAA

3  Settlement) despite having only a fraction of the lodestar.  Under Antitrust Class Counsel's

4  proposal, ROP Class Counsel would be more than fairly compensated for their contributions

5  to the litigation.

6        Based on the above, Antitrust Class Counsel propose an allocation of 66.67% of the

7  fee to themselves and take no position regarding the allocation of any remaining fees among

8  ROP Class Counsel.

9              **D.  Antitrust Class Counsel's Expenses Are Reasonable.**

10       Antitrust Class Counsel also request reimbursement for limited expenses incurred in

11  prosecuting this action.  Specifically, Antitrust Class Counsel seek reimbursement for certain

12  expenses that are tied to litigating against and settling with EA and CLC.  These represent a

13  fraction of the total expenses of the case, and less than the $2,500,000 amount permitted in the

14  Settlement agreement.  *See* Case No. 09-3329, Dkt. No. 288-1, p. 19.  In conjunction with this

15  Motion, Antitrust Class Counsel have submitted a breakdown of expenses requested by

16  category.  *See* Hausfeld Decl. ¶ 17.

17       Where a common fund is created, "[a]ttorneys may recover their reasonable expenses

18  that would typically be billed to paying clients in non-contingency matters."  *Knight v. Red*

19  *Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009).  Such

20  reasonable expenses include travel and expert expenses.  *Omnivision*, 559 F. Supp. 2d at 1048

21  (travel and expert expenses properly reimbursed from common fund); *In re Media Vision*

22  *Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("most jurisdictions have held

23  that district courts have the discretion to reimburse consulting and expert witness fees").

24  Here, almost all of the expenses requested by Antitrust Class Counsel related to travel for

25  depositions of EA and CLC witnesses and expert expenses for class certification.  These

26  expenses are reasonable and were necessarily incurred on behalf of the class, and thus are

27  compensable from the common fund.

28
                                    - 19 -

1        As a final note, in the event that the Court awards the total amount of expenses sought

2  by Antitrust Class Counsel in this request, doing so would reduce the total expenses Antitrust

3  Class Counsel seek from the NCAA by $1,741,847.57 (the full extent of overlapping

4  expenses), to a new total of expenses sought from the NCAA of $3,459,719.40

5  ($5,201,566.97 - $1,741,847.57). *See* Case No. 09-3329, Dkt. No. 361, at 15; Hausfeld Decl.

6  ¶ 18.

7        **E.     Class Representatives' Incentive Awards Are Reasonable and Appropriate.**

8        It is customary for courts in this circuit to approve incentive awards for class

9  representatives in recognition of their service to the class. *See Online DVD*, 779 F.3d at 943

10  (incentive awards are "'modest compensation' paid to class representatives for services

11  performed in the class action"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.

12  2000) (affirming incentive awards to class representatives); *Rodriguez v. West Publ'g Corp.*,

13  563 F.3d 948, 959 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases.").

14  Incentive awards are intended "to compensate class representatives for work done on behalf

15  of the class, to make up for financial or reputational risk undertaken in bringing the action,

16  and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at

17  958-59.

18        Here, class representatives expended substantial time and energy on the litigation,

19  including searching for and producing documents in hard copy and in electronic form;

20  preparing for and sitting for depositions; keeping up-to-date on the status of the litigation;

21  answering questions from other class members about the litigation over the course of five

22  years; and helping to inform other class members about the settlement agreement. *See*

23  Hausfeld Decl. ¶¶ 31-34. Furthermore, in this high-profile case, these class representatives

24  were subjected to considerable media and public scrutiny and risk to their reputation that is

25  appropriately compensable. *Rodriguez*, 563 F.3d at 959.

26        Pursuant to the Settlement Agreement, Antitrust Class Counsel seek incentive awards

27  of $5,000 each for 20 class representatives in the antitrust litigation, and $15,000 for lead

28

plaintiff Ed O'Bannon, who was an unflagging champion for the class and whose name became synonymous with the litigation as it unfolded.  Case No. 09-3329, Dkt. No. 288-1 ¶19.  Courts in this district have determined that modest awards in these amounts are reasonable.  *See, e.g.*, *Online DVD*, 779 F.3d at 941 (approving incentive awards of $5,000); *Presley v. Carter Hawley Hale Profit Sharing Plan*, No. C9704316SC, 2000 WL 16437, at *2 (N.D. Cal. 2000) (approving $25,000 incentive awards); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) (approving $5,000 incentive awards); *In re Sorbates Direct Purchaser Antitrust Litig.*, Nos. C 98-4886MMC, 99-1358MMC, 99-1499MMC, 00-2145MMC, 00-3854MMC, 99-4252MMC, 99-4473MMC, 2002 WL 31655191, at *3 (N.D. Cal. Nov. 15, 2002) (approving $7,500 incentive award).  Tiered awards of exactly the type proposed by APs have also been approved.  *See LCD II*, 2014 WL 149692, at *2 (approving $5,000 awards for seven class representatives and $15,000 for four who testified at trial).  Finally, a higher incentive award is warranted for Mr. O'Bannon for his tireless commitment to this litigation, which came to play an outsize role in his professional and personal life.  *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("*Garner II*") ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class.") (Wilken, J.).

