IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL KELLER, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; ELECTRONIC ARTS INC.; and COLLEGIATE LICENSING CONMPANY,<br><br>    Defendants.<br>_____/ | No. C 09-1967 CW<br><br>ORDER GRANTING IN PART CLASS PLAINTIFFS' MOTION FOR APPEAL BOND |
| EDWARD O'BANNON, et al.<br><br>    Plaintiffs,<br><br>  v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; ELECTRONIC ARTS INC.; and COLLEGIATE LICENSING COMPANY,<br><br>    Defendants.<br>_____/ | No. C 09-3329 CW |

On August 19, 2015, this Court granted final approval of the class action settlements in the above-captioned cases and entered judgment. On September 16, 2015, Objector Nathan Harris filed a notice of appeal of the settlement in Keller and Objector Darrin Duncan filed a notice of appeal of the settlement in O'Bannon (collectively, Objectors). Class Plaintiffs in both cases have

now filed a motion pursuant to Federal Rule of Appellate Procedure 7 for an order requiring Objectors to post an appeal bond. Defendants Electronic Arts Inc. (EA), National Collegiate Athletic Association (NCAA) and Collegiate Licensing Company join in the motion. Objectors have filed a joint opposition to the motion and Plaintiffs have filed a reply. Having considered the papers filed by the parties, the Court GRANTS Plaintiffs' motion in part and orders Objectors to file an appellate cost bond, as described below.

## BACKGROUND

The settlements at issue resolved the claims of Plaintiff classes in four different cases, the above-captioned cases, Hart v. Electronic Arts, Inc., D.N.J. Case No. 09-5990, and Alston v. Electronic Arts, Inc., D.N.J. Case No. 13-5157. The claims arise out of the depiction of Division One college athletes, specifically football and male basketball players, in EA's videogames, and the NCAA's restriction on compensation for those players. The settlements provide that EA will pay $40,000,000 to resolve the claims against it and CLC and the NCAA will pay $20,000,000 to resolve the claims against them.[1]

---

[1] The O'Bannon Plaintiffs' antitrust claims against the NCAA were not settled. Those claims were the subject of a bench trial before the Court in June 2014.

2

DISCUSSION

Rule 7 provides that, in a civil case, "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." The purpose of the appeal bond is to "protect the amount the appellee stands to have reimbursed, not to impose an independent penalty on the appellant." Fleury v. Richemont N. Am., Inc., 2008 WL 468003, *6 (N.D. Cal.) (internal quotation marks and citation omitted). Plaintiffs seek a bond of $88,839, representing $5,000 in taxable costs and $83,839 in administrative costs, calculated at $6,550 per month for 12.8 months, the median time for disposition of an appeal in the Ninth Circuit. These administrative costs include paying the claims administrator to continue to maintain the settlement website and toll-free telephone number and to respond to class member questions. Objectors contend that an appeal bond is not appropriate in this case and, if a bond is ordered, the amount requested by Plaintiffs is not justified.

I.  Amount of Bond

Although Rule 7 does not define the term "costs," the Ninth Circuit has held that, as used in Rule 7, the term includes those costs specified in Federal Rule of Appellate Procedure 39 and "all expenses defined as 'costs' by an applicable fee-shifting statute, including attorneys' fees." Azizian v. Federated Dep't Stores, Inc., 499 F.3d 950, 958 (9th Cir. 2007). Rule 39 provides that

3

the following costs may be taxed: "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid of a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal."  Fed. R. App. P. 39(e).

Objectors first argue that Plaintiffs have not provided sufficient detail to support their request for a bond for $5,000 in taxable costs.  However, the motion for bond states that $5,000 is a conservative estimate for the amount Plaintiffs will spend on items such as printing, photocopying, and preparing and serving the appeal record.  The Court finds that $5,000 is a reasonable estimate.

Objectors also argue that there is no basis on which the Court may approve an appeal bond for administrative costs, noting that there is no statute authorizing the shifting of such costs.  Plaintiffs do not argue that there is such a statute.  Instead, they cite various cases in which administrative costs were included in appeal bonds.  However, those cases do not provide any basis on which this Court can impose an appeal bond for administrative costs in this case.  In In re Cardizem CD Antitrust Litigation, 391 F.3d 812 (6th Cir. 2004), the Sixth Circuit affirmed the imposition of an appeal bond that included administrative costs.  However, the Sixth Circuit panel relied on a Tennessee statute that authorized an award of "any damages incurred, including reasonable attorney's fees and costs."  Id. at

4

817 (quoting Tenn. Code Ann. § 47-18-109). The three district court cases Plaintiffs cite include administrative costs in the amount of the appeal bonds imposed but do not cite any statute authorizing the recovery of such costs. See In re Netflix Privacy Litig., 2013 WL 6173772, at *4 (N.D. Cal.); Miletak v. Allstate Ins. Co., 2012 WL 3686785, at *2 (N.D. Cal.); Embry v. ACER America Corp., 2012 WL 2055030, at *2 (N.D. Cal.).