Given the work of the class representatives for the benefit of the class, APs respectfully request that the Court approve incentive awards in the amounts described herein.

### F.    The Lone Objection to the Settlement Thus Far Is Motivated by Self-Interest.

Out of approximately 100,000 class members, only a single objection has been received thus far.  Hausfeld Decl.  ¶ 37.  That near-uniform reaction of the class to date also supports the amount of the fee that Antitrust Class Counsel seek, which is less than the 33%

1   or $13,200,000 figure included in the notice that issued to class members.[3]  Case No. 09-

2   3329, Dkt. No. 288-1, p. 66.  Settlement class representative Tate George, who voluntarily

3   dismissed his individual claims against the NCAA and withdrew as a class representative for

4   the injunctive class (while reserving all rights as an absent class member and without

5   prejudice to any participation award the Court may approve in this litigation), Case No. 09-

6   1967, Dkt. No. 907, has filed an objection to the settlement insofar as the Court might award

7   attorney fees in excess of $5 million.  Hausfeld Decl. ¶ 38.  Mr. George, now proceeding *pro*

8   *se*, urges instead that the Court award each class representative approximately $417,000,

9   differentiating them significantly from their settlement-class member peers. *Id.* ¶ 39.

10         Mr. George's objection disregards the Court-approved class notice's instruction that

11   **"[y]ou <u>cannot</u> object in order to ask the Court for a higher payment for *yourself***

12   ***personally . . . .*"**  Case No. 09-3329, Dkt. No. 288-1, at 56 (emphasis in original).  That

13   instruction is sound.  *See Manual for Complex Litigation* § 21.642 (4th ed.) ("Objections may

14   be motivated by self-interest rather than a desire to win significant improvements in the class

15   settlement. . . . Individual terms more favorable than those applicable to other class members

16   should be approved *only* on a showing of a reasonable relationship to facts or law that

17   distinguish the objector's position from other class members.") (emphasis in original). *Cf.*

18   *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) ("The named plaintiffs should not

19   be permitted to hold the absentee class hostage by refusing to assent to an otherwise fair and

20   adequate settlement in order to secure their individual demands."); *In re Ivan F. Boesky Sec.*

21   *Litig.*, 948 F.2d 1358, 1366 (2d Cir. 1991) ("To empower each representative of a named

22   plaintiff or subclass to veto the very proposal of a settlement to the district court would

23   generally not serve the purposes of Rule 23.  Such a power would encourage strategic

24

25

─────────────────

26   [3] This brief and supporting documentation will also be posted on the website established for
the settlements.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994–95 (9th

27   Cir. 2010).

28

behavior by representatives of named plaintiffs or classes, designed to maximize the value of the veto rather than the settlement value of their claims.").

## IV.   CONCLUSION

For the foregoing reasons, APs respectfully request that the Court grant in full this Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Incentive Awards.  A proposed order is attached hereto.

Dated: April 13, 2015                                    Respectfully submitted,

By:  _/s/ Michael Hausfeld_
Michael D. Hausfeld (*pro hac vice*)
Hilary K. Scherrer (Cal. Bar. No. 209451)
Sathya S. Gosselin (Cal. Bar. No. 269171)
Swathi Bojedla (*pro hac vice*)
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone:  (202) 540-7200
Facsimile:  (202) 540-7201
E-mail: mhausfeld@hausfeld.com
          hscherrer@hausfeld.com
          sgosselin@hausfeld.com
          sbojedla@hausfeld.com

Michael P. Lehmann (Cal. Bar No. 77152)
Bonny E. Sweeney (Cal. Bar No. 176174)
Bruce J. Wecker (Cal. Bar No. 78530)
HAUSFELD LLP
44 Montgomery St., 34th Floor
San Francisco, CA 94104
Telephone:  (415) 633-1908
Facsimile:  (415) 358-4980
E-mail: mlehmann@hausfeld.com
          bsweeney@hausfeld.com
          bwecker@hausfeld.com

*Class Counsel for Antitrust Plaintiffs*

- 23 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Sathya S. Gosselin, declare that I am over the age of eighteen (18) and not a party to the entitled action. I am a partner in the law firm of HAUSFELD LLP, and my office is located at 1700 K Street NW, Suite 650, Washington, DC 20006.

On April 13, 2015, I caused to be filed the following:

**ANTITRUST PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS**

and accompanying declaration and exhibits with the Clerk of Court using the Official Court Electronic Document Filing System, which served copies on all interested parties registered for electronic filing.

I declare under penalty of perjury that the foregoing is true and correct.


*/s/ Sathya S. Gosselin*
Sathya S. Gosselin