Moreover, other courts have noted that there is no statute authorizing administrative expenses as "costs" for purposes of Rule 7 and have accordingly declined to include such costs in appeal bonds. See, e.g., Tennille v. Western Union Co., 774 F.3d 1249, 1255 (10th Cir. 2014) ("Circuit courts, in any event, consistently define 'costs on appeal' for Rule 7 purposes as appellate costs expressly provided for by a rule or statute. But Plaintiffs have not identified, nor could we find, any rule or statute that permits them, should they succeed in defending Objectors' merits appeals, to recover the cost of notifying class members of those merits appeals or to recover the cost of maintaining the class settlement fund pending the merits appeals."); Schulken v. Washington Mut. Bank, 2013 WL 1345716, at *7-8 (N.D. Cal.) (declining to include administrative costs in appeal bond where "Plaintiffs-Appellees were unable to identify any additional precedent or statutes authorizing administrative expenses as 'costs'").

Azizian made clear that only those expenses expressly defined as "costs" by a fee-shifting statute are "costs on appeal" for purposes of Rule 7. 499 F.3d at 958. There is no such statute defining administrative expenses related to corresponding with class members and maintaining the settlement website as "costs." Accordingly, the Court declines to require an appeal bond including the $83,839 of administrative costs.

II. Whether to Require a Bond

Neither Rule 7 nor the Ninth Circuit provides specific factors a court should consider in determining whether to require an appeal bond. However, when applying the reasoning in Azizian, courts in this district have identified three relevant factors: "(1) appellant's financial ability to post bond; (2) the risk that appellant would not pay the costs if the appeal loses; and (3) an assessment of the likelihood that appellant will lose the appeal and be subject to costs." Schulken, 2013 WL 1345716, at *4 (citing Fleury, 2008 WL 468033, at *7; Miletak, 2012 WL 3686785, at *1).

With respect to the ability to post bond, "[d]istrict courts have found that this factor weighs in favor of a bond, absent indication that the [party] is unable to post a bond." Schulken, 2013 WL 1345716, at *4. Objectors have submitted declarations indicating that they are unable to qualify for, pay for or post a bond in the amount of $88,839, or to pay for and post a bond in the amount of $5,000. Docket No. 1256-1 at ¶ 4; Docket No. 1256-2

6

at ¶ 5. As discussed above, the Court declines to include the $83,839 in administrative costs in any appeal bond to be granted. Notably, neither Objector states that he is unable to qualify for a $5,000 bond. Moreover, as Plaintiffs note in their brief seeking a bond and in their pending motion for an order to show cause why counsel for Objector Harris should not be sanctioned, counsel for Objectors have refused to answer questions regarding whether they are representing Objectors on a contingent fee basis and, if they are, whether their retainer agreements make counsel rather than Objectors liable for any costs. Objectors' payment of the Ninth Circuit's filing fee, together with their declarations of extremely limited finances, supports a finding that their counsel are advancing costs for their appeals. Accordingly, the Court finds that this factor weighs in favor of ordering an appeal bond.

When analyzing the second factor, courts in this district have recognized that it can be difficult to collect costs from out-of-state appellants. See, e.g., Padgett v. Loventhal, 2015 WL 4240804, at *3 (N.D. Cal.); Schulken, 2013 WL 1345716, at *5, Embry, 2012 WL 2055030, at *1. Plaintiffs argue that where, as here, an appellant resides outside of the jurisdiction of the court, but within the Ninth Circuit, this factor weighs in favor of granting an appeal bond. However, the cases Plaintiffs rely upon are distinguishable from this case. In both cases, the appellants resided outside of California, but within the Ninth

7

Circuit.  See Padgett, 2015 WL 4240804, at *3 (appellant resided in Washington state); Schulken, 2013 WL 1345716, at *5 (same).  Here, it appears that Objectors reside in California, but outside of this District.  Plaintiffs also argue that there is a "substantial risk" that Objectors and their counsel "will resist paying any costs imposed by an appellate court" because their counsel are "professional objectors."  Docket No. 1250 at 6.  Although Plaintiffs have cited multiple cases in which counsel for Objector Harris has represented himself or his family members as objectors to class action settlements, Plaintiffs have not presented evidence that counsel for Objectors have failed to pay costs ordered against them.  Accordingly, the Court finds that this factor weighs neither in favor nor against ordering an appeal bond.

Finally, the Court finds that the merits of the Objectors' appeals weigh in favor of requiring a bond.  The Court notes that only three individuals objected to the settlement and five individuals timely opted out, while close to 30,000 individuals participated in the settlement by completing timely claim forms.  Moreover, Objectors' arguments against approval of the settlements are not likely to succeed.  The Court considered and overruled the objections as meritless when it approved the settlement and its approval of the settlement can only be reversed if the Ninth Circuit finds that the Court abused its discretion.

8

Accordingly, the Court finds that a bond of $5,000 is appropriate.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part Plaintiffs' motion to require Objectors to post an appellate cost bond as a condition of prosecuting their appeals (Docket No. 1250). The Court hereby imposes, pursuant to Appellate Rule 7, a bond requirement in the amount of $5,000 jointly and severally on Objectors Harris and Duncan. No later than ten days from the date of this order, Objectors must file with the Court and serve on Appellees either proof of satisfaction of the bond requirement or proof of withdrawal of their appeals.

IT IS SO ORDERED.

Dated: October 21, 2015

CLAUDIA WILKEN
United States District Judge

